**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

KONINKLIJKE PHILIPS N.V.,
U.S. PHILIPS CORPORATION,

Plaintiffs,

v.

ASUSTEK COMPUTER INC.,
ASUS COMPUTER INTERNATIONAL,

Defendants.

C.A. No. 15-1125-GMS

MICROSOFT CORPORATION,

Intervenor-Plaintiff,

v.

KONINKLIJKE PHILIPS N.V.,
U.S. PHILIPS CORPORATION,

Intervenor-Defendants.

KONINKLIJKE PHILIPS N.V.,
U.S. PHILIPS CORPORATION,

Plaintiffs,

v.

VISUAL LAND, INC.,

Defendant.

C.A. No. 15-1127-GMS

MICROSOFT CORPORATION,

Intervenor-Plaintiff,

v.

KONINKLIJKE PHILIPS N.V.,
U.S. PHILIPS CORPORATION,

Intervenor-Defendants.

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br>U.S. PHILIPS CORPORATION,<br><br>Plaintiffs,<br>v.<br><br>DOUBLE POWER TECHNOLOGY, INC.,<br>ZOWEE MARKETING CO., LTD.,<br>SHENZEN ZOWEE TECHNOLOGY CO., LTD.,<br><br>Defendants. | C.A. No. 15-1130-GMS |
| MICROSOFT CORPORATION,<br><br>Intervenor-Plaintiff,<br>v.<br><br>KONINKLIJKE PHILIPS N.V.,<br>U.S. PHILIPS CORPORATION,<br><br>Intervenor-Defendants. | |
| KONINKLIJKE PHILIPS N.V.,<br>U.S. PHILIPS CORPORATION,<br><br>Plaintiffs,<br>v.<br><br>YIFANG USA, INC. D/B/A E-FUN, INC.,<br><br>Defendant. | C.A. No. 15-1131-GMS |
| MICROSOFT CORPORATION,<br><br>Intervenor-Plaintiff,<br>v.<br><br>KONINKLIJKE PHILIPS N.V.,<br>U.S. PHILIPS CORPORATION,<br><br>Intervenor-Defendants. | |

KONINKLIJKE PHILIPS N.V.,
U.S. PHILIPS CORPORATION,

Plaintiffs,

v.

ACER INC.,
ACER AMERICA CORPORATION,

Defendants.

C.A. No. 15-1170-GMS

MICROSOFT CORPORATION,

Intervenor-Plaintiff,

v.

KONINKLIJKE PHILIPS N.V.,
U.S. PHILIPS CORPORATION,

Intervenor-Defendants.

**OPENING BRIEF IN SUPPORT OF INTERVENOR MICROSOFT CORPORATION'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

*Of Counsel:*

Chad S. Campbell
Jared W. Crop
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
(602) 351-8000

Judith Jennison
Christina McCullough
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
(206) 359-8000

Dated: January 12, 2017

ASHBY & GEDDES
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys For Intervenor-Plaintiff Microsoft Corporation*

**TABLE OF CONTENTS**

NATURE AND STAGE OF THE PROCEEDINGS ........ 1

SUMMARY OF THE ARGUMENT ........ 2

STATEMENT OF FACTS ........ 2

I. The Claims of the ’064 Patent Recite “Finger Touch Program Instructions” in Functional Terms, But the Specification Discloses No Corresponding Algorithm. ........ 2

A. The ’064 Patent Discloses A Touch-Screen Device That Scrolls Displayed Data At the Speed and in the Direction of a Sensed Finger Touch. ........ 2

B. All Claims of the ’064 Patent Recite “Finger Touch Program Instructions” For Performing “Sensing” Functions. ........ 4

C. The ’064 Patent Fails to Disclose Corresponding Structure for the “Finger Touch Program Instructions” Limitations, Relying Instead on “Methodology … Well-Known to Persons Having Skill in the Art.” ........ 4

LEGAL STANDARD ........ 5

ARGUMENT ........ 7

I. THE ASSERTED CLAIMS OF THE ’064 PATENT ARE INVALID BECAUSE THEY RECITE MEANS-PLUS-FUNCTION LIMITATIONS BUT THE SPECIFICATION FAILS TO DISCLOSE CORRESPONDING STRUCTURE ........ 7

A. “Finger Touch Program Instructions” Is a Means-Plus-Function Claim Limitation. ........ 7

B. “Finger Touch Program Instructions” Is Indefinite as a Matter of Law Because the Specification Does Not Disclose Any Corresponding Structure For Performing the “Sensing” Functions ........ 10

CONCLUSION ........ 12

**TABLE OF AUTHORITIES**

**CASES**

*Advanced Ground Information Sys., Inc. v. Life360, Inc.*,
830 F.3d 1341 (Fed. Cir. 2016) .......... 6, 10

*Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*,
841 F.3d 1334 (Fed. Cir. 2016) .......... 11, 12

*Altiris, Inc. v. Symantec Corp.*,
318 F.3d 1363 (Fed. Cir. 2003) .......... 9

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014) .......... 9

*Baraka v. McGreevey*,
481 F.3d 187 (3d Cir. 2007) .......... 5

*Biomedino, LLC v. Waters Techs. Corp.*,
490 F.3d 946 (Fed. Cir. 2007) .......... 11, 12

*Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc. (d/b/a The Home Depot)*,
412 F.3d 1291 (Fed. Cir. 2005) .......... 12

*Function Media, L.L.C. v. Google, Inc.*,
708 F.3d 1310 (Fed. Cir. 2013) .......... 6, 11

*In Re Bendamustine Consolidated Cases*,
No. 13-2046, D.I. 325, 2015 WL 1951399 (D. Del. April 29, 2015) .......... 5, 6

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) .......... 6

*Koninklijke Philips N.V. et al. v. Acer Inc. et al*,
No. C.A. No. 15-1170-GMS (D. Del. Dec. 18, 2015) .......... 1

*Koninklijke Philips N.V. et al. v. ASUSTeK Computer Inc. et al.*,
No. 15-1125 (D. Del. Dec. 7, 2015) .......... 1

*Koninklijke Philips N.V. et al. v. Digital Products International, Inc.*,
No. 15-1129 1129 (D. Del. Dec. 7, 2015) .......... 1

*Koninklijke Philips N.V. et al. v. Double Power Technology, Inc.*,
No. 15-1130 (D. Del. Dec. 7, 2015) .......... 1

*Koninklijke Philips N.V. et al. v. HTC Corp. et al.*,
No. 15-1126 (D. Del. Dec. 7, 2015) .......... 1

*Koninklijke Philips N.V. et al. v. Southern Telecom Inc.*,
No. 15-1128 (D. Del. Dec. 7, 2015) .......... 1

*Koninklijke Philips N.V. et al. v. Visual Land Inc.*,
No. 15-1127 (D. Del. Dec. 7, 2015) .......... 1

*Koninklijke Philips N.V. et al. v. YiFang USA Inc.*,
No. 15-1131 (D. Del. Dec. 7, 2015) .......... 1

*MAZ Encryption Techs. LLC v. Blackberry Corp.*,
No. 13-304-LPS, 2016 WL 5661981 (D. Del. Sept. 29, 2016) .......... 6

*Parallel Networks Licensing, LLC v. Int'l Bus. Machines Corp.*,
83 F. Supp. 3d 571 (D. Del. 2015) .......... 6

*S3 Inc. v. NVIDIA Corp.*,
259 F.3d 1364 (Fed. Cir. 2001) .......... 12

*VideoShare, LLC v. Google, Inc.*,
No. 13-CV-990 (GMS), 2016 WL 4137524 (D. Del. Aug. 2, 2016) (2016) .......... 5

*Williamson v. Citrix Online, LLC,*
792 F.3d 1339 (Fed. Cir. 2015) .......... passim

**STATUTES**

35 U.S.C. § 112 .......... passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) .......... 5

Fed. R. Civ. P. 12(c) .......... 5, 6

**NATURE AND STAGE OF THE PROCEEDINGS**

Plaintiffs Koninklijke Philips N.V. and U.S. Philips Corporation (collectively, "Philips") initiated patent infringement lawsuits against ASUSTeK Computer Inc. et al., HTC Corp. et al., Visual Land Inc., Southern Telecom Inc., Digital Products International, Inc., Double Power Technology Inc. et al., YiFang USA, Inc., and Acer Inc. et al. between December 7, 2015 and December 18, 2015.[1] On April 11, 2016, Philips filed First Amended Complaints in all of the Related Cases, accusing the defendants of direct, induced, and contributory infringement of either nine or ten asserted patents.

Philips' infringement allegations against certain defendants include allegations directed at their use of Windows-based functionality. The parties stipulated, and the Court ordered, that Microsoft Corporation be permitted to intervene in the actions in which those Windows-related allegations were made, and to file complaints therein seeking declaratory judgments of noninfringement against Philips (the "Complaints-in-Intervention"). Of the seven Related Cases, Microsoft has intervened in the five actions listed on the cover of this brief (C.A. Nos. 15-1125, 1127, 1130, 1131, and 1170) (the "Microsoft Actions"). Microsoft filed its Complaints-in-Intervention in the Microsoft Actions on November 10, 2016, Philips filed its answers and counterclaims on December 9, 2016, and Microsoft filed its answers to Philips' counterclaims on December 22, 2016.

---

1 *See Koninklijke Philips N.V. et al. v. ASUSTeK Computer Inc. et al.*, No. 15-1125 (D. Del. Dec. 7, 2015), *Koninklijke Philips N.V. et al. v. HTC Corp. et al.*, No. 15-1126 (D. Del. Dec. 7, 2015), *Koninklijke Philips N.V. et al. v. Visual Land Inc.*, No. 15-1127 (D. Del. Dec. 7, 2015), *Koninklijke Philips N.V. et al. v. Southern Telecom Inc.*, No. 15-1128 (D. Del. Dec. 7, 2015), *Koninklijke Philips N.V. et al. v. Digital Products International, Inc.*, No. 15-1129 (D. Del. Dec. 7, 2015), *Koninklijke Philips N.V. et al. v. Double Power Technology, Inc.*, No. 15-1130 (D. Del. Dec. 7, 2015), *Koninklijke Philips N.V. et al. v. YiFang USA Inc.*, No. 15-1131 (D. Del. Dec. 7, 2015), and *Koninklijke Philips N.V. et al. v. Acer Inc. et al*, No. C.A. No. 15-1170-GMS (D. Del. Dec. 18, 2015) (except for the *Digital Products* case, No. 15-1129, which was dismissed via stipulated order on March 3, 2016, these cases are referred to collectively as the "Related Cases").

The Court entered a Scheduling Order in all of the Related Cases on September 15, 2016. *See, e.g.*, D.I. 45, *as modified by* D.I. 63, in C.A. No. 15-1125. Under the current schedule, the Court will hold a claim construction hearing on May 3, 2017, discovery will close on January 26, 2018, and the first trial in these matters will begin on June 18, 2018. *Id.*

## SUMMARY OF THE ARGUMENT

1. All asserted claims of U.S. Pat. No. 7,194,064 (D.I. 1-1 Ex. 3 in C.A. No. 15-1125) ("'064 patent") are indefinite as a matter of law because they include a software means-plus-function limitation that has no corresponding structure in the specification. The claims recite "finger touch program instructions associated with said [microprocessor / computer apparatus] for sensing the speed, direction, and time duration of a finger touch contact with [the] display screen." This limitation is subject to 35 U.S.C. § 112, ¶ 6, because it recites the functions of sensing the speed, direction, and duration of a finger touch but does not recite structure for performing those functions. Given that the claims are subject to § 112, ¶ 6, they are indefinite because the specification fails to disclose any algorithm for performing these functions. Instead, the specification states that "[t]he technology and methodology" for performing the claimed functions "is well-known to persons having skill in this art, ***and is not further described or discussed in this specification***." '064 patent at 3:25-28 (emphasis added).

## STATEMENT OF FACTS

### I. The Claims of the '064 Patent Recite "Finger Touch Program Instructions" in Functional Terms, But the Specification Discloses No Corresponding Algorithm.

#### A. The '064 Patent Discloses A Touch-Screen Device That Scrolls Displayed Data At the Speed and in the Direction of a Sensed Finger Touch.

Philips alleges that Microsoft infringes claims 1, 2, 3, 5, 6, and 8 of the '064 patent, which is entitled "Touch-Screen Image Scrolling System and Method." Claims 1 and 8 are independent; claims 2, 3, 5, and 6 depend from claim 1. The '064 patent describes techniques for allowing the user of a touchscreen device to scroll the displayed data "rapidly and in a more natural manner than

heretofore possible." '064 patent at 1:50-51. The '064 patent purports to achieve this "rapid" and "natural" scrolling by moving the displayed data at the same speed and in the same direction as the user's initial touch. *See id*. at 1:57-59. After the user's finger "separates from the screen, the [displayed] image continues to move in the same direction at a gradually decreasing speed until motion is stopped manually by touching the screen[.]" *Id.* at 1:59-62.

Operation of the claimed system begins by sensing the duration, speed, and direction of a finger touch on the touch screen. The system must first sense a finger touch that lasts longer than a minimum duration. The system then converts the speed and direction of the touch into a corresponding scrolling motion of the displayed data:

> [T]he method of operating a touch-screen image scrolling system 10 (as shown in FIG. 1) in accordance with this invention may be seen to **begin in step 100 with sensing the touch of a finger** upon an electronic display screen 100a having a stationary data display, **determining the period of time that the finger is in contact with the screen** 100b, and determining if the finger moves or remains stationary 100c. …
>
> [I]f step 100 senses motion in association with the finger touch on the screen, during the finite period between the first predetermined time and the second, then the method of the invention proceeds to step 104, **converting the speed and direction of motion of the touch into corresponding initial scrolling motion** of the displayed data.

'064 patent at 3:17-24, 3:56-61 (emphases added); *see also id.*, Fig. 1 (excerpted below, with highlights added):



### B. All Claims of the ’064 Patent Recite “Finger Touch Program Instructions” For Performing “Sensing” Functions.

Every claim of the ’064 patent requires “finger touch program instructions for sensing the speed, direction and time duration of a finger touch contact with said display screen.” Independent claim 1 recites “finger touch program instructions associated with said microprocessor for sensing the speed, direction and time duration of a finger touch contact with said display screen.” ’064 patent at 6:12–15. The other independent claims of the ’064 patent, claims 7 and 8, include an identical or nearly identical limitation. *See id.* at 7:11-14 (“finger touch program instructions associated with said computer apparatus for sensing the speed, direction and time duration of a finger touch contact with said display screen”), 7:44-47 (“finger touch program instructions associated with said microprocessor for sensing the speed, direction and time duration of a finger touch contact with said display screen”).

These “finger touch program instructions” limitations are written in functional terms: the claims recite that the instructions are “for sensing the speed, direction and time duration of a finger touch contact” on the screen. However, the claims do not recite any structure for performing these “sensing” functions.

### C. The ’064 Patent Fails to Disclose Corresponding Structure for the “Finger Touch Program Instructions” Limitations, Relying Instead on “Methodology … Well-Known to Persons Having Skill in the Art.”

The specification of the ’064 patent is short—only five columns long, with a three-column Detailed Description—and it does not disclose any algorithm for performing the functions of sensing the speed, direction and duration of a finger touch with the display screen. Instead, the specification relies on the knowledge of persons of skill in the art, representing that “[t]he technology and methodology for sensing and determining the appropriate values for information of the type herein disclosed is well-known to persons having skill in this art, and is not further described or discussed in this specification.” ’064 patent at 3:20-28.

Thus, the ’064 patent does not describe *how* these “sensing” functions are performed; it states only that they *are* performed. *See id*. at 4:44-48 (“in step 108, the system senses the touch of a finger 100a on the electronic display screen, determines the period of time 100b that the finger is in contact with the screen, and determines if the finger moves or remains stationary”); *id*. at 5:10-13 (“if the system senses motion of the finger touch on the screen, the method reverts to step 104, again converting the speed and direction of motion of the touch into scrolling motion”). The ’064 patent also states that software can be responsible for performing the functions. *See id*. at 5:33-35 (“[s]oftware in the computer interactively responds to the contact with the screen to create the desired displacement motion of the display”); *id*. at 2:12-18 (“programming a microprocessor-based control system to displace the image on a screen display … in response to a finger touch on the screen”). But the ’064 patent does not disclose any algorithm for performing the “sensing” functions or describe how the claimed systems are able to sense a finger touch at all, let alone how they sense the direction and speed of the touch.

**LEGAL STANDARD**

A party may move for judgment on the pleadings “[a]fter pleadings are closed—but early enough not to delay trial.” Fed. R. Civ. P. 12(c); *see, e.g., Videoshare, LLC v. Google, Inc.*, No. 13-CV-990 (GMS), 2016 WL 4137524 at *2 (D. Del. Aug. 2, 2016). “When deciding a Rule 12(c) motion for judgment on the pleadings based on an allegation that the plaintiff has failed to state a claim, the motion ‘is analyzed under the same standards that apply to a Rule 12(b)(6) motion.’ ” *In Re Bendamustine Consolidated Cases*, No. 13-2046, D.I. 325, 2015 WL 1951399 (D. Del. April 29, 2015) (quotation omitted). Under that standard, the Court must “view all facts and inferences drawn from the pleadings in the light most favorable to the non-moving party,” but is “‘not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.’” *Bendamustine*, 2015 WL 1951399 at *1 (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

In deciding Rule 12(c) motions, the Court may consider any documents integral to or relied on by the pleadings. *Bendamustine*, 2015 WL 1951399 at *1 (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). In patent cases, these integral documents include the asserted patents. *E.g., MAZ Encryption Techs. LLC v. Blackberry Corp.*, No. 13-304-LPS, 2016 WL 5661981 (D. Del. Sept. 29, 2016) (granting motion for judgment on the pleadings after considering claims, specification and prosecution history); *Parallel Networks Licensing, LLC v. Int'l Bus. Machines Corp.*, 83 F. Supp. 3d 571 (D. Del. 2015) (same).

The "essential inquiry" in determining whether a limitation is subject to § 112, ¶ 6—the primary issue presented by this Motion—is "whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (*en banc* in relevant part). A limitation that does not recite the term "means" will still trigger § 112, ¶ 6 "if the challenger demonstrates that the claim term … recites 'function without reciting sufficient structure for performing that function.'" *Id.* (quotation omitted). Upon determining that § 112, ¶ 6 applies, the Court must identify the claimed function and "determine what structure, if any, [is] disclosed in the specification [and] corresponds to the claimed function." *Williamson*, 792 F.3d at 1351–52. For computer-implemented functions, "the specification [must] disclose an algorithm for performing the claimed function." *Advanced Ground Information Sys., Inc. v. Life360, Inc.*, 830 F.3d 1341, 1349 (Fed. Cir. 2016) (quotation omitted). This requirement cannot be satisfied by relying on the knowledge of persons skilled in the art—the structure must be actually described in the specification. *See Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1319 (Fed. Cir. 2013) ("Having failed to provide any disclosure of the structure for the 'transmitting' function, [patentee] cannot rely on the knowledge of one skilled in the art to fill in the gaps."). "If the patentee fails to disclose adequate corresponding structure, the claim is indefinite." *Advanced Ground Information Sys.*, 830 F.3d at 1349.

**ARGUMENT**

With this Motion, the Court can narrow the scope of these cases by resolving a discrete legal issue that bars Philips' claims under one of the asserted patents: Specifically, all asserted claims of the '064 patent are indefinite because they include a software limitation written in means-plus-function format—"finger touch program instructions"—that has no corresponding structure in the specification. Even a cursory review of the '064 patent's brief specification confirms that it contains no corresponding algorithmic structure. In fact, the '064 patent specification expressly admits that no such description is provided, stating that "[t]he technology and methodology" for performing the claimed functions "is well-known to persons having skill in this art, ***and is not further described or discussed in this specification***." '064 patent at 3:25-28 (emphasis added). Thus, the only real issue for the Court is to determine whether the limitation is subject to the requirements of § 112, ¶ 6, because if it is, then the failure to disclose the structure with which to perform the claimed functions renders the asserted claims of the '064 patent fatally indefinite as a matter of law. Granting this Motion will therefore prevent the Court and the parties from needlessly having to expend resources on the '064 patent during the upcoming claim construction proceedings and throughout the remainder of these cases.

**I. The Asserted Claims of the '064 Patent are Invalid Because They Recite Means-Plus-Function Limitations But the Specification Fails to Disclose Corresponding Structure.**

**A. "Finger Touch Program Instructions" Is a Means-Plus-Function Claim Limitation.**

Under 35 U.S.C. § 112, ¶ 6,[2] the interpretation of a means-plus-function element is handled as follows:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be

[2] The claims of the '064 patent are subject to the version of Section 112 in effect before the America Invents Act.

> construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

In determining whether a limitation is subject to § 112, ¶ 6, the "essential inquiry" is "whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Williamson*, 792 F.3d at 1348. When, as here, a limitation does not recite the term "means," it may still trigger § 112, ¶ 6 "if the challenger demonstrates that the claim term fails to 'recite[] sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Id.* (quotation omitted).

The "finger touch program instructions" limitation recites functions without sufficient structure for performing those functions. Read in full, the limitation recites "finger touch program instructions associated with said microprocessor for sensing the speed, direction and time duration of a finger touch contact with said display screen." '064 patent at 6:12-15. This limitation is written in the traditional means-plus-function format of "[means or other generic word] for [function]": the claim replaces "means" with the equally formless word "instructions," and then lists three functions that the instructions perform (sensing the speed, direction, and duration of a finger touch contact). The Federal Circuit considered a comparable scenario in *Williamson*, where it determined that the phrase "distributed learning control module for [performing certain functions]" was written "in a format consistent with traditional means-plus-function claim limitations. It replaces the term 'means' with the term 'module' and recites three functions performed by the 'distributed learning control module.'" 792 F.3d at 1350. Here, as in *Williamson*, the '064 patent replaces the term "means" with the term "finger touch program instructions" and recites three functions performed by the "finger touch program instructions."

Neither the term "finger touch program instructions" itself nor the surrounding claim language provides any structure for performing the recited "sensing" functions. As the Federal

Circuit has recognized, "[g]eneric terms such as 'mechanism,' 'element,' 'device,' and other nonce words that reflect nothing more than verbal constructs may be used in a claim in a manner that is tantamount to using the word 'means' because they typically do not connote sufficiently definite structure." *Id*. (quotations omitted). "Program instructions" is exactly this type of generic term. This term is not viewed by one skilled in the art as connoting a particular structure. In fact, the '064 patent itself makes clear that "finger touch program instructions" are nothing more than undescribed programs in a special purpose computer. *See* '064 patent at 2:13-17 ("This operation of the system of this invention is achieved by programming a microprocessor-based control system to displace the image on a screen display … in response to a finger touch on the screen[.]"). And it is well-established that merely referring to programs or software in a special purpose computer does not indicate particular structure. Rather, a person of skill in the art understands "the 'structure' of computer software … through, for example, an outline of an algorithm, a flowchart, or a specific set of instructions or rules." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014), *overruled on other grounds* by *Williamson*, 792 F.3d at 1349; *cf. Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1376 (Fed. Cir. 2003) (recitation of software "commands" was not structure sufficient to remove the claims from § 112, ¶ 6, because "the commands are still described solely in functional terms and one must still refer to the specification to determine the structure of those 'means' or 'commands'").

Nowhere do the '064 claims recite any such algorithm or "specific set of instructions or rules." To the contrary, the claims treat the "finger touch program instructions" as a black box that performs the recited "sensing" functions. *See Williamson*, 792 F.3d at1350 ("the word 'module' does not provide any indication of structure because it sets forth the same black box recitation of structure for providing the same specified function as if the term 'means' had been used"). Because the term "finger touch program instructions" does not itself connote particular structure, and

because none of the other claim language recites an algorithm for performing the recited "sensing" functions, this limitation is subject to the requirements of § 112, ¶ 6.

### B. "Finger Touch Program Instructions" Is Indefinite as a Matter of Law Because the Specification Does Not Disclose Any Corresponding Structure For Performing the "Sensing" Functions.

Once the Court concludes that "finger touch program instructions" is a means-plus-function term, the remainder of the analysis is straightforward. The Court must "first identify the claimed function" and then "determine what structure, if any, [is] disclosed in the specification [and] corresponds to the claimed function." *Williamson*, 792 F.3d at 1351–52. "In the case of computer-implemented functions, we require that the specification disclose an algorithm for performing the claimed function." *Advanced Ground Information Sys.*, 830 F.3d at 1349 (quotation omitted). "If the patentee fails to disclose adequate corresponding structure, the claim is indefinite." *Id.*

The claimed functions of the "finger touch program instructions" are recited clearly: "sensing the speed, direction and time duration of a finger touch contact with said display screen." *E.g.*, '064 patent at 6:13-15. The specification, however, states expressly that it does not "describe[] or discuss[]" any such structure. Instead, it relies exclusively on the knowledge of those in the art:

> [The method begins] in step 100 with sensing the touch of a finger upon an electronic display screen 100a having a stationary data display, determining the period of time that the finger is in contact with the screen 100b, and determining if the finger moves or remains stationary 100c. ***The technology and methodology for sensing and determining the appropriate values for information of the type herein disclosed is well-known to persons having skill in this art, and is not further described or discussed in this specification.***

'064 patent at 3:20-28 (emphasis added).

Consistent with this disclaimer, the '064 patent provides no detail on *how* the system senses the speed, direction, or duration of a finger touch. To be sure, it states that these functions can be performed by software. *See id.* at 5:33-35 ("[s]oftware in the computer interactively responds to the contact with the screen to create the desired displacement motion of the display"); *id.* at 2:12-18

("programming a microprocessor-based control system to displace the image on a screen display … in response to a finger touch on the screen and the direction of a finger motion along the surface of the screen at the initial speed of the finger motion"). But the '064 patent fails to disclose *how* this "interactive response" to screen contact (*id*. at 5:33-35) is performed. Indeed, *it expressly admits that it fails to disclose the requisite details*: "[t]he technology and methodology for sensing and determining the appropriate values for information of the type herein disclosed … is not further described or discussed in this specification," because that methodology is "well-known to persons having skill in this art." *Id*. at 3:20-28.

Relying entirely on the undescribed knowledge of persons skilled in the art is insufficient for purposes of § 112, ¶ 6—the specification must actually disclose the corresponding structure. *See Williamson*, 792 F.3d at 1352 ("[T]he fact that one of skill in the art could program a computer to perform the recited functions cannot create structure where none otherwise is disclosed."); *see also Function Media*, 708 F.3d at 1319 ("Having failed to provide any disclosure of the structure for the 'transmitting' function, [patentee] cannot rely on the knowledge of one skilled in the art to fill in the gaps."); *Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 841 F.3d 1334, 1344 (Fed. Cir. 2016) ("Although Cross-Appellants argue that a person of ordinary skill in the art would know of potential logarithmic conversion functions to implement … this does not create structure in the patent where there was none to begin with."). As the Federal Circuit has explained, "[t]he inquiry is whether one of skill in the art would understand the specification itself to disclose a structure, not simply whether that person would be capable of implementing a structure." *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 953 (Fed. Cir. 2007).

Further, this is not a situation where "one of skill in the art would understand the specification itself to disclose a structure" (*id*.) based on the '064 patent's bare reference to knowledge in the art. Although "it is true that the patentee need not disclose details of structures well known in the art," it is equally true that "the specification must nonetheless disclose some

structure." *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc. (d/b/a The Home Depot)*, 412 F.3d 1291, 1302 (Fed. Cir. 2005) (citing *S3 Inc. v. NVIDIA Corp.*, 259 F.3d 1364, 1371 (Fed. Cir. 2001)). For the '064 patent, the claimed "sensing" functions are computer-implemented and the corresponding structure must be the algorithm by which the speed, direction, and duration of a finger touch is sensed. No such algorithm is evident or even implied by Philips' oblique reference to technology and methodology for sensing" that "is well-known to persons having skill in the art." '064 patent at 3:25-27. This bare statement that known techniques or methods can be used does not disclose structure. To conclude otherwise would vitiate the language of the statute requiring "corresponding structure, material, or acts described in the specification." *Biomedino*, 490 F.3d at 953; *see also Alfred E. Mann Found.*, 2016 WL 6803052 at *4 ("[R]equiring disclosure of an algorithm properly defines the scope of the claim and prevents pure functional claiming.").

The '064 patent's sparse, three-column Detailed Description demonstrably contains no algorithmic structure for performing the claimed functions of "sensing the speed, direction and time duration of a finger touch contact with [the] display screen." The claims are therefore indefinite as a matter of law.

## CONCLUSION

For the reasons set forth above, the asserted claims of the '064 patent are invalid as a matter of law. The Court can and should decide this issue on the pleadings to prevent further time and resources from needlessly being expended on claims that Philips cannot assert.

ASHBY & GEDDES

*/s/ Steven J. Balick*

Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys For Intervenor-Plaintiff Microsoft Corporation*

*Of Counsel:*

Chad S. Campbell
Jared W. Crop
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
(602) 351-8000

Judith Jennison
Christina McCullough
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
(206) 359-8000

Dated: January 12, 2017