**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

**KONINKLIJKE PHILIPS N.V.,**
**U.S. PHILIPS CORPORATION,**

**Plaintiffs,**

**v.**

**ACER INC.,**
**ACER AMERICA CORPORATION,**

**Defendants.**

C.A. No. 15-1170-GMS

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO THE ACER DEFENDANTS' RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS**

FITZPATRICK, CELLA,
HARPER & SCINTO
Michael P. Sandonato
John D. Carlin
Jonathan M. Sharret
Daniel A. Apgar
1290 Avenue of the Americas
New York, New York 10104-3800
Tel: (212) 218-2100
Fax: (212) 218-2200
msandonato@fchs.com
jcarlin@fchs.com
jsharret@fchs.com
dapgar@fchs.com

MCCARTER & ENGLISH, LLP
Michael P. Kelly (#2295)
Daniel M. Silver (#4758)
Benjamin A. Smyth (#5528)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
mkelly@mccarter.com
dsilver@mccarter.com
bsmyth@mccarter.com

*Attorneys for Plaintiffs*

Dated: January 18, 2017

# TABLE OF CONTENTS

**Page(s)**

I. NATURE AND STAGE OF THE PROCEEDINGS ..... 1

II. SUMMARY OF THE ARGUMENT ..... 1

III. COUNTERSTATEMENT OF FACTS ..... 3

A. The '203 Patent Prosecution ..... 3

B. The '564 Reissue Patent Prosecution ..... 5

C. The '797 Patent Prosecution ..... 7

IV. ARGUMENT ..... 8

A. Applicable Law ..... 8

1. All Facts Must be Viewed in the Light Most Favorable to Philips ..... 8

2. Reissued Patents Are Presumed Valid and Defendants Must Overcome That Presumption by Clear and Convincing Evidence ..... 8

3. 35 U.S.C. § 251 is Liberally Construed to Permit Correction of Inadvertent Errors in the Original Patent Through Reissue ..... 9

4. Whether a Reissued Patent Claim Has an Enlarged Scope is a Question of Claim Construction ..... 9

5. Reissue Amendments That Merely Clarify or Correct an Issued Claim Do Not Impermissibly Broaden Claim Scope ..... 9

6. Courts Are Themselves Empowered to Correct Certain Errors in Issued Patent Claims ..... 10

B. Defendants Are Not Entitled to Judgment That the '564 Patent is Invalid ..... 10

1. Defendants Have Not Performed the Threshold Claim Construction Analysis Necessary to Prove the Alleged Broadening ..... 10

2. The '564 Reissue Did Not Broaden Claim Scope ..... 12

a. A Person of Ordinary Skill in the Art Would Have Recognized the Clerical Errors in Original Claim 1 and That the Reissued Claims Are Not Broader in Scope ..... 12

b. The Examiner Agreed There Was No Broadening Reissue ..... 14

3. Material Issues of Fact and Evidence Outside the Pleadings Preclude Judgment on the Pleadings ......................................................16

C. Defendants Are Not Entitled to Judgment on the ’797 Patent ............................17

1. Defendants Have Failed to Show the Informality in ’797 Claim 1 is Material ........................................................................18

2. The Informality in ’797 Claim 1 is Evident on the Face of the Patent and Correctable By the Court, If Necessary ............................18

V. CONCLUSION.........................................................................................20

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*AIA Eng'g Ltd. v. Magotteaux Int'l*,
657 F.3d 1264 (Fed. Cir. 2011) .......... 1, 9, 11

*AstraZeneca Pharms. LP v. Apotex Corp.*,
669 F.3d 1370 (Fed. Cir. 2012) .......... 15

*Bloom Eng'g Co. v. N. Am. Mfg. Co.*,
129 F.3d 1247 (Fed. Cir. 1997) .......... 1, 11

*Boyett v. St. Martin's Press, Inc.*,
884 F.Supp.479 (M.D. Fla. 1995) .......... 14, 15

*CBT Flint Partners, LLC v. Return Path, Inc.*,
654 F.3d 1353 (Fed. Cir. 2011) .......... 2, 10, 19

*Courtesy Products LLC v. Hamilton Beach Brands, Inc.*,
No. 13-2012-SLR-SRF, 2015 WL 6159113 (D. Del. Oct. 20, 2015) .......... 15

*Forest Labs., Inc. v. Ivax Pharms., Inc.*,
438 F.Supp.2d 479 (D. Del. 2006) .......... *passim*

*Forest Labs., Inc. v. Ivax Pharms., Inc.*,
501 F.3d 1263 (Fed. Cir. 2007) .......... *passim*

*Group One, Ltd. v. Hallmark Cards, Inc.*,
407 F.3d 1297 (Fed. Cir. 2005) .......... 10, 19

*In re Bendamustine Consol. Cases*,
No. 13-2046, D.I. 325, 2015 WL 1951399 (D. Del. Apr. 29, 2015) .......... 15

*In re Rosuvastatin Calcium Patent Lit.*,
719 F.Supp.2d 388 (D. Del. 2010) .......... 8, 9, 12

*In re Weiler*,
790 F.2d 1576 (Fed. Cir. 1986) .......... 9

*In re Wilder*,
736 F.2d 1516 (Fed. Cir. 1984) .......... 9

*Jablonski v. Pan Am. World Airways, Inc.*,
863 F.2d 289 (3d Cir. 1988) .......... 8, 15, 16

*Kaufman Co. v. Lantech, Inc.*,
807 F.2d 970 (Fed. Cir. 1986) .......... 8

*Maio v. Aetna, Inc.*,
221 F.3d 472 (3d Cir. 2000) ........ 8, 15

*Medtronic, Inc. v. Guidant Corp.*,
465 F.3d 1360 (Fed. Cir. 2006) ........ 9, 11

*Novo Indus., L.P. v. Micro Molds Corp.*,
350 F.3d 1348 (Fed. Cir. 2003) ........ 10, 19

*Pannu v. Storz Instruments, Inc.*,
258 F.3d 1366 (Fed. Cir. 2001) ........ 9

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ........ 9

*Predicate Logic, Inc. v. Distributive Software, Inc.*,
544 F.3d 1298 (Fed. Cir. 2008) ........ 1, 10, 11

*Rosenau v. Unifund Corp.*,
539 F.3d 218 (3d Cir. 2008) ........ 8, 15, 16

*Sentius Int'l, LLC v. Microsoft Corp.*,
2014 WL 4062741 (N.D. Cal. Aug. 15, 2014) ........ 10

*Slimfold Mfg. Co. v. Kinkead Indus., Inc.*,
810 F.2d 1113 (1987) ........ 1, 10, 11, 19

*Turbe v. Gov't of the Virgin Islands*,
938 F.2d 427 (3d Cir. 1991) ........ 8

*Ultimax Cement Mfg. v. CTS Cement Mfg.*,
587 F.3d 1339 (Fed. Cir. 2009) ........ 19

**Statutory Authorities**

35 U.S.C. § 112 ........ 18

35 U.S.C. § 251 ........ 9, 14

35 U.S.C. § 252 ........ 8

35 U.S.C. § 282 ........ 8

**Rules and Regulations**

37 CFR 1.312 ........ 20

MPEP 1412.03 ........ 14

## I.      NATURE AND STAGE OF THE PROCEEDINGS

Philips filed its Second Amended Complaint ("SAC") on November 23, 2016.  (D.I. 82).

Acer answered the SAC and filed this motion for judgment on the pleadings. (D.I. 93-95).  The

claim construction process has just begun.  A *Markman* Hearing is set for May 3, 2017.

## II.     SUMMARY OF THE ARGUMENT

This motion should be denied as meritless.  U.S. Patent No. RE43,564 ("the '564 patent")

is not a broadening reissue and U.S. Patent No. 5,910,797 ("the '797 patent") does not contain

any material errors.  At best, Defendants' motion is premature as it raises claim construction

issues for both patents, which are better addressed during upcoming *Markman* proceedings.

1.      Defendants fail to show that the reissued claims of the '564 patent were

improperly broadened.  Defendants bear the burden of proving by clear and convincing evidence

that the reissued claims are broader.  Doing so requires proposing constructions for the relevant

claim terms from the original and reissued patents.  *AIA Eng'g Ltd. v. Magotteaux Int'l*, 657 F.3d

1264, 1271 (Fed. Cir. 2011) ("Whether a claim amendment during reissue examination enlarged

the scope of the claim is a matter of claim construction.").  Defendants offer no such construction

and instead rely on little more than conclusory statements and the presence of a different word in

the reissued claim.  *See Predicate Logic, Inc. v. Distributive Software, Inc.*, 544 F.3d 1298, 1305

(Fed. Cir. 2008) ("'Identical' does not mean verbatim, but means at most without substantive

change.... An amendment that clarifies the text of the claim or makes it more definite without

affecting its scope is generally viewed as identical.") (quoting *Bloom Eng'g Co. v. N. Am. Mfg.

Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997); *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 810 F.2d

1113, 1115 (Fed. Cir. 1987) ("[I]t is the scope of the claim that must be identical, not that the

identical words must be used.")).

From even cursory review of the file histories of both the original patent, U.S. Patent No.

6,466,203 ("the '203 patent"), and the '564 reissue patent it is clear that the '564 reissue patent corrected straightforward transcription errors in the original patent claims, which would have been apparent to a person of ordinary skill in the art ("POSA"). Correcting such clerical errors does not, in and of itself, result in broadened claim scope. *See Forest Labs., Inc. v. Ivax Pharms., Inc.*, 501 F.3d 1263, 1270 (Fed. Cir. 2007) ("A change in a reissue application that is only clerical does not necessarily broaden the scope of the claims and so does not render the patent invalid.") That the amended claims were allowed by the Examiner in a reissue filed more than two years after the issue date of the original patent indicates there was no improper broadening. *See Forest Labs., Inc. v. Ivax Pharms., Inc.*, 438 F.Supp.2d 479, 499 (D. Del. 2006) ("[T]hat the reissued patent did not impermissibly broaden the original claims is further supported by the fact that the examiner allowed the reissued patent more than two years after the issue date of the original patent."). Further, at a minimum, there are material issues of fact concerning whether the challenged error in the original claim would have been apparent to a POSA which would preclude judgment on the pleadings.

2. Defendants also fail to show that the omission of the word "means" after the term "gravitation-controlled sensor" in '797 patent claim 1 has any material impact on claim scope. The challenged informality in '797 patent claim 1 is facially obvious, immaterial, and correctable by the court. *See CBT Flint Partners, LLC v. Return Path, Inc.*, 654 F.3d 1353, 1358 (Fed. Cir. 2011) ("It is well-settled law that, in a patent infringement suit, a district court may correct an obvious error in a patent claim."). It is clear "said sensing means" of claim 1 and "said gravitation-controlled sensor means" of dependent claim 3 refer to the same element and find antecedent basis in the "gravitation-controlled sensor" recited in claim 1. As such, it is evident that the "gravitation-controlled sensor" of claim 1 should be read as "gravitation-controlled

sensor means" and that "sensing means" should be read as "sensor means." Therefore, to the extent correction is necessary, the error is one that is correctable by the court. *See id.*

## III. COUNTERSTATEMENT OF FACTS

### A. The '203 Patent Prosecution

The application which led to the '203 patent, and ultimately the '564 reissue patent, was directed toward improving a user's ability to interact with and select features such as hyperlinks on, for example, a web page displayed on a small touch screen. *See* Ex. 2 at 3:26-43.[1] For example, the specification teaches:

> When the user has retrieved a web page via modem 114 the page gets displayed on LCD 102 in its entirety. Due to the scale size of LCD 102 individual hyperlinks or text fragments may not be well discernible, although the lay-out of the page conveys sufficient information to the user to determine what portion of the page may be relevant. Assume that the portion is the upper right hand corner of the page. When the user now touches screen 104 in the associated location or area, this action gets translated by processor 108 and under control of program memory 110 into a zooming-in on that part of the page image that is **centered around the touch location**.

*Id.* at 4:4-16 (emphasis added).

The '203 patent issued from U.S. Patent Application No. 09/619,426 ("the '426 application"). Ex. 1 at 4560-77. In a January 30, 2002 amendment, Philips canceled the original claims and added new claims 9-14.[2] Ex. 1 at 4618-23. Claim 9 is reproduced below:

> 9. A handheld communication device comprising:
> - an input for receiving data via a wireless connection;
> - a display;
> - a data processing system connected to the input and to the display for processing the received data and for rendering an image corresponding to the data received;
>
> wherein:
> - the device has a touch screen for enabling a user to interact

[1] Citations to "Ex. __" refer to the exhibits to Acer's Answer to Philips' SAC (D.I. 92).

[2] Claims 9-14 of the '436 application ultimately issued as claims 1-6 of the '203 patent.

with the device;
- the system is operative to enable the user to select through a touch location on the touch screen a portion of the image, when displayed at a first scale, for rendering the selected portion on the display at a second scale larger than the first scale;
- the selected portion when rendered at the second scale is a zoomed-in version of part of the image at the first scale substantially centered around the touch location.

Ex. 1 at 4618-19 (highlighting added).[3] As shown in the highlighted element above, the '426 application claim 9 originally recited "substantially centered around the touch location" (emphasis added), consistent with the specification disclosure.

The Examiner rejected claim 9 on February 11, 2002. Ex. 1 at 4625-34. Philips then proposed certain amendments to claim 9 in a May 13, 2002 amendment (Ex. 1 at 4642-53). A marked up version of claim was included in that amendment to highlight the intended changes. Ex. 1 at 4649-50. That markup is reproduced below:

9. (AMENDED) A handheld communication device comprising:
- a wireless modem [an input] for receiving data [via a wireless connection];
- a display that has a substantially small size suitable for the handheld communication device;
- a data processing system connected to the modem [input] and to the display for processing the received data and for rendering an image corresponding to the data received;

[wherein:]
- [the device has] a touch screen for enabling a user to interact with the device;

wherein:
- the system is operative to enable the user to select through a touch location on the touch screen a portion of the image, when displayed at a first scale, for rendering the selected portion on the display at a second scale larger than the first scale;

[3] Note that the highlighted portion of originally proposed claim 9 of the '426 application corresponds exactly to the disputed language of reissued claim 1 of the '564 patent.

- the selected portion when rendered at the first scale is a zoomed-in version of part of the image at the first scale substantially centered around the touch screen.

Ex. 1 at 4649.

As shown above, there is no bracketing or underlining in the last element of the wherein clause. However, due to an inadvertent clerical error, the text of the wherein clause was incorrectly copied from claim 9 as originally added in the January 30, 2002 amendment. Specifically, the terms "second scale" and "touch location" in the last element of the wherein clause were inadvertently transcribed as "first scale" and "touch screen," respectively. Claim 9 of the '426 application then issued as claim 1 of the '203 patent. Ex. 2.

**B. The '564 Reissue Patent Prosecution**

Philips filed U.S. Reissue Patent Application 12/980,454 ("the '454 application") to correct the aforementioned clerical errors in the '203 patent and to add dependent claim 7. Ex. 3 at 2702-81. Philips filed a preliminary amendment on December 22, 2010 to, *inter alia*, change the reference to "touch screen" in the last element of the wherein clause of issued '203 patent claims 1 and 6 back to "touch location," as had been originally intended. Ex. 3 at 2705. In remarks accompanying that preliminary amendment, Philips stated:

> The claims have been amended to more clearly define the subject invention as disclosed in the written description. In particular, claims 1 and 6 have been amended to correct a same typographical error in each claim. These typographical errors arose during a transcribing of the claims in an Amendment filed on May 13, 2002… Applicant submits that the changes to claims 1 and 6 find support in the specification at col. 4, lines 4-15, which, in part, states "...a zooming-in on that part of the page image that is centered around the touch location."

Ex. 3 at 2708. The inventor's reissue application declaration also referenced the clerical transcription error: "Due to a transcription error on Applicant's part, the last clause in claims 1 and 6 states '...substantially centered around the touch screen.' instead of '...substantially

centered around the touch location.'" Ex. 3 at 2716. A second inventor's reissue declaration again clarified that the reference to "touch screen" in issued claim 1 of the '203 patent was the result of a transcription error:

> "Due to a transcription error on Applicant's part, the last clause in claims 1 and 6 states 'the selected portion when rendered at the **<u>first</u>** scale is a zoomed-in version of part of the image at the first scale substantially centered around the touch **<u>screen</u>**' instead of the selected portion when rendered at the **<u>second</u>** scale is a zoomed-in version of part of the image at the first scale substantially centered around the touch **<u>location</u>**'"

Ex. 3 at 2833 (emphasis in original).

On October 25, 2011, the Examiner sent an office action (Ex. 3 at 2841-2854) requesting that the amendment from "touch screen" to "touch location" be properly indicated (Ex. 3 at 2843). In two subsequent responses, Philips amended the claims as the Examiner suggested. Ex. 3 at 2855-60 and 2902-08. The final mark up of Claim 1 is shown below:

> 1. (Twice Amended) A handheld communication device comprising:
>
> a wireless modem for receiving data;
>
> a display that has a substantially small size suitable for [in] the handheld communication device;
>
> a data processing system connected to the modem and to the display for processing the received data and for rendering an image corresponding to the data received;
>
> a touch screen for enabling a user to interact with the device;
>
> wherein:
>
> the system is operative to enable the user to select through a touch location on the touch screen a portion of the image, when displayed at a first scale, for rendering the selected portion on the display at a second scale larger than the first scale thereby facilitating a selection of a feature; and
>
> the selected portion when rendered at the [first] <u>second</u> scale is a zoomed-in version of part of the image at the first scale substantially centered around the touch [screen] <u>location</u>.

Ex. 3 at 2903. The Examiner then sent a notice of allowability (Ex. 3 at 2918-21) and the reissue application issued as the '564 patent. At no point during prosecution, did the Examiner question

whether any of the amendments would effect a substantive change in claim scope or result in an improper broadening reissue.

## C. The '797 Patent Prosecution

On February 13, 1996, Philips filed U.S. Patent Application No. 08/601,140 ("the '140 application") (Ex. 5 at 4063-4101) which ultimately issued as U.S. Patent No. 5,910,797. Ex. 6. After receiving a notice of allowability on January 12, 1999 (Ex. 5 at 4234-35), Philips filed an amendment after allowance on April 12, 1999 to propose the following changes to claim 1 of the '140 application in order to address certain informalities:

Please amend claims 1 and 2 as follows:

Claim 1, line 5, after "sensor" insert --means--;
line 11, change "sensing" to --sensor--.

Ex. 5 at 4242. As Philips explained in remarks to the amendment:

> Claim 1 has been amended to improve form, notably to provide complete congruity between the "sensor" elements recited on lines 6 and 11… The above revisions are formal in nature, few in number, and do not affect the scope of any claim.

Ex. 5 at 4242-43 (emphasis added). The Examiner accepted this amendment and advised Philips that it "has been: entered as directed to matters of form not affecting the scope of the invention (Order 3311)." Ex. 5 at 4245-46 (emphasis added). Thus, the Examiner expressly found that the amendments were proper, formal in nature, and did not affect claim scope. However, when the '797 patent issued, the Patent Office inadvertently neglected to reflect these changes in the issued patent.

## IV. ARGUMENT

### A. Applicable Law

#### 1. All Facts Must be Viewed in the Light Most Favorable to Philips

On a motion for judgment on the pleadings, all factual allegations in a complaint must be accepted as true and viewed in the light most favorable to the nonmoving party. *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988); *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000). Further, a Rule 12(c) motion can be granted only if no relief could be afforded under any set of facts that could be proved. *Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). Thus, a Rule 12(c) motion will not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau*, 539 F.3d at 221 (quoting *Jablonski*, 863 F.2d 290-91).

#### 2. Reissued Patents Are Presumed Valid and Defendants Must Overcome That Presumption by Clear and Convincing Evidence

"[T]he presumption of validity applies with equal force to reissued patents" and this presumption extends to whether a reissue patent has been improperly broadened. *Forest Labs.*, 438 F.Supp.2d at 499 (citing *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 973-74 (Fed. Cir. 1986)); *see also* 35 U.S.C. §§ 252, 282. "Thus, the party challenging the appropriateness of the reissue must prove the invalidity of the reissue by clear and convincing evidence." *In re Rosuvastatin Calcium Patent Lit.*, 719 F.Supp.2d 388, 408 (D. Del. 2010) (citing *Kaufman*, 807 F.2d at 973–74). That an amendment during reissue did not improperly broaden claim scope is bolstered where an applicant amended an original patent claim during reissue and the Examiner allowed the amendment more than two years after the original patent issued. *See Forest Labs.*, 438 F.Supp.2d at 499 ("[T]hat the reissued patent did not impermissibly broaden the original

claims is further supported by the fact that the examiner allowed the reissued patent more than two years after the issue date of the original patent.”).

### 3. 35 U.S.C. § 251 is Liberally Construed to Permit Correction of Inadvertent Errors in the Original Patent Through Reissue

“[T]he purpose of the reissue statute is to avoid forfeiture of substantive rights due to error made without intent to deceive.” *In re Rosuvastatin*, 719 F.Supp.2d at 408 (quoting *Forest Labs.*, 438 F.Supp.2d at 497). “The statute is remedial in nature and based upon fundamental principles of equity and fairness, and thus, should be liberally construed so as to permit reissue.” *In re Rosuvastatin*, 719 F.Supp.2d at 408 (citing *In re Wilder*, 736 F.2d 1516, 1519 (Fed. Cir. 1984)). Generally, a patentee may reissue an original patent to correct errors of “inadvertence, accident, or mistake.” *Id.* (quoting *In re Weiler*, 790 F.2d 1576, 1582 (Fed. Cir. 1986)).

### 4. Whether a Reissued Patent Claim Has an Enlarged Scope is a Question of Claim Construction

“Whether a claim amendment during reissue examination enlarged the scope of the claim is a matter of claim construction.” *AIA Eng’g*, 657 F.3d at 1271 (citing *Medtronic, Inc. v. Guidant Corp.*, 465 F.3d 1360, 1374 (Fed. Cir. 2006)). Further, “[c]omparison of the scope of the reissue claims with the claims of the original patent is a matter of claim construction, and it is performed from the perspective of one having ordinary skill in the art.” *Forest Labs.,* 501 F.3d at 1270 (citing *Pannu v. Storz Instruments, Inc.*, 258 F.3d 1366, 1370 (Fed. Cir. 2001); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc)).

### 5. Reissue Amendments That Merely Clarify or Correct an Issued Claim Do Not Impermissibly Broaden Claim Scope

A reissue amendment that merely clarifies or corrects an issued claim does not impermissibly broaden claim scope. *See Forest Labs.*, 501 F.3d at 1270 (“The question … is whether the change effected in the reissue application [] broadened the scope of [the claim] or

merely clarified or corrected the original claim."); *Sentius Int'l, LLC v. Microsoft Corp.*, 2014 WL 4062741 at **8-9 (N.D. Cal. Aug. 15, 2014) (discussing Federal Circuit opinion in *Forest Labs.* and finding "Congress established a liberal mechanism for fixing otherwise invalid patents and the Federal Circuit has made it clear that some substantive mending beyond the typographical beyond two years is permitted."); *Slimfold Mfg.*, 810 F.2d at 1117 ("[C]orrecting a drafting error that the prior examiner and Ford's patent lawyer could and probably should have spotted when the original patent was examined" did not improperly broaden claim scope).

#### 6. Courts Are Themselves Empowered to Correct Certain Errors in Issued Patent Claims

"It is well-settled law that, in a patent infringement suit, a district court may correct an obvious error in a patent claim." *CBT Flint Partners*, 654 F.3d at 1358. District courts have the power to correct errors in an issued patent or claim where the error is evident on the face of the patent, the correction is consistent with the prosecution history, and not subject to reasonable debate based on consideration of the claim language and the specification. *Group One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1303 (Fed. Cir. 2005) (citing *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003)).

### B. <u>Defendants Are Not Entitled to Judgment That the '564 Patent is Invalid</u>

#### 1. Defendants Have Not Performed the Threshold Claim Construction Analysis Necessary to Prove the Alleged Broadening

Defendants cannot meet their burden because they have not only failed to conduct the requisite claim construction analysis, they have failed to even propose constructions. The mere fact that there has been a changed word does not, in and of itself, prove there has been a broadening of claim scope. *See Predicate Logic*, 544 F.3d at 1305 ("'Identical' does not mean verbatim, but means at most without substantive change.... An amendment that clarifies the text of the claim or makes it more definite without affecting its scope is generally viewed as

identical....") (quoting *Bloom Eng'g*, 129 F.3d at 1250); *Slimfold Mfg.*, 810 F.2d at 1115 ("[I]t is the scope of the claim that must be identical, not that the identical words must be used.")). Rather, "[w]hether a claim amendment during reissue examination enlarged the scope of the claim is a matter of claim construction." *AIA Eng'g*, 657 F.3d at 1271 (citing *Medtronic, Inc.*, 465 F.3d at 1374). That is, Defendants must construe and compare the original and reissued claim language from the perspective of a POSA in light of all the relevant evidence.

Here, Defendants have proffered no construction for "substantially centered around a touch screen" or "substantially centered around a touch location." Instead, Defendants jump to the unsupported conclusion that the reissued claim is broader, while glossing over the patent specification, file histories, and how a POSA would understand the original and reissued claim terms in view of that intrinsic evidence. For example, on page 10 of their brief, Defendants assert that the "implementation" of Figure 2B of the '564 patent "would fall within the scope of claim 1 as reissued, [but] not fall within the scope of original claim 1." However, Defendants do not explain what a POSA would understand "substantially centered around the touch screen" to mean in the context of the claim and the intrinsic evidence.[4] In fact, as explained below, a POSA would have understood the term "substantially centered around the touch screen" in '203 claim 1 to mean "substantially centered around the touch location." *See infra* at IV.B.2.a.

Defendants bear the burden of proof on invalidity and on this motion and they cannot meet this burden if they have not even bothered with the prerequisite step of construing the claim in original and reissued form. For this reason alone, Philips respectfully requests that the Court deny the motion or, at a minimum, defer decision until after *Markman* proceedings.

---

[4] For example, Defendants' failure to construe "substantially centered around the touch screen" precludes any argument that the "implementation" of Fig. 2B is not within the scope of original '203 patent claim 1.

### 2. The ’564 Reissue Did Not Broaden Claim Scope

#### a. A Person of Ordinary Skill in the Art Would Have Recognized the Clerical Errors in Original Claim 1 and That the Reissued Claims Are Not Broader in Scope

Upon proper analysis of the original and reissued claim language in view of the intrinsic evidence, it is apparent that the challenged amendment did not broaden claim scope, but merely corrected an obvious clerical error. Corrections of this nature do not render a patent invalid. *See Forest Labs.,* 501 F.3d at 1270 (“[A] change in a reissue application that is only clerical does not necessarily broaden the scope of the claims and so does not render the patent invalid.”). In fact, the purpose of the reissue procedure is to provide a mechanism for correcting such errors in issued patents. *See In re Rosuvastatin*, 719 F.Supp.2d at 408; *Forest Labs.,* 501 F.3d at 1270.

As outlined above in Section III.B, the ’564 reissue amended the wherein clause of ’203 patent claim 1 to change the terms “first scale” and “touch screen” to “second scale” and “touch location,” respectively. This was done to correct obvious, inadvertent transcription errors which occurred during the prosecution of the original ’203 patent. From a review of the intrinsic evidence, one of ordinary skill in the art would have readily appreciated that ’203 patent claim 1 contained obvious clerical errors and would have understood that “substantially centered around the touch screen” meant “substantially centered around the touch <u>location.</u>” *See* Greenspun Decl. at ¶¶9-21 (concurrently filed herewith).

Initially, a POSA would have recognized that the reference to “when rendered at the <u>first scale</u>” must mean “second scale” or the claim would be internally inconsistent. *See* Greenspun Decl. at ¶11-14. Defendants’ brief does not contest this. Once corrected for this first error, the challenged element of ’203 patent claim 1 reads as follows: “the selected portion when rendered at the second scale is a zoomed-in version of part of the image at the first scale substantially centered around the touch screen.”

A POSA would also have readily appreciated that the reference to "touch screen" was a clerical error and should be understood as "touch location" for several reasons.  First, the claim language "substantially centered **around** the touch screen" doesn't make sense on its face.  Something that is literally centered "around" a screen would be located outside the boundary of the screen.  That makes no sense in the context of the surrounding claim language or the disclosure in the specification, which is concerned with selecting different parts of an image rendered on the display.  Therefore, the claim language itself would suggest to a POSA that the reference to "touch screen" was an error.  *See* Greenspun Decl. at ¶15-17.

Second, the specification provides no support for "substantially centered around the touch screen."  Rather, the specification teaches zooming-in centered around a touch location:

> When the user now touches screen 104 in the associated location or area, this action gets translated by processor 108 and under control of program memory 110 into a zooming-in on that part of the page image that is **centered around the touch location**. This can be implemented, e.g., by a pre-determined segmentation of the display area into, say, four areas that each can be selected for the zooming-in. Alternatively, that part of the original image gets magnified that has **a center coinciding with the touch location**.

Ex. 2 at 4:11-19 (emphasis added).  Accordingly, the patent specification would also suggest to a POSA that "substantially centered around the touch screen" should be understood to mean "substantially centered around the touch location."  *See* Greenspun Decl. at ¶18-19.

Third, as explained above, it is evident from the original '203 prosecution history (and was such at the time the '203 patent issued) that the reference to "substantially centered around the touch screen" was the result of a transcription error in the underlying '426 application.  Ex. 1 at 4649; *See supra* at III.A.  A POSA would have understood from the '203 patent prosecution history that a transcription error had occurred.  This would have provided explanation for the presence of the term "touch screen" and would have led a POSA to conclude that, even before the reissue application, the claim phrase "substantially centered around the touch screen" should

be understood to mean "substantially centered around the touch location." It necessarily follows that there was no broadening of claim scope in the '564 reissue patent. *See Forest Labs.,* 501 F.3d at 1270-71.

Defendants incorrectly suggest on page 4 of their brief that the May 13, 2002 amendment changed "touch location" to "touch screen" in order to distinguish over the art. But, there was no intent to change "touch location" to "touch screen," as is evident from the fact that this change was neither called out in bracketing or underlining in the marked up version of the claim nor addressed in the remarks that accompanied the May 13, 2002 amendment. In contrast, intended changes were indicated in the amendment with brackets, underlining, and accompanying remarks. *See supra* at III.A. Defendants simply ignore this. Moreover, neither Philips nor the Examiner identified, much less relied on, any alleged difference between "screen" and "location" to distinguish the art. Rather, Philips argued, *inter alia*, that it would not have been obvious to combine the references relied on by the Examiner in the February 11, 2002 office action.

**b. The Examiner Agreed There Was No Broadening Reissue**

Issuance of the '564 patent is itself evidence of no improper broadening of claim scope. Before allowing the '564 reissue patent, the Examiner had an obligation to determine whether the amendments would enlarge the scope of the originally issued claims. *See* MPEP 1412.03.IV; 35 U.S.C. § 251. The fact that the amended claims were allowed by the Examiner in a reissue filed more than two years after the original '203 patent issued indicates there was no improper broadening. *See Forest Labs.*, 438 F.Supp.2d at 499 ("[T]hat the reissued patent did not impermissibly broaden the original claims is further supported by the fact that the examiner allowed the reissued patent more than two years after the issue date of the original patent.") (citing *Boyett v. St. Martin's Press, Inc.*, 884 F.Supp.479, 485 (M.D. Fla. 1995) ("[T]he Patent

Examiner's decision to allow reissue [of the] claim . . . despite the passage of more than two years is an additional factor supporting a finding that the [d]efendants have not met their burden by clear and convincing evidence.")).

Further, during prosecution of the '564 patent, Philips repeatedly stated that it was correcting "typographical errors [that] arose during a transcribing of the claims in an Amendment filed on May 13, 2002." Ex. 3 at 2708; *see also* Ex. 3 at 2828. Similarly, the inventor's reissue application declaration repeatedly stated that the error being corrected was due to a "transcription error." Ex. 3 at 2716; Ex. 3 at 2833. The Examiner took no issue with this explanation, because it is fully consistent with the intrinsic record.

The factual allegations in the file histories should be accepted as true and viewed in the light most favorable to Philips. *See Rosenau*, 539 F.3d at 221 (on a Rule 12(c) motion, the court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.") (quoting *Jablonski*, at 863 F.2d at 290-91); *Maio*, 221 F.3d at 482; *see also In re Bendamustine Consol. Cases*, No. 13-2046, D.I. 325, 2015 WL 1951399 at *1 (D. Del. Apr. 29, 2015) (finding that in a patent case the file history is considered integral to the complaint) (citing *AstraZeneca Pharms. LP v. Apotex Corp.*, 669 F.3d 1370, 1378 n.5 (Fed. Cir. 2012)); *see e.g.*, *Courtesy Products LLC v. Hamilton Beach Brands, Inc.*, No. 13-2012-SLR-SRF, 2015 WL 6159113 at *5-6 (D. Del. Oct. 20, 2015) (viewing factual allegation in the file history in the light most favorable to the nonmoving party).

The Federal Circuit has held that correcting typographical errors in a claim through reissue does not necessarily broaden the claim's scope and therefore does not necessarily render the reissue patent invalid. *Forest Labs.,* 501 F.3d at 1270 In *Forest Labs.* the original patent claimed a method of converting a(+)-diol intermediate to (+)-citalopram. *Id.* at 1267. In the

reissue application, a(+)-diol intermediate was changed to a(-)-diol intermediate. *Id.* Despite the fact that the literal language of the original claim did not cover a method of converting a(-)-diol intermediate while the reissued claim did, the Court of Appeals for the Federal Circuit found that the reissue amendment did not broaden the scope of the claim. After reviewing the support in the specification and crediting expert testimony on the issue, the Court concluded that the change made "during reissue does not represent a change of claim scope, but merely a correction of the claim to be consistent with the disclosure of the specification." *Id.* at 1271.

The same is true here. There is no disclosure in the specification of zooming-in centered around the touch <u>screen</u>. But, there is express support in the specification for zooming-in on a portion centered around the touch <u>location</u>. *See supra* at 12-14; Ex. 2 at 4:11-19. Thus, as in *Forest Labs.*, "[t]he patent specification supports, even compels, [the] conclusion" that the amendment made during reissue to correct these changes "does not represent a change of claim scope, but merely a correction of the claim to be consistent with the disclosure of the specification." *Id.* at 1270-71.

### 3.   Material Issues of Fact and Evidence Outside the Pleadings Preclude Judgment on the Pleadings

A Rule 12(c) motion cannot be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau*, 539 F.3d at 221 (quoting *Jablonski, at* 863 F.2d 290–91). Here, underlying issues of fact preclude grant of this motion. At a minimum, Philips has shown there is a material issue of fact as to whether a POSA would have recognized that the reference to "touch screen" in the wherein clause of '203 patent claim 1 was the result of an apparent error and should be understood to refer to "touch location." *See supra* at IV.B.1; *see also* Greenspun Decl. at ¶¶15-19.

In determining whether a reissue application broadened claim scope or merely corrected an error in the original claim, the consideration is whether the error corrected is one that would have been apparent to one of ordinary skill in the art. *See e.g.*, *Forest Labs.*, 501 F.3d at 1271 ("[W]e see no error in the district court's finding that a person of ordinary skill in the art reviewing the patent would find the error in [the claim] apparent."). Therefore, this factual dispute precludes grant of the present motion on the '564 patent.

Moreover, Philips respectfully requests a full opportunity to submit evidence outside the pleadings, patents, and file histories, including expert testimony, on whether the error in the originally issued claim was apparent and whether a POSA would have understood the term "substantially centered around the touch screen" as used in original '203 patent claim 1 to mean something different and narrower than the reissued term "substantially centered around the touch location." *See e.g.*, *Forest Labs.*, 438 F.Supp.2d at 497 ("In reaching this conclusion, the Court credits the testimony of Dr. Klibanov that it would have been readily apparent to one of ordinary skill in the art that claim 11 of the '590 patent covered a stereoselective method for making substantially pure (+)-citalopram from a substantially pure form of the (-)-enantiomer of the Diol Intermediate and that claim 11 contained a typographical error in the optical rotation sign of the Diol Intermediate, the correction of which did not broaden the claim.").

Philips has, in fact, proffered such evidence. *See* Greenspun Decl. at ¶¶9-21. Therefore, Philips respectfully submits that Defendants' Rule 12(c) motion on the '564 patent be denied as inappropriate because full consideration of the relevant evidence requires the court to consider matters outside the pleadings. *See* Fed. R. Civ. P. 12(d).

### C. <u>Defendants Are Not Entitled to Judgment on the '797 Patent</u>

Defendants assert that claim 1 of the '797 patent is unenforceable because it recites a "gravitation-controlled sensor," as opposed to a "gravitation-controlled sensor means." Brief at

11-13. This minor informality is not a "material" error and is correctable by the court. Accordingly, Philips respectfully submits that Defendants' motion on the '797 patent also be denied because it is without merit.

### 1. Defendants Have Failed to Show the Informality in '797 Claim 1 is Material

Defendants argue the informality in '797 patent claim 1 is "material" because the addition of the term "means" to "gravitation-controlled sensor" would presumptively invoke 35 U.S.C. § 112, ¶6, and lead to a material change in claim scope. Defendants' '797 motion is, therefore, also predicated on claim construction and, at a minimum, premature. Further, Defendants have again failed in their brief to perform the requisite claim construction analysis to meet their burden on the '797 patent. They do not articulate what the construction of the term "gravitation-controlled sensor" with and without the added word "means" would be. They simply assert, without proof or analysis, that the scope would be materially different. In fact, a POSA would have recognized the informalities in claim 1 of the '797 patent, which were evident on the face of the patent, and would further have understood the term "gravitation-controlled sensor" to be synonymous with "gravitation-controlled sensor means." *See* Greenspun Decl. at ¶¶22-28. Therefore, the challenged informality in '797 patent claim 1 is not material.

Because Defendants have failed to show the informality in '797 claim 1 has given rise to a material change in claim scope, Defendants' motion on the '797 patent must fail.

### 2. The Informality in '797 Claim 1 is Evident on the Face of the Patent and Correctable By the Court, If Necessary

For the reasons explained above, the challenged informality is not a material error and therefore cannot render the '797 claims unenforceable. *See supra* at IV.C.1. Moreover, the challenged informality is correctable by the court, even now, because the error is evident on the face of the patent and there is no reasonable debate based on the claim language and the

specification that the corrections are improper. *See CBT Flint Partners,* 654 F.3d at 1358 ("It is well-settled law that, in a patent infringement suit, a district court may correct an obvious error in a patent claim."); *see also Group One,* 407 F.3d at 1303; *Novo Indus.,* 350 F.3d at 1357; *Ultimax Cement Mfg. v. CTS Cement Mfg.*, 587 F.3d 1339, 1353 (Fed. Cir. 2009) ("[I]f the correction is not subject to reasonable debate to one of ordinary skill in the art, namely, through claim language and the specification, and the prosecution history does not suggest a different interpretation, then a court can correct an obvious typographical error.").

Contrary to Defendants' assertion, there is compelling evidence, in both the language of the claims themselves <u>and</u> in the written description, which would make the challenged informality, and its obvious correction, apparent to a POSA.

Initially, it is evident on the face of the '797 patent claims as issued that the separately recited "gravitation-controlled sensor" and "sensing means" of claim 1 and the "gravitation-controlled sensor means" of claim 3 are all meant to refer to the same element. First, the term "<u>said</u> sensing means" has no exact antecedent basis in claim 1. Second, dependent claim 3 recites "An apparatus as claimed in claims 1, wherein <u>said</u> gravitation-controlled sensor <u>means</u> control said motion in the manner of a joystick." (emphasis added). Taken together, a POSA would understand that the words "<u>said</u> gravitation-controlled sensor means" in claim 3 find antecedent basis in the "gravitation-controlled sensor" element of claim 1 and would readily appreciate that the proper antecedent basis for "<u>said</u> sensing means" is also the "gravitation-controlled sensor" element recited earlier in claim 1.[5] Accordingly, a POSA reading '797 patent claim 1 would understand that there are obvious informalities in claim 1, namely, the word "means" should come after "gravitation-controlled sensor" and "sensing means" should be

[5] *See e.g.*, *Slimfold Mfg.*, 810 F.2d at 1117 (finding that adding missing antecedent basis during ressiue was not a substantive change).

"sensor means." A POSA would readily appreciate these minor errors account for the antecedent basis informalities in claims 1 and 3 of the '797 patent. *See* Greenspun Decl. at ¶¶24-27.

Further, the specification also provides evidence that "gravitation-controlled sensor" should be read as "gravitation-controlled sensor means." Specifically, the only reference in the specification to the "gravitation-controlled sensor" is in the "Background of the Invention," which refers expressly to a "gravitation-controlled sensor **means**," (Ex. 6 at 1:11) (emphasis added). In short, it would be apparent to one of ordinary skill in the art on the face of the patent that the "gravitation-controlled sensor" of claim 1 should be understood as "gravitation-controlled sensor means" and the claimed "sensing means" should be understood to refer to that same "sensor means." *See* Greenspun Decl. at ¶28.

There is nothing in the prosecution history to the contrary. In fact, the prosecution history provides further evidence that the informalities in claim 1 are immaterial. In proposing the amendments to claim 1 – *i.e.*, "gravitation-controlled sensor" to "gravitation-controlled sensor means" and "sensing means" to "sensor means" – Philips explained that the amendments were solely "to improve form" and that the "revisions are formal in nature … and do not affect the scope of the claim." Ex. 5 at 4242-43. The Examiner agreed and noted that "The amendment filed on April 15, 1999 under 37 CFR 1.312 has been considered, and has been: entered as directed to matters of form not affecting the scope of the invention (Order 3311)." Ex. 5 at 4246 (emphasis added).

## V. CONCLUSION

For the foregoing reasons, Philips respectfully requests that the Court deny Defendants' motion for judgment on the pleadings.

Dated: January 18, 2017

MCCARTER & ENGLISH, LLP

/s/ Daniel M. Silver

Michael P. Kelly (#2295)
Daniel M. Silver (#4758)
Benjamin A. Smyth (#5528)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
mkelly@mccarter.com
dsilver@mccarter.com
bsmyth@mccarter.com

*Attorneys for Plaintiffs*

Of Counsel:

Michael P. Sandonato
John D. Carlin
Jonathan M. Sharret
Daniel A. Apgar
FITZPATRICK, CELLA, HARPER & SCINTO
1290 Avenue of the Americas
New York, New York 10104-3800
Tel: (212) 218-2100
Fax: (212) 218-2200
msandonato@fchs.com
jcarlin@fchs.com
jsharret@fchs.com
dapgar@fchs.com