| | |
|---|---|
| Michael P. Sandonato (*admitted pro hac vice*) msandonato@fchs.com | Robert S. Pickens (*admitted pro hac vice*) rpickens@fchs.com |
| John D. Carlin (*admitted pro hac vice*) jcarlin@fchs.com | Sean M. McCarthy (*admitted pro hac vice*) smccarthy@fchs.com |
| Natalie Lieber (*admitted pro hac vice*) nlieber@fchs.com | Jaime F. Cardenas-Navia (*admitted pro hac vice*) jcardenas-navia@fchs.com |
| Christopher M. Gerson (*admitted pro hac vice*) cgerson@fchs.com | Joyce L. Nadipuram (*admitted pro hac vice*) jnadipuram@fchs.com |
| Jonathan M. Sharret (*admitted pro hac vice*) jsharret@fchs.com | Caitlyn N. Bingaman (*admitted pro hac vice*) cbingaman@fchs.com |
| Daniel A. Apgar (*admitted pro hac vice*) dapgar@fchs.com | |

FITZPATRICK CELLA HARPER & SCINTO
1290 Avenue of the Americas
New York, New York 10104-3800
Tel: (212) 218-2100
Fax: (212) 218-2200

Chris Holland (SBN 164053)
cholland@hollandlawllp.com
Lori L. Holland (SBN 202309)
lholland@hollandlawllp.com

HOLLAND LAW LLP
220 Montgomery Street, Suite 800
San Francisco, CA  94104
Tel: (415) 200-4980
Fax: (415) 200-4989

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| In Re Koninklijke Philips Patent Litigation | Case No. 4:18-cv-01885-HSG <br><br> **DECLARATION OF ROBERT S. PICKENS IN SUPPORT OF PHILIPS' MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS** <br><br> JURY TRIAL DEMANDED |

# DECLARATION

I, Robert S. Pickens, declare as follows:

1. I am an associate at Fitzpatrick, Cella, Harper & Scinto ("Fitzpatrick") and an attorney representing Plaintiffs Koninklijke Philips N.V. and U.S. Philips Corporation (collectively, "Philips") in the above-captioned matters. I submit this declaration in support of Philips' Motion for Leave to Amend Its Infringement Contentions. I have personal knowledge of the facts set forth herein.

2. On June 17, 2016, Philips served on the ASUS Defendants (hereinafter "ASUS") "Plaintiffs' Identification of the ASUS Defendants' Accused Products" (hereinafter, "Initial Identification of Accused Products"). A true and correct copy of this document is attached as Exhibit 1.

3. The Initial Identification of Accused Products identified the functionality accused of infringing the patents-in-suit, as well as a non-limiting list of touchscreen products for which Philips was aware when it compiled the specific lists. For example, with respect to the '913 patent, the accused products were defined as:

> The accused products for U.S. Patent No. RE 44,913 are ASUS smartphones, tablet computers, notebooks, All-in-One PCs, and 2-in-1 PCs that include the '913 Accused Functionality or similar functionality (*e.g.*, by being pre-loaded with the Android Operating System, the Chrome Operating System, or the Windows Operating System version 8 or higher) including, without limitation, the following:
>
> [list of expressly identified devices and links to ASUS's United States website]

4. On August 26, 2016, Philips served on ASUS "Plaintiffs' First Amended Identification of the ASUS Defendants' Accused Products" (hereinafter, "First Amended Identification of Accused Products"). A true and correct copy of this document is attached as Exhibit 2.

5. The First Amended Identification of Accused Products identified the functionality accused of infringing the patents-in-suit, as well as a non-limiting list of touchscreen products of which Philips was aware when it compiled the specific lists. This identification specifically identified the version of the Android and Windows operating systems accused of infringement corresponding to the accused functionality. For example, with respect to the '913 patent, the accused products were defined as:

> The accused products for U.S. Patent No. RE 44,913 are ASUS products that include the functionality described in Appendix A of Plaintiffs' Initial Infringement Contentions against the ASUS Defendants, served on Defendants on August 26, 2016, or functionality similar thereto (*e.g.*, by being pre-loaded with the Android Operating System version 2.1 or higher, or the Windows Operating System version 8 or higher, or the Chrome Operating system), including without limitation, the following:
>
> [list of expressly identified devices]

Exhibit 2, at 2-5.

6. On August 26, 2016, Philips also served on ASUS "Plaintiffs' Initial Infringement Contentions against the ASUS Defendants" (hereinafter, "Initial Infringement Contentions"). A true and correct copy of excerpts of this document—in particular, the cover sheet, the '913 patent claim charts, and the technical appendix of expressly identified products—is attached as Exhibit 3.

7. The technical appendix shown in Exhibit 3 expressly identified the touchscreen devices of which Philips was aware as well as the operating systems Philips believed to be preloaded on each of those devices.

8. On October 19, 2016, Philips served on ASUS "Plaintiffs' First Set of Interrogatories to the ASUS Defendants." A true and correct copy of this document is attached as Exhibit 4.

9. Philips's Interrogatory No. 1 to ASUS requested, *inter alia*, that ASUS identify each smartphone, tablet computer, laptop, all-in-one PC, 2-in-1 PC, and Chromebook product sold in the United States during the relevant timeframe ever preloaded with or upgradeable to Android 2.1 or higher, Windows 7 or later (and which include a touch screen), Windows 8.1 or later, or the Chrome operating system. In particular, it requested:

> Identify all Relevant Products [defined to include each smartphone, tablet computer, laptop, all-in-one PC, 2-in-1 PC, and Chromebook product sold in the United States during the relevant timeframe ever preloaded with or upgradeable to Android 2.1 or higher, Windows 7 or later (and which include a touch screen), Windows 8.1 or later, or the Chrome operating system], and for each such Relevant Product, indicate: the date that Relevant Product was first offered for sale in the United States, and if no longer offered for sale in the United States, the last date on which that Relevant Product was offered for sale in the United States; each designation ever known or used by You in connection with that Relevant Product (e.g., by model number, sub-model number, part number, trade name, catalog number, SKU, code name, internal project name, etc.); each Operating System version ever pre-loaded on or

> offered as an update or upgrade to that Relevant Product, as well as the date each such Operating System version became available for that Relevant Product …

Exhibit 4, at 16.

10. On November 21, 2016, ASUS served on Philips "Defendants' Objections and Responses to Plaintiffs' First Set of Interrogatories to the ASUS Defendants." A true and correct copy of this document is attached as Exhibit 5.

11. In response to Interrogatory No. 1, ASUS specifically objected based in part on the definition of "Relevant Product":

> In addition to the foregoing General Objections, ASUS objects to this interrogatory as compound, to the extent it comprises discrete subparts resulting in multiple separate interrogatories, especially in view of Plaintiffs' overly broad definition of "Relevant Product." The compound nature of this interrogatory renders it vague, ambiguous, unduly broad and burdensome, and imposes an inappropriate burden on ASUS to determine what question Plaintiffs are asking. ***ASUS is willing to confer regarding these issues and a supplemental response.***

*See* Exhibit 5, at 9.

12. On December 9, 2016, Philips served on ASUS "Plaintiffs' First Amended Infringement Contentions against the ASUS Defendants" (hereinafter, "First Amended Infringement Contentions"). True and correct copy of excerpts of this document—in particular, the cover sheet, the '913 patent claim charts, and the technical appendix—are attached as Exhibit 6.

13. On January 9, 2017, Philips served on ASUS "Plaintiffs' Second Amended Identification of the ASUS Defendants' Accused Products." A true and correct copy of this document is attached as Exhibit 7.

14. On March 28, 2017, the parties submitted a joint discovery letter to apprise the Delaware Court of certain disputed issues. A true and correct copy of this document is attached as Exhibit 8.

15. In particular, three of the four issues identified in the joint letter were as follows:

> a. ***Whether Defendants should be required to provide substantive responses to Philips' Interrogatory Nos. 1, 2, and 5 (which relate to information concerning the accused products such as specifications and sales data), and 4 and 6 (which relate to non-infringement issues) by a date certain;***

     b. With respect to Philips' First Set of Requests for the Production of Documents and Things, whether certain Defendants should be required to begin making rolling productions by a date certain, and *whether all Defendants shall be (i) required to produce source code for all accused products*; or (ii) precluded from relying at trial on any argument that a product advertised as complying with or including a particular operating system is materially different from the corresponding publicly available version of that operating system.

     c. *Whether Defendants should be required to provide discovery on products that are not separately identified by model number in Philips' second amended identification of accused products, but which run an operating system that Philips has accused of infringement in its infringement contentions.*

Exhibit 8 (emphasis added).

16. Attached as Exhibit 9 is a true and correct copy of an excerpt of a transcript of a Teleconference held with Judge Sleet (U.S. District Court for the District of Delaware) on March 30, 2017 at 2:00pm.

17. One issue addressed during the March 30, 2017 teleconference was Defendants' responses to Interrogatory Nos. 1, 2, and 5. Judge Sleet directed the parties to continue to confer regarding any disputes. The relevant portion is excerpted below:

> **THE COURT:** Let's move on to the next issue.
>
> **MR. [SHARRET, COUNSEL FOR PHILIPS]:** Your Honor, this is Jonathan [Sharret] for plaintiff Philips. *I will be addressing the first part of this issue with respect to Interrogatories 1, 2, and 5*.
>
> Your Honor, plaintiff served interrogatories back in 2016. With rare exception, from all of the defendants, we have yet to receive a substantive responses with respect to Interrogatories 1, 2 and 4. I am happy to get into the differences between defendants --
>
> **THE COURT:** I am not happy to hear from you about the differences between defendants.
>
> What I am interested in knowing, from what I am presuming, am going to assume that in the main I have got experienced lawyers on the line on both

> sides, and having said that, it's difficult for me, I am scratching my head, as to why I am having to deal with this issue as well.
>
> …
>
> **MR. SHARRET:** The issue at hand, Your Honor, is that the defendants have answered every non-contention interrogatory through 33(d) either without reference to any documents whatsoever or with respect to their entire production to date.
>
> **THE COURT:** Then my question is addressed to the defendants who have done that.
>
> **MR. SMITH [COUNSEL FOR DEFENDANTS]:** Your Honor, when we called to set up this conference, we had one issue, it was the first issue, Your Honor has now disposed of that. *We were surprised to learn about these other issues.*
>
> As we told the plaintiffs before we submitted our agenda letter, *we did not think that we had exhausted the meet-and-confer process on this or that they were ripe for consideration.*
>
> We are certainly prepared to address all these issues defendant by defendant, or, to the extent there are common issues, we are happy to address them.
>
> But we will take Your Honor's lead as to whether it is a good use of Your Honor's time today to do that or *we would be better served to repair to our normal meet-and-confer process and work through these issues in hopes of not burdening the Court.*
>
> **THE COURT:** *I am going to take you up on that offer, Mr. Smith, and have the parties repair to your various offices, have an additional meet-and-confer on the remaining issues*, for those that can't be resolved, get on planes, trains and automobiles and come to Wilmington and we will talk about them.

*See* Exhibit 9, at 12:13-14:10 (emphasis added).

18. On April 21, 2017, ASUS served on Philips "Defendants' First Supplemental Responses to Plaintiffs' First Set of Interrogatories to the ASUS Defendants."  A true and correct copy of this document is attached as Exhibit 10.

19. On May 18, 2017, Jonathan Sharret (counsel for Philips) sent an email to counsel ASUS (among others) notifying ASUS that Philips intended to raise with the Court the deficiency of ASUS's response to "Philips' Interrogatory Nos. 1 and 5" and ASUS failure to "provide a list of all products

which were pre-loaded with an operating system that Philips has accused of infringement in its infringement contentions." A true and correct copy of this document is attached as Exhibit 11.

20. On June 6, 2017 counsel for all parties submitted a joint letter agenda to apprise the Court of disputed issues "[i]n anticipation of the conference scheduled for Thursday, June 8 at 10 AM." Issues listed on this agenda included "[w]hether ASUS, Visual Land, and YiFang should be required to respond to Philips' Interrogatory Nos. 1 and 5, seeking information for the Accused Products (e.g., first and last sales dates, operating system version, etc.), by June 30, 2017." A true and correct copy of this document is attached as Exhibit 12.

21. On June 16, 2017, counsel for all parties submitted a joint letter agenda to apprise the Court of disputed issues "[i]n anticipation of the continued conference scheduled for Tuesday, June 20 at 2 PM," along with attached exhibits. In the attached Exhibit A, Philips advised the Court that "No Defendant has properly responded to Philips' Interrogatory Nos. 1 and 5 seeking technical information relating to the accused products." True and correct copies of these documents are attached as Exhibits 13 and 14.

22. Attached as Exhibit 15 is a true and correct copy of a transcript of a Discovery Conference held before Judge Sleet on June 20, 2017 regarding a schedule for contention exchanges. Near the conclusion of the conference, Mr. Sharret (counsel for Philips) raised the topic of Philips' outstanding interrogatories, but the Court directed the parties to continue conferring regarding this and other related disputes. The relevant portion is excerpted below:

> **MR. SHARRET [COUNSEL FOR PHILIPS]**: The next issue for Philips, if we are going to stay on this side, *we have non-contention interrogatories for which we haven't received responses, or at least not fulsome responses*. June 30 is a popular date. *We would like to, respectfully, ask the Court to order the parties to provide fulsome responses.*
>
> **THE COURT**: Any difficulty?
>
> **MR. WARREN [COUNSEL FOR ACER/ASUS/GOOGLE]**: Some difficulty, Your Honor, as follows.
>
> . . .
>
> **THE COURT**: *That is your contention, counsel, that you haven't seen this*

> *before so you haven't had a chance to meet and confer?*
>
> **MR. WARREN**: *That's correct.* But I have a response.
>
> **THE COURT**: Are there other of these bullets that fall in these same categories?
>
> **MS. JENNISON [COUNSEL FOR MICROSOFT]**: Yes, Your Honor.
>
> . . .
>
> **MR. McBRAYER [COUNSEL FOR HTC]**: The one for HTC is about 3800 pages.
>
> **MR. SHARRET**: Your Honor, I disagree with that contention. *We have been meeting and conferring and sending letters back and forth on these interrogatories since at least January.*
>
> . . .
>
> **THE COURT**: I agree. *There is at least the contention that there has not been full discussion on all of the issues*. I understand there is a difference of view about that. It just so happens I had the time available today to do this. It doesn't mean we have to fill the vacuum necessarily.
>
> **MR. SHARRET**: *As long as the other parties agree to meet and confer on this, we can agree to that approach.*
>
> **THE COURT**: *You are going to meet and confer.*
>
> **MR. McBRAYER**: We will confer with them and get it done.
>
> **THE COURT**: *That is how we will resolve the rest of those bullets.*

*See* Exhibit 15, at 66:21-69:6 (emphasis added).

23. On September 29, 2017, Philips served on ASUS "Plaintiffs' Second Amended Infringement Contentions Against the ASUS Defendants." True and correct copies of excerpts of this document—in particular, the cover sheet, the '913 patent claim charts, and the technical appendix—are attached as **HIGHLY CONFIDENTIAL** Exhibit 16 (filed under seal).

24. On October 23, 2017, Philips served on ASUS "Plaintiffs' Third Amended Identification of the ASUS Defendants' Accused Products." A true and correct copy of this document is attached as Exhibit 17.

25. On October 30, 2017, Mr. Sharret (counsel for Philips) sent a letter to counsel for ASUS

regarding discovery on the products expressly listed by name in Plaintiffs' Third Amended Identification of the ASUS Defendants' Accused Products, as well as a renewed request for an identification of any other products that run the Android operating system (version 2.1 or higher), the Windows operating system (version 7 or later), or the Chrome operating system. A true and correct copy of this document is attached as Exhibit 18.

26. On November 22, 2017, Mr. Lee (counsel for ASUS) sent counsel for Philips a letter regarding ASUS's source code production, including recently produced source code for "Newly Accused Products." A true and correct copy of this document is attached as **HIGHLY CONFIDENTIAL-SOURCE CODE** Exhibit 19 (filed under seal).

27. Thereafter, on November 30, 2017 and December 21, 2017 counsel for ASUS and counsel for Philips conducted Meet and Confers during which Philips proposed setting a final date for supplementing Philips' list of Accused Products.

28. On December 7, 2017, Mr. Lee (counsel for ASUS) sent counsel for Philips a letter regarding ASUS's source code production, including recently produced source code for "Newly Accused Products." A true and correct copy of this document is attached as **HIGHLY CONFIDENTIAL-SOURCE CODE** Exhibit 20 (filed under seal).

29. On January 4, 2018, Mr. Lee (counsel for ASUS) sent counsel for Philips a letter regarding the parties' respective positions regarding Philips's Third Amended Identification of Accused Products served on October 23, 2017. A true and correct copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 21 (filed under seal).

30. ASUS explained it would provide discovery on "New Products," but would not provide discovery on so-called "Old Products" (*i.e.*, products Philips allegedly could have identified when it served its Initial Identification of Accused Products. In addition, ASUS agreed to provide a list of all products sold in the United States since 2009, which was requested by Interrogatory No. 1 on October 19, 2016:

> During our call, you requested that ASUS provide a list of all products sold in the United States since 2009, including information regarding the operating system, HDCP 2.x, and touchscreen for each product. ASUS will provide a list of all products sold in the United States since 2009 as it is kept in the

ordinary course of business, which would include the internal product name, external product name, product type, and the date of transaction. However, to provide operating system, HDCP 2.x, and touchscreen information would require, at a minimum, pulling and parsing the product specifications and bill of materials for each and every product, which is a manual, burdensome process and would encompass products outside the scope of this case.

31. On January 22, 2018, I sent a letter to ASUS's counsel responding to Mr. Lee's (counsel for ASUS) letter of January 4, 2018, and in particular expressed our disagreement as to the distinction ASUS was making with respect to the scope of accused products. A true and correct copy of this document is attached as Exhibit 22.

32. On February 8, 2018, Mr. Lee (counsel for ASUS) sent me a letter explaining that ASUS was not objecting to Philips' Initial Identification of Accused Products (June 17, 2016); the First Amended Identification of Accused Products (August 26, 2016); or the Second Amended Identification of Accused Products (January 9, 2017); and was only partially objecting to the Third Amended Identification of Accused Products (October 23, 2017). In particular, he wrote:

> To be sure, Philips served four iterations of its list of accused ASUS products to date—on June 17, 2016, August 26, 2016, January 9, 2017, and most recently on October 23, 2017. Despite no apparent reason for why Philips could not identify all accused products in the first instance, ***ASUS did not object to the first three iterations. ASUS is also only partially objecting to the fourth instance***, *i.e.*, to just those products that Philips could have identified twenty months ago.

*See* **HIGHLY CONFIDENTIAL** Exhibit 25, at 2 (emphasis added) (filed under seal). [1]

33. On January 26, 2018, ASUS served on Philips "Defendants' Second Supplemental Response to Plaintiffs' Interrogatory No. 1 to the ASUS Defendants." A true and correct copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 23 (filed under seal).

---

[1] On a related issue, in September 21, 2018 (4:35pm ET), Mr. McBrayer (counsel for HTC, but also speaking on behalf of ASUS) sent Ms. Nadipuram (counsel for Philips) a letter identifying the products it believed are not properly in this case. A true and correct copy of this document is attached as Exhibit 32.
In Mr. McBrayer's letter of September 21, 2018, he stated that he wrote on behalf of HTC, ASUS, Acer, and Microsoft, and in part wrote: "Philips may not continue to add newly-accused devices until the day before trial, as Philips seems to contend; to the contrary, the parties and Court must draw a reasonable line about the scope of the case, and did so through the District of Delaware's Order, set in response to the parties' agreed motion, ***setting the deadline for final infringement contentions on February 2, 2018.***"

34. In its Second Supplemental Response to Plaintiffs' Interrogatory No. 1, ASUS for the first time identified ASUSPH_00117991, along with the following description:

> Specifically, the spreadsheet produced natively at Bates number ***ASUSPH_00117991 includes a list of all ASUS products sold in the United States from December 2009 to September 2016 that use Windows 7 or later, Android 3.0 or later, or Chrome operating systems.*** Column A identifies the product line to which each product belongs. Column B identifies the internal part number of each product. Column C identifies the external product name for each product. Column D identifies the operating system associated with each product. Column E indicates whether a product supports HDCP 2.x based on whether that product contains HDCP 2.x functionality provided by ARM or Intel, as described by Mr. Shunwen Huang in his deposition taken on November 13, 2017.

*See* **HIGHLY CONFIDENTIAL** Exhibit 23, at 11-12 (emphasis added) (filed under seal).

35. On February 2, 2018, Philips served on ASUS "Plaintiffs' Third Amended Infringement Contentions Against the ASUS Defendants." True and correct copy of excerpts of this document—in particular, the cover sheet, the '913 patent claim charts, and the technical appendix— are attached as **HIGHLY CONFIDENTIAL** Exhibit 24 (filed under seal).

36. Included in Philips' February 2, 2018 Infringement Contentions Against the ASUS Defendants were infringement allegations against over 200 products first identified in ASUSPH_00117991 by ASUS on January 26, 2018. *See* HIGHLY CONFIDENTIAL Exhibit 24 (filed under seal) at document pages 89-102 (*e.g.*, the ASUS ZenFoneA400CG).

37. On March 19, 2018, ASUS produced another native Excel spreadsheets as ASUSPH_00142844-848.

38. Thereafter, in a July 25, 2018 letter to Philips (responding to correspondence shown in Exhibit 26 and **HIGHLY CONFIDENTIAL** Exhibit 27 hereto), ASUS informed Philips that these spreadsheets (evidently in addition to ASUSPH_00117991) also contained an accounting of "***ASUS products sold in the United States since 2009***." A true and correct copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 28, at 1 (emphasis added) (filed under seal).

39. More particularly, Mr. Lee wrote:

> ***ASUS agreed to provide a list of all ASUS products sold in the United States since 2009 as it is kept in the ordinary course of business. The***

> *documents at Bates numbers ASUSPH_00142844–848 contain this very information* …
>
> To be sure, these documents do not contain "new and updated sales data." With respect to the accused products at issue in this case, the sales data previously produced and identified in ASUS's response to Philips's Interrogatory No. 2 is the relevant sales data. ***The documents at ASUSPH_00142844–848 simply present the same sales data as kept in the ordinary course of business (i.e., per transaction) for not only the accused products but also all other ASUS products sold in the United States since 2009***.

*See* **HIGHLY CONFIDENTIAL** Exhibit 28, at 1 (emphasis added) (filed under seal).

40. On August 23, 2018, counsel for Philips sent counsel for ASUS a document captioned "Plaintiffs' Fourth Amended Identification of the ASUS Defendants' Accused Products," as well as Appendix A attached thereto. Philips served this document to ascertain the full scope of the dispute as to accused products prior to bringing the dispute to the Court's attention and seeking leave to amend. True and correct copies of these documents are attached as Exhibit 29 and **HIGHLY CONFIDENTIAL** Exhibit 30 (filed under seal), respectively.

41. Exhibit A to the Fourth Amended Identification (**HIGHLY CONFIDENTIAL** Exhibit 30 (filed under seal)) was compiled by adding the spreadsheets produced at ASUSPH_00117991 and ASUSPH_00142844–848 to ASUS's other sales spreadsheets, de-duplicating the lists by part number, and adding newly released products from ASUS's U.S. and Global websites.

42. Following the sending of Philips' August 23, 2018 letter, Mr. McBrayer (counsel for HTC, but also speaking on behalf of ASUS) sent Ms. Nadipuram (counsel for Philips) the above referenced September 21, 2018 letter (Exhibit 32) identifying the products it believed are not properly accused in this case, which included an Exhibit B enumerating such products. Counsel for Philips has reviewed Exhibit B to Mr. McBrayer's September 21, 2018 letter, and has determined that Defendants have inappropriately identified numerous products which were properly accused as of and prior to February 2, 2018 in Delaware. In order to illustrate when such products were expressly identified by name, counsel for Philips has copied each of the supposedly "Improperly Accused ASUS Products" into an Excel Sheet. Next to each product, and to the extent relevant, counsel for Philips has identified the date on which, and the document in which, each of these products was previously identified to ASUS

(before Philips' August 23, 2018 letter).  A PDF of that Excel sheet is attached as Exhibit 33.

43. I declare under the penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on November 1, 2018 in New York, New York.

*/s/ Robert S. Pickens*
Robert S. Pickens (admitted *pro hac vice*)