## REDACTED VERSION

Michael P. Sandonato (*admitted pro hac vice*)
msandonato@fchs.com
John D. Carlin (*admitted pro hac vice*)
jcarlin@fchs.com
Natalie Lieber (*admitted pro hac vice*)
nlieber@fchs.com
Christopher M. Gerson (*admitted pro hac vice*)
cgerson@fchs.com
Jonathan M. Sharret (*admitted pro hac vice*)
jsharret@fchs.com
Daniel A. Apgar (*admitted pro hac vice*)
dapgar@fchs.com

Robert S. Pickens (*admitted pro hac vice*)
rpickens@fchs.com
Sean M. McCarthy (*admitted pro hac vice*)
smccarthy@fchs.com
Jaime F. Cardenas-Navia (*admitted pro hac vice*)
jcardenas-navia@fchs.com
Joyce L. Nadipuram (*admitted pro hac vice*)
jnadipuram@fchs.com
Caitlyn N. Bingaman (*admitted pro hac vice*)
cbingaman@fchs.com

FITZPATRICK CELLA HARPER & SCINTO
1290 Avenue of the Americas
New York, New York 10104-3800
Tel: (212) 218-2100
Fax: (212) 218-2200

Chris Holland (SBN 164053)
cholland@hollandlawllp.com
Lori L. Holland (SBN 202309)
lholland@hollandlawllp.com

HOLLAND LAW LLP
220 Montgomery Street, Suite 800
San Francisco, CA  94104
Tel: (415) 200-4980
Fax: (415) 200-4989

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

In Re Koninklijke Philips Patent Litigation

Case No. 4:18-cv-01885-HSG

**DECLARATION OF SEAN M. MCCARTHY IN SUPPORT OF PHILIPS' MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS**

JURY TRIAL DEMANDED

## DECLARATION OF SEAN M. MCCARTHY

I, Sean M. McCarthy, declare as follows:

1.      I am an associate at Fitzpatrick, Cella, Harper & Scinto ("Fitzpatrick") and an attorney representing Plaintiffs Koninklijke Philips N.V. and U.S. Philips Corporation (collectively, "Philips") in the above-captioned matter.  I submit this declaration in support of Philips' Motion for Leave to Amend Its Infringement Contentions.  I have personal knowledge of the facts set forth herein.

2.      On June 17, 2016, Philips served on the HTC Defendants (hereinafter, "HTC") "Plaintiffs' Identification of the HTC Defendants' Accused Products" (hereinafter, "Initial Identification of Accused Products").  A true and correct highlighted copy of this document is attached as Exhibit 1.

3.      The Initial Identification of Accused Products identified the functionality accused of infringing the patents-in-suit, as well as a non-limiting list of products for which Philips was aware when it compiled the specific lists.  For example, with respect to the '913 patent, the accused products were defined as:

> The accused products for U.S. Patent No. RE 44,913 are HTC smartphones and tablet computers that include the '913 Accused Functionality or similar functionality (*e.g.*, by being pre-loaded with the Android Operating System) including, without limitation, the following:
>
> [list of expressly identified devices and links to HTC's United States website]

Exhibit 1, at 2-4.

4.      On August 26, 2016, Philips served on HTC "Plaintiffs' First Amended Identification of the HTC Defendants' Accused Products" (hereinafter, "First Amended Identification of Accused Products").  A true and correct highlighted copy of this document is attached as Exhibit 2.

5.      The First Amended Identification of Accused Products identified the functionality accused of infringing the patents-in-suit, as well as a non-limiting list of products for which Philips was aware when it compiled the specific lists.  This identification specifically identified the version of the Android operating system accused of infringement corresponding to the accused functionality.  For example, with respect to the '913 patent, the accused products were defined as:

> The accused products for U.S. Patent No. RE 44,913 are HTC products that include the functionality described in Appendix A of Plaintiffs' Initial

> Infringement Contentions against the HTC Defendants, served on Defendants on August 26, 2016, or functionality similar thereto (*e.g.*, by being pre-loaded with the Android Operating System version 2.1 or higher), including without limitation, the following:
>
> [list of expressly identified devices]

Exhibit 2, at 2-4.

6.     On August 26, 2016, Philips also served on HTC "Plaintiffs' Initial Infringement Contentions against the HTC Defendants" (hereinafter, "Initial Infringement Contentions"). A true and correct highlighted copy of excerpts of this document—in particular, the cover sheet, the '913 patent claim charts, and the technical appendix of expressly identified products—is attached as **HIGHLY CONFIDENTIAL** Exhibit 3 (filed under seal).

7.     The Initial Infringement Contentions provided charts for the Android Open Source Project versions 2.1, 4.0, 5.0, and 6.0, and explained why each operating system infringed certain of the patents-in-suit. The technical appendix expressly identified the devices of which Philips was aware as well as the operating systems Philips believed to be preloaded on each of those devices.

8.     On October 19, 2016, Philips served on HTC "Plaintiffs' First Set of Interrogatories to the HTC Defendants." A true and correct highlighted copy of this document is attached as Exhibit 4.

9.     Philips's Interrogatory No. 1 to HTC requested, *inter alia*, that HTC identify each product ever sold in the United States ever preloaded with Android 2.1 or higher. In particular, it requested:

> Identify all Relevant Products [defined to include all products preloaded with Android 2.1 or higher], and for such Relevant Product, indicate: the date that Relevant Product was first offered for sale in the United States, and if no longer offered for sale in the United States, the last date on which that Relevant Product was offered for sale; each designation ever known or used by You in connection with that Relevant Product (*e.g.*, by model number, sub-model number, part number, trade name, catalog number, SKU, code name, internal project name, etc.); each Operating System version ever pre-loaded on or offered as an update or upgrade to that Relevant Product, as well as the date each such Operating System version became available for that Relevant Product …

Exhibit 4, at 3-7; 15.

10.     On November 21, 2016, HTC served on Philips "Defendants HTC Corp. and HTC America, Inc.'s Answers to Plaintiffs' First Set of Interrogatories to the HTC Defendants." A true and

2
**MCCARTHY DECLARATION**
CASE NUMBER 4:18-CV-01885-HSG

correct highlighted copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 5 (filed under seal).

11.     In its General Objections, HTC objected to the term "Relevant Products." In particular, HTC objected with the following:

> HTC objects to Plaintiffs' definition of the terms "Relevant Products" and to any Request incorporating this term, to the extent that it is unduly broad and purports to impose burdens or requirements upon HTC that exceed or differ from those permitted by Federal Rule of Civil Procedure 26 and Court's Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI"), as stipulated by the parties and ordered by the Court on October 7, 2016 (D.I. 54), particularly insofar as the definitions purport to require the production of documents or testimony about products irrelevant to this action.

**HIGHLY CONFIDENTIAL** Exhibit 5, at 5 (filed under seal).

12.     In response to Interrogatory No. 1, HTC specifically objected based in part on the definition of "Relevant Product":

> In addition to the foregoing General Objections, HTC objects to this interrogatory as compound, to the extent that it comprises discrete subparts resulting in multiple separate interrogatories, especially in view of Plaintiffs' expansive definition of "Relevant Product." The compound nature of this interrogatory renders it vague, ambiguous, unduly broad and burdensome, and imposes an inappropriate burden on HTC to determine what question Plaintiffs are asking. ***HTC is willing to confer regarding these issues and a supplemental response.***

**HIGHLY CONFIDENTIAL** Exhibit 5, at 8-10 (emphasis added) (filed under seal).

13.     HTC did not specifically identify either in its General Objections or its specific objections to Interrogatory No. 1 that it was limiting its response to only those products expressly listed by model name in Plaintiffs' Initial Identification of Accused Products.  In addition, HTC specifically said that it was "willing to confer regarding these issues and a supplemental response," which the parties have continued to do throughout this litigation.

14.     HTC responded to Interrogatory No. 1 pursuant to Fed. R. Civ. P. 33(d) by identifying alleged business records produced at HTC-PHIL-000001 to HTC-PHIL-018152—*i.e.*, over 18,000 contiguous pages of documents.

15.     On December 9, 2016, Philips served on HTC "Plaintiffs' First Amended Infringement Contentions against the HTC Defendants" (hereinafter, "First Amended Infringement Contentions"). A true and correct highlighted copy of excerpts of this document—in particular, the cover sheet, the '913 patent claim charts, and the technical appendix of expressly identified products—are attached as **HIGHLY CONFIDENTIAL** Exhibit 6 (filed under seal).

16.     On January 9, 2017, Philips served on HTC "Plaintiffs' Second Amended Identification of the HTC Defendants' Accused Products."  A true and correct copy of this document is attached as Exhibit 7.

17.     On March 28, 2017, the parties submitted a joint discovery letter to apprise the Delaware Court of certain disputed issues.  A true and correct highlighted copy of this document is attached as Exhibit 8.

18.     In particular, three of the four issues identified in the joint letter were as follows:

- *Whether Defendants should be required to provide substantive responses to Philips' Interrogatory Nos. 1, 2, and 5 (which relate to information concerning the accused products such as specifications and sales data), and 4 and 6 (which relate to non-infringement issues) by a date certain;*

- With respect to Philips' First Set of Requests for the Production of Documents and Things, whether certain Defendants should be required to begin making rolling productions by a date certain, and *whether all Defendants shall be (i) required to produce source code for all accused products*; or (ii) precluded from relying at trial on any argument that a product advertised as complying with or including a particular operating system is materially different from the corresponding publicly available version of that operating system.

- *Whether Defendants should be required to provide discovery on products that are not separately identified by model number in Philips' second amended identification of accused products, but which run an operating system that Philips has accused of infringement in its infringement contentions.*

Exhibit 8 (emphasis added).

19.     Attached as **HIGHLY CONFIDENTIAL** Exhibit 9 is a true and correct copy of a transcript of a Teleconference held with Judge Sleet (U.S. District Court for the District of Delaware) on March 30, 2017 at 2:00pm (filed under seal).

**MCCARTHY DECLARATION**
CASE NUMBER 4:18-CV-01885-HSG

20.     One issue addressed during the March 30, 2017 teleconference was Defendants' responses to Interrogatory Nos. 1, 2, and 5.  Judge Sleet directed the parties to continue to confer regarding any disputes.  The relevant portion is excerpted below:

> **THE COURT:** Let's move on to the next issue.
>
> **MR. [SHARRET, COUNSEL FOR PHILIPS]:** Your Honor, this is Jonathan [Sharret] for plaintiff Philips. ***I will be addressing the first part of this issue with respect to Interrogatories 1, 2, and 5***.
>
> Your Honor, plaintiff served interrogatories back in 2016.  With rare exception, from all of the defendants, we have yet to receive a substantive responses with respect to Interrogatories 1, 2 and 4.  I am happy to get into the differences between defendants --
>
> **THE COURT:** I am not happy to hear from you about the differences between defendants.
>
> What I am interested in knowing, from what I am presuming, am going to assume that in the main I have got experienced lawyers on the line on both sides, and having said that, it's difficult for me, I am scratching my head, as to why I am having to deal with this issue as well.
>
> …
>
> **MR. SHARRET:** The issue at hand, Your Honor, is that the defendants have answered every non-contention interrogatory through 33(d) either without reference to any documents whatsoever or with respect to their entire production to date.
>
> **THE COURT:** Then my question is addressed to the defendants who have done that.
>
> **MR. SMITH [COUNSEL FOR DEFENDANTS]:** Your Honor, when we called to set up this conference, we had one issue, it was the first issue, Your Honor has now disposed of that.  ***We were surprised to learn about these other issues.***
>
> As we told the plaintiffs before we submitted our agenda letter, ***we did not think that we had exhausted the meet-and-confer process on this or that they were ripe for consideration.***
>
> We are certainly prepared to address all these issues defendant by defendant, or, to the extent there are common issues, we are happy to address them.
>
> But we will take Your Honor's lead as to whether it is a good use of Your Honor's time today to do that or ***we would be better served to repair to our***

**MCCARTHY DECLARATION**
CASE NUMBER 4:18-CV-01885-HSG

> *normal meet-and-confer process and work through these issues in hopes of not burdening the Court.*
>
> **THE COURT:** *I am going to take you up on that offer, Mr. Smith, and have the parties repair to your various offices, have an additional meet-and-confer on the remaining issues*, for those that can't be resolved, get on planes, trains and automobiles and come to Wilmington and we will talk about them.

*See* **HIGHLY CONFIDENTIAL** Exhibit 9 at 12:13-14:10 (emphasis added) (filed under seal).

21.     On June 9, 2017, HTC served on Philips "Defendants HTC Corp. and HTC America, Inc.'s Supplemental Responses to Plaintiffs' Common Interrogatories 1, 2, and 5." A true and correct copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 10 (filed under seal).

22.     HTC did not add any general or specific objections to Interrogatory No. 1 other than what was identified in its initial response. Instead, pursuant to 33(d), HTC more specifically identified where the information requested by Interrogatory No. 1 could purportedly be found in HTC's document production.

23.     Attached as **HIGHLY CONFIDENTIAL** Exhibit 11 is a true and correct copy of a transcript of a Discovery Conference held before Judge Sleet on June 20, 2017 regarding a dispute over, *inter alia*, infringement contentions, non-infringement contentions, and representativeness contentions, and setting a schedule for such non-binding supplemental contention exchanges (filed under seal).

24.     Following the June 20, 2017 discovery conference, the parties filed a proposed amendment to the scheduling order on June 27, 2017, which, on July 14, 2017 was adopted by the Delaware Court with respect to the following dates:

| Event | Proposed Date |
|---|---|
| Defendants (except Visual Land) Each Supplement Their Responses to Plaintiffs' Interrogatory Nos. 1, 2, and 5, Including Production of All Underlying Documents | June 30, 2017 |
| Supplemental Infringement Contentions | September 29, 2017 |
| Supplemental Non-infringement contentions [including Philips Interrogatory Nos. 4 and 6] | November 3, 2017 |

*See* Case No. 18-1885, Dkt. No. 229, pp. 5-6 (footnotes omitted).

**MCCARTHY DECLARATION**
CASE NUMBER 4:18-CV-01885-HSG

25.     On June 26, 2017, I sent Mr. Putman (counsel for the HTC) a letter regarding the HTC's responses to Philips's Interrogatory Nos. 1 and 2.  A true and correct highlighted copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 12 (filed under seal).

26.     In my letter of June 26, 2017, I explained and requested, among other things:



…

Please provide a **complete listing** of each designation ever known or used by HTC in connection with **each Accused Product**, as requested by Interrogatory No. 1. To the extent HTC insists on responding pursuant to Fed. R. Civ. P. 33(d), please identify the **particular page(s) by Bates number for each Accused Product** and explain the meaning of the suffixes and other heading information contained in those documents (e.g., the HTC Feature Sheets and HTC Block Diagrams).

**HIGHLY CONFIDENTIAL** Exhibit 12 (first paragraph emphasized; second paragraph emphasis in original) (filed under seal).

27.     On July 5, 2017, I sent an email to counsel for HTC requesting a meet and confer regarding the correspondence sent on June 26, 2017.  A true and correct copy of this document is attached as Exhibit 13.

28.     On July 6, 2017, Mr. Hawkins (counsel for HTC) responded to my email of July 5, 2017 indicating that counsel for HTC was available to meet and confer on July 10, 2017 regarding the issues in my letter of June 26, 2017.  On July 10, 2017, Mr. Hawkins requested to reschedule the meet and confer.  I responded that same day agreeing we could reschedule our meet and confer until July 12, 2017, and I requested that counsel for HTC respond to my letter of June 26, 2018 in advance of our call.  A true and correct copy of my response email is attached as Exhibit 14.

29.     On July 12, 2017, counsel for the parties met and conferred via telephone regarding HTC's responses to Philips's Interrogatory Nos. 1 and 2.  The issue remained pending following this meet-and-confer.

**MCCARTHY DECLARATION**
CASE NUMBER 4:18-CV-01885-HSG

30.     On August 25, 2017, I sent Mr. McBrayer (counsel for HTC) a letter identifying outstanding issues regarding HTC's discovery responses, including their responses to Interrogatory Nos. 1 and 2.   A true and correct highlighted copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 15 (filed under seal).

31.     In my August 25, 2017 letter, I specifically explained to HTC that we had identified numerous other codenames or project names for devices not listed in HTC-PHIL-124100-101, which was the document identified in response to Interrogatory No. 1 pursuant to Fed. R. Civ. P. 33(d).   In particular:

> In addition, in our review of HTC's documents we have identified numerous other codenames or project names that are not identified in HTC-PHIL-124100-101. This has made it impossible for us to determine the relevancy of these documents and whether they relate to an Accused Product. Furthermore, Interrogatory No. 1 requested information for all *Relevant* Products, and not merely *Accused* Products. Without identification of all of HTC's *Relevant* Products and their corresponding project names, codenames, and the like, it is impossible for us to determine the relevancy of a substantial portion of HTC's productions. We will follow up next week with a letter identifying each of the project names discovered in HTC's production.

**HIGHLY CONFIDENTIAL** Exhibit 15 (emphasis in original) (filed under seal).

32.     On August 28, 2017, Mr. McBrayer (counsel for HTC) responded via email to my letter of August 25, 2017.   I responded to Mr. McBrayer's email the same day and confirmed to meet and confer via telephone that same day.   A true and correct copy of this email exchange is attached as **HIGHLY CONFIDENTIAL** Exhibit 16 (filed under seal).

33.     On August 28, 2017, counsel for the parties met and conferred via telephone regarding the scheduling of depositions of HTC's witnesses as well as issues regarding HTC's responses to Interrogatory Nos. 1 and 2.   This meet and confer was memorialized in an email I sent to Mr. Hawkins (counsel for HTC) on August 28, 2017.   A true and correct copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 17 (filed under seal).

34.     In my August 28, 2017 email, I outlined our understanding of outstanding action items for which we each agreed, including but not limited to:

(2)    You noted that you asked your client for more information pertaining to the suffixes located after each of the Project Names. You agreed to provide whatever explanation you can once you receive this from your client.

(3)    We will send you later today or tomorrow a list of additional codenames/project names we discovered in HTC's document production. You agreed that you will endeavor to tell us which ones are not relevant because they are sold exclusively outside of the U.S., or are relevant because they happen to be another name for an already Accused Product.

35.    On August 29, 2017, I sent Mr. Hawkins (counsel for HTC) an email following up on the August 28, 2017 meet and confer and regarding product/project names that were identified in HTC's production but not identified in response to Interrogatory Nos. 1 or 2. A true and correct copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 18 (filed under seal).

36.    I attached to my August 29, 2017 email a table of over 150 product/project/codenames that were discovered in HTC's production but were not identified in response to Interrogatory Nos. 1 or 2. A true and correct copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 19 (filed under seal).

37.    On August 30, 2017, Mr. Hawkins (counsel for HTC) responded to my email of August 29, 2017 and attached table. A true and correct copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 20 (filed under seal).

38.    Mr. Hawkins's (counsel for HTC) response did not—contrary to HTC's agreement to do so during the August 28, 2017 meet and confer—tell us which devices were not relevant because they are sold exclusively outside of the U.S., and likewise did not tell us which devices are relevant because they happen to be another name for an already expressly identified by name Accused Product.

39.    On August 30, 2017, I sent Mr. Hawkins (counsel for HTC) a letter regarding the parties' ongoing discussions regarding outstanding discovery issues and deposition scheduling. A true and correct copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 21 (filed under seal).

40.    On August 31, 2017, Mr. Hawkins (counsel for HTC) sent me a letter regarding certain suffixes attached to product and/or project names. A true and correct copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 22 (filed under seal).

41.     On August 31, 2017, I sent Mr. Hawkins (counsel for HTC) a letter regarding the parties' ongoing discussions regarding outstanding discovery issues and deposition scheduling.  A true and correct copy of this document is attached as Exhibit 23.

42.     On September 29, 2017, Philips served on HTC "Plaintiffs' Second Amended Infringement Contentions against the HTC Defendants" (hereinafter, "Second Amended Infringement Contentions"), as per Judge Sleet's ruling during the June 20, 2017 discovery conference and the amended scheduling order (Case No. 18-1887, Dkt. No. 154).  A true and correct highlighted copy of excerpts of this document—in particular, the cover sheet, the '913 claim charts, and the technical appendix of expressly identified products—are attached as **HIGHLY CONFIDENTIAL** Exhibit 24 (filed under seal).

43.     The Second Amended Infringement Contentions, among other things, further explained why devices with specific Android/HTC Sense versions infringe the patents-in-suit and why devices with the same Android/HTC Sense version should be treated as representative of each other.  These contentions also added additional evidence supporting both the infringement and representativeness contentions.  Further, these contentions added Source Code Appendices to specifically identify the source code files where each element of the claim can be found for a representative product in each of the Android/HTC Sense groupings, and alleged that ███████████████████

████████████████████████████████████████████████████████████████

███████████████████

44.     On October 5, 2017, I sent Mr. Hawkins (counsel for HTC) a letter regarding the parties' outstanding dispute regarding HTC's response to Interrogatory Nos. 1 and 2.  A true and correct highlighted copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 25 (filed under seal).

45.     In my October 5, 2017 letter, I again reiterated that HTC had not completely responded to Interrogatory Nos. 1 and 2.  In particular, I wrote:

> First, Interrogatory No. 1 requests HTC to identify **all Relevant Products**, and for each such Relevant Product, to provide certain information. HTC did not respond to Interrogatory No. 1 with respect to **all Relevant Products**, and instead only identified and provided certain requested information for only

certain Accused Products. Philips has now identified at least the following Relevant Products that should have been identified initially in response to Interrogatory No. 1: (a) Flyer; (b) Sensation; (c) Evo View 4G; (d) Merge; (e) Evo Shift 4G; (f) Thunderbolt; (g) Wildfire; (h) HTC One M8 Harmon Kardon Edition; (i) HTC U11; (j); HTC U Ultra; (k) T-Mobile myTouch 4G; (l) T-Mobile G2; and (m) T-Mobile myTouch 3G slide.

HTC should supplement its response to Interrogatory No. 1 to (1) identify these products; (2) identify any other **Relevant Products**; and (3) provide all of the information requested by Interrogatory No. 1 for each Relevant Product.

**HIGHLY CONFIDENTIAL** Exhibit 25, at 1 (emphasis in original) (filed under seal).

46.    On October 20, 2017, Philips served on HTC "Plaintiffs' Third Amended Identification of the HTC Defendants' Accused Products."  A true and correct copy of this document is attached as Exhibit 26.

47.    Each of these Initial, First, Second, and Third Identification of Accused Products was compiled by reviewing HTC's United States website and expressly identifying by name the devices of which Philips was aware and believed were actually sold in the United States during the relevant time period.

48.    Likewise, the technical appendices of expressly identified products in each of the Initial, First Amended, and Second Amended Infringement contentions were compiled by reviewing HTC's United States website and expressly identifying by name the devices of which Philips was aware and believed were actually sold in the United States during the relevant time period.

49.    On October 24, 2017, Mr. Putman (counsel for HTC) sent Mr. Sharret (counsel for Philips) an email regarding HTC products that Philips specifically identified in its Second Supplemental Infringement Contentions (2017-09-29) and Third Amended Identification of Accused Products (2017-10-20). A true and correct copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 27 (filed under seal).

50.    On October 30, 2017, Mr. Sharret (counsel for Philips) sent an email to counsel for HTC seeking source code that had not been produced for certain products identified in the Third Amended Identification of Accused Products (2017-10-20).  Counsel corresponded with each other regarding these products, and the parties scheduled a meet and confer via telephone on November 6, 2017.  In addition,

on November 1, 2017, I sent Mr. Putman (counsel for HTC) an email explaining that we still had not received a response to my October 5, 2017 letter, and would also like to meet and confer on the issues raised therein.   A true and correct copy of this email exchange is attached as **HIGHLY CONFIDENTIAL** Exhibit 28 (filed under seal).

51.     On November 6, 2017, counsel for the parties met and conferred via telephone regarding the scope of Accused Products and HTC's response to Interrogatory No. 1.  This meet and confer was memorialized in an email I sent to Mr. Putman (counsel for HTC) on November 7, 2017.  A true and correct copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 29 (filed under seal).

52.     During the meet-and-confer, as memorialized by my email of November 7, 2017, Mr. Putman (counsel for HTC) indicated that he would discuss with his team a way forward on the Accused Products issue.

53.     On November 14, 2017, I sent Mr. Putman (counsel for HTC) an email requesting an update on a response to my letter of October 5, 2017 and the meet and confer on November 6, 2017, including *inter alia* and update on a response to Interrogatory Nos. 1 and 2.  A true and correct copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 30 (filed under seal).

54.     I never received a response from Mr. Putman (counsel for HTC) or any other counsel for HTC regarding my letter of October 5, 2017, meet and confer of November 6, 2017, or my emails of November 7, 2017 or November 14, 2017.

55.     On November 18, 2017, HTC served on Philips "HTC Corp. and HTC America, Inc.'s Responses and Objections to Plaintiffs' Notice of Deposition Pursuant to Rule 30(b)(6)."  A true and correct highlighted copy of this document is attached as Exhibit 31.

56.     HTC included General Objection Q which objected to Philips's definition of "Accused Products," stating in part that "HTC understand the 'Accused Product(s)' to include only HTC Products Philips listed in its Identification of the HTC Defendants' Accused Products date January 9, 2017 or charted by name in its Infringement Contentions dated September 29, 2017 and will only provide information related to those products."  *See* Exhibit 31, at 5.

57.     On November 28, 2017, I sent Mr. Putman (counsel for HTC) a letter regarding HTC's objections and responses to certain of Philips's 30(b)(6) topics.  A true and correct copy of this document is attached as Exhibit 32.

58.     In my letter of November 28, 2017, I expressed concern that HTC was taking a limited view as to the definition of "Accused Products," and asked counsel for HTC to "confirm that the designated witnesses will be prepared to discuss [the] devices" identified in Appendix L to Philips's Supplement Infringement Contentions served on September 29, 2017 and Plaintiffs' Third Amended Identification of the HTC Defendants' Accused Products served on October 20, 2017.  In particular, I wrote:

> I write in response to HTC's objections and responses to Certain of Philips'
> 30(b)(6) topics, in particular the topics for which witnesses are designated
> next week and the week following.
>
> **General Objections:**
>
> HTC states in part: "HTC understands the 'Accused Product(s)' to include
> only HTC products Philips listed in its Identification of the HTC Defendants'
> Accused Products dated January 9, 2017 or charted by name in its
> Infringement Contentions dated September 29, 2017 and will only provide
> information related to those products."  As you are probably aware, Philips
> served Plaintiffs' Third Amended Identification of the HTC Defendants'
> Accused Products on October 20, 2017.  This document specifically identifies
> the following products by name: Flyer, Sensation, Evo View 4G, Merge, Evo
> Shift 4G, Thunderbolt, Wildfire, HTC One M8 Harman Kardon Edition,
> HTC U11, HTC U Ultra, T-Mobile myTouch 4G, T-Mobile G2, T-Mobile
> myTouch 3G slide, HTC Desire 555, and HTC Desire 550.  With the
> exception of the Desire 555 and Desire 550 which were inadvertently
> omitted, these devices were included in Appendix L to Philips' Supplemental
> Infringement Contentions served on September 29, 2017.
>
> Please confirm that the designated witnesses will be prepared to discuss these
> devices.

Exhibit 32, at 1.

59.     On November 29, 2017, Mr. Putman (counsel for HTC) responded to my letter of November 28, 2017 regarding HTC's objections and responses to certain definitions and topics, including HTC's objection regarding the definition of "Accused Products."  A true and correct copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 33 (filed under seal).

60.     In particular, Mr. Putman responded:

> Also, in response to your letter—although some of Philips' 30(b)(6) topics are so broad that one witness cannot possibly be prepared to discuss their entire scope, *it was not our intent to limit our responses in the manner suggested by your letter.*

**HIGHLY CONFIDENTIAL** Exhibit 33 (emphasis added) (filed under seal).

61.     Depositions of HTC's designated technical witnesses and HTC's sales witness were conducted from December 5, 2017 through December 15, 2017.

62.     Attached as **HIGHLY CONFIDENTIAL** Exhibit 34 is a true and correct highlighted copy of excerpts from the deposition transcript of Hsiu-Fen Lai, who was designated by HTC to discuss certain sales topics (filed under seal).

63.     Ms. Lai testified in her deposition ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

64.     HTC's technical witnesses offered testimony that related to the Representativeness of the source code on each of HTC's devices.  The following Exhibits contain highlighted excerpts relating to the source code implemented on HTC's Android devices.

65.     Attached as **HIGHLY CONFIDENTIAL** Exhibit 35 is a true and correct highlighted copy of excerpts from the deposition transcript of Jay Wang (filed under seal).

66.     Mr. Wang was designated by HTC as its Rule 30(b)(6) witness regarding certain scrolling functionality related to Philips's infringement allegations against the HTC launcher application (relevant to the '387/'064 patents).  During his deposition, Mr. Wang was ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████.

67.     Attached as **HIGHLY CONFIDENTIAL** Exhibit 36 is a true and correct highlighted copy of excerpts from the deposition transcript of Kuan Chou (Peter) Pan (filed under seal).

68.     Mr. Pan was designated by HTC as its Rule 30(b)(6) witness regarding certain functionality related to Philips's infringement allegations against the screen orientation animation feature (relevant to the '797 patent).  During his deposition, Mr. Pan was ████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████

69.     Attached as **HIGHLY CONFIDENTIAL – SOURCE CODE** Exhibit 37 is a true and correct highlighted copy of excerpts from the deposition transcript of Pierce Huang (filed under seal).

70.     Mr. Huang was designated by HTC as its Rule 30(b)(6) witness regarding certain functionality related to Philips's infringement allegations against the http live streaming ("HLS") feature (relevant to the '806 patent).  During his deposition, Mr. Huang was ████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████

71.     Attached as **HIGHLY CONFIDENTIAL** Exhibit 38 is a true and correct highlighted copy of excerpts from the deposition transcript of Sanry Huang (filed under seal).

72.     Mr. Huang was designated by HTC as its Rule 30(b)(6) witness regarding certain scrolling functionality related to Philips's infringement allegations against certain applications (relevant to the '387/'064 patents).  During his deposition, Mr. Huang was ███████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

73.     Attached as **HIGHLY CONFIDENTIAL** Exhibit 39 is a true and correct highlighted copy of excerpts from the deposition transcript of Simon Chiu (filed under seal).

74.     Mr. Chiu was designated by HTC as its Rule 30(b)(6) witness regarding certain zooming functionality related to Philips's infringement allegations against the Android Magnification Accessibility Feature, the Chrome Browser, and the HTC Browser (relevant to the '564 patent).  During his deposition, Mr. Chiu was ████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

---

[1] Mr. Hawkins (counsel for HTC) represented to counsel for Philips on August 31, 2017 that ████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████

**MCCARTHY DECLARATION**
CASE NUMBER 4:18-CV-01885-HSG

1

2

3

4

5

6

7

8

9

10      75.     Attached as **HIGHLY CONFIDENTIAL** Exhibit 40 is a true and correct highlighted

11  copy of excerpts from the deposition transcript of Vincent Wei (filed under seal).

12      76.     Mr. Wei was designated by HTC as its Rule 30(b)(6) witness regarding the accused

13  functionality of the virtual keyboard (relevant to the '913 patent).  During his deposition, Mr. Wei was

14

15

16

17

18

19

20

21

22      77.     On January 16, 2018, I sent a letter to HTC counsel regarding HTC's deficient discovery

23  responses and certain outstanding disputes between the parties, including *inter alia* HTC's responses to

24  Interrogatory Nos. 1, 2, and 6; the scope of Accused Products; and Representativeness.  A true and

25  correct copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 41 (filed under seal).

26      78.     On January 18, 2018, I sent an email to HTC counsel explaining we have not heard

27  anything regarding my January 16, 2018 correspondence and requested a meet and confer on January 19,

28  2018 [sic: the email contained a typographical error identifying January 18, 2018].  On that same day,

Mr. McBrayer (counsel for HTC) sent me an email requesting more time to respond. A true and correct copy of this email exchange is attached as Exhibit 42.

79.    On January 22, 2018, I responded to Mr. McBrayer (counsel for HTC) explaining that these issues were not new and have been raised well before January 2018. A true and correct copy this email correspondence is attached as Exhibit 43.

80.    On January 26, 2018, I sent an email to Mr. McBrayer (counsel for HTC) noting that we still had not received a response to my letter of January 16, 2018. A true and correct copy of this document is attached as Exhibit 44.

81.    On January 26, 2018, Mr. McBrayer (counsel for HTC) sent me a response to my letter of January 16, 2018. A true and correct copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 45 (filed under seal).

82.    On January 30, 2018, I had a telephone conversation with Mr. McBrayer (counsel for HTC) regarding the issues identified in our respective letters of January 16, 2018 and January 26, 2018.

83.    On February 2, 2018, Philips served on HTC "Plaintiffs' Third Amended Infringement Contentions against the HTC Defendants." A true and correct highlighted copy of excerpts of this document—in particular, the cover sheet, the '913 claim charts, and the technical appendix of expressly identified products—is attached as **HIGHLY CONFIDENTIAL** Exhibit 46 (filed under seal).

84.    The technical appendix of expressly identified products of the Third Amended Infringement Contentions was compiled by searching for names of *any* HTC device by searching HTC's own document production and publically available information, including third-party websites. This was done regardless of whether the device was identified on HTC's United States website, and devices were only excluded if Philips confirmed the devices were *never* sold in the United States. Philips felt this approach was appropriate at that time because of the overly narrow position HTC was taking regarding the scope of discovery and accused products, *i.e.*, that only devices expressly identified by name were accused of infringement and that HTC would only provide discovery on those expressly identified devices.

85.    In other words, the technical appendices for the Initial, First Amended, and Second Amended Infringement contentions listed only those products of which Philips was aware and believed

to be sold in the United States by virtue of being identified on HTC's United States website.  Philips believed it was entitled under Delaware law to discover the identity of any other reasonably similar device (*i.e.*, any other Android device preloaded with operating system version 2.1 or higher) sold in the United States during the relevant time period.  However, HTC has continued to withhold such discovery.

86.     Consequently, and on the other hand, the technical appendix for the Third Amended Infringement Contentions listed ***any*** HTC product of which it was aware, so long as Philips could not confirm that the device was ***never*** sold in the United States.  Philips took this opposite approach for the Third Amended Infringement contentions because it still had not received a complete response to Interrogatory No. 1 which requested an identification of all HTC devices preloaded with Android 2.1 or higher that were ever sold in the United States.

87.     On March 27, 2018, prior to the close of fact discovery under the Delaware Schedule, Philips served on HTC "Plaintiffs' Fifth Set of Interrogatories to the HTC Defendants (Nos. 18-20)."  A true and correct copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 47 (filed under seal).

88.     Philips's Interrogatory No. 20 to HTC requested, *inter alia*, that HTC identify whether expressly identified products were ever sold in the United States, the dates they were sold in the United States, and the operating system versions of those devices.  In particular, it requested:

> For each of the products included in the table below, identify each designation ever known or used by You in connection with that product (e.g., by model number, sub-model number, part number, trade name, catalog number, SKU, code name, internal project name, etc.); whether the product was sold in the United States; the first sale of such product in the United States, and if no longer sold in the United States, the date of last sale in the United States; the Android version preloaded by You on the product prior to being sold in the United States; the HTC Sense version preloaded by You on the product prior to being sold in the United States; any upgrade to the version of Android and/or HTC Sense that would have been preloaded by You on the product after the initial launch of such product and during the products life-cycle, and the date(s) of any such upgrades …

**HIGHLY CONFIDENTIAL** Exhibit 47, at 8-16 (filed under seal).

89.     On May 10, 2018, HTC served on Philips "HTC Corp. and HTC America, Inc.'s Objections and Responses to Plaintiffs' Fifth Set of Interrogatories to the HTC Defendants (Nos. 18-20).

A true and correct highlighted copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 48 (filed under seal).

90.     In its General Objections, HTC objected to the term "Accused Product."  In particular, HTC objected with the following:

> HTC objects to Philips's definition of the term "Accused Product" as vague, ambiguous, overbroad, unduly burdensome, oppressive and imposing a burden disproportionate to the need for discovery in this case. Philips's definition of this term identifies no specific products, and cites to no specific allegation or accusation from this case. Rather, Philips seeks to shift the burden to identify the Android version available on a given product to HTC. Philips' definition is also unduly burdensome as untimely, to the extent it seeks to introduce products and/or theories of infringement into the case at the close of discovery. It is unduly burdensome for Philips to serve requests at the close of fact discovery seeking information about new accused products and/or theories of infringement, particularly when the parties have already exchanged final contentions, and furthermore when Philips' allegations could have been made much earlier in the case based on publicly-available information. HTC will limit its responses to these Requests to address only the products, functionalities, and preloaded Android versions that Philips has specifically accused in its Third Amended Infringement Contentions, served February 2, 2018.

**HIGHLY CONFIDENTIAL** Exhibit 48, at 5 (filed under seal).

91.     On May 18, 2018, I sent a letter to Mr. McBrayer (counsel for HTC) regarding the scope of Accused Products, including HTC's responses to Interrogatory Nos. 1 and 20.  A true and correct copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 49 (filed under seal).

92.     On May 31, 2018, counsel for the parties met and conferred via telephone regarding the scope of Accused Products and Representativeness.

93.     On June 6, 2018, I sent Mr. McBrayer (counsel for HTC) an email memorializing our discussions of May 31, 2018.  On June 11, 2018, Mr. McBrayer responded to my email.  A true and correct copy of this email exchange is attached as **HIGHLY CONFIDENTIAL** Exhibit 50 (filed under seal).

94.     On August 23, 2018, counsel for Philips sent counsel for HTC a document captioned "Plaintiffs' Fourth Amended Identification of the HTC Defendants' Accused Products," as well as Appendix A attached thereto.  Philips served this document to ascertain the full scope of the dispute as to

accused products prior to bringing the dispute to the Court's attention and seeking leave to amend. A true and correct copy of these documents are attached as Exhibits 51and 52, respectively.

95. On September 21, 2018 (4:35pm ET), Mr. McBrayer (counsel for HTC) sent Ms. Nadipuram (counsel for Philips) a letter identifying the products it believed are not properly in this case. A true and correct copy of this document is attached as Exhibit 53.

96. In Mr. McBrayer's letter of September 21, 2018, he stated that he wrote on behalf of HTC, ASUS, Acer, and Microsoft, and in part wrote:

> Philips may not continue to add newly-accused devices until the day before trial, as Philips seems to contend; to the contrary, the parties and Court must draw a reasonable line about the scope of the case, ***and did so through the District of Delaware's Order, set in response to the parties' agreed motion, setting the deadline for final infringement contentions on February 2, 2018***.

Exhibit 53, at 2 (emphasis added).

97. On September 21, 2018 (5:41pm ET), Mr. McBrayer (counsel for HTC) sent Ms. Nadipuram (counsel for Philips) a second letter identifying 15 products that were "never sold," "concept designs that never came to fruition," and/or "are phantom devices that Philips accused but that HTC has found no records suggesting that they existed even as a concept." A true and correct copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 54 (filed under seal).

98. On September 21, 2018, I responded via email to Mr. McBrayer's letter (5:41pm) explaining that each of the 15 devices identified in Mr. McBrayer's letter was identified in HTC's own documents and/or publically available information. I also reiterated that the dispute as to the scope of accused products and which Android 2.x devices were sold in the U.S. since January 1, 2010 could be resolved efficiently by completely answering Interrogatory Nos. 1, 2, and 20 and by producing the complete sales spreadsheet of every Android 2.x device sold in the United States since January 1, 2010—identified as readily available to HTC by Ms. Lai in her deposition (*see, e.g.,* Lai Tr. at 49:2-52:8)— and the accompanying table correlating internal name to external name. A true and correct copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 55 (filed under seal).

99.     Counsel for Philips has reviewed Exhibit A to Mr. McBrayer's September 21, 2018 (4:35pm ET) letter, and has determined that HTC has inappropriately identified products which were properly accused as of and prior to February 2, 2018 in Delaware.  In order to illustrate when such products were expressly identified by name, counsel for Philips has copied each of the supposedly "Improperly Accused HTC Products" into an Excel Sheet.  Next to each product, and to the extent relevant, counsel for Philips has identified the date on which, and the document in which, each of these products was previously identified to HTC (before Philips's August 23, 2018 letter).  A PDF of that Excel sheet is attached as Exhibit 56.

100.    All but three of the devices complained about in Mr. McBrayer's letter were identified as of February 2, 2018, the deadline set for Final Infringement Contentions while this case was pending in the United States District Court for the District of Delaware.  Those three devices are: the Desire A56, the HTC Mega (Touch2), and the HTCU12+.

101.    The HTC U12+ was not released until June/July 2018, four months after Final Infringement Contentions were served and thus could not have been possibly included.  The Desire A56 and HTC Mega (Touch2) were identified in a table attached to an email sent to Mr. Hawkins on August 29, 2017 requesting information as to certain product names.  *See* Exhibit 18.

102.    On October 16, 2018, I sent Mr. McBrayer (counsel for HTC) a letter following up my email of September 21, 2018 and the dispute as to the scope of accused products.  I noted that while we appreciate that the parties appear to be at an impasse as to the scope of accused products, we believe that we can further narrow the issues so as not to burden the Court with needless or irrelevant disputes.  A true and correct copy of this document is attached as **HIGHLY CONFIDENTIAL** Exhibit 57 (filed under seal).

103.    As of the October 30, 2018, I have not received a response from Mr. McBrayer (or any counsel for HTC) to my October 16, 2018 letter.

**MCCARTHY DECLARATION**
CASE NUMBER 4:18-CV-01885-HSG

104.    I declare under the penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on October 31, 2018 in New York, New York.

/s/ Sean M. McCarthy_____ ____
Sean M. McCarthy (admitted *pro hac vice*)

23

**MCCARTHY DECLARATION**
CASE NUMBER 4:18-CV-01885-HSG

FCHS_WS 14747384v1.doc