Michael P. Sandonato (admitted *pro hac vice*)
msandonato@venable.com
John D. Carlin (admitted *pro hac vice*)
jcarlin@venable.com
Natalie Lieber (admitted *pro hac vice*)
ndlieber@venable.com
Christopher M. Gerson (admitted *pro hac vice*)
cgerson@venable.com
Jonathan M. Sharret (admitted *pro hac vice*)
jsharret@venable.com
Daniel A. Apgar (admitted *pro hac vice*)
dapgar@venable.com

Robert S. Pickens (admitted *pro hac vice*)
rspickens@venable.com
Sean M. McCarthy (admitted *pro hac vice*)
smccarthy@venable.com
Jaime F. Cardenas-Navia (admitted *pro hac vice*)
jfcardenas-navia@venable.com
Joyce L. Nadipuram (admitted *pro hac vice*)
jnadipuram@venable.com
Caitlyn N. Bingaman (admitted *pro hac vice*)
cnbingaman@venable.com

VENABLE LLP
1290 Avenue of the Americas
New York, New York 10104-3800
Tel: (212) 218-2100
Fax: (212) 218-2200

Chris Holland (SBN 164053)
cholland@hollandlawllp.com
Lori L. Holland (SBN 202309)
lholland@hollandlawllp.com

HOLLAND LAW LLP
220 Montgomery Street, Suite 800
San Francisco, CA 94104
Tel: (415) 200-4980
Fax: (415) 200-4989

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

In Re Koninklijke Philips Patent Litigation

Case No. 4:18-cv-01885-HSG

**PHILIPS' REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS**

JURY TRIAL DEMANDED

Date: February 14, 2019
Time: 2:00 p.m
Judge: Hon. Haywood S. Gilliam, Jr.
Courtroom: 2

## TABLE OF CONTENTS

**I. The Identification of Accused Products in Philips' February 2018 Final Delaware Infringement Contentions Was Proper and Consistent with Judge Sleet's Rulings** ........ 1

A. Prior Delaware Rules Do Not Require a Showing of Diligence or Good Cause to Add Specific Model Number Designations to the Accused Product List Prior to the Final Contentions Due Date ........ 1

B. Judge Sleet Expressly Rejected Defendants' Proposal to make Interim Infringement Contentions Binding and Imposed No General Requirement for a Showing of Diligence to Add Specific Accused Product Model Number Designations ........ 1

C. Philips Never Agreed That a Showing of Diligence Was Required to Justify Amendments Between its Initial and Final Delaware Contentions ........ 4

D. Though Judge Sleet Imposed No General Requirement for a Showing of Diligence to Add Specific Accused Product Model Number Designations, Philips Diligently Sought Discovery and Properly Supplemented its Initial Identification of Accused Products and Infringement Contentions Prior to the Delaware Final Infringement Contentions Due Date ........ 4

E. Defendants' Supposed Evidence of Philips' Lack of Diligence is Not Compelling In Any Event ........ 5

**II. Defendants Themselves Have Not Met The Standard They Would Have This Court Retroactively Apply to Philips' Actions in Delaware** ........ 8

A. Defendants Have Added Numerous New Invalidity Theories and Over 80 Purported Prior Art References to Their Initial Delaware Invalidity Contentions Without Motion or Showing of Diligence or Good Cause. ........ 8

B. Defendants Never Moved to Strike any of Philips' Interim or Final Infringement Contentions in Delaware Because To Do So Would Have Been Futile and Contrary to Judge Sleet's Prior Rulings ........ 8

**III. Philips' Proposed Amendments to Its Final Delaware Infringement Contentions Should Be Granted** ........ 9

A. Philips' Motion to Amend Was Timely Made and Defendants are in No Position to Question Philips' Diligence in the Period Following its February 2018 Final Delaware Contentions and Transfer to This Court ........ 9

B. Philips' Proposed Amendments Based on Late Produced Google Source Code Should Be Permitted ........ 11

C. Philips' Proposed Amendments Based on Late Produced Microsoft Source Code Should Be Permitted ........ 11

D. Philips Diligently and Properly Supplemented its Identification of Accused Products and Infringement Contentions After Transfer To This District ........ 13

E. Microsoft Has Not and Cannot Claim Any Surprise or Prejudice from the Proposed Amendments Relating to the Doctrine of Equivalents.............................. 14

F. Defendants Do Not Contest Philips' Amendments Related to HTC and Acer's Late Production of Source Code .................................................................. 15

**IV. CONCLUSION** ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*, C05-03117 MJJ, 2007 WL 2221029 (N.D. Cal. July 30, 2007) ....................1

*Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. 12-CV-630, 2012 WL 5632618 (N.D. Cal. Nov. 15, 2012) ....................14, 15

*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, No. 05-CV-4158, 2008 WL 624771 (N.D. Cal. Mar. 4, 2008)....................13

*Honeywell Intern. Inc. v. Audiovox Commun. Corp.*, 04-CV-1536, 2005 WL 3988905 (D. Del. Oct. 7, 2005) ....................1, 3

*Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273 (D. Del. 2012) ....................3, 4

*Nuance Comm'ns, Inc. v. Abbyy Software House*, No. C08-02912 JSW (MEJ), 2012 WL 2427160 (N.D. Cal. June 26, 2012) ....................11

*Yasudevan Software, Inc. v. Int'l Bus. Machines Corp.*, No. C09-05897 RS (HRL), 2011 WL 940263 (N.D. Cal. Feb. 18, 2011)....................11

*Yodlee, Inc. v. CashEdge, Inc.*, No. 05-CV-1550, 2007 WL 1454259 (N.D. Cal. May 17, 2007)....................14

**Other Authorities**

L.R. 3-1(e)....................15

Rule 11 ....................7

## I. The Identification of Accused Products in Philips' February 2018 Final Delaware Infringement Contentions Was Proper and Consistent with Judge Sleet's Rulings

### A. Prior Delaware Rules Do Not Require a Showing of Diligence or Good Cause to Add Specific Model Number Designations to the Accused Product List Prior to the Final Contentions Due Date

Defendants now assert that Philips must show "diligence" for each additional individual accused product number that was not separately delineated in its initial Delaware Infringement Contentions (hereinafter "ICs"). Dkt. No. 559 ("Opp'n Br.") at 10. But, they point to no Delaware authority that actually supports that assertion. In their now-withdrawn Motion to Strike, Defendants attempted to rely on the Delaware Default Standard for Discovery. But, as explained in our opening brief, that Default Standard provides no such basis – the deadlines prescribed therein are "initial" and the Parties are expressly "permitted to supplement" those disclosures. Dkt. No. 535-1 ("JN Decl., Ex. 1") at 4 n.3. In their opposition, Defendants also cherry pick a few passages from the June 20, 2017 conference before Judge Sleet and a single footnote in *Honeywell Intern. Inc. v. Audiovox Commun. Corp.*, 04-CV-1536, 2005 WL 3988905 (D. Del. Oct. 7, 2005), none of which support their position.[1]

### B. Judge Sleet Expressly Rejected Defendants' Proposal to make Interim Infringement Contentions Binding and Imposed No General Requirement for a Showing of Diligence to Add Specific Accused Product Model Number Designations

Contrary to Defendants' suggestion, Judge Sleet did not impose any requirement for a showing of cause or diligence for Philips to supplement its delineation of individual accused model numbers prior to the due date for the final ICs in Delaware. In fact, as outlined in our opening brief, during the June 20, 2017 conference, Judge Sleet expressly rejected Defendants' efforts to make Philips' interim ICs (what Defendants' refer to as Amendment A) binding. Instead, Judge Sleet ruled that those interim ICs would not be binding and that Philips could supplement them when its final ICs became due, so long as Philips did not act in bad faith. Dkt. No. 535-2 ("JN Decl., Ex. 2") at 35:1-7 (emphasis added).

---

[1] Defendants also cite to *Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*, C05-03117 MJJ, 2007 WL 2221029, at *1 (N.D. Cal. July 30, 2007). This Northern District of California case has no relevance to the standards in force in Delaware.

After Judge Sleet made that ruling, counsel for Acer and ASUS expressed a specific concern that Philips might delay unnecessarily in seeking relevant source code from third parties after the June 20, 2018 conference. *Id.* at 38:17-41:18. Judge Sleet agreed that Philips should be diligent in seeking such third party source code and that would be "part of the calculus for the Court." *Id.* at 41:17-18. But, he did not alter his prior ruling that interim ICs (so-called Amendment A) would otherwise not be binding and that adding additional model numbers for products that were "heretofore publicly accessible" would, at most, be subject to a good faith analysis. *Id.* at 32:20-33:8; 35:1-7. In fact, he reiterated it. *Id.* at 54:10-13. To the extent Judge Sleet directed Philips to be diligent in seeking third party source code, such direction had nothing to do with the delineation of individual model numbers in connection with Philips' final ICs (so-called Amendment B).

Furthermore, and contrary to the suggestion on page 3 of Defendants' opposition, Judge Sleet did not ever state that Philips would be require to show "diligence" in order to supplement the delineation of individual accused model numbers in its initial identification of accused products prior to the date for final ICs. Rather, he said at most that it "might be a factor in my determination of whether there is bad faith afoot. I don't know." *Id.* at 32:25-33:8. There is no allegation here that Philips acted in bad faith as concerns the delineation of individual accused model numbers.

On page 3 of their opposition brief, in discussing the June 2017 conference with Judge Sleet, Defendants assert that they "raised their concerns with the Delaware court about the 'moving target' of Philips' infringement allegations." Opp'n Br. at 3. But, this had nothing to do with the supplementation and delineation of individual accused model numbers, which is expressly permitted under Section 4 of the Delaware Default Standard. Dkt. No. 58, *so ordered* October 12, 2016. Rather, Defendants' counsel, Mr. McBrayer, expressed a concern that Philips might thereafter seek to change the underlying infringement *theories* if the interim Delaware ICs (so-called Amendment A) were not made binding. JN Decl., Ex. 2 at 19:24-22:23. In fact, although Philips had twice supplemented its identifications of accused model numbers prior to the June 2017 conference, Mr. McBrayer conceded

that Philips had not yet "moved their allegations" in the manner that was in dispute at that conference. McCarthy Decl. ¶¶ 2-3; JN Decl., Ex. 2 at 22:15-23.

Finally, *Honeywell* did not involve a motion to amend contentions or impose any requirement for "diligent investigation of public information" and therefore cannot support Defendants' position. If anything, *Honeywell* supports Philips' position that it was entitled to seek discovery from Defendants, including an identification of specific model numbers for products that ran the same accused operating systems as those specifically identified by model name/number in Philips' initial identification of accused products in Delaware. In *Honeywell*, the plaintiff had brought suit against an "extraordinary number of defendants…," including both retailers and manufacturers of electronic products with LCD screens. The Court stayed the retailer defendant actions pending resolution of the manufacturer defendant cases. The issue in *Honeywell* was simply what discovery the plaintiff was entitled to from the retailer defendants while their actions were stayed. *Honeywell* says nothing about what broader scope of discovery the plaintiff would be entitled to once that stay was lifted. Moreover, despite the fact that the retailer defendant actions had been stayed, the Court nevertheless ordered the retailer defendants to identify and provide certain discovery concerning products that had not been "specifically identified" by Honeywell as accused products to the extent they "utilize the same [or other versions of the same] LCD module as in the specifically identified products… or other LCD modules with substantially the same structure as the LCD module or modules contained in the specifically identified products." *Id.* at *1. Furthermore, even to extent that *Honeywell* did support Defendants' position, it would run counter to the later-decided *Invensas* decision cited in Philips' opening, which itself distinguishes *Honeywell* while citing to a number of other decisions that support Philips' position in conjunction with a substantive analysis of this issue. *See Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 279-282 (D. Del. 2012).

### C. Philips Never Agreed That a Showing of Diligence Was Required to Justify Amendments Between its Initial and Final Delaware Contentions

Contrary to Defendants' assertions, Philips did not agree during the October 2, 2018 Case Management Conference that it was required to show good cause or diligence to support anything disclosed in its final Delaware ICs. At that hearing, counsel for Philips only confirmed that, as counsel for Defendants requested, Philips would "move to amend on the accumulation of its amendments since that first notice." Philips' opening brief and declarations do exactly that. First, they explain that amendments prior to the final deadline for ICs in Delaware were permissible because they were subject at most to a good faith standard. Defendants have not even asserted that Philips acted in bad faith. Second, they summarize efforts Philips made to seek discovery related to its ICs, including to learn the identity of specific additional model numbers that employed the accused functionalities and were sold by Defendants within the United States. Mot. at 13-15. Philips did not commit to separately analyze and justify any of the amendments reflected in its final ICs under a so-called "diligence" standard that was not in force and that Defendants themselves have not followed. *See infra* at Section III. To be clear, as explained above and in our opening brief, all parties were permitted to amend their contentions in Delaware up to the due date for final contentions, provided they did not act in bad faith.

### D. Though Judge Sleet Imposed No General Requirement for a Showing of Diligence to Add Specific Accused Product Model Number Designations, Philips Diligently Sought Discovery and Properly Supplemented its Initial Identification of Accused Products and Infringement Contentions Prior to the Delaware Final Infringement Contentions Due Date

Furthermore, and contrary to Defendants' assertions, Philips fully complied with Delaware procedures for accused products lists by providing fulsome and clear notice of the scope of the accused products in this case at the time of its Default Standard disclosures, and by engaging in subsequent efforts to discover and identify any additional specific model number designations that correspond to Defendants' infringing products thereafter. Dkt. No. 529 ("Mot.") at 10-15; *See e.g.*, *Invensas*, 287 F.R.D. at 280 (allowing discovery seeking identification of products where plaintiff has asked defendants "to identify ***which products*** match a particular description.") (internal quotations and

citations omitted). Philips clearly set forth what operating systems and functionality were accused in its June 2016 initial accused products lists, and clearly accused any of Defendants' products that contained the so-defined accused operating systems or functionality infringing each of the Asserted Patents (*e.g.*, for the '913 Patent, "Acer smartphones, tablet computers, laptops, and All-in-One PCs . . . pre-loaded with the Android Operating System, the Chrome Operating System, or the Windows Operating System version 8 or higher"). *See, e.g.*, Dkt. No. 534-1 ("RP Decl., Ex. 1"). To the extent that Philips was or became aware of specific model numbers when serving its initial, interim, or final Delaware ICs and identifications of accused products, it listed them. Philips appropriately sought to identify additional individual model number designations for Defendants' infringing products thereafter (*e.g.*, through Philips' Interrogatory No. 1, which sought discovery as to the model number designation of Defendants' products containing the infringing features). Mot. at 5-7. The chronology of these amendments diligently and fairly follows Defendants' eventual production and responses to Philips' discovery requests. Mot. at 13-16.

### E. Defendants' Supposed Evidence of Philips' Lack of Diligence is Not Compelling In Any Event

Defendants assert that Philips should have been able to identify accused products by "searching on Google or elsewhere on the Internet for the accused devices." In support of this theory, they point to a series of exhibits which are purported to show how Philips "could have easily discovered these products earlier" using "publicly-available material." Opp'n Br. at 2. But, even a cursory review of Defendants' offered evidence reveals that their suggested approach is flawed and unreliable, that the evidence they have collected could not have "easily" formed the basis of valid allegations of infringement in this action.

In particular, Defendants suggest repeatedly that Philips should have referenced and relied on Wikipedia to reliably identify the individual model numbers to specifically accuse. Opp'n Br. at 2, 7-9, 11. Wikipedia is a crowd-sourced, publicly editable encyclopedia and even the website's founder

has cautioned against its use as a source. McCarthy Decl., Ex. 1. Wikipedia's own article about "Citing Wikipedia" even states that "[w]e advise special caution when using Wikipedia as a source for research projects," and further advises users to:

> Remember that Wikipedia is a wiki. Anyone in the world can edit an article, deleting accurate information or adding false information, which the reader may not recognize. Thus, you ***probably shouldn't be citing Wikipedia***."

*See* McCarthy Decl., Ex. 2 (emphasis in original). Given that Wikipedia itself cautions against its use as a source, Philips could hardly be expected to have relied on it as a source to support of its ICs.

As just one example, Defendants assert that Philips could have relied on Dkt No. 559-15, a Wikipedia page entitled "Comparison of HTC devices" to identify and list HTC products, and "had Philips done any of these obvious things, the information about these products would have been immediately apparent." Opp'n Br. at 11. But, this document suffers from exactly the kind of general reliability problems discussed above, and about which Wikipedia cautions its users. Direct support is not provided for nearly any of the specifications provided on that page, and even where support is provided in the footnotes, many of the citations are to HTC's foreign-facing websites, including HTC's Korea, Canada, and United Kingdom websites. Furthermore, even where that Wikipedia page does theoretically cite to HTC's own U.S. website, nearly every single footnoted link is to a now-defunct webpage, each of which returns only the statement "THIS PAGE IS UNAVAILABLE," thus rendering the citations useless. *See, e.g.*, McCarthy Decl., Ex. 9. The only thing that is apparent on the face of this document is that it is of dubious reliability.

Further, Defendants attempt to incorporate numerous other exhibits from their withdrawn Motion to Strike[2] to suggest that Philips should have consulted and relied on foreign-facing websites, foreign publications, or other documents that indicate sale or use of products ***outside*** of the U.S. With

---

[2] Defendants' attempt to wholesale incorporate their withdrawn Motion to Strike is improper and effectively flouts the applicable page limits for their responsive brief.

respect to HTC, this includes at least 30 different exhibits to Jonathan Putman's Declaration that purport to be archived versions of HTC's Europe, Singapore, Middle East, Canada, Vietnam, and Korea websites. *E.g.,* Dkt. Nos. 493-2, -5 (HTC Europe); 493-4, -31, -39, 44, 51, 54, 55, 58, 102, 113, 115 (HTC Singapore); 493-18, -27 (HTC Middle East); 493-46 (HTC Canada); 493-47, 52, 56, 60, 62, 65, 68, 73, 75, 86, 105, 109, 114 (HTC India); and 493-94 (HTC Korea). Similarly, one of Acer's most often cited sources within its omnibus "Exhibit 2 to the Lin Declaration" is an English language version of a ***German*** website, notebookcheck.net, and the pages cited by Acer include many indications that they may not relate to U.S. products at all (*e.g.*, listing prices in Euros). *See* McCarthy Decl., Ex. 10 (explaining that "Notebookcheck.com is the ***German based origin*** of notebookcheck.net."); s*ee, e.g.*, Dkt. No. 499-3 ("Lin Decl., Ex. 2, Part 1") at 2, 8, 18, 40; Dkt. No. 501-1 ("Lin Decl., Ex. 2, Part 2") at 14, 28, 48, 62; Dkt. No. 502-1 ("Lin Decl., Ex. 2, Part 3") at 2, 12, 23, 49; Dkt. No. 503-1 ("Lin Decl., Ex. 2, Part 4") at 10, 28, 57, 69. Acer's Exhibit 2 also cites to numerous different pages from other websites that show prices listed only in Euros or other currencies, as well as a number of clearly foreign-based websites, such as expertreviews.***co.uk***, jagatreview.com (written in what appears to be Indonesian), and cnet.com/***uk***. *See, e.g.*, Lin Decl. Ex. 2, Part 1 at 4, 65, 223; Lin Decl., Ex. 2, Part 4 at 185, 209; Lin Decl., Ex. 2, Part 3 at 283, 414. ASUS's cited support also contains similar deficiencies. *See, e.g.*, Dkt. No. 497-16 ("Neilson Decl., Ex. 15"); Dkt. No. 497-17 ("Neilson Decl., Ex. 16"); Dkt No. 497-26 ("Neilson Decl., Ex. 25").

In other words, Defendants assert in their opposition that Philips should have scoured ***foreign*** websites and relied on "publicly available" evidence of ***foreign*** sales to delineate specific model numbers accused of infringement in the U.S. That is unreasonable and hypocritical. Earlier today, HTC's counsel sent an email chastising Philips for including in this motion model numbers that HTC contends were never sold in the U.S. and plainly asserts that evidence of foreign sales does not "form[] even the most basic Rule 11 basis" for asserting infringement in the U.S. McCarthy Decl., Ex. 11. Defendants cannot have it both ways. HTC's email of today only confirms that Philips acted

reasonably in seeking reliable information about what products were sold in the U.S. through the discovery process.

## II. Defendants Themselves Have Not Met The Standard They Would Have This Court Retroactively Apply to Philips' Actions in Delaware

### A. Defendants Have Added Numerous New Invalidity Theories and Over 80 Purported Prior Art References to Their Initial Delaware Invalidity Contentions Without Motion or Showing of Diligence or Good Cause.

Just as Philips amended its accused products lists and initial ICs on several occasions while this case was pending in Delaware, Defendants have similarly amended their invalidity contentions at least four-times since serving their initial Invalidity Contentions in Delaware on September 30, 2016 (including on July 21, 2017, November 3, 2017, March 16, 2018, and November 15, 2018). These amendments have added not only new theories, but also over 80 new invalidity references. McCarthy Decl. ¶¶ 8-12. Section 4 of the Delaware Default Standard for Discovery, on which Defendants rely, imposes a corresponding obligation under which "***each defendant shall produce to the plaintiff its initial invalidity contentions*** for each asserted claim, as well as ***the related invalidating references*** (*e.g.*, publications, manuals and patents)." JN Decl., Ex. 1 at 4. Significantly, Defendants have never attempted to justify any of their own amendments by showing diligence or cause.

If the Delaware Default Standard or Judge Sleet's prior rulings somehow imposed on Philips a diligence standard for delineating additional model numbers, what of Defendants' wholesale additions to their invalidity contentions? Each of Defendants' later disclosed references is allegedly prior art and, by definition, "publicly available." Accordingly, by Defendants' logic, they all should have been individually delineated and addressed in Defendants' initial Invalidity Contentions on September 30, 2016. Defendants cannot have one rule for themselves and another for Philips.

### B. Defendants Never Moved to Strike any of Philips' Interim or Final Infringement Contentions in Delaware Because To Do So Would Have Been Futile and Contrary to Judge Sleet's Prior Rulings

Further, if initial contentions in Delaware were subject to a good cause or diligence requirement, Defendants could and should have moved to strike Philips' supplemental identifications

of accused product model numbers and so-called Amendments A and B to its Initial Delaware ICs while this case was venued in Delaware. Philips first amended its accused products lists on August 26, 2016 to specifically identify additional accused model numbers, nearly two years before this case was transferred to this Court, and Philips further amended its accused products lists on at least three more occasions prior to transfer. McCarthy Decl. ¶¶ 3, 5-6. Yet, at no point while this case was venued in Delaware did the Defendants do so. Defendants should not now be heard to question Philips' final Delaware ICs.

## III. Philips' Proposed Amendments to Its Final Delaware Infringement Contentions Should Be Granted

For the reasons stated above and in our opening brief, the disclosures in Philips' final Delaware ICs are entirely proper and should be recognized as properly included in Philips' ICs in this District. In addition, the present motion also seeks permission to make certain amendments to Philips' final Delaware ICs. These amendments include additional individual accused model names and numbers, as well as amendments to certain infringement theories, and the source code analyses referenced therein, based on untimely productions of source code by HTC, Google, and Microsoft.

### A. Philips' Motion to Amend Was Timely Made and Defendants are in No Position to Question Philips' Diligence in the Period Following its February 2018 Final Delaware Contentions and Transfer to This Court

On pages 22-23 of their opposition, Defendants assert that Philips should have moved earlier to amend its Delaware final ICs. In particular, they argue that Philips had a "deep understanding" of Google's source-code production by March 22, 2018, and should have then moved to amend its final Delaware ICs. This assertion is without merit for several reasons.

First, after conducting two CMCs and hearing extensively from all parties, this Court set the schedule for proposing conforming and substantive amendments to the previously served final Delaware contentions. Defendants should not now be heard to question that schedule.

Second, less than a week after March 22, 2018, this matter was transferred from Delaware to this Court. Immediately thereafter, the Defendants themselves insisted on a "pause" in proceedings

until this Court was able to conduct a CMC. Further, as is discussed below, Defendants refused to agree to Philips' proposal for an earlier exchange of proposed amendments to Philips' ICs.

In particular, on March 28, 2018, the day after this matter was transferred to this Court, Counsel for Defendants wrote to Philips stating that "[w]hen cases transfer into this District, the usual custom is to ***pause all proceedings*** until the new Court can hold a case management conference." Dkt. No. 530-16 (emphasis added). Thereafter, Philips proposed that "[w]ithin a week of these cases being assigned to a Judge, Philips will send a proposed schedule that ***will include exchanging updated contentions***." McCarthy Decl., Ex. 3 at 2 (emphasis added). Philips again wrote to Defendants on April 20, 2018 and proposed to serve "amended infringement contentions" on June 5, 2018. McCarthy Decl., Ex. 4 at 2-3. On May 4, 2018, Philips followed up with Defendants, again seeking agreement and further clarifying that the updated ICs proposed for service on June 5, 2018 would be updated to reflect the fact that Philips had "continued our investigation in these cases, including by analyzing recently produced documents and source code from both the Defendants and third parties." McCarthy Decl., Ex. 5 at 4. Philips followed up again with Defendants on May 14, 2018 and May 24, 2018 seeking Defendants' agreement to Philips' proposed amendment schedule, and further cautioning that "[d]efendants have been dilatory in providing the discovery that Philips is entitled to" and providing further notice that Philips intended to supplement its ICs. McCarthy Decl., Exs. 6, 7. On May 30, 2018, Defendants declined to agree to Philips' proposal, stating instead that "[w]e think it will be most efficient to continue discussing the schedule and case management details in the context of the joint Case Management Statement that is due in a few weeks." McCarthy Decl., Ex. 8. Defendants cannot reasonably argue that this period of time should be held against Philips. Philips not only put Defendants on notice that it intended to substantively amend its ICs, but it followed up repeatedly in an attempt to arrange for a prompt and timely exchange of those amended ICs. It was Defendants who insisted on waiting until the Court set a schedule.

Thereafter, at the June 26 CMC, the Court suggested that, rather than proceed in a piecemeal

fashion, Philips should complete any outstanding discovery that would be implicated in its proposed amendments, and then proceed to bring its ICs into compliance with the Local Rules at the same time it sought to substantively amend its ICs. Dkt. No. 535-3 ("JN Decl., Ex. 3") at 18:17-19:19. The Court also set a date for a subsequent CMC on October 2, 2018. During the second CMC Conference on October 2, 2018, the Court directed Philips to first bring its existing contentions into compliance with the Local Rules on October 25, 2018, and then separately move to make any substantive amendments (*e.g.*, with respect to accused products and infringement theories) by October 31, 2018. Dkt. No. 535-4 ("JN Decl., Ex. 4") at 22:18-20. Philips served its N.D. Cal.-compliant ICs on October 25 and, in this motion, seeks leave to amend its ICs for good cause. At the second CMC, the Court set fact discovery to close in early January 2019. In view of this history, Defendants' assertion that Philips should have sought to amend its final Delaware ICs earlier is disingenuous.

Finally, N.D. Cal. courts have often permitted motions to amend even where there was a delay of several months. *See Nuance Comm'ns, Inc. v. Abbyy Software House*, No. C08-02912 JSW (MEJ), 2012 WL 2427160, at * 2 (N.D. Cal. June 26, 2012) (finding a delay of a "few months" diligent); *Yasudevan Software, Inc. v. Int'l Bus. Machines Corp.*, No. C09-05897 RS (HRL), 2011 WL 940263, at *3–4 (N.D. Cal. Feb. 18, 2011) (finding a delay of four months diligent).

**B.     Philips' Proposed Amendments Based on Late Produced Google Source Code Should Be Permitted**

Philips has proposed amendments to its final Delaware ICs for the '806 patent to account for late produced Google Source Code for the YouTube and Google Play Movies & TV applications. Defendants' only apparent basis for opposing those amendments is their assertion that Philips did not timely move to amend its ICs upon transfer to this district. Opp'n Br. at 21-23. As is addressed in full immediately above, any alleged delay is entirely justified, and therefore Defendants' arguments against Philips' amendments based on Google's late produced source code must fail.

**C.     Philips' Proposed Amendments Based on Late Produced Microsoft Source Code Should Be Permitted**

Philips has also proposed amendments to its final Delaware ICs based on Microsoft's late produced source code. For the same reasons offered above, Defendants are in no position to complain about any alleged delay following service of the final Delaware ICs and transfer to this District.

Defendants also assert that Philips' proposed amendments to its final Delaware ICs concerning the '387 and '064 patent should be denied because the Windows source code was, after months of wrangling, technically made available for inspection prior to the deadline for final Delaware ICs. As was explained in Philips' opening brief, Philips first sought source code from Microsoft in March of 2017, and sought to resolve deficiencies in Microsoft's source code production for months thereafter before Microsoft finally agreed to make the complete Windows operating system code base available for inspection beginning November 15, 2017. Dkt No. 530 ("JS Decl."), ¶¶ 61-84. Philips' had several code reviewers diligently review Microsoft's source code from that point onward, but there simply was not enough time remaining to complete the review and analysis, and to incorporate it into Philips' final Delaware ICs. JS Decl., ¶¶ 91, 93.

Defendants also assert that Philips has failed to show that it acted with diligence with respect to its proposal to amend its final Delaware ICs for the '564, '819, and '809 patents to account for late production of the Windows source code. Philips' amendments as to those patents are essentially limited to the addition of a limited subset of additional cited source code pages in support of its preexisting theories. As is discussed above and in Philips' opening brief, Philips has provided adequate evidence of Microsoft's delay in producing its source code. Given that Philips has not amended its theories for these patents substantively, Microsoft's delay alone is sufficient to justify the timing of Philips' limited additions for these patents.

Defendants further allege that they will be "prejudiced if Philips is permitted to advance these new source code infringement theories," and that Philips' amendments should be denied on that ground. In particular, Microsoft asserts that "[m]uch of the newly-cited code is legacy source code that Microsoft's engineers have not worked on in years" and that "[i]n some cases, the engineers who

wrote the source code are no longer with the company." Opp'n Br. at 24-25. But, as explained above, Philips requested the Windows source code in March of 2017. Microsoft delayed its production and should be heard to complain now. In any case, it is difficult to understand how Philips' supposed delay of several months in identifying the source code has prejudiced Microsoft if the code has not been worked on in "years," and Microsoft makes no allegation that any relevant employee has recently left the company during the period of Philips' delay. These grounds do not support a showing of prejudice. Furthermore, Microsoft's other arguments regarding the timing of depositions ring hollow given that Microsoft itself has now offered eight of its own witnesses for deposition between now and the close of fact discovery, including several technical witnesses. McCarthy Decl.¶ 13.

Finally, Microsoft's reliance on *Barry v. Medtronic, Inc.* is misplaced. *Barry* is an out of district Texas opinion, and that court's decision on prejudice was premised on the fact that the Defendant had "argued its claim construction position under [Plaintiff's] First Amended Infringement Contentions." No. 1:14-CV-0104, 2016 WL 7665768, at *4 (E.D. Tex. May 9, 2016). Such factors are not relevant here, as the Delaware court concluded its claim construction process in Delaware long before even Philips' final ICs were due there. Moreover, Defendants have not explained how any of Philips' amendments would actually affect Defendants' positions on claim construction.

### D. Philips Diligently and Properly Supplemented its Identification of Accused Products and Infringement Contentions After Transfer To This District

As is explained further in Philips' opening brief, the changes Philips has proposed to make to accused model numbers following transfer reflect either newly released products or discovery that was belatedly provided by Defendants in response to discovery requests served long ago in Delaware. Mot. at 16-22. Defendants do not challenge the addition of any newly released products. Opp'n Br. at 2. The other additions should be found proper for all of the same reasons described above with respect to the amendments made in Delaware. *See supra* at Sections I-II. The only reason that these products were not included in Philips' final ICs in Delaware is due to Defendants' delay in providing the

required discovery. Defendants have provided that discovery now, and Philips should not be precluded from including the results of it, as it would have been permitted to in Delaware.

**E. Microsoft Has Not and Cannot Claim Any Surprise or Prejudice from the Proposed Amendments Relating to the Doctrine of Equivalents.**

Philips' proposed amendments relating to the Doctrine of Equivalents in the Microsoft ICs should also be permitted. In this District, "[c]ourts have allowed amendments [to ICs] when the movant made an honest mistake, the request to amend did not appear to be motivated by gamesmanship, or where there was still ample time left in discovery." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. 12-CV-630, 2012 WL 5632618, at *2, *6 (N.D. Cal. Nov. 15, 2012) (allowing amendments to ICs where "it appears that Apple's omission of the second set of charts was due to an honest mistake" based on "evidence . . . that Apple had originally intended for these charts to be a part of the June 15 infringement contentions[, including that] the missing claims charts are listed in Apple's Claims Summary Table (the table of contents of their June 15 contentions), and duplicates of other charts were served in place of the second set of omitted charts.)[3]

The facts here are similar to those described in *Apple*, and this Court should allow Philips' proposed amendments on the same grounds. As Philips explained in its opening brief, the omission of these Doctrine of Equivalents theories in Philips' February Contentions was due to an honest mistake – a mistake which is plainly evidenced by inclusion of these same theories in the ICs served other defendants in this consolidated litigation. *See, e.g.*, JS Decl., Ex. 2 (showing the inclusion of these theories as to HTC). Furthermore, Defendants have not argued that Philips' errors were motivated by gamesmanship – and they were not. Lastly, at the time that Microsoft received notice of these errors, there were over two months of fact discovery remaining in this case, which is more than ample time under the circumstances. This is especially true given that, in a typical Northern

[3] Further citing to *Yodlee, Inc. v. CashEdge, Inc.*, No. 05-CV-1550, 2007 WL 1454259, at *2 (N.D. Cal. May 17, 2007) and *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.,* No. 05-CV-4158, 2008 WL 624771, at *3 (N.D. Cal. Mar. 4, 2008).

District of California case, the N.D. Cal. Pat. L.R. require only a list of limitations that a patentee alleges infringe under DOE (*see* Pat. L.R. 3-1(e)).

Moreover, Microsoft has not and cannot claim any prejudice. Microsoft's only "basis" for asserting prejudice is that it cannot "adequately explore" Philips' theories in the time remaining in fact discovery. But, they do not identify any discovery they purportedly need, and they have not articulated in any manner what they would have done differently if these theories were formally disclosed earlier, or explained why any such actions could not be taken now. As such, Microsoft cannot contend that it will be prejudiced by this amendment under the circumstances, and this Court may allow it under the standard shown in *Apple*.

### F. Defendants Do Not Contest Philips' Amendments Related to HTC and Acer's Late Production of Source Code

Finally, Defendants' do not contest the permissibility of a number of Philips proposed additions, including at least those related to HTC's and Acer's late production of source code (described in JS Decl., ¶¶ 6-44, 98-102). Defendants have waived any objection as to any uncontested additions and Philips should be granted leave to amend on the bases presented in its opening motion.

## IV. CONCLUSION

Philips respectfully requests the Court grant Philips leave to amend its ICs, and provide any other relief the Court deems just.

Dated: December 7, 2018

Respectfully submitted,

Chris Holland (SBN 164053)
Lori L. Holland (SBN 202309)
HOLLAND LAW LLP
220 Montgomery Street, Suite 800
San Francisco, CA 94104
Telephone: (415) 200-4980
Fax: (415) 200-4989
cholland@hollandlawllp.com
lholland@hollandlawllp.com

/s/ Michael P. Sandonato
Michael P. Sandonato (admitted *pro hac vice*)
John D. Carlin (admitted *pro hac vice*)
Christopher M. Gerson (admitted *pro hac vice*)
Natalie Lieber (admitted *pro hac vice*)
Jonathan M. Sharret (admitted *pro hac vice*)
Daniel A. Apgar (admitted *pro hac vice*)
Robert S. Pickens (admitted *pro hac vice*)
Sean M. McCarthy (admitted *pro hac vice*)
Jaime Cardenas-Navia (admitted *pro hac vice*)
Joyce L. Nadipuram (admitted *pro hac vice*)
Caitlyn N. Bingaman (admitted *pro hac vice*)

VENABLE LLP
1290 Avenue of the Americas
New York, New York, 10104
+1 (212) 218-2100
+1 (212) 218-2200 facsimile
philipsprosecutionbar@venable.com

*Attorneys for Plaintiffs Koninklijke Philips N.V. and U.S. Philips Corporation*