Michael P. Sandonato (admitted *pro hac vice*)
msandonato@venable.com
John D. Carlin (admitted *pro hac vice*)
jcarlin@venable.com
Natalie Lieber (admitted *pro hac vice*)
ndlieber@venable.com
Christopher M. Gerson (admitted *pro hac vice*)
cgerson@venable.com
Jonathan M. Sharret (admitted *pro hac vice*)
jsharret@venable.com
Daniel A. Apgar (admitted *pro hac vice*)
dapgar@venable.com

Robert S. Pickens (admitted *pro hac vice*)
rspickens@venable.com
Sean M. McCarthy (admitted *pro hac vice*)
smccarthy@venable.com
Joyce L. Nadipuram (admitted *pro hac vice*)
jnadipuram@venable.com
Caitlyn N. Bingaman (admitted *pro hac vice*)
cnbingaman@venable.com

VENABLE LLP
1290 Avenue of the Americas
New York, New York 10104-3800
Tel: (212) 218-2100
Fax: (212) 218-2200

Chris Holland (SBN 164053)
cholland@hollandlawllp.com
Lori L. Holland (SBN 202309)
lholland@hollandlawllp.com
Ethan Jacobs (SBN 291838)
ejacobs@hollandlawllp.com

HOLLAND LAW LLP
220 Montgomery Street, Suite 800
San Francisco, CA 94104
Tel: (415) 200-4980
Fax: (415) 200-4989

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

|  |  |
|---|---|
| In Re Koninklijke Philips Patent Litigation | Case No. 4:18-cv-01885-HSG<br><br>JURY TRIAL DEMANDED<br><br>**PHILIPS' OPPOSITION TO MICROSOFT'S MOTION TO STAY CLAIMS INVOLVING THE '064 PATENT**<br><br>Date: September 12, 2019<br>Time: 2 p.m.<br>Judge: Hon. Haywood S. Gilliam, Jr.<br>Courtroom: 2 |

# **TABLE OF CONTENTS**

I. INTRODUCTION ....................................................................................... 1

II. FACTUAL BACKGROUND ........................................................................ 2

III. COLLATERAL ESTOPPEL DOES NOT AND CANNOT APPLY HERE ........................ 6

    A. The PTAB's '387 Patent Decision Has No Collateral Estoppel Effect Because it Is Not "Final" ............................................................................ 7

    B. Even if Affirmed, There Can Be No Estoppel of Philips' '064 Patent Claims in This Court Because the Burdens of Proof Are Different and Therefore the Same Issue Has Not Actually Been Litigated ..................................... 9

    C. If Affirmed, a PTAB Decision of Unpatentability Bars Parallel District Court Litigation on the Same Patent, Not Because of Collateral Estoppel, But Because Congress Delegated Limited Reexamination Authority to the Patent Office to Cancel Rejected Claims, and Cancellation Extinguishes the Underlying Basis for Suits Involving the Same Patent ....................................... 14

        1. In the AIA, Congress Delegated Limited Authority to the Patent Office to Cancel Rejected Claims .................................................... 15

        2. Congress Expressly Limited the Collateral Estoppel Effect of PTAB Decisions to Petitioners ............................................................ 17

        3. Under the Framework Established by Congress, Collateral Estoppel Cannot Apply As Microsoft Argues It Should ................................ 17

        4. Regardless of What Happens on Appeal of the PTAB's '387 Patent Decision, the PTAB Will Not Cancel the '064 Patent Claims ............... 18

        5. Microsoft's Collateral Estoppel Theory Is a Fundamentally Flawed, Transparent Attempt to Circumvent the AIA's One-Year Timeline for Filing IPR Petitions and to Avoid the Consequences of Its Multiple Failed IPRs on the '064 Patent ............................. 19

IV. ALL OF THE FACTORS WEIGH AGAINST MICROSOFT'S PROPOSED PARTIAL STAY, EVEN UNDER THE INCORRECT ASSUMPTION THAT COLLATERAL ESTOPPEL APPLIES IF THE '387 IPR DECISION BECOMES FINAL ................................................................................................... 19

    A. Discovery is Complete and a Trial Date Has Been Set ........................... 20

    B. Microsoft's Proposed Partial Stay Does Little to Simplify the Currently Scheduled Trial and Risks the Inefficiency of Having to Conduct an Entire Separate Trial Later ............................................................................. 21

    C. A Stay would Prejudice Philips and Provide Microsoft Clear Tactical Advantages ........................................................................................ 22

V.    THERE IS NO REASON TO DISRUPT THIS CASE'S SCHEDULE TO ALLOW FOR MICROSOFT'S PROPOSED SUMMARY JUDGMENT MOTION EARLY, PARTICULARLY IN VIEW OF MICROSOFT'S ERRONEOUS VIEW OF THE LAW ...................................................................... 23

VI.    CONCLUSION ............................................................................................................ 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PHILIPS' OPPOSITION TO MICROSOFT'S MOTION TO STAY CLAIMS INVOLVING THE '064 PATENT
CASE NUMBER 4:18-CV-01885-HSG

# TABLE OF AUTHORITIES

**CASES**

*Amerigen Pharm. Ltd. v. UCB Pharma. GmbH,*
   913 F.3d 1076 (Fed. Cir. 2019).................................................................................. 10

*Aspex Eyewear, Inc. v. Zenni Optical Inc.,*
   713 F.3d 1377 (Fed. Cir. 2013).................................................................................... 7

*B & B Hardware, Inc. v. Hargis Indus., Inc.,*
   135 S. Ct. 1293 (2015)................................................................................................ 18

*Baxter Healthcare Corp. v. Spectramed, Inc.,*
   49 F.3d 1575 (Fed. Cir. 1995).................................................................................... 10

*Bose Corp. v. SDI Techs., Inc.,*
   670 F. App'x 717 (Fed. Cir. 2016) .............................................................................. 9

*Clark v. Bear Stearns & Co., Inc.,*
   966 F.2d 1318 (9th Cir. 1992)................................................................................. 9, 11

*Collins v. D.R. Horton, Inc.,*
   505 F.3d 874 (9th Cir. 2007) ....................................................................................... 7

*Cuozzo Speed Techs., LLC v. Lee,*
   136 S. Ct. 2131 (2016)................................................................................... 10, 15, 16

*Dias v. Elique,*
   436 F.3d 1125 (9th Cir. 2006) ............................................................................... 9, 11

*Fellowes, Inc. v. Acco Brands Corp.,*
   No. 10-cv-7587-HDL, 2019 WL 1762910 (N.D. Ill. Apr. 22, 2019) ....................... 13

*Fleming v. Escort, Inc.,*
   774 F.3d 1371 (Fed. Cir. 2014).................................................................................. 10

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*
   721 F.3d 1330 (Fed. Cir. 2013)..................................................................... 8, 12, 15, 16

*Insite Vision Inc. v. Sandoz, Inc.,*
   783 F.3d 853 (Fed. Cir. 2015).................................................................................... 10

*JB & Le Venture v. Mutual Life Ins. Co. of New York,*
   141 F.3d 1176 (9th Cir. 1998) ................................................................................... 11

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,*
   543 U.S. 111 (2004).................................................................................................... 18

*Luben Indus., Inc. v. United States,*
   707 F.2d 1037 (9th Cir. 1983) ..................................................................................... 7

*MaxLinear, Inc. v. CF CRESPE LLC*,
    880 F.3d 1373 (Fed. Cir. 2018)................................................................................... 18

*Microsoft Corp. v. i4i Ltd. P'ship*,
    131 S. Ct. 2238 (2011) .............................................................................................. 10

*Network Appliance v. Sun Microsystems Inc.*,
    No. C-07-06057 2008 WL 4821318 (N.D. Cal. Nov. 3, 2008) ...................................... 20

*Novartis AG v. Noven Pharm. Inc.*,
    853 F.3d 1289 (Fed. Cir. 2017) ................................................................................... 10

Ohio Willow Wood Co. v. Alps S., LLC,
    735 F.3d 1333 (Fed. Cir. 2013) ................................................................................... 13

Oil States Energy Servs., LLC v. Greene's Energy Grp.,
    138 S. Ct. 1365 (2018) ................................................................................ 8, 10, 15, 16

*Payne v. Borg*,
    982 F.2d 335 (9th Cir. 1992) ...................................................................................... 11

*Princeton Vanguard, LLC v. Frito-Lay North America, Inc.*,
    786 F3d 960 (Fed. Cir. 2015)...................................................................................... 18

*SAS Inst., Inc. v. Iancu*,
    138 S. Ct. 1348 (2018).............................................................................................. 3, 14

*Skyhawke Techs., LLC v. Deca Int'l Corp.*,
    828 F.3d 1373 (Fed. Cir. 2016) ............................................................................ 12, 18

*Southwest Voter Registration Educ. Project v. Shelley*,
    344 F.3d 914 (9th Cir. 2003) ...................................................................................... 11

*U.S. Aluminum Corp./Texas v. Alumax, Inc.*,
    831 F.2d 878 (9th Cir. 1987) ...................................................................................... 11

*Walsh v. Centeio*,
    692 F.2d 1239 (9th Cir. 1982) .................................................................................... 11

*Wolfson v. Brammer*,
    616 F.3d 1045 (9th Cir. 2010) ................................................................................... 7, 9

*XY, LLC v. Trans Ova Genetics, L.C.*,
    890 F.3d 1282 (Fed. Cir. 2018) ............................................................................... 8, 12

**STATUTES AND REGULATIONS**

35 U.S.C. § 282................................................................................................................ 10

35 U.S.C. § 311(b) ........................................................................................................... 18

35 U.S.C. § 314(a) ................................................................................................ 15, 16

35 U.S.C. § 315(b) ................................................................................................ 15, 16

35 U.S.C. § 315(d) ...................................................................................................... 17

35 U.S.C. § 316(e) ............................................................................................... 10, 15

35 U.S.C. § 318(a) ...................................................................................................... 8, 15

35 U.S.C. § 318(b) ............................................................................................... 8, 16, 19

35 U.S.C. § 325(d ) ...................................................................................................... 17

35 U.S.C. §§ 311-319 ........................................................................................... 15, 18

37 C.F.R § 42.73(d)(3) ................................................................................................... 9

**OTHER**

Restatement (Second) of Judgments § 13(g) ................................................................ 7

## I.    INTRODUCTION

Microsoft's request to stay all claims and counterclaims relating to U.S. Patent No. 7,184,064 ("the '064 Patent"), or in the alternative to file an early motion for summary judgment, are both founded on a single, erroneous assertion—that Philips is collaterally estopped from continued assertion of its '064 patent infringement claims in this Court by reason of the Patent Trial and Appeal Board's ("PTAB's") April 10, 2019 decision in the *Microsoft Corp. v. Koninklijke Philips N.V.*, IPR2018-00023 against the '387 patent ("the '387 IPR proceeding"). Microsoft is wrong. The PTAB's '387 decision has no collateral estoppel effect at this time because it is not a final decision. And, even if the PTAB's decision is affirmed on appeal, collateral estoppel will not—and cannot— attach to Philips' '064 patent claims in this Court because they do not present the same issue that was decided by the PTAB with respect to the '387 patent. In fact, the PTAB on several prior occasions declined even to institute an IPR on Philips' '064 patent and denied four separate petitions filed by Defendants.

Microsoft's motion is simply an improper attempt: (1) to circumvent the America Invents Act's one-year statutory deadline for filing a petition for *inter partes* review; (2) to apply a preponderance of the evidence standard to the question of the '064 patent claims' validity in this Court, where the patent is presumed valid and Microsoft is required to prove invalidity by clear and convincing evidence; and (3) to do so under the guise of a motion to stay that effectively operates as an early motion for summary judgment because Microsoft's motion seeks to remove one of the patents-in-suit from trial. Microsoft seeks this relief despite the fact that it filed two unsuccessful petitions for IPR against the '064 patent, which the PTAB declined to institute and declined to reconsider. As a result, the AIA *inter partes* review mechanism is no longer available to Microsoft to seek cancellation of the '064 patent claims.

Because Microsoft is barred by statute from filing further IPR petitions on the '064 patent, Microsoft's only remaining mechanism for seeking to invalidate the '064 patent is to prove that the patent is invalid in this Court under the clear and convincing standard. Microsoft's application of collateral estoppel—if allowed—(1) would result in the substitution of a different, lower standard of proof, allowing Microsoft to argue in this Court that the '064 patent is invalid based on a PTAB

decision that used the preponderance of evidence standard, and (2) would impermissibly ignore the statutory presumption of validity mandated in this Court. Collateral estoppel is not available when the burdens are different to prevent precisely this result—the substitution of one burden of proof with another. And because Microsoft's motion is premised entirely on this improper application of collateral estoppel, Microsoft's motion should be denied. The claims involving the '064 patent should proceed on the same schedule as the rest of the case and if Microsoft wants to prove those claims are invalid, it needs to do so by clear and convincing evidence.

## II. FACTUAL BACKGROUND

Microsoft and the other defendants to this consolidated action have tried repeatedly—and without success—to convince the PTAB to find the '064 patent invalid. Four times IPR petitions were filed against the '064 patent, including two by Microsoft.[1] And all four times, the PTAB declined to institute proceedings on the basis of those petitions, finding instead each time that the petitioner had "not demonstrated a reasonable likelihood that it would prevail with respect to any challenged claim of the '064 patent." Gerson Decl. Exs. 4-7.

Four IPR petitions were also filed against the related '387 patent, again including two by Microsoft.[2] Three of these were also denied completely at the institution stage. Gerson Decl. Exs. 8-10. And the fourth was denied at institution with respect to the patent claims on which Microsoft bases its motion to stay. That petition was instead only granted with respect to certain method claims in the '387 patent, which are indisputably different from the asserted '064 claims. Gerson Decl. Ex. 11.

Following the Supreme Court decision in *SAS Inst., Inc. v. Iancu*, which held that a decision to institute under 35 U.S.C. § 314 may not institute on less than all claims challenged in the petition,

---

[1]  Gerson Decl. Ex. 15, *Google Inc. v. Koninklijke Philips N.V.*, Case IPR2017-00410, ("IPR2017-00410"); Gerson Decl. Ex. 16, *Google Inc. v. Koninklijke Philips N.V.*, Case IPR2017-00411 ("IPR2017-00411"); Gerson Decl. Ex. 17, *Microsoft Corp. et al. v. Koninklijke Philips N.V.*, Case IPR2018-00025 ("IPR2018-00025"); Gerson Decl. Ex. 18, *Microsoft Corp. et al. v. Koninklijke Philips N.V.*, Case IPR2018-00026 ("IPR2018-00026").

[2]  *Google Inc. v. Koninklijke Philips N.V.*, Case IPR2017-00408 ("IPR2017-00408"); *Google Inc. v. Koninklijke Philips N.V.*, Case IPR2017-00409 ("IPR2017-00409"); *Microsoft Corp. et al. v. Koninklijke Philips N.V.*, Case IPR2018-00023 ("IPR2018-00023"); *Microsoft Corp. et al. v. Koninklijke Philips N.V.*, Case IPR2018-00024 ("IPR2018-00024").

the PTAB ordered reinstitution of all asserted claims. Gerson Decl. Ex. 12; *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1359 (2018). On April 10, 2019, the PTAB issued its final written decision finding all claims of the '387 patent unpatentable. Gerson Decl. Ex. 13. Philips' appeal of that decision is due by June 7, 2019. The PTAB did not revisit its decision to deny instituting IPRs on the '064 patent on analogous grounds. As of November 8, 2017, one year after Microsoft intervened in the present litigation, Microsoft is statutorily barred from filing any additional IPRs against the '064 patent.

Below is a summary chart of the IPR proceedings:

| Patent | IPR No. | Petitioner | Result |
|---|---|---|---|
| 6,690,387 | IPR2017-00408 (12/5/2016) | Google[3,4] | Institution Denied (6/5/2017) |
| 6,690,387 | IPR2017-00409 (12/5/2016) | Google | Institution Denied (6/5/2017) |
| 6,690,387 | IPR2018-00023 (10/20/2017) | Microsoft | Institution Denied: Claims 1-8, 10 (4/11/2018) Instituted: Claims 9, 11, 12 (4/11/2018)<br><br>Modified to Review Claims 1-12 (5/2/2018)<br><br>Claims Found Unpatentable (4/10/2019) |
| 6,690,387 | IPR2018-00024 (10/20/2017) | Microsoft | Institution Denied (4/11/2018) |
| 7,184,064 | IPR2017-00410 (12/5/2016) | Google | Institution Denied (5/24/2017) |
| 7,184,064 | IPR2017-00411 (12/5/2016) | Google | Institution Denied (5/24/2017) |

---

[3] All of the Google petitions named Acer and ASUS as additional real parties-in-interest.

[4] By listing the real parties-in-interest identified in these petitions, Philips does not concede that the real parties-in-interest were correctly identified in these petitions, or in any of the other IPR petitions filed against the patents-in-suit.

| Patent | IPR No. | Petitioner | Result |
|--------|---------|------------|--------|
| 7,184,064 | IPR2018-00025 (10/20/2017) | Microsoft | Institution Denied (8/10/2018) |
| 7,184,064 | IPR2018-00026 (10/20/2017) | Microsoft | Institution Denied (4/27/2018) |

Philips acknowledges that the '387 and '064 patent claims at issue are nearly identical. Nevertheless, as of the PTAB's April 10, 2019 decision, the '387 and '064 patents are very differently situated. With respect to the '387 patent, the PTAB has found the claims unpatentable and Philips is appealing that decision. Philips has also voluntarily withdrawn that patent from the litigation. With respect to the '064 patent, despite four challenges, the PTAB has not found any claims unpatentable, and Microsoft is barred from further challenging the validity of the '064 claims before the PTAB.

Given these very different postures, on April 15, 2019 as part of an ongoing negotiation of a stipulation to narrow the infringement and validity portions of this case, Philips proposed adding the '387 patent to those patents it would withdraw without prejudice. The content of that stipulation was finalized and agreed to on April 26. Gerson Decl. Ex 2. At no point during the stipulation's negotiations was there a suggestion by Microsoft (or any of the other defendants) that the '064 patent be withdrawn as part of the narrowing stipulation. Nor did Microsoft raise the possibility that it would seek to stay the '064 patent at any point prior to the April 26 agreement as to the contents of the stipulation.

Microsoft also did not raise its collateral estoppel theory prior to Philips serving its expert reports on '064 infringement on April 25 per the case's consolidated scheduling order. (D.I. 631). Instead from the time the PTAB issued its '387 IPR decision on April 10, 2019 through May 1, 2019, Microsoft strategically sat in silence allowing Philips to both have its technical expert finalize and serve his infringement reports and finalize the case narrowing stipulation. Microsoft only raised the collateral estoppel issue after these case events were completed, as summarized in the below timeline:

| Date | Event |
|------|-------|
| 5/2/2018 | PTAB indicates its intent to review all '387 claims in light of the Supreme Court's *SAS* decision. (Gerson Decl. Ex. 12). |
| 1/4/2019 | Fact discovery closes. (D.I. 573). |
| 4/10/2019 | PTAB finds the '387 claims unpatentable. (Gerson Decl. Ex. 13). |
| 4/15/2019 | As part of case-narrowing negotiations, Philips indicates an intent to voluntarily dismiss without prejudice the '387 patent.[5] (Gerson Decl. Ex. 1).<br><br>Microsoft stayed silent regarding the '064 patent. |
| 4/25/2019 | Philips serves its '064 expert reports on infringement; Defendants serve '064 expert reports on invalidity. (D.I. 643).<br><br>Microsoft stayed silent regarding the '064 patent. |
| 4/26/2019 | Parties agree on final text of case-narrowing stipulation. (Gerson Decl. Ex. 2).<br><br>Microsoft stayed silent regarding the '064 patent. |
| 5/1/2019 | Case-narrowing stipulation filed; Microsoft raises '064 collateral estoppel issue for the first time. (Gerson Decl. Ex. 3) |
| 5/14/2019 | Microsoft filed its motion to stay. (D.I. 656). |
| 6/20/2019 | Rebuttal expert reports due. (D.I. 631).<br><br>Microsoft has now asked the Court to expedite hearing of this motion and to reschedule the hearing on this same date. (D.I. 657). |
| 8/2/2019 | Expert discovery closes. (D.I. 631). |
| 8/29/2019 | Summary judgment / *Daubert* briefs are due. (D.I. 631). |
| 11/14/2019 | Summary judgment / *Daubert* hearing. (D.I. 631). |
| 2/24/2020 | Trial. (D.I. 573). |

---

[5] Microsoft incorrectly implies in its brief that because Philips voluntarily withdrew the '387 patent, it has essentially conceded that the '064 claims should not be a part of this case. (D.I. 656 at 2). As an initial matter, it is unfortunate that Microsoft seeks to use Philips' voluntary efforts to narrow this case in good faith against Philips. Regardless, Philips' withdrawal of the '387 patent, but not the '064 patent, is consistent with the fact that, as described above, the two patents are very differently situated.

Despite strategically waiting for Philips to finalize the case narrowing stipulation and to serve its infringement reports on the '064 patent before raising the collateral estoppel issue, Microsoft now seeks to stay the proceedings immediately, including by asking the Court to advance the hearing date to June 20. (D.I. 657). According to Microsoft, its proposed partial stay is necessary to conserve resources. If conservation of resources were truly Microsoft's motivation, then surely it would have raised the issue prior to the service of opening expert reports or suggested the '064 patent be a part of the case narrowing stipulation.

To the extent that the Court denies Microsoft's motion to stay, Microsoft has asked in the alternative for leave to file an early summary judgment brief on collateral estoppel (*see* D.I. 656 at § IV.D.). When the parties submitted competing schedules, Microsoft and its co-Defendants argued successfully to the Court that dispositive motions should be conducted in a consolidated fashion to avoid the potential for multiple cycles of dispositive motions:

> [Philips' staged proposal] is not more efficient for the Court; to the contrary, it would impose significant additional burdens, ***by asking the Court not only to adjudicate two cycles of dispositive and Daubert motions instead of one under the status quo***, but also to supervise these cases for at least an extra year.

(D.I. 572, at 8) (emphasis added). Ultimately, the Court adopted a schedule with one dispositive hearing date. (D.I. 631). Microsoft's request to file an early summary judgment motion is effectively asking the Court for an early, extra cycle of summary judgment briefing and an early, extra summary judgment hearing, which is contrary to the Court's Standing Order and exactly what Microsoft told the Court should not be allowed. Regardless, as explained below, the application of collateral estoppel is improper here and so any such motion would be without merit.

## III.    COLLATERAL ESTOPPEL DOES NOT AND CANNOT APPLY HERE

In the Ninth Circuit, the doctrine of collateral estoppel applies only when four requirements are met: "(1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated; (3) there was final judgment on the merits; and (4) the person against

whom collateral estoppel is asserted was a party to or in privity with a party in the previous action." *Wolfson v. Brammer*, 616 F.3d 1045, 1064 (9th Cir. 2010).[6]

Collateral estoppel does not apply to Philips' assertion of the '064 patent claims in these consolidated cases because: (1) the PTAB's Final Written Decision in the '387 IPR proceeding is not a "final" judgment for purposes of issue preclusion; (2) the same issues were not actually litigated because Microsoft's burden of proof at the PTAB was lower than the burden of proof required in this Court; and (3) finding collateral estoppel to apply as Microsoft argues would contravene the AIA framework established by Congress.

### A. The PTAB's '387 Patent Decision Has No Collateral Estoppel Effect Because it Is Not "Final"

Even if collateral estoppel were applicable to IPR decisions in the way Microsoft argues, at minimum, collateral estoppel cannot attach until there is a "final" decision and the '387 IPR decision is not "final." While Microsoft is correct that the Ninth Circuit has held in other contexts that a "final judgment retains its collateral estoppel effect, if any, while pending appeal," (*see Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 882 (9th Cir. 2007)), the judgment still must be ***"final"*** in order for collateral estoppel to apply pending that appeal. *Wolfson*, 616 F.3d at 1064. A judgment is "final" for collateral estoppel purposes when it is "'sufficiently firm' to be accorded conclusive effect." *See Luben Indus., Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983). In other words, the "test of finality [] is whether the conclusion in question is procedurally definite." Restatement (Second) of Judgments § 13(g).

The IPR statute itself, opinions from the United States Supreme Court and the Federal Circuit, and the PTAB's own decisions demonstrate that a PTAB final written decision is not "final" unless either an appeal is not taken or the decision is affirmed by the Federal Circuit.[7] Regarding the

---

[6] The issue of collateral estoppel is "guided by the precedent of the regional circuit" because "the criteria for collateral estoppel are not unique to patent issues." *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013). On this, there appears to be no dispute. *See* D.I. 656 at 7-8, citing to "Regional," Ninth Circuit law. However, any aspects that have unique application to patent cases are governed by Federal Circuit precedent, a point Microsoft also appears to not contest. *See Aspex Eyewear.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013); *see also, e.g.*, D.I. 656 at 9-10, citing Federal Circuit case law.

[7] Whether statutory estoppel under 35 U.S.C. § 315(e) applies to the petitioner as of the final written decision is a separate issue not relevant to Microsoft's current motion.

---

IPR statute, as described in more detail below, Congress charged the PTAB with the statutory authority to cancel rejected patent claims. *See* Section III.D, *infra*; *see also, e.g., Fresenius USA, Inc. v. Baxter Int'l, Inc.* 721 F.3d 1330, 1344 (Fed. Cir. 2013) ("Congress has expressly delegated reexamination authority to the PTO under a statute requiring the PTO to cancel rejected claims, and cancellation extinguishes the underlying basis for suits based on the patent."). The IPR statute makes clear that this cancellation only becomes "final" after appeal. More particularly, under the AIA's statutory framework, the PTAB issues a "final written decision with respect to the patentability of any patent claim challenged by the petitioner ...." 35 U.S.C. § 318(a). The next part of the statute then states: "If the Patent Trial and Appeal Board issues a final written decision under subsection (a) ***and the time for appeal has expired or any appeal has terminated***, the Director shall issue and publish a certificate canceling any claim of the patent ***finally* determined to be unpatentable** ...." 35 U.S.C. § 318(b) (emphasis added). Cleary, under 35 U.S.C. § 318(b) a final written decision finding any claim unpatentable is procedurally ***not final*** until either (1) the time for appeal has expired (and no appeal was taken); or (2) any appeal has terminated.

Moreover, although not expressly at issue, the Supreme Court's opinion in *Oil States Energy Servs., LLC v. Greene's Energy Group* indicates that the PTAB's final written decisions are not "final" when they issue. *See* 138 S. Ct. 1365, 1372 (2018) ("***If*** the Board's decision becomes ***final***, the Director must 'issue and publish a certificate.' § 318(b). The certificate cancels patent claims '***finally determined to be unpatentable***' ...." (emphasis added)). Similarly, the Federal Circuit's opinions indicate that final written decisions from the PTAB are not "final" until the decisions are affirmed. *See XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282 (Fed. Cir. 2018) ("That ***affirmance* renders final** a ***judgment*** on the invalidity of the Freezing Patent, and has an immediate issue preclusive effect on any pending or co-pending actions involving the patent." (emphasis added)). Philips has been unable to find any precedent to the contrary, and Microsoft has likewise pointed to none.

The PTAB has reached the same conclusion with respect to its own proceedings. For example, federal regulations preclude a patent applicant or owner "from taking action inconsistent with the adverse judgment, including obtaining in any patent: (i) A claim that is not patentably

distinct from a finally refused or canceled claim . . . ." 37 C.F.R § 42.73(d)(3).  In *SDI Technologies, Inc. v. Bose Corp.*, the petitioner argued that patent owner was estopped under 37 C.F.R. § 42.73(d)(3) from arguing any patentability issue that was decided in petitioner's favor in a final written decision in another IPR proceeding, and that "Rule 42.73(d)(3) applies when the requirements of conventional issue preclusion are satisfied." Gerson Decl. Ex. 14 at 7-10 *aff'd by Bose Corp. v. SDI Techs., Inc.*, 670 F. App'x 717, 718 (Fed. Cir. 2016).  The PTAB disagreed, stating that "Rule 42.73(d)(3) applies estoppel against a party whose claim has been cancelled and not merely held unpatentable."  *See* Gerson Decl. Ex. 14 at 9.  As a result, the PTAB held "Patent Owner is not estopped from raising, in this proceeding, the patentability and admissibility arguments we rejected in [the final written decision of the other IPR proceeding]."  *See id.* at 10.  Accordingly, it would be illogical to hold that the final written decision in the '387 IPR should be considered "final" and have preclusive effect on Philips in this Court and against claims of a different patent (*i.e.*, the '064 patent) when it would not be considered final or have preclusive effect before the PTAB in another IPR even on the same patent (*i.e.*, the '387 patent).

In sum, a final written decision by the PTAB should not be deemed "final" nor given any preclusive effect against the patent owner in any forum until the time for appeal has expired or any appeal has terminated.  Because the PTAB's final written decision in the '387 IPR proceeding is not a "final" judgment, collateral estoppel does not apply to the '064 patent claims.  *See Wolfson*, 616 F.3d at 1064.

### B. Even if Affirmed, There Can Be No Estoppel of Philips' '064 Patent Claims in This Court Because the Burdens of Proof Are Different and Therefore the Same Issue Has Not Actually Been Litigated

Collateral estoppel also cannot apply to the '064 patent claims in this Court because, as a general rule, "collateral estoppel does not preclude claims that have a different burden of proof than previously decided claims."  *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1322 (9th Cir. 1992) (citing *U.S. Aluminum Corp./Texas v. Alumax, Inc.*, 831 F.2d 878, 879-80 (9th Cir. 1987)); *see also Dias v. Elique*, 436 F.3d 1125, 1129 (9th Cir. 2006) (collecting cases and secondary sources); *id.* at 1131 ("[T]he majority of jurisdictions [] find[] that decisions made under a substantial evidence

standard of review are not entitled to preclusive effect in later claims involving a more stringent standard of proof.").

In this Court, the claims of an issued patent are presumed valid by statute. 35 U.S.C. § 282. And the party challenging the validity of any issued patent claim has the burden of proving invalidity by clear and convincing evidence. *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2144 (2016); *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2240, 2242 (2011). On appeal from a district court on the issue of obviousness/non-obviousness, the Federal Circuit reviews "the court's ultimate legal conclusions *de novo* and the underlying factual findings for clear error." *Insite Vision Inc. v. Sandoz, Inc.*, 783 F.3d 853, 858 (Fed. Cir. 2015).

By contrast, in an IPR before the PTAB, there is no presumption of validity. *See, e.g.*, *Novartis AG v. Noven Pharm. Inc.*, 853 F.3d 1289 (Fed. Cir. 2017). And, the petitioner bears only the burden of proving unpatentability by a preponderance of the evidence. *See* 35 U.S.C. § 316(e); *see also Oil States Energy*, 138 S. Ct. at 1371; *Cuozzo Speed Techs.*, 136 S. Ct. at 2144. On appeal from the PTAB on the issue of obviousness/non-obviousness, the Federal Circuit reviews the Board's factual findings for substantial evidence and the Board's legal conclusion on obviousness *de novo. See Amerigen Pharm. Ltd. v. UCB Pharma. GmbH*, 913 F.3d 1076, 1086 (Fed. Cir. 2019).

Regardless of the tribunal from which the appeal is taken, the Federal Circuit is nonetheless bound by the same standards used in the lower tribunal:

> We review the denial of a motion for judgment as a matter of law de novo, ***applying the same standards as did the district court*** in deciding whether the jury verdict must be reversed. … In doing so, we accept express or implied jury factual determinations, if supported by substantial evidence, and assess whether those facts support the judgment ***under the governing legal standards***, whose interpretation we review de novo.

*Fleming v. Escort, Inc.*, 774 F.3d 1371, 1375 (Fed. Cir. 2014) (emphasis added); *see also, e.g.*, *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1582 (Fed. Cir. 1995) ("[W]e must keep in mind the ***standard of review*** when assessing a jury verdict." (emphasis added)); *id.* at 1584 ("[Cross-appellant] ignores the ***standard of review*** which this court is bound to apply." (emphasis added)).

In other words, the Federal Circuit applies the clear and convincing standard when it reviews a district court's legal determination of obviousness *de novo* and factual determinations for clear error; whereas the Federal Circuit applies the preponderance of the evidence standard when it reviews the PTAB's legal determination of obviousness *de novo* and factual determinations for substantial evidence.

In the instant case, Microsoft is attempting to avoid its burden of proving invalidity of the '064 patent claims by clear and convincing evidence (and the statutory presumption of validity under 35 U.S.C. § 282) in this Court by arguing that the final written decision in the '387 IPR proceeding—which applied the preponderance of the evidence standard—collaterally estops Philips from asserting the '064 patent in this litigation. However, due to these different burdens of proof and standards of review between the two tribunals, collateral estoppel does not apply in these circumstances. *See Clark*, 966 F.2d at 1322; *see also Dias*, 436 F.3d at 1129, 1131. Indeed, the difference in burdens and standard of review are critical to how a case may be decided. *See, e.g.*, *JB & Le Venture v. Mutual Life Ins. Co. of New York*, 141 F.3d 1176, 1176 (9th Cir. 1998) ("The district court's application of collateral estoppel, in light of these different burdens of proof, was erroneous."); *U.S. Aluminum Corp./Texas v. Alumax, Inc.*, 831 F.2d 878, 878 (9th Cir. 1987) ("We need not reach any of these issues in view of our ruling that the burdens of proof are different."); *see also*, *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 917 (9th Cir. 2003) (en banc) (per curiam) (noting that the "standard of review is important to our resolution of this case"); *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992) ("The relevant standards of review are critical to the outcome of this case."); *Walsh v. Centeio*, 692 F.2d 1239, 1241 (9th Cir. 1982) ("[T]he outcome of the instant case turns on the standard of review ….").

Microsoft acknowledges issue preclusion only applies where the ordinary elements of issue preclusion are met,[8] yet ignores that the same issue was not actually litigated where the tribunals apply different standards, under both Ninth Circuit and Federal Circuit precedent. *See, e.g., Clark*, 966 F.2d at 1322; *see also Dias*, 436 F.3d at 1129, 1131; *see also, e.g.*, *Skyhawke Techs., LLC v.*

---

[8] Microsoft explicitly states, "The PTAB's invalidation of Philips' '387 patent claims thus have preclusive effect if the 'ordinary elements of issue preclusion' are met." (D.I. 656 at 7).

*Deca Int'l Corp.*, 828 F.3d 1373, 1376 (Fed. Cir. 2016). The issue to be decided here in this Court is whether Microsoft can show by clear and convincing evidence that the '064 patent is invalid despite the statutory presumption of validity. That issue was <u>not</u> before the PTAB. Instead, Microsoft relegates any argument as to this point to a footnote, and alleges that in *XY*, the Federal Circuit "rejected the argument articulated in the dissent that PTAB opinions should not have preclusive effect in district courts because of the 'different burdens of proof' between these tribunals." (D.I. 656 at n.1).

But Microsoft misconstrues and misapplies the Court's holding in *XY*. In that case, the Federal Circuit held that an affirmed PTAB decision of unpatentability bars parallel district court (even co-pending) litigation ***on that same patent***. *XY*, 890 F.3d at 1294-95. That holding is consistent with Federal Circuit's explanation in *Fresenius USA, Inc. v. Baxter Intern., Inc.*, as to the binding effect of an IPR decision, which the Federal Circuit explains is "binding ***not because of collateral estoppel***, but because Congress has expressly delegated reexamination authority to the PTO under a statute requiring the PTO to cancel rejected claims, and cancellation extinguishes the underlying basis for suits based on the patent." 721 F.3d 1330, 1344 (Fed. Cir. 2013) (emphasis added). Simply put, once a PTAB decision is affirmed, it is binding as to the claims in the patent that were expressly cancelled. That same result was reached in *XY*. *See XY*, 890 F.3d at 1282.

In dicta, the *XY* court used the term "collateral estoppel" to explain this binding effect of a PTAB decision on the cancelled patent claims. But, notwithstanding that dicta, *XY* cannot support the application of collateral estoppel as between tribunals employing different standards of proof because the panel in *XY* never had the power to overturn the earlier panel decision in *Fresenius*. *Deckers Corp. v. United States*, 752 F.3d 949, 964 (Fed. Cir. 2014) ("We have also adopted the rule that a panel of this court—which normally sits in panels of three, and not en banc—is bound by the precedential decisions of prior panels unless and until overruled by an intervening Supreme Court or en banc decision."). Regardless, *XY* does not further Microsoft's argument because, whether the *XY* court's use of the term "collateral estoppel" was proper, the *XY* court did not apply a PTAB decision cancelling one patent to a district court proceeding involving a different, non-cancelled patent. In other words, although the *XY* court uses the term "collateral estoppel" in connection with why the

pending actions were "moot" in view of the cited precedent, the simple reason why the patent owner was precluded from proceeding in those pending actions was because there was no legally enforceable patent right on which to proceed. The *XY* case certainly does not hold—as Microsoft argues—that PTAB decisions necessarily "have preclusive effect even though the burdens of proof differ between IPRs and district court proceedings." (D.I. 656 at 8).

Elsewhere in its brief, Microsoft also relies on *Ohio Willow Wood Co. v. Alps S., LLC*, which held that "[i]f the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies." 735 F.3d 1333, 1342 (Fed. Cir. 2013). However, in that case, the District Court for the Eastern District of Texas held the claims of the continuation patent invalid under the ***clear and convincing standard***, which was then affirmed on appeal. *See id.* at 1341. The District Court for the Southern District of Ohio granted summary judgment on collateral estoppel grounds because the same clear and convincing standard applied, and the Federal Circuit affirmed. *See id.* at 1341, 1343. In other words, applying collateral estoppel in that case where the claims of a continuation patent were not materially distinct was proper because the patent claims were found invalid, and affirmed, ***under the same standard—i.e., by clear and convincing evidence***. But *Ohio Willow* and its progeny do not hold that collateral estoppel applies in a district court action to claims of a patent which are related patent claims that were found unpatentable by the Patent Office under a lesser burden of proof—***i.e., preponderance of the evidence***—pursuant to a limited statutory reexamination authority, even where the claims are not materially distinct.

No binding precedent has held that collateral estoppel precludes the patent owner from asserting a patent claim in a child patent in a district court proceeding where (1) the claims in the parent patent were found unpatentable in a final written decision by the PTAB (and pending appeal); (2) numerous petitions for *inter partes* review on the child patent itself were denied at the institution stage; and (3) *inter partes* review is no longer an available procedural mechanism by the party asserting estoppel to challenge the patentability of the child patent. Microsoft has identified one case, *Fellowes, Inc. v. Acco Brands Corp.*, No. 10-cv-7587-HDL, 2019 WL 1762910 (N.D. Ill. Apr. 22, 2019) in which collateral estoppel was applied from a PTAB decision on one patent to a district

court proceeding on another patent. (D.I. 656 at 10). However, *Fellowes* is not binding and it is contrary to the Federal Circuit's decision in *Fresenius*. *Fellowes* is the only case Microsoft cites that applies collateral estoppel this way. In its brief analysis of the *XY* case, *Fellowes* fails to address *Fresenius* and fails to appreciate that the *XY* court did not apply a PTAB decision cancelling one patent to a district court proceeding involving a different, non-cancelled patent.[9] In sum, no binding precedent has precluded the patent owner from arguing the validity of the child patent claims in district court where the defendant bears the burden of proof by clear and convincing where the parent patent's claims were held unpatentable in a final written decision by the PTAB (and pending appeal) under the preponderance of the evidence standard.

Indeed, if there were any case where the different burdens should matter, this is certainly the one. As described above, across the '387 and '064 patents, the PTAB denied institution of IPR on the at-issue claims eight times. *See* Section II, above. Only on the ninth try, and only in light of the *SAS* decision (*SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1359 (2018) (denying institution on some grounds)), did the PTAB find Microsoft had finally managed to clear the preponderance of evidence bar to find the '387 patent claims unpatentable. Given the fact that the PTAB had on eight prior occasions found that Microsoft and the Defendants had failed to show they were likely to prevail on these patents, it is apparent the PTAB determined the question of the alleged obviousness of the '387 claims whether these patent claims were invalid—under a preponderance of the evidence standard— was a close call. For this additional reason, the PTAB's decision should not be found to give rise to collateral estoppel here where the standard of proof is significantly higher.

**C. If Affirmed, a PTAB Decision of Unpatentability Bars Parallel District Court Litigation on the Same Patent, Not Because of Collateral Estoppel, But Because Congress Delegated Limited Reexamination Authority to the Patent Office to Cancel Rejected Claims, and Cancellation Extinguishes the Underlying Basis for Suits Involving the Same Patent**

PTAB decisions of unpatentability, if affirmed on appeal, are not binding in parallel district court litigations because of collateral estoppel. Rather, they are binding because Congress expressly

---

[9] In any event, *Fellowes* did not involve the unique circumstances presented here—where a defendant is attempting to avoid the statutory one-year bar on filing IPR petitions after having already lost on the petitions it filed.

delegated *limited* reexamination authority to the Patent Office to cancel rejected claims which effectively extinguishes the underlying basis for a lawsuit based on the particular claims that were canceled. As the Federal Circuit explained in *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, a reexamination by the Patent Office:

> is binding not because of collateral estoppel, but because Congress has expressly delegated reexamination authority to the PTO under a statue requiring the PTO to cancel rejected claims, and cancellation extinguishes the underlying basis for suits based on the patent.

721 F.3d at 1344.

Here, and as discussed below, the PTAB has not cancelled any claims of the '064 patent, and so Microsoft's application of collateral estoppel would give the PTAB more authority than expressly delegated by Congress.

> **1.  In the AIA, Congress Delegated Limited Authority to the Patent Office to Cancel Rejected Claims**

The America Invents Act created "an agency procedure called 'inter partes review' that allows a third party to ask the U.S. Patent and Trademark Office to reexamine the claims in analready issued patent and to cancel any claim that the agency finds to be unpatentable in light of prior art." *Cuozzo*, 136 S. Ct. at 2133; *see also* 35 U.S.C. §§ 311-319. However, that authorization to reconsider and to cancel an issued patent claim is proper in "*limited circumstances*." *See Oil States Energy*, 138 S. Ct. at 1367-68, 1370. In particular, in order for an *inter partes* review proceeding to commence, the petition **must** be filed within "1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent" (35 U.S.C. § 315(b)), and the petition must demonstrate "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition" (35 U.S.C. § 314(a)). Once the *inter partes* review has been instituted, the petitioner has the burden of proving unpatentability by a preponderance of the evidence. 35 U.S.C. § 316(e); *Oil States Energy*, 138 S. Ct. at 1371.

If the *inter partes* review is not dismissed, the Board must issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner. 35 U.S.C. § 318(a). This decision becomes final if the time for appeal has elapsed, or the decision is affirmed on appeal.

*See* 35 U.S.C. § 318(b); *Oil States Energy*, 138 S. Ct. at 1372. If the Board's decision becomes final, the Director of the USPTO must issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable. *See* 35 U.S.C. § 318(b). When a claim is cancelled by the Director, any pending lawsuit based on the cancelled claim must fail because there is no legal property right that can found such a claim:

> [A cancelled patent] can no more be the foundation for the assertion of a right after [its] surrender, than could be an act of Congress which has been repealed …. [U]nless it exists, and is in force at the time of trial and judgment, the suit fails.

*Fresenius USA,* 721 F.3d at 1345 (*quoting Moffitt v. Garr*, 66 U.S. 273, 283 (1861)).

The USPTO does not have any statutory authority to extend its limited reexamination authority in *inter partes* review proceedings beyond what is prescribed in 35 U.S.C. §§ 311-319, and no binding precedent exists for this Court to do so either. For instance, and as relevant to the issue at hand, an *inter partes* review may not be instituted "if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent," (35 U.S.C. § 315(b)), or where the petition fails to demonstrate "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition" (35 U.S.C. § 314(a)). Instead, under these circumstances, the petitioner is left to challenge the validity of the patent in district court under the clear and convincing standard.

Indeed the Supreme Court confirmed in *Cuozzo* that Congress's regulatory design implemented by the AIA established different burdens of proof in PTAB and District Court proceedings which can lead to "inconsistent results":

> A district court may find a patent claim to be valid, and the agency may later cancel that claim in its own review. We recognize that this is so. This possibility, however, has long been present in our patent system, which provides different tracks—one in the Patent Office and one in the courts—for the review and adjudication of patent claims. As we have explained above, inter partes review imposes a different burden of proof on the challenger. ***These different evidentiary burdens means that the possibility of inconsistent results is inherent to Congress' regulatory design***.

*Cuozzo*, 136 S. Ct. at 2146 (emphasis added).

### 2. Congress Expressly Limited the Collateral Estoppel Effect of PTAB Decisions to Petitioners

In addition to limiting the USPTO's reexamination authority, Congress also expressly articulated a limited scope of IPR estoppel in 35 U.S.C. § 315(e). Both §§ 315(e)(1) and (e)(2) are expressly limited to the estoppel that applies to the **_petitioner_**. No provision attaches estoppel to the **_patent owner_**. This is entirely consistent with the Federal Circuit's holding in _Fresenius_, as discussed above.

Under the AIA's statutory framework, if the petitioner succeeds on its challenge in an _inter partes_ review proceeding that results in a final written decision that is not appealed (or affirmed on appeal), then the challenged claims will be cancelled and the patent owner has no legal right on which to proceed in the district court. _See_ 35 U.S.C. § 318(b); _see also Fresenius_, 721 F.3d at 1344. As such, no collateral estoppel provision needed to be expressed as to the patent owner, since the outcome is already governed by provision concerning cancellation of the claims finally determined to be unpatentable. _See_ § 315(b). If Congress intended estoppel to attach to the patent owner in some other way, it could have expressly done so.

### 3. Under the Framework Established by Congress, Collateral Estoppel Cannot Apply As Microsoft Argues It Should

Here, the Patent Office has not cancelled any claims of the '064 patent, despite multiple efforts from Microsoft and the other defendants. As described above, there were four separate IPR petitions filed, each of which asked the Patent Office to invalidate the '064 patent on multiple grounds. Additionally, the '387 patent successfully withstood three prior IPR challenges. In response to each such petition, the Patent Office concluded that petitioner had "not demonstrated a reasonable likelihood that it would prevail with respect to any challenged claim of the '064 patent" and therefore refused to institute IPR proceedings, let alone cancel any claims of the patent. Gerson Decl. Exs. 4-7. Therefore, under the Federal Circuit's clear teaching in _Fresenius_, any review of the '387 patent is not binding—none of those reviews canceled any of the '064 patent's claims.

Microsoft relies heavily on the _B & B Hardware_ decision to argue that the PTAB is an agency and agency decisions can have preclusive effect. But, the Supreme Court in _B &B Hardware_ merely held that agency decisions **_can_** ground issue preclusion **_if_** the ordinary elements of issue

preclusion are met. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1299 (2015). Specifically, the Court in *B & B Hardware* held a Trademark Trial and Appeal Board's ("TTAB") decision rejecting Hargis's proposed trademark over B & B's prior registration gave rise to issue preclusion in a subsequent trademark infringement action brought by B & B against Hargis in a district court because both tribunals—the TTAB and the district court—applied the same standard: whether a likelihood of confusion exists between the mark sought to be protected and the other mark. *See B & B Hardware*, 135 S. Ct. 1293 at 1299. Importantly, the Supreme Court in *B & B Hardware* expressly noted that the burdens of persuasion were identical both before the TTAB and in district court—both were born by B & B. And indeed, both proceedings use the same proof by a preponderance of the evidence standard. *See Princeton Vanguard, LLC v. Frito-Lay North America, Inc.*, 786 F.3d 960 (Fed. Cir. 2015) (in a trademark opposition or cancellation proceeding, the opposer or petitioner bears the burden of persuasion by a preponderance of the evidence); *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 120 (2004) (plaintiff bears the burden of proving likelihood of confusion by a preponderance of the evidence). Although Microsoft is correct that the Federal Circuit in *MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1376 (Fed. Cir. 2018) has held that the TTAB and PTAB are indistinguishable for preclusion purposes, that is true **only when "the ordinary elements of issue preclusion are met."** *See B & B Hardware,* 135 S. Ct. at 1299; *see also Skyhawke Techs.,* 828 F.3d at 1376 (holding that the ordinary elements of issue preclusion were not met because the same issue was not litigated where the PTAB and the district court applied different claim construction standards). Collateral estoppel should not be applied in these circumstances because it would result in the PTAB exceeding its limited statutory reexamination authority pursuant to 35 U.S.C. §§ 311-319.

### 4. Regardless of What Happens on Appeal of the PTAB's '387 Patent Decision, the PTAB Will Not Cancel the '064 Patent Claims

That Microsoft's attempt to apply collateral estoppel contradicts the AIA's framework is further confirmed by the simple fact that the PTAB cannot and will not cancel '064 patent claims based on the '387 final decision, even if that decision is affirmed by the Federal Circuit. *See* 35 U.S.C. § 311(b) ("Scope. A petitioner in an inter partes review may request to cancel as

unpatentable 1 or more claims *of a patent*…"); *see also* § 318(b) ("If the Patent Trial and Appeal Board issues a final written decision under subsection (a) and the time for appeal has expired or any appeal has terminated, the Director shall issue and publish a certificate canceling any claim of *the patent* finally determined to be unpatentable." (emphasis added)). Microsoft has not argued otherwise. Therefore, applying collateral estoppel as Microsoft has alleged would expand the scope of an IPR decision beyond the scope articulated by Congress.

> **5.** **Microsoft's Collateral Estoppel Theory Is a Fundamentally Flawed, Transparent Attempt to Circumvent the AIA's One-Year Timeline for Filing IPR Petitions and to Avoid the Consequences of Its Multiple Failed IPRs on the '064 Patent**

Microsoft misinterprets the Supreme Court's and Federal Circuit's precedent in an attempt to circumvent the America Invents Act's one-year statutory deadline for taking advantage of the *inter partes* review (35 U.S.C. § 315(b)) procedure, pursuant to which one may seek to cancel the claims of an issued patent based merely on a showing of unpatentability under a preponderance of the evidence standard.

Microsoft, in short, is asking this Court to extend the USPTO's limited reexamination authority beyond what Congress authorized, by precluding Philips from having its day in this Court, even though the '064 patent has not been (and will not be) canceled, has no *inter partes* review proceedings pending against it, and Microsoft is statutorily barred from seeking *inter partes* review against the patent. Microsoft does so despite the clearly set out procedure from Congress, and despite having no binding precedent to the contrary.

## IV. ALL OF THE FACTORS WEIGH AGAINST MICROSOFT'S PROPOSED PARTIAL STAY, EVEN UNDER THE INCORRECT ASSUMPTION THAT COLLATERAL ESTOPPEL APPLIES IF THE '387 IPR DECISION BECOMES FINAL

The parties agree that there are three factors typically used in determining whether a stay is appropriate: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *See Space Data Corp. v. Alphabet Inc.*, No. 16-cv-03260, 2019 WL 1131420, at *1, (N.D. Cal. Mar. 12, 2019); (D.I. 656 at 6). However, even if collateral estoppel were to attach upon a Federal Circuit affirmance of the

'387 IPR decision (it does not), Microsoft's analysis is flawed because it ignores the basic fact that the stay it seeks is *partial*.  All of the cases Microsoft cites in its Opening Brief to support its position for a motion to stay involve a complete motion to stay, not a partial motion to stay.  Microsoft would have the Court stay Philips' assertion of one patent against one party in this consolidated action.  Because the remaining, vast majority of the case would proceed on schedule, this creates an unnecessary inefficiency in the event the '064 patent needs to be tried later against Microsoft.  Indeed, when Philips proposed a staged approach to dispositive motions, the Defendants, including Microsoft, argued vigorously against the approach Microsoft now advocates:

> [Philips' staged proposal] is not more efficient for the Court; to the contrary, it would impose significant additional burdens, by asking the Court not only to adjudicate two cycles of dispositive and *Daubert* motions instead of one under the status quo, but also to supervise these cases for at least an extra year.

(D.I. 572 at 8).  Microsoft's motion asks the Court to do exactly what Microsoft said would "impose significant" burdens on the Court.

### A.    Discovery is Complete and a Trial Date Has Been Set

The first factor in deciding whether to stay is whether discovery is complete and whether a trial date has been set.  Here, a trial date (February 24, 2020) is set.  Fact discovery is complete—it closed on January 4, 2019.  (D.I. 573).  Moreover, expert discovery is well underway.  Opening reports were served over a month ago, on April 25, 2019.  (D.I. 643).  Rebuttal reports are due in a few weeks on June 20.  (D.I. 631).  Expert discovery closes shortly thereafter, on August 2.  *Id.*  The dispositive motion hearing is set for November 14, 2019 and trial is set for February, 2020.  (D.I. 631; 573).

Under analogous facts, courts in this District have denied partial stays.  *See Space Data Corp. v. Alphabet Inc.*, 2019 WL 1131420, at *1-3, (denying motion to stay one patent out of four asserted patents when fact and expert discovery were closed and the stay posed "a risk of wasted resources as the Court would have to reconvene the parties and witnesses at a later date if the asserted claims of the [] patent survive[d] IPR"); *Network Appliance v. Sun Microsystems Inc.*, No. C-07-06057, 2008 WL 4821318 (N.D. Cal. Nov. 3, 2008) (denying motion for partial stay even

though discovery was not complete because one inventor had already been deposed and NetApp had already produced many documents).

**B.** **Microsoft's Proposed Partial Stay Does Little to Simplify the Currently Scheduled Trial and Risks the Inefficiency of Having to Conduct an Entire Separate Trial Later**

Because Microsoft has only asked for one patent to be stayed, the above-listed dates for expert discovery, dispositive motion hearing, and trial will be operative for the remaining patents-in-suit. In the event that the '064 patent is stayed and needs to be tried later, the Court would be burdened with a second trial. Once again, Microsoft argued *against* the need for two trials in this case:

> It [Philips' two-trial proposal] would be prejudicial to force Microsoft's witnesses, experts, and trial teams to appear twice, for two separate trials. It would also needlessly burden two separate juries, who would have to independently be educated on the parties and general case background, and the Court, which would be asked to oversee two partially duplicative trials.

(D.I. 454, Microsoft's Opposition and Cross-Motion to Sever, at 25).

In response to and in light of the Court's decision to schedule a single trial for all patents asserted against Microsoft, Philips has put substantial efforts into narrowing the scope of its infringement case against Microsoft, withdrawing without prejudice four patents-in-suit. (D.I. 650).

And indeed, precedent in this district warrants against a stay under analogous facts. *See Space Data Corp.*, 2019 WL 1131420, at *3 ("The Court finds that while invalidation in IPR of any of the '706 patent claims at issue would narrow the scope of the litigation, there is limited risk of wasting resources by proceeding as planned with the instant action because the '706 patent infringement claim is a relatively small portion of the overall case. . . . [S]taying the '706 patent also poses a risk of wasted resources as the Court would have to reconvene the parties and witnesses at a later date if the asserted claims of the '706 patent survive IPR.").

Microsoft also fails to mention that staying the '064 patent would not reduce the number of experts testifying at the first trial, at least based on the reports served thus far. *See* Gerson Decl. ¶¶ 21-22. Microsoft's invalidity expert on the '064 patent is also their expert on the '564 patent. *Id.* And the same is true for Philips. *Id.* Similarly, Philips' damages expert opined on the damages

award for all of the patents-in-suit, which is not surprising as the Microsoft products accused of infringing the '064 patent vastly overlap with the products accused of infringing the other patents-in-suit. *Id.* The overlap in issues across the '064 patent and the other patents-in-suit does not end there. All of the patents are part of the same Philips licensing program, which will be discussed by Philips witnesses at trial. And the induced infringement and willfulness allegations similarly overlap across patents as well.

### C.   A Stay would Prejudice Philips and Provide Microsoft Clear Tactical Advantages

As described above, Microsoft has known about the PTAB's decision to review all of the '387 claims since May 2018 and about the PTAB's '387 IPR decision since April 10, 2019. Nevertheless, Microsoft chose to wait to raise its collateral estoppel issue regarding the '064 patent until *after* two critical case events: (1) the service of opening expert reports; and (2) the finalization of a stipulation regarding case narrowing. By lying in wait and then raising the issue when it did, Microsoft has clearly sought a tactical advantage.

More specifically, although Microsoft characterizes its motion as one to stay, the practical effects would be to eliminate the '064 patent from an upcoming jury trial. As such, Microsoft's motion seeks to circumvent the Court's limitations on summary judgment motions (one per party absent good cause) (*see* Judge Gilliam's Civil Standing Order at ¶ 17) and the Court's scheduled hearing on dispositive motions (set for November 14, 2019) (D.I. 631). Although Microsoft should not prevail on the merits of its stay motion, the appropriate approach Microsoft should have followed with respect to this issue should have been to file a motion for summary judgment at the appropriate time in the case calendar.

That this action is consolidated through pretrial provides Microsoft another tactical advantage in the event of the stay. HTC and ASUS did not join in Microsoft's motion and therefore, Philips' infringement cases on the '064 patent as to those defendants will move forward on the Court's consolidated schedule. On May 22, 2019, ASUS filed its response to Microsoft's Motion to Stay Claims Involving the '064 Patent. (D.I. 658). In its motion, ASUS takes no position on Microsoft's motion, stating that Microsoft's proposed stay relates only to claims by Philips against

Microsoft, not ASUS, strongly suggesting that ASUS is not going to seek to stay Philips' '064 infringement claims against ASUS or ASUS's defenses to those claims. *Id*. Microsoft would be able to watch these proceedings from the sidelines and, should the '064 patent be un-stayed, use what it learns in the later trial against Philips, should there be one. Once again, this tactical advantage was one of the reasons the Defendants argued against deconsolidating the case schedule referring to it as "a litigation advantage" for Philips that Defendants "do not want in the first place." (D.I. 572 at 9).

The practical result of a partial stay of the Microsoft case would be to deconsolidate these cases as to the '064 patent. HTC and ASUS would remain free to pursue expert discovery on the '064 patent, and to file dispositive motions directed at the '064 patent. This would mean that the Court may need to adjudicate two rounds of summary judgment motions regarding this patent, a result which the defendants argued should be avoided at all costs in opposing Philips' Section 299 Motion (D.I. 572 at 8) and which is contrary to the Court's stated preference that there be one summary judgment hearing in this consolidated action. (D.I. 520 at 29, October 2, 2018 Case Management Conference Hearing).

## V. THERE IS NO REASON TO DISRUPT THIS CASE'S SCHEDULE TO ALLOW FOR MICROSOFT'S PROPOSED SUMMARY JUDGMENT MOTION EARLY, PARTICULARLY IN VIEW OF MICROSOFT'S ERRONEOUS VIEW OF THE LAW

Microsoft has not articulated a reason why it should be afforded special treatment to file a summary judgment motion early and not in accordance with the consolidated schedule set by the Court and advocated for by Microsoft. Indeed, filing early would force the Court to schedule an additional summary judgment hearing, which contradicts the position taken by the Defendants and the preferences articulated by the Court to keep all of the consolidated cases on the same schedule through the hearing on dispositive and *Daubert* motions. The Court was explicit in its preference for a consolidated schedule with *one* dispositive motion date. (*See* Oct. 2, 2018 Tr. at 29:4-10, where the Court noted that "in an ideal world, we would have *a* dispositive motions hearing at which each Defendant is equal to raise any dispositive issues that they have if there are any, and have those resolved.") (emphasis added). And when the parties submitted competing schedules, Defendants criticized an unconsolidated schedule as unfair for having multiple cycles of dispositive motions:

> [Philips' staged proposal] is not more efficient for the Court; to the contrary, it would impose significant additional burdens, ***by asking the Court not only to adjudicate two cycles of dispositive and Daubert motions instead of one under the status quo***, but also to supervise these cases for at least an extra year.

(D.I. 572, at 8) (emphasis added).

Ultimately, the Court adopted a schedule with one dispositive hearing date. (D.I. 631). And indeed, the Court's Standing Order contemplates one dispositive motion per party. (*See* J. Gilliam Standing Order for Civil Cases, ¶ 17.) Microsoft is essentially seeking an entire extra round of summary judgment motions. Microsoft's rationale—that it should get to find out how this motion goes first so that it can decide what to file next—is exactly what Microsoft argued against when explaining to the Court why there should only be one dispositive motion hearing in these cases and squarely contradicts the Court's Standing Order. If Microsoft believes collateral estoppel applies (it does not), then Microsoft should move for summary judgment on those grounds at the appropriate time in accordance with the Court's schedule and Standing Order.

## VI. CONCLUSION

Microsoft's motion is a series of attempts to sidestep the rules and rulings that apply here: (1) the PTAB's denial of four IPR petitions on the '064 patent; (2) a one-year statutory bar that prevents Microsoft from filing additional '064 IPR petitions; (3) a statutory framework established by Congress and interpreted by the Federal Circuit that limits the reach of an IPR decision to the reviewed patent only; (4) express legislative provisions show Congress's intent for collateral estoppel to apply only to petitioner, and not the patent owner; and (5) the statutory presumption in District Court that a patent is valid and the corresponding burden to prove invalidity by clear and convincing evidence. If Microsoft's motion were granted, collateral estoppel would attach to an IPR decision in a way that Congress did not intend and that the Ninth Circuit does not allow, enabling Microsoft to circumvent the statutory bar for filing IPR petitions and the statutory presumption of validity that must attach to an issued patent in a district court proceeding, including the '064 patent. Because collateral estoppel cannot be applied this way, Microsoft's motion is entirely without merit and Philips respectfully requests that the Court deny it.

Dated: May 28, 2019

Respectfully submitted,

Chris Holland (SBN 164053)
Lori L. Holland (SBN 202309)
HOLLAND LAW LLP
220 Montgomery Street, Suite 800
San Francisco, CA 94104
Telephone: (415) 200-4980
Fax: (415) 200-4989
cholland@hollandlawllp.com
lholland@hollandlawllp.com

/s/ Sean M. McCarthy

Michael Sandonato (admitted *pro hac vice*)
John Carlin (admitted *pro hac vice*)
Christopher Gerson (admitted *pro hac vice*)
Natalie Lieber (admitted *pro hac vice*)
Jonathan M. Sharret (admitted *pro hac vice*)
Daniel Apgar (admitted *pro hac vice*)
Sean M. McCarthy (admitted *pro hac vice*)
Robert Pickens (admitted *pro hac vice*)
Joyce Nadipuram (admitted *pro hac vice*)
Caitlyn Bingaman (admitted *pro hac vice*)

VENABLE LLP
1290 Avenue of the Americas
New York, New York, 10104
+1 (212) 218-2100
+1 (212) 218-2200 facsimile
philipsprosecutionbar@venable.com

*Attorneys for Plaintiffs Koninklijke Philips*
*N.V. and U.S. Philips Corporation*