# Unredacted Version of Document Sought to Be Sealed

Michael P. Sandonato (admitted *pro hac vice*)
msandonato@venable.com
John D. Carlin (admitted *pro hac vice*)
jcarlin@venable.com
Natalie Lieber (admitted *pro hac vice*)
ndlieber@venable.com
Christopher M. Gerson (admitted *pro hac vice*)
cgerson@venable.com
Jonathan M. Sharret (admitted *pro hac vice*)
jsharret@venable.com
Daniel A. Apgar (admitted *pro hac vice*)
dapgar@venable.com

Robert S. Pickens (admitted *pro hac vice*)
rspickens@venable.com
Sean M. McCarthy (admitted *pro hac vice*)
smccarthy@venable.com
Joyce L. Nadipuram (admitted *pro hac vice*)
jnadipuram@venable.com
Caitlyn N. Bingaman (admitted *pro hac vice*)
cnbingaman@venable.com

VENABLE LLP
1290 Avenue of the Americas
New York, New York 10104-3800
Tel: (212) 218-2100
Fax: (212) 218-2200

Chris Holland (SBN 164053)
cholland@hollandlawllp.com
Lori L. Holland (SBN 202309)
lholland@hollandlawllp.com
Ethan Jacobs (SBN 291838)
ejacobs@hollandlawllp.com

HOLLAND LAW LLP
220 Montgomery Street, Suite 800
San Francisco, CA 94104
Tel: (415) 200-4980
Fax: (415) 200-4989

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE KONINKLIJKE PHILIPS PATENT LITIGATION | Case No. 4:18-cv-01885-HSG <br><br> **PHILIPS' OPPOSITION TO HTC'S AND MICROSOFT'S MOTION FOR LEAVE TO SERVE SUBPOENA AFTER DISCOVERY DEADLINE** <br><br> JURY TRIAL DEMANDED |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. DEFENDANTS CANNOT DEMONSTRATE GOOD CAUSE TO MODIFY THE SCHEDULING ORDER AND REOPEN DISCOVERY ............................................. 2

    A. Reopening Discovery Could Alter Imminent Pre-Trial Deadlines ............................ 2

    B. Philips Opposes Defendants' Motion to Reopen Discovery ...................................... 3

    C. Philips Will Be Prejudiced If Defendants' Motion Is Granted .................................. 3

    D. The Discovery Sought Will Not Lead to Relevant Evidence .................................... 4

        1. Courts Have Routinely Rejected Attempts to Convert Lump Sum Settlement Agreements into Running Royalties ................................... 4

        2. Philips' Damages Contentions Against Acer Are Not Relevant Here ....................... 7

    E. Philips' Settlement With Other Parties Was Foreseeable .......................................... 8

III. CONCLUSION ................................................................................................................... 8

**TABLE OF AUTHORITIES**

**CASES**

*American Standard, Inc. v. Pfizer, Inc.*,
   828 F.2d 734 (Fed. Cir. 1987) ................................................................................................ 4

*Bleek v. Supervalu, Inc.*,
   95 F. Supp. 2d 1118 (D. Mont. 2000) ..................................................................................... 2

*Bookhamer v. Sunbeam Products, Inc.*,
   No. C-09-6027 EMC (DMR), 2012 WL 5269677 (N.D. Cal. Oct. 23, 2012) ........................ 2, 4

*Cornwell v. Electra Cent. Credit Union*,
   439 F.3d 1018 (9th Cir. 2006) ................................................................................................. 2

*ePlus, Inc. v. Lawson Software, Inc.*,
   764 F. Supp. 2d 807 (E.D. Va. 2011) .................................................................................. 6, 8

*Ericsson, Inc. v. D-Link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014) ............................................................................................... 7

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992) ................................................................................................... 2

*LaserDynamics, Inc. v. Quanta Computer Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) ................................................................................................... 5

*Lexington Ins. Co. v. Scott Homes Multifamily, Inc.*,
   No. CV-12-02119, 2015 WL 751204 (D. Ariz. Feb. 23, 2015) ............................................... 2

*Lucent Techs. Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) ............................................................................................... 5

*Micro Motion, Inc. v. Kane Steel Co., Inc.*,
   894 F.2d 1318 (Fed. Cir. 1990) ............................................................................................... 4

*Rude v. Westcott*,
   130 U.S. 152 (1889) ................................................................................................................ 5

*Sentius Intern'l, LLC v. Microsoft Corp.*,

**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

No. 5:13-cv-00825-PSG, 2015 WL 451950 (N.D. Cal. Jan. 27, 2015) ........................................... 5

*U.S. ex rel. Schumer v. Hughes Aircraft Co.*,

    63 F.3d 1512 (9th Cir. 1995), *vacated on other grounds*, 520 U.S. 939 (1997) ............................... 2

*Uniloc USA, Inc. v. Microsoft Corp.*,

    632 F.3d 1292 (Fed. Cir. 2011) ........................................................................................................ 7

*West v. Jewelry Innovations, Inc.*, C07-01812 JF (HRL),

    2009 WL 668695 (N.D. Cal. Mar. 13, 2009) .................................................................................. 7

*Whitserve, LLC v. Computer Packages, Inc.*,

    694 F.3d 10 (Fed. Cir. 2012) ..................................................................................................... 6, 8

**RULES**

Federal Rule of Civil Procedure 16(b)(4) ................................................................................................ 2

iii

PHILIPS' OPPOSITION TO HTC'S AND MICROSOFT'S MOTION FOR LEAVE TO SERVE SUBPOENA AFTER DISCOVERY DEADLINE, CASE NUMBER 4:18-CV-01885-HSG

**I.     INTRODUCTION**

With certain limited exceptions, fact discovery has been closed since January.  *See* D.I. 586; D.I. 591.  HTC and Microsoft (collectively, "Defendants") seek permission to modify the scheduling order in order to subpoena "updated" sales data from the recently settled and soon-to-be-dismissed party Acer, which was never produced or otherwise made available to Philips during the course of Philips' litigation with Acer.  Defendants claim they are entitled to Acer's updated sales data in order to support their speculative theory that the lump sum settlement agreement between Acer and Philips can be converted into an "effective per-unit royalty rate" in a manner that is both reliable and relevant to proving infringement damages in the HTC and Microsoft cases.  But under well-settled Federal Circuit law: 1) lump sum settlements have minimal, if any, probative value in establishing a reasonable running royalty, and 2) even where a lump sum agreement can be extrapolated to suggest a reasonable running royalty, the methodology itself must be sound and not far removed from the facts of the case.

The Acer lump sum settlement amount does not represent and was not negotiated to represent a running royalty applied over time.  And it is undisputed that Philips did not have access to, let alone consider, any updated Acer sales data in its decision to settle the Acer case.  It would not pass muster under Federal Circuit law for Defendants to take "updated" Acer sales data—which Philips never saw prior to settling the Acer case—and use that new data as a basis to compute an alleged "effective per- unit royalty rate" for the Acer agreement.  Any such calculation and its result would be irrelevant, misleading, prejudicial, and far removed from the facts of the case.  Moreover, allowing Defendants to conduct additional fact discovery at this stage from a settling party on the basis of a speculative damages theory would likely disrupt the schedule by delaying imminent deadlines for expert discovery and summary judgment, further prejudicing Philips.  Under these circumstances, Defendants have not shown good cause to modify the discovery deadlines set forth in the Court's scheduling order.  Philips should be permitted to prepare for trial unhindered by Defendants' attempt to obtain this untimely discovery, and respectfully requests that Defendants' motion be denied.

## II. DEFENDANTS CANNOT DEMONSTRATE GOOD CAUSE TO MODIFY THE SCHEDULING ORDER AND REOPEN DISCOVERY

A motion to reopen discovery is treated as a motion to modify the discovery deadline set in the Court's scheduling order pursuant to Federal Rule of Civil Procedure 16(b)(4). *Bookhamer v. Sunbeam Products, Inc.*, No. C-09-6027 EMC (DMR), 2012 WL 5269677 at *7 (N.D. Cal. Oct. 23, 2012). Rule 16(b)(4) permits a scheduling order to be modified only upon a showing of good cause by the party seeking amendment. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "In the context of motions to reopen discovery, the Ninth Circuit Court of Appeals has held that good cause requires the movant to show it 'diligently pursued its previous discovery opportunities' and that allowing additional discovery will preclude summary judgment." *Lexington Ins. Co. v. Scott Homes Multifamily, Inc.*, No. CV-12-02119, 2015 WL 751204, at *4 (D. Ariz. Feb. 23, 2015) (citing *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1026 (9th Cir. 2006)). There are several factors that a court may consider in deciding whether to reopen discovery:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that discovery will lead to relevant evidence.

*Lexinton*, 2015 WL 751204, at *4 (quoting *U.S. ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir. 1995), *vacated on other grounds*, 520 U.S. 939 (1997)). "Whether to reopen discovery rests in the court's sound discretion." *Bleek v. Supervalu, Inc.*, 95 F. Supp. 2d 1118, 1120 (D. Mont. 2000) (citing *U.S. ex rel. Schumer*, 63 F.3d at 1526). As explained below, these factors collectively weigh in favor of denying Defendants' motion.

### A. Reopening Discovery Could Alter Imminent Pre-Trial Deadlines

The trial against Microsoft is not set to begin until February 24, 2020. D.I. 573. However, the cases have been consolidated for all pretrial purposes (D.I. 487) and a number of expert discovery and pre-trial deadlines have either passed or are imminent, including the service of opening expert reports on April 25, 2019 (D.I. 644), the service of responsive expert reports on June 20, the close of expert discovery on August 2, 2019, and the deadline for dispositive and *Daubert*

motions on August 29, 2019 (D.I. 631). Defendants' motion is silent with respect to the timing to complete the new discovery they are seeking, *i.e.*—updated Acer sales that Philips never saw prior to settling with Acer—and the timing to disclose any expert opinions that would subsequently be rendered on the basis of this new discovery. Philips submits that it would be difficult to complete the discovery Defendants are seeking without also altering the deadlines for expert discovery and summary judgment. If Defendants' motion is granted, completion of expert discovery would need to be continued until after: 1) Acer collects and produces the subpoenaed updated sales data, 2) a new deposition is conducted of Acer on the updated sales data that is ultimately produced, 3) the parties serve alternating rounds of supplemental reports addressing Acer's production, and 4) depositions regarding the experts' supplemental reports are completed. At a minimum, Philips would have little if any time to compensate for the tardiness of Defendants' new expert opinions on the updated Acer sales data before the summary judgment process begins. Accordingly, this factor weighs against reopening discovery.

### B. Philips Opposes Defendants' Motion to Reopen Discovery

Philips opposes Defendants' request to reopen discovery, and therefore, this factor also weighs against reopening discovery.

### C. Philips Will Be Prejudiced If Defendants' Motion Is Granted

Philips has been actively engaged in litigation against Microsoft for almost three years and against HTC for over three and half years. During that time, Philips has incurred substantial expense in conducting discovery, obtaining expert opinions based on information timely discovered, and serving its damages expert reports to Microsoft and HTC. To that end, Philips' damages expert did not offer an opinion on the impact of the Acer settlement, if any, because the Acer agreement was executed after the due date for service of Philips' opening reports. Lieber Decl. ¶¶ 2-3. While Philips has agreed with Defendants to serve limited supplemental damages reports that are targeted solely to address the Acer settlement, that agreement should not be stretched to include within its purview any brand new discovery that Philips never had or considered at the time of its decision to settle the Acer case. Here, opening expert reports have been served, responsive reports are due to be served next week, and the summary judgment process is set to begin shortly. Courts in this district

have found prejudice and denied a motion to reopen discovery under similar circumstances. *Bookhamer*, 2012 WL 5269677, at *7 (finding prejudice where expert reports had been prepared and exchanged and the deadline for summary judgment motion was imminent).

Allowing Defendants to conduct additional fact discovery at this stage from a recently settled party on the basis of a speculative damages theory, and to present new expert opinions on the basis of that discovery, would significantly prejudice Philips. As explained above, it would be difficult to reopen fact discovery as proposed without also extending the imminent expert discovery and summary judgment deadlines at issue here, thereby delaying resolution of this case. Therefore, this factor also weighs against reopening discovery.

### D. The Discovery Sought Will Not Lead to Relevant Evidence

There is a reason that Defendants never sought discovery into the sales of Acer's accused products during the prolonged fact discovery period in these actions: it is not relevant to any issues in their respective cases.

As a general matter, controlling Federal Circuit precedent limits the extent to which litigants may seek sales information from third-parties on the basis of speculative theories. *See American Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 743 (Fed. Cir. 1987) (affirming denial of motion to compel the confidential sales information from a non-party alleged infringer where the Court determined that the sales information was irrelevant to the underlying infringement case and the requesting party had not established a need); *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1328 (Fed. Cir. 1990) (stating that "[a] litigant may not engage in merely speculative inquires in the guise of relevant discovery" and finding the district court abused its discretion in denying a third-party's motion to quash a subpoena seeking its confidential sales information because the requested discovery was irrelevant as it went only to proving a speculative damages theory).

#### 1. Courts Have Routinely Rejected Attempts to Convert Lump Sum Settlement Agreements into Running Royalties

Defendants' argument that Acer's sales have now become relevant by virtue of Philips's recent settlement with Acer is misplaced. Philips settled its litigation with Acer for a lump sum. Lieber Decl. ¶ 3. Defendants claim they need discovery of Acer's updated sales so they can

"divid[e] the amount of money Acer paid for its [settlement] license by the number of licensed products Acer sold" in order to rebut Philips' damages expert. Op. Br. 4. But the law is replete with examples of courts rejecting misleading reverse calculations of this nature.

First, the courts have long acknowledged that "[t]he propriety of using prior settlement agreements to prove the amount of a reasonable royalty is questionable." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012). In excluding expert testimony to the extent it relied on a settlement agreement, this Court noted:

> As the Supreme Court observed over one hundred years ago, settlement agreements have little probative value to establish patent damages. It is clear that a payment of any sum in settlement of a claim for an alleged infringement cannot be taken as a standard to measure the value of the improvements patented in determining the damages sustained by the owners of the patent in other cases of infringement. Many considerations other than the value of the improvements patented may induce the payment in such cases. The avoidance of the risk and expense of litigation will always be a potential motive for settlement.

*Sentius Intern'l, LLC v. Microsoft Corp.*, No. 5:13-cv-00825-PSG, 2015 WL 451950, at *4 (N.D. Cal. Jan. 27, 2015) (quoting *Rude v. Westcott*, 130 U.S. 152, 164 (1889) (quotations omitted)). Consequently, in those patent cases where settlement agreements may be pertinent to the issue of a reasonable royalty, the courts require an adequate accounting of the substantial differences between the economic circumstances the litigation settlement, on the one hand, and the hypothetical negotiation on the other. *See, e.g., Sentius*, 2015 WL 45190, at *8. To that end, it is misleading for Defendants to suggest that simply dividing the Acer settlement amount by Acer's sales data would be relevant to the determination of any reasonable royalty here, because that methodology does not address, let alone begin to quantify, the substantial differences between the Acer litigation settlement and a reasonable royalty for Defendants' infringement.

Second, the Federal Circuit has recognized on multiple occasions that "certain fundamental differences exist between lump-sum agreements and running royalty agreements." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1330 (Fed. Cir. 2009). These "fundamental differences"

include the fact that lump sum agreements allocate risks between the parties entirely differently than running royalty agreements. *See id.* at 1326. Given these differences, courts have cautioned that it "is settled that lump sum settlement agreements have minimal, if any, probative value in establishing a running royalty." *ePlus, Inc. v. Lawson Software, Inc.*, 764 F. Supp. 2d 807, 814 (E.D. Va. 2011). And courts have routinely rejected misleading reverse calculations similar to those proposed by Microsoft and HTC. *See, e.g.*, *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 30-31 (Fed. Cir. 2012) (rejecting reliance on lump sum licenses to support a running royalty rate); *ePlus*, 764 F. Supp. 2d at 814 (same).

The *ePlus* case is instructive. There, patentees' damages expert took a third party's sales figures (which were disclosed in an expert report from a prior litigation) and applied various projections and discounts thereto in order to arrive at a "royalty base" that he subsequently used to convert that third party's lump sum settlement amount into a running royalty. *Id.* at 810-11. The court rejected the conversion of a lump sum settlement to a running royalty on the basis of this "dubious" and "speculative" royalty base, finding the testimony was not relevant and that its prejudicial consequences substantially outweighed its probative value. *Id.* at 815. While the court acknowledged that in some cases a lump sum can be extrapolated to suggest a running royalty, it cautioned that "the methodology must itself be sound and not speculative and far removed from the facts of the case." *Id.* at 814.

In the instant case, Defendants propose that the Court reopen discovery to allow them to make the same type of speculative calculation that was expressly rejected as irrelevant and prejudicial in *ePlus*. In fact, the prejudice is particularly strong here where Philips never had access to Acer's updated sales and obviously never considered those in deciding whether to settle with Acer. Any reliance by Defendants on updated Acer sales data that Philips never saw to extrapolate a per unit rate for the Acer settlement is exactly the type of methodology that *ePlus* warned against— i.e., speculative and far removed from the facts of the case. It is axiomatic that Philips could not have considered that updated data in settling the Acer case, which, among the many other reasons that distinguish the Acer settlement from the hypothetical negotiation with Defendants, shows that

the updated data cannot be taken as a standard to measure the reasonable royalty resulting from a hypothetical negotiation.

In order to resolve the instant dispute, Philips previously offered Defendants a compromise: Philips would produce to Defendants all the Acer sales data that Acer produced to Philips during the course of Philips' litigation with Acer, along with the transcript of the Acer 30(b)(6) deposition regarding such sales data, on the condition that Defendants' withdraw the instant motion seeking updated Acer sales that Philips never saw. Lieber Decl. Ex. 1. Defendants did not respond. Lieber Decl. ¶ 4. Defendants' failure to respond to that compromise underscores the fact that they are primarily interested in seeking access to information that Philips did not have at the time of its Acer settlement. In short, the discovery Defendants are seeking is too far removed from the facts of the case and irrelevant to the issues in this litigation.

Defendants' cases do not compel a different result. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014), *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011), and *West v. Jewelry Innovations, Inc.*, C07-01812 JF (HRL), 2009 WL 668695 (N.D. Cal. Mar. 13, 2009), stand for the unremarkable proposition that licenses covering the patent in suit may be relevant to a determination of damages. None of Defendants' cases address, let alone authorize, the propriety of a discovery request that seeks confidential third-party sales data for the purpose of converting a lump sum settlement amount into a running royalty. Nor do those cases authorize such a discovery request long after the cut-off date specified by the Court's scheduling order.

### 2. Philips' Damages Contentions Against Acer Are Not Relevant Here

Defendants raise an additional argument why they believe they should be allowed to subpoena Acer's sales data: that the inaccuracies in Philips' damages contentions against Acer confer good cause to reopen discovery. That argument is also misplaced.

It is true that Philips damages contentions against Acer contain inaccuracies. As Philips previously explained to Defendants, the Acer damages contentions contain several material errors that were discovered during a 30(b)(6) deposition of an Acer sales witness long after the contentions had already been served. McBrayer Decl. Ex. 2. Those errors include, among others, that Philips

was double- and triple-counting certain Acer unit sales due to an erroneous understanding of how Acer organized its produced sales data. *Id.*

But the accuracy, or lack thereof, of Philips' damages contentions are of no moment here. For the same reasons that it would be improper to use "updated" Acer sales to attempt an "effective per-unit royalty rate" calculation for the Acer lump sum settlement agreement, it would also be improper to use Philips' damages contentions—regardless of their accuracy—to attempt the same. Either way, that calculation and its result would be irrelevant, misleading and prejudicial. *See, e.g. Whitserve*, 694 F.3d at 30-31; *ePlus*, 764 F. Supp. 2d at 814-16.

Because Defendants have failed to show that the discovery they are seeking would lead to relevant evidence, this factor also weighs against reopening discovery.

### E. Philips' Settlement With Other Parties Was Foreseeable

Philips previously settled its claims with three other parties in these related actions during the fact discovery period. Accordingly, settlement with other parties such as Acer was foreseeable, and to the extent that Defendants' claim that the sales data they are seeking is relevant, they had ample opportunity to request it during the time period allowed for discovery by the scheduling order. This factor also weighs against reopening discovery.

## III. CONCLUSION

For the foregoing reasons, Philip respectfully requests that the Court deny Defendants' motion to reopen discovery.

1  Dated: June 14, 2019

2  Respectfully submitted,

3  Chris Holland (SBN 164053)  /s/ Natalie Lieber
   Lori L. Holland (SBN 202309)
4  HOLLAND LAW LLP  Michael Sandonato (admitted *pro hac vice*)
   220 Montgomery Street, Suite 800  John Carlin (admitted *pro hac vice*)
5  San Francisco, CA 94104  Christopher Gerson (admitted *pro hac vice*)
   Telephone: (415) 200-4980  Natalie Lieber (admitted *pro hac vice*)
6  Fax: (415) 200-4989  Jonathan M. Sharret (admitted *pro hac vice*)
   cholland@hollandlawllp.com  Daniel Apgar (admitted *pro hac vice*)
7  lholland@hollandlawllp.com  Sean M. McCarthy (admitted *pro hac vice*)
                              Robert Pickens (admitted *pro hac vice*)
8                             Joyce Nadipuram (admitted *pro hac vice*)
                              Caitlyn Bingaman (admitted *pro hac vice*)
9
                              VENABLE LLP
10                            1290 Avenue of the Americas
                              New York, New York, 10104
11                            +1 (212) 218-2100
                              +1 (212) 218-2200 facsimile
12                            philipsprosecutionbar@venable.com

13                            *Attorneys for Plaintiffs Koninklijke Philips*
                              *N.V. and U.S. Philips Corporation*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9
PHILIPS' OPPOSITION TO HTC'S AND MICROSOFT'S MOTION FOR LEAVE TO SERVE SUBPOENA AFTER
DISCOVERY DEADLINE, CASE NUMBER 4:18-CV-01885-HSG