John P. Schnurer (CA Bar No. 185725)
PERKINS COIE LLP
11988 El Camino Road, Suite 350
San Diego, CA 92130
Telephone: (858) 720-5700
Facsimile: (858) 720-5799

Ryan J. McBrayer (*pro hac vice*)
Jonathan R. Putman (*pro hac vice*)
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone: (206) 359-8000
Facsimile: (206) 359-9000

Attorneys for Defendants
HTC CORP.
HTC AMERICA, INC.

Judith B. Jennison (CA Bar No. 165929)
Christina McCullough (CA Bar No. 245944)
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington, 98101
Telephone: (206) 359-8000
Facsimile: (206) 359-9000

Chad S. Campbell (CA Bar No. 258723)
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, Arizona, 85012
Telephone: (602) 351-8000
Facsimile: (602) 648-7000

Tiffany P. Cunningham (*pro hac vice*)
PERKINS COIE LLP
131 South Dearborn, Suite 1700
Chicago, Illinois 60603
Telephone: (312) 324-8400
Facsimile: (312) 324-9400

Attorneys for Intervenor-
Plaintiffs/Counterclaim Defendants
MICROSOFT CORPORATION
MICROSOFT MOBILE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE KONINKLIJKE PHILIPS PATENT LITIGATION. | Case No. 4:18-cv-01885-HSG-EDL<br><br>JURY TRIAL DEMANDED<br><br>**HTC'S AND MICROSOFT'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO SERVE SUBPOENA AFTER DISCOVERY DEADLINE**<br><br>Hearing Date: Vacated (D.I. 669)<br><br>Hearing Time: 2:00 p.m. |

# TABLE OF CONTENTS

|     |     | Page |
| --- | --- | --- |
| I.   | Introduction ................................................................................................................... 1 | |
| II.  | Defendants Have Shown Good Cause for a Targeted Reopening of Discovery on Philips' Recent Licensing of the Asserted Patents............................................................. 2 | |
|      | A. Trial Is Not Imminent and There Is No Need to Alter the Case Schedule.............. 2 | |
|      | B. Philips' Opposition Contradicts Its Past Stipulations ............................................. 3 | |
|      | C. Philips Has Not Identified Any Cognizable Prejudice............................................ 4 | |
|      | D. Defendants Diligently Pursued This Discovery Despite Philips' Delay................. 5 | |
|      | E. Defendants Could Not Have Foreseen the Need for Third-Party Discovery on a Settlement Announced After the Close of Discovery .................................... 6 | |
|      | F. The Requested Subpoena Is Directed to Targeted, Discoverable Evidence ........... 6 | |
|      |    1. Lump Sum Settlement Agreements Can Be Relevant to Reasonable Royalty Determinations ................................................................................. 7 | |
|      |    2. The Acer Agreement Reveals the Discoverability of the Sales Data........ 10 | |
|      |    3. Philips' Outdated and Admittedly "Inaccurate" Damages Contentions Do Not Obviate the Need for This Narrow Discovery ......... 10 | |
| III. | Conclusion ................................................................................................................... 11 | |

# TABLE OF AUTHORITIES

**Page**

**CASES**

*American Standards, Inc. v. Pfizer, Inc.*,
 828 F.2d 734 (Fed. Cir. 1987)..................................................................................................7

*Barnes and Noble, Inc. v. LSI Corp.*,
 No. C 11-02709 EMC (LB), 2012 WL 6697660 (N.D. Cal. Dec. 23, 2012).............................8

*Bleek v. Supervalu, Inc.*,
 95 F. Supp. 2d 1118 (D. Mont. 2000) ......................................................................................2

*Bookhamer v. Sunbeam Prods., Inc.*,
 No. C-09-6027 EMC DMR, 2012 WL 5269677 (N.D. Cal. Oct. 23, 2012).................... passim

*Broadcom Corp. v. Emulex Corp.*,
 Nos. SACV 09-01058-JVS, CV 10-03963-JVS (Anx) ), 2011 WL 11025895
 (C.D. Cal. Dec. 13, 2011) .........................................................................................................9

*ePlus, Inc. v. Lawson Software, Inc.*,
 764 F. Supp. 2d 807 (E.D. Va. 2011).......................................................................................9

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
 694 F.3d 51 (Fed. Cir. 2012).....................................................................................................7

*Lucent Techs. Inc. v. Gateway*,
 580 F.3d 1301 (Fed. Cir. 2009).................................................................................................9

*Micro Motion, Inc. v. Kane Steel Co.*,
 894 F.2d 1318 (Fed. Cir. 1990).................................................................................................7

*Morning Star Packaging Company v. SK Foods, LP*,
 No. 2:09-cv-00208-KJM-EFB, 2017 WL 117891 (E.D. Ca. Jan. 11, 2017) ............................4

*Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*,
 254 F.R.D. 568 (N.D. Cal. 2008)..............................................................................................8

*Sentius Int'l, LLC v. Microsoft Corp.*,
 No. 5:13-cv-00825-PSG, 2015 WL 451950 (N.D. Cal. Jan. 27, 2015) ....................................8

*Synchronoss Techs., Inc. v. Dropbox Inc.*,
 No. 4:6-cv-00119-HSG (KAW), 2018 WL 4613151 (N.D. Cal. Sept. 26, 2018) .....................6

*Whitewater West Indus. Ltd. v. Pacific Surf Designs Inc.*,
 No. 17cv1118-BEN (BLM), 2019 WL 1547407 (S.D. Cal. Apr. 8, 2019)...............................2

*Whitserve LLC v. Whitmyer*,
 694 F.3d 10 (Fed. Cir. 2012).....................................................................................................9

*Wordtech Systems, Inc. v. Integrated Networks Solution*,
 609 F.3d 1308 (Fed. Cir. 2010).................................................................................................9

## I.   Introduction

Acer settled its dispute with Philips and took a license to the very patents asserted in these consolidated actions *after* the close of fact discovery. The law is clear that a license agreement to the asserted patents, and the underlying product sales subject to that license, may be relevant to damages issues in this action. Philips agrees that license agreements to the patents, including agreements with defendants to this case, may be relevant—its damages expert relied on licenses with other defendants that settled out of this case before Acer to support Philips' damages claim. Philips even produced the new Acer license agreement.

Philips nonetheless opposes Defendants' request for leave to conduct targeted discovery into the sales figures for the Acer accused products that the license covers on the basis that fact discovery is closed. Philips relies on inapposite legal authority and asks the Court to issue preemptive *Daubert* determinations on the admissibility of hypothetical expert opinions based on documents Defendants do not possess. This is not the standard. If the Acer agreement is discoverable and must be produced, then Philips cannot deny that the sales data underlying and necessary to understanding that agreement, is also discoverable.

Defendants have established good cause to discover this *new* evidence that is solely in the possession of Acer. First, the requested subpoena will have no apparent impact on the case schedule because the Microsoft trial is not set to begin until February 2020 and no trial date is set for HTC yet. Next, Philips has not articulated any prejudice to it and has already agreed to a schedule for supplementing expert reports in view of the new Acer license agreement. In addition, Defendants have diligently pursued this information since first learning of the settlement in principle on April 30th before they were finally forced to file the Motion. And despite Philips' protestations to the contrary, Defendants could not have foreseen that Philips would license the asserted patents to Acer or the need for preemptive discovery on Acer (or any other potential licensee). And, finally, this Court and the Federal Circuit have made clear that the requested discovery on the Acer agreement may lead to evidence relevant to damages issues in this action.

The question is not whether or how Defendants or their damages experts may rely on this evidence at trial but rather, as a threshold matter, whether Defendants have established good cause

to serve a targeted subpoena on Acer in view of Philips' new license to the asserted patents. Good cause has been established.

## II. Defendants Have Shown Good Cause for a Targeted Reopening of Discovery on Philips' Recent Licensing of the Asserted Patents

There is abundant good cause to permit targeted discovery on a settlement and license agreement that *did not exist* prior to the close of fact discovery. Defendants will separately address each of the six *Bookhamer* factors.[1]

### A. Trial Is Not Imminent and There Is No Need to Alter the Case Schedule

The first factor is "whether trial is imminent." *Bookhamer*, 2012 WL 5269677, at *7. Trial against Microsoft is not set to begin until February 24, 2020—more than 8 months away. (D.I. 573.) And a trial against HTC is not yet set. The requested subpoena will not therefore impact trial in this action, and this factor weighs in favor of the requested relief. *See Bleek v. Supervalu, Inc.*, 95 F. Supp. 2d 1118, 1120 (D. Mont. 2000) ("It is true the trial of this matter is not 'imminent.' Trial is scheduled to commence [ ] some six months hence."); *Whitewater West Indus. Ltd. v. Pacific Surf Designs Inc.*, 17cv1118-BEN (BLM), 2019 WL 1547407, at *6 (S.D. Cal. Apr. 8, 2019) (finding trial was not imminent where a trial date is not yet set).

Philips nonetheless points to the ongoing expert discovery deadlines that culminate in the current August 2nd deadline for the close of expert discovery and the August 29th deadline for dispositive and *Daubert* motions. (D.I. 673, at 2-3.) It is not apparent that either of these deadlines would need to be adjusted in view of the Court's June 4, 2019 decision to expedite review of the

---

[1] The Northern District of California has considered the following factors when determining whether there is good cause to reopen discovery under Rule 16(b)(4):

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*Bookhamer v. Sunbeam Prods., Inc.*, No. C-09-6027 EMC DMR, 2012 WL 5269677, at *7 (N.D. Cal. Oct. 23, 2012) (quoting *U.S. ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir. 1995) *vacated on other grounds*, 520 U.S. 939 (1997)). These six factors are referred to herein as the *Bookhamer* factors. Philips addressed five of the six factors in its opposition. (D.I. 673.)

Motion (D.I. 669), and Defendants' narrow request to subpoena only updated sales data and related testimony from Acer (D.I. 663-4). To the contrary, the parties *already agreed* on a timeline and procedure for serving supplemental damages expert reports, if any, necessary after Acer produces information responsive to the proposed subpoena:

- After the Court resolves the motion to serve the subpoena on Acer, within 14 days of the Court's decision denying the motion or 14 days of Acer producing responsive documents and any deposition, Philips may serve a supplemental damages expert report solely to address the Acer settlement.
- Defendants (HTC, Microsoft, ASUS) may serve a supplemental damages expert report 14 days after they receive Philips' supplemental report or after Philips notifies Defendants they will not be serving a supplemental report.
- Within 30 days of service of Defendants' responsive reports, each party may take up to a 1-hour deposition of each expert that served a supplemental report on them (e.g., HTC, Microsoft, and ASUS each get 1 hour with Philips' damages expert; Philips gets 1 hour with each of HTC, Microsoft, and ASUS's damages experts), with each deposition limited to topics addressed in the supplemental reports.

Putman Decl., Ex. 3, at 1. There is therefore no reason to believe that the requested relief would impact the case schedule, let alone Microsoft's February 2020 trial date. And Philips' complaint that it would have "little if any time" to address any supplemental reports addressing the Acer sales data—a targeted request to merely update the sales data Philips previously received from Acer— rings hollow in view of the schedule Philips already negotiated.

**B. Philips' Opposition Contradicts Its Past Stipulations**

Philips makes clear that it opposes Defendants' request for leave to serve a subpoena. (D.I. 673, at 3.) But Philips' opposition is contrary to Philips' previous agreements to extend discovery deadlines to permit discovery on other recent license agreements. (*See, e.g.*, D.I. 591 at 3-4; 628 at 2.) Specifically, Philips produced documents regarding a recent license to the asserted patents in December 2018. Defendants immediately sought additional discovery regarding this agreement. Fact discovery however was set to close on January 4, 2019. Philips agreed to the additional

discovery but stipulated with Defendants that fact discovery be extended to facilitate the discovery. Accordingly, Philips' past practice demonstrates the discoverability of this type of information and past willingness to extend the fact discovery deadline to conduct that discovery. Where, as here, Philips appears to be selectively agreeing to additional discovery to cherry-pick the evidence it wants to present at trial on its recent settlement and license agreements, Philips' stated opposition to the requested relief should be accorded no weight.

### C. Philips Has Not Identified Any Cognizable Prejudice

Philips points to the "substantial expense" it has incurred in connection with this litigation—a litigation it initiated—to argue that it would somehow be prejudicial to supplement its expert reports to address the accused product sales encompassed by Philips' own agreement with Acer. To be clear, Philips admits that it already intends to supplement its expert reports to address the Acer agreement, but Philips complains that it is somehow prejudicial to supplement its expert report to also address the accused product sales revenues encompassed by that agreement. (D.I. 673, at 3.) Philips does not attempt to quantify the purported expense or explain why it is even necessary for Philips' experts to address that information if, as Philips submits, that data is not relevant to the damages theories Philips intends to present. (*See id.*) *See generally Morning Star Packaging Company v. SK Foods, LP*, No. 2:09-cv-00208-KJM-EFB, 2017 WL 117891 (E.D. Ca. Jan. 11, 2017) (finding no prejudice from reopening discovery because there was no increased burden from conducting a deposition that would have otherwise occurred prior to the discovery deadline). Here, as in *Morning Star*, there is no question that Defendants would have been entitled to the requested discovery if Philips had executed the Acer license agreement prior to the close of discovery; there is similarly no increased burden and therefore prejudice here.

Philips' reliance on *Bookhamer*, 2012 WL 5269677, at *7, is misplaced and does not support its argument either. The plaintiff in that action alleged that the defendant's electric blanket or electric mattress pad caused a fatal fire. *Id*. at *1. The plaintiff disclosed two new fact witnesses after the close of fact discovery and requested leave to reopen discovery to depose four fact witnesses, two of which the plaintiff had previously refused to produce for deposition prior to the fact discovery deadline. *Id*. at *5. The Court found that the plaintiff's request to reopen discovery

1  in that action would prejudice the defendant because deadlines for expert discovery and dispositive

2  motions were only days away. *Id.* at *8. Here, however, the requested discovery is directed to a

3  newly-executed license to the asserted patents, so there is no question that Defendants could not

4  have previously conducted this discovery. In addition, Defendants and Philips have already agreed

5  to a procedure for timely supplementing any expert reports, if necessary, and the deadlines for

6  expert discovery and dispositive motions are six weeks and two months away, respectively.

7  *Bookhamer* does not support Philips' attempt to frustrate Defendants' discovery on this new

8  agreement.

9          **D.**     **Defendants Diligently Pursued This Discovery Despite Philips' Delay**

10         The fourth factor, which Philips did not address, is "whether the moving party was diligent

11 in obtaining discovery within the guidelines established by the court." *Bookhamer*, 2012 WL

12 5269677, at *7. This factor also weighs in favor of Defendants. As shown in the timeline below,

13 Defendants immediately and diligently sought discovery on the Acer settlement and license

14 agreement as soon as Philips announced the settlement in principle to the Court:



23         Notably, fact discovery ended on February 28th, but Philips and Acer did not first announce

24 the settlement in principle until they sought to stay the Acer action two months later. (D.I. 646.)

25 Defendants immediately requested discovery regarding the Acer settlement agreement and all

26 relevant documents, including Acer's underlying sales of the accused products and engaged in a

27 series of meet and confers with Philips. (*See, e.g.*, D.I. 663-2.) Philips represents that the Acer

28

Case 4:18-cv-01885-HSG   Document 691-5   Filed 07/25/19   Page 9 of 15
UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

agreement was executed on May 23rd (D.I. 673-1, at ¶ 3) but did not produce the agreement until June 14th, three weeks after execution and two weeks after Defendants filed the Motion. Defendants have diligently sought the discovery requested, and Philips is responsible for any delay. Accordingly, this factor also heavily weighs in favor of granting the Motion.

### E. Defendants Could Not Have Foreseen the Need for Third-Party Discovery on a Settlement Announced After the Close of Discovery

As explained above, Philips did not publicly announce a settlement in principle with Acer until April 30, 2019—nearly two months after the close of discovery.  (D.I. 646.)  While Philips now argues that Philips' "settlement with other parties such as Acer was foreseeable" (D.I. 673, at 8), Philips unsurprisingly points to no prior notice to Defendants and no legal authority for the extraordinary proposition that an accused infringer is responsible for guessing which entities a patent owner might license after the close of discovery to preemptively seek discovery on any underlying sales data in that hypothetical event.  That is because preemptive discovery of a co-defendant with different accused products is precluded by Rule 26(b)(1).  FED. R. CIV. P. 26(b)(1) ("[a] party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.").  Acer's sales data would not be discoverable or lead to relevant evidence if not for the Acer agreement.  *Cf. Synchronoss Techs., Inc. v. Dropbox Inc.*, No. 4:6-cv-00119-HSG (KAW), 2018 WL 4613151, at *6 (N.D. Cal. Sept. 26, 2018) ("Dropbox should be entitled to obtain any documents relating to licenses that would be relevant to ascertaining, quantifying, or confirming the damages amount resulting from infringement of the very patents asserted in this case[.]").  This factor also weighs in favor of Defendants.

### F. The Requested Subpoena Is Directed to Targeted, Discoverable Evidence

The final factor is whether Defendants' targeted subpoena to Acer seeking documents and testimony on Acer's quarterly sales of the accused products at issue in this litigation and now licensed to the patents "will lead to relevant evidence."  *Bookhamer*, 2012 WL 5269677, at *7. The test here is "relevance," which is any evidence that "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action."  FED. R. EVID. 401.

1    As an initial matter, Philips misapplies two Federal Circuit decisions to make a blanket
2    claim that Defendants are limited from pursuing sales information from third parties. First, the
3    Federal Circuit in *American Standards, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 743 (Fed. Cir. 1987),
4    considered a patent owner's request for discovery on a third-party's confidential sales data to
5    support a potential commercial success argument. The court found that the patent owner failed to
6    demonstrate that there was a relationship between the claimed invention in the asserted patent and
7    the confidential sales data that was being sought. *Id.* at 742. That is not the case here because
8    Defendants are seeking discovery that may prove relevant to damages issues, and Philips licensed
9    the accused Acer products to the asserted patents. Moreover, the Federal Circuit further observed
10   that the third-party had already provided nonconfidential sales information. *Id.* at 743. In contrast
11   here, Defendants do not currently have access to accurate sales data for the now-licensed accused
12   products. Similarly, the Federal Circuit denied discovery of third-party sales information in *Micro*
13   *Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1328 (Fed. Cir. 1990), where the requester failed to
14   provide evidence that the third-party products for which discovery was sought practiced the
15   asserted patent or were even related to the subject matter of the infringement action. *Id.* at 1327.
16   The discovery was instead speculative because the requester only had a "suspicion" that the third-
17   party products infringed and no evidence of infringement. *Id.* at 1327. Neither decision applies
18   here because the proposed subpoena is directed to Acer's sales data for products now licensed to
19   the asserted patents.

20       **1.    Lump Sum Settlement Agreements Can Be Relevant to Reasonable**
21           **Royalty Determinations**

22   Philips next argues against the "propriety" of using settlement agreements to prove a
23   reasonable royalty in reliance on *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77
24   (Fed. Cir. 2012). (D.I. 673, at 5.) There the Federal Circuit reviewed a trial court's denial of a
25   motion in limine to exclude evidence of a settlement agreement the appellate court described as
26   "the least reliable license by a wide margin" under Federal Rule of Evidence 403 based on the
27   unique circumstances leading to the agreement in that action. *Id.* Moreover, Philips omits that the
28   Federal Circuit specifically acknowledged in that same decision that reliance on settlement

agreements to establish reasonable royalty damages *is* permitted in other circumstances. *Id.*

This District has also consistently held that settlement agreements are discoverable and can be relevant. *See Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 583 (N.D. Cal. 2008) ("This court finds that, at a minimum, discovery of licensing/settlement negotiations is reasonably calculated to lead to relevant, admissible evidence."); *cf. Barnes and Noble, Inc. v. LSI Corp.*, No. C 11-02709 EMC (LB), 2012 WL 6697660, at *3 (N.D. Cal. Dec. 23, 2012) (requiring defendants disclose license agreements and their respective drafts in response to a request for production). And contrary to Philips' portrayal of the dicta in *Sentius Int'l, LLC v. Microsoft Corp.*, No. 5:13-cv-00825-PSG, 2015 WL 451950, at *4 (N.D. Cal. Jan. 27, 2015), this Court acknowledged in that decision that "settlement agreements can be pertinent to the issue of reasonable royalties." In *Sentius*, the Court excluded portions of an expert's testimony under Federal Rule of Evidence 403 that relied on a license agreement where the expert did not adequately account for the differences between the "economic circumstances" of the parties in the settlement agreement and the parties in the hypothetical negotiation. *See Sentius*, 2015 WL 451950, at *7-8. Specifically, the settlement agreement in that action was directed to U.S. and European patents but the patent owner only alleged infringement of U.S. patents. *Id.* The expert acknowledged this difference and the fact that there would be fewer patents considered in the hypothetical negotiations but failed to explain how these differences affected his adjustment. *Id.* Needless to say, Defendants' request for leave to serve a subpoena is several steps removed from analysis of any expert opinions derived from review of the requested sales data. Philips' claim that the requested discovery is not "relevant" amounts to a request that the Court preemptively exclude expert opinions on the Acer agreement by denying Defendants and their experts access to the very information necessary to form an opinion in the first place.

Philips next argues at length that it has shielded the Acer agreement from discovery because the agreement is structured as "a lump sum" and is therefore irrelevant to Philips' damages theories. (D.I. 673, at 4.) Philips is wrong there too. There is ample authority—even the very legal authority on which Philips relies—for the proposition that lump sum patent licenses *can be* relevant to determining a reasonable royalty so long as the accompanying testimony explains how the lump

sum applies to the facts of the case. *See Whitserve LLC v. Whitmyer*, 694 F.3d 10, 30 (Fed. Cir. 2012) (finding expert failed to explain how the lump sum payments could be converted to a royalty rate, not that lump sum payment could never be converted to a royalty rate); *Wordtech Systems, Inc. v. Integrated Networks Solution*, 609 F.3d 1308, 1320 (Fed. Cir. 2010) (finding the jury's reasonable royalty was not supported by the past lump sum agreements because additional data regarding how the lump sum was calculated was not provided); *Lucent Techs. Inc. v. Gateway*, 580 F.3d 1301, 1330 (Fed. Cir. 2009) ("For a jury to use a running-royalty license agreement as a basis to award lump-sum damages award [ ] some basis for comparison must exist in the evidence presented to the jury."); *ePlus, Inc. v. Lawson Software, Inc.*, 764 F. Supp. 2d 807, 814 (E.D. Va. 2011) (acknowledging that a lump sum agreement may be "extrapolated to suggest a reasonable running royalty" so long as the methodology used is sound); *Broadcom Corp. v. Emulex Corp.*, Nos. SACV 09-01058-JVS (Anx), CV 10-03963-JVS (Anx), 2011 WL 11025895, at *6 (C.D. Cal. Dec. 13, 2011) (upholding a reasonable royalty that was partially based on a lump sum agreement where the expert "represented only that the [ ] license was comparable in contribution to the performance of the overall product at issue, the chip.").

Simply put, there is no *per se* rule against the relevance of lump sum license agreements that would preclude discovery on the underlying accused product sales. Not only are these lump sum agreements potentially relevant, but discovery regarding the licensed products, such as sales revenues, are key to the extrapolation of the lump sum to a reasonable running royalty. *See Wordtech Systems*, 609 F.3d at 1320 (stating that evidence of the "volume of sales or projected sales" would explain how the lump sum agreements correlated to the infringing sales to appropriately calculate a reasonable royalty). That is why the cases on which Philips relies involve a *Daubert* analysis of proposed expert testimony, not a determination of whether underlying evidence was relevant and discoverable in the first place. *ePlus*, 764 F. Supp. at 814 (applying *Daubert* analysis to a motion to exclude expert testimony).

### 2. The Acer Agreement Reveals the Discoverability of the Sales Data

Philips finally produced the Acer settlement and license agreement to Defendants simultaneously with its opposition brief on June 14, 2019—six weeks after announcing the settlement

in principle to the Court and three weeks after executing the agreement. Putman Decl., ¶ 3. The Acer agreement unsurprisingly contemplates its importance to this action by expressly acknowledging that "there is an overlap between Philips' claims of patent infringement against Acer and Philips' claims of patent infringement against Microsoft." *Id.* And while Philips now argues that "Philips could not have considered [the] updated [sales] data in settling the Acer case" (D.I. 673, at 6), the agreement reveals that Philips did rely on *representations* from Acer regarding up-to-date sales data and went so far as to state in the agreement that sales of the accused Acer products "have declined in recent quarters prior to the Effective Date." *Id.*

Philips' hypocrisy is apparent. Philips wants to prevent Defendants from accessing the sales data that would provide context for the Acer agreement and from which a reasonable royalty could be extrapolated under the guise that it did not have that sales data. But the agreement itself demonstrates that while Philips may not have had the actual spreadsheets, Philips certainly received and relied on *information* from Acer on that sales data. Philips cannot use the agreement as a sword while shielding the relevant context from discovery.

### 3. Philips' Outdated and Admittedly "Inaccurate" Damages Contentions Do Not Obviate the Need for This Narrow Discovery

Philips' claim to have already offered Defendants an acceptable "compromise" in the form of outdated sales data and its inaccurate damages contentions in the Acer action also falls flat. (D.I. 673, at 7.) First, Philips offered to produce to Defendants Acer's old sales data from the related action and a deposition transcript regarding Acer's testimony on that sales data. *Id.* As explained above, this data is outdated and does not reflect the information on which Philips and Acer expressly relied in the May 23, 2019 license agreement. And Philips' recent production of its damages contentions in the Acer action—damages contentions Philips freely admits contain "inaccuracies" and "several material errors" (D.I. 673, at 7)—also fails to provide reliable sales data for the licensed Acer products either. Philips' production of these damages contentions is particularly suspect in view of its warning in meet and confers that it may move to preclude any testimony based on those same contentions because they are inaccurate. (*See* D.I. 663-3, at 1.) Defendants decline Philips' proffered outdated, inaccurate, and materially erroneous evidence.

1    This final, sixth *Bookhamer* factor thus also favors granting Defendant's Motion.

**III.    Conclusion**

Defendants have established good cause to allow narrow discovery on the underlying accused product sales to the May 23, 2019 Acer settlement and license agreement and respectfully request the narrow reopening of discovery be granted.

Respectfully submitted June 21, 2019.

| | |
|---|---|
| */s/ Jonathan R. Putman* | */s/ Tiffany P. Cunningham* |
| Ryan J. McBrayer (*pro hac vice*) | Tiffany P. Cunningham (*pro hac vice*) |
| Jonathan R. Putman (*pro hac vice*) | PERKINS COIE LLP |
| PERKINS COIE LLP | 131 South Dearborn, Suite 1700 |
| 1201 Third Avenue, Suite 4900 | Chicago, Illinois 60603 |
| Seattle, Washington, 98101 | Telephone: (312) 324-8400 |
| +1 (206) 359-8000 | Facsimile: (312) 324-9400 |
| +1 (206) 359-9000 facsimile | msft-philipsteam@perkinscoie.com |
| htc-philipsperkinsservice@perkinscoie.com | |
| | Judith B. Jennison (CA Bar No. 165929) |
| John P. Schnurer (Cal. Bar No. 185725 | Christina McCullough (CA Bar No. 245944) |
| PERKINS COIE LLP | PERKINS COIE LLP |
| 11988 El Camino Real, Suite 350 | 1201 Third Avenue, Suite 4900 |
| San Diego, California, 92130 | Seattle, Washington, 98101 |
| +1 (858) 720-5700 | Telephone: (206) 359-8000 |
| +1 (858) 720-5799 facsimile | Facsimile: (206) 359-9000 |
| htc-philipsperkinsservice@perkinscoie.com | |
| | Chad S. Campbell (CA Bar No. 258723) |
| | PERKINS COIE LLP |
| *Attorneys for Defendants HTC Corp. and HTC America, Inc.* | 2901 North Central Avenue, Suite 2000 |
| | Phoenix, Arizona, 85012 |
| | Telephone: (602) 351-8000 |
| | Facsimile: (602) 648-7000 |
| | |
| | *Attorneys for Intervenor-Plaintiffs/Counterclaim Defendants Microsoft Corporation and Microsoft Mobile Inc.* |

ATTESTATION UNDER CIVIL L.R. 5-1(i)(3)

Pursuant to Civil Local Rule 5-1(i)(3), I attest that I have received concurrence in the filing of this document from every other signatory to this document, and that I maintain records to support this concurrence.

Dated June 21, 2019.      /s/ Jonathan R. Putman
                          Jonathan R. Putman