John P. Schnurer (CA Bar No. 185725)
PERKINS COIE LLP
11988 El Camino Road, Suite 350
San Diego, CA 92130
Telephone: (858) 720-5700
Facsimile: (858) 720-5799

Ryan J. McBrayer (*pro hac vice*)
Jonathan R. Putman (*pro hac vice*)
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone: (206) 359-8000
Facsimile: (206) 359-9000

Attorneys for Defendants
HTC CORP.
HTC AMERICA, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE KONINKLIJKE PHILIPS PATENT LITIGATION | Case No. 4:18-cv-01885-HSG-EDL<br><br>Honorable Judge Hayward S. Gilliam<br><br>**HTC'S *DAUBERT* MOTION TO EXCLUDE EXPERT OPINIONS OF MICHAEL E. TATE**<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**<br><br>Hearing Date: November 14, 2019<br>Hearing Time: 2:00 p.m. |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1
II. BACKGROUND .................................................................................................................. 2
    A. Philips Asserts Only Six Patents ............................................................................. 2
    B. ████████████████████████████████████ ............................................ 2
III. LEGAL STANDARDS ........................................................................................................ 6
IV. ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████ ................... 10
V. CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*,
  235 U.S. 641 (1915)..................................................................................................................6

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014)..................................................................................................6

*Golden Bridge Tech. v. Apple Inc.*,
  No. 5:12-CV-04882-PSG, 2014 WL 4057187 (N.D. Cal. June 1, 2014) ....................6, 7, 8, 10

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012)......................................................................................................6

*Oracle Am., Inc. v. Google Inc.*,
  No. C 10-03561 WHA, 2012 WL 4017808 (N.D. Cal. Apr. 10, 2012)........................6, 7, 8, 12

**STATUTES**

35 U.S.C. § 284 .............................................................................................................1, 6, 7, 9

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:  PLEASE TAKE NOTICE that on November 14, 2019, at 2:00 p.m., or as soon as the matter may be heard, in the courtroom of the Honorable Haywood S. Gilliam, Jr., located at 1301 Clay Street, Oakland, California, Defendants HTC Corp. and HTC America, Inc. (collectively, "HTC") will and do move the Court to exclude the opinions and testimony of Michael E. Tate, a damages expert retained by Plaintiffs Koninklijke Philips N.V. and U.S. Philips Corp. (collectively, "Philips"). This Motion is based on the following memorandum of points and authorities in support, the Declaration of Ryan J. McBrayer and accompanying exhibits, the entire record in this matter, and on any such evidence as may be presented at the hearing of this motion.

## I.  INTRODUCTION

Philips' damages expert provided an unreliable opinion that violates the governing statute and Federal Circuit precedent.  It should be excluded.

Like any patentee, Philips may only recover a reasonable royalty for "use made of *the invention* by the infringer."  35 U.S.C. § 284 (emphasis added).  The Federal Circuit has interpreted this phrase to require that the patentee tailor damages testimony to the incremental value of the patented feature and to exclude the value of other technologies (i.e. use of *other* inventions) from the damages calculations.  But the expert, Mr. Tate, ignored this.

## II. BACKGROUND

### A. Philips Asserts Only Six Patents

There are only six Philips patents at issue in this case—United States Patents No. RE 44,913 ("the '913 patent"), 7,184,064 ("the '064 patent"), 7,529,806 ("the '806 patent"), 5,910,797 ("the '797 patent"), 9,436,809 ("the '809 patent"), and RE 43,564 ("the '564 patent") (collectively, the "Asserted Patents"). Ex. 1, p. 1 (Tate HTC Rpt.).[1] As Mr. Tate describes these patents, they cover a variety of different functionalities:

- The '809 patent relates to "protecting the transfer of digital content from one device to another." *Id.*, p. 6 (Tate HTC Rpt.).

- The '806 patent relates to a "modified download approach for multimedia content." *Id.*, p. 6 (Tate HTC Rpt.).

- The '064 patent "generally relates to an improved touchscreen scrolling system." *Id.*

- The '564 patent "relates to a zooming mechanism" for touchscreen devices. *Id.* at p. 7 (Tate HTC Rpt.)

- The '913 patent "generally relates to a method and device for improved text input" compared to "preexisting character entry methods." *Id.*

- The '797 patent "relates to portable electronic devices that include sensors called accelerometers" and resulting screen reorientation. *Id.*

### B. Mr. 

---

[1] All references to Exhibits or "Ex." herein refer to the Exhibits attached to the Declaration of Ryan McBrayer In Support of HTC's *Daubert* Motion, filed herewith.



<mark style="background: black; color: black;">
1 [REDACTED]
2 [REDACTED]
3 [REDACTED]
4 [REDACTED]
5 [REDACTED]
6 [REDACTED]
7 [REDACTED]
8 [REDACTED]
9 [REDACTED]
10 [REDACTED]
11 [REDACTED]
12 [REDACTED]
13 [REDACTED]
14 [REDACTED]
15 [REDACTED]
16 [REDACTED]
17 [REDACTED]
18 [REDACTED]
19 [REDACTED]
20 [REDACTED]
21 [REDACTED]
22 [REDACTED]
23 [REDACTED]
24 [REDACTED]
25 [REDACTED]
26 [REDACTED]
27 [REDACTED]
28 [REDACTED]
</mark>



### III. LEGAL STANDARDS

Upon a finding of infringement, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for *the use* made of *the invention* by the infringer." 35 U.S.C. § 284 (emphasis added). As a substantive matter, it is the "value of what was taken" that measures a "reasonable royalty" under 35 U.S.C. § 284. *Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641, 648 (1915).

There are typically two ways plaintiffs are required to tailor damages to the value of "the invention." First, where damages are calculated as a percentage of the revenue from a multi-featured product, courts enforce these principles by requiring experts to apportion the value of the entire product down to approximate the value of the infringing feature as closely as possible. The "ultimate reasonable royalty award [must be] based on the incremental value that the patented invention adds to the end product … by careful selection of the royalty base to reflect the value added by the patented feature, where that differentiation is possible; by adjustment of the royalty rate so as to discount the value of a product's non-patented features; or by a combination thereof." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). This principle is so important, in fact, that the Federal Circuit has adopted an evidentiary rule (referred to as the "entire market value rule" or "EMVR") barring damages experts from even mentioning a royalty base comprising the entire market value of a multi-featured product, unless the accused feature drives demand for that product, lest they "skew the damages horizon" beyond repair. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67, 68 (Fed. Cir. 2012) (quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011)).

Second, when rates are derived from a portfolio of patents, damages experts must still take care to ensure that the hypothetical license is "tailored to the amount and type of infringement that actually occurred" and "compensate[s] for the infringing features, but not for non-infringing ones." *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2012 WL 4017808, at *1-2 (N.D. Cal. Apr. 10, 2012) (striking expert opinion that "the value of the intellectual property in suit would have been the value of [patentee's] entire portfolio") (citing *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010)); *see also Golden Bridge Tech. v. Apple Inc.*, No. 5:12-

1  CV-04882-PSG, 2014 WL 4057187, at *2 (N.D. Cal. June 1, 2014) ("Under established Federal

2  Circuit law, an expert may not rely on broad licenses that cover technologies far beyond the

3  patents-in-suit without accounting for the differences in his calculations.") (citing *Lucent*

4  *Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1330-31 (Fed. Cir. 2009); *Trell v. Marlee*

5  *Elecs. Corp.*, 912 F.2d 1443, 1446-47 (Fed. Cir. 1990)).

### IV. MR. TATE'S OPINION SHOULD BE EXCLUDED BECAUSE HE REWARDS PHILIPS FOR THE ENTIRE VALUE OF ITS PORTFOLIOS, NOT THE VALUE OF THE ASSERTED PATENTS

Under *Daubert*, a damages expert who relies on a portfolio rate as his starting point must undertake *some* analysis to compare the value of the asserted patents to the value of other, non-asserted patents in the portfolio. *See, e.g., Golden Bridge*, 2014 WL 4057187, at *2 (excluding damages expert's testimony for allocating the entire value of certain portfolio licenses to a subset of the patents in those portfolios); *Oracle*, 2012 WL 4017808, at *2 (same). An expert who fails to do so risks "overcompensat[ing]" the patentee by awarding for "use made of the invention" *plus* the use of other, non-accused inventions that may be included in the portfolio. *See* 35 U.S.C. § 284; *Oracle*, 2012 WL 4017808, at *2. Such opinions violate the underlying statute and must be excluded. *Id.*

*Golden Bridge* is instructive. In that case, the expert proposed a "per-unit calculation" based on past licenses that covered a "wide array of technologies beyond the WCDMA standard," whereas the accused technology only implicated WCMDA. *Golden Bridge*, 2014 WL 4057187, at *1. In deposition, the expert admitted that he "attributed no value whatsoever" to other patents in the portfolio because "in his estimation, their value would be 'marginal,'" although his report cited no evidence for this proposition. *Id.* The district court excluded the opinion as "fundamentally unsound" because the expert "did not account in any way at all" for the value of the other patents covered by the licenses and "not even attempt to justify" the assumption that the entire portfolio license's value should be attributable to the asserted patent. *Id.* at *2.

Likewise, in *Oracle*, the expert opined there were "good reasons to not apportion" certain rates discussed during negotiations that involved an "entire [] intellectual property portfolio [], which would have included licenses to many patents and copyrights in addition to the IP in suit."

1  *Oracle*, 2012 WL 4017808, at *1.  The expert analogized the situation to "a person who
2  subscribes to a 100–page magazine knowing that he intends to read only one page," for whom
3  "the value of that single page is the same as the price of the entire magazine."  *Id.* at *2.  The
4  court struck this portion of his opinion, because it "fail[ed] to take into account that at the end of
5  the hypothetical negotiation, [the defendant] gets a license to the IP in suit, *nothing more*."  *Id.*
6  (emphasis in original).





**B.** █████████████████████████

1  ▮
2  ▮
3  ▮
4  ▮
5  ▮
6  ▮
7  ▮
8  ▮
9  ▮
10 ▮
11 ▮
12 ▮ Tr.).
13 ▮
14 ▮
15 ▮
16 ▮
17 ▮
18 ▮
19 ▮
20 ▮
21 ▮
22 ▮
23 ▮
24 ▮
25 ▮
26 ▮
27 ▮
28 ▮

1 ██████████████████████████████████████████████████████
2 ████████████████████████████████████████████████
3 █████████████████████████████████████████████████████
4 ██████████████████████████████████████████████████████████
5 ████████████████████████████████████████████████████
6 █████████████████████████████████████████████████████
7 ████████████████████████████████████████████████
8          █████████████████████████████████████████████
9 ███████████████████████████████████████

V.    **CONCLUSION**

In sum, Mr. Tate's reasonable royalty analysis violates the bedrock principle in play: that Philips be compensated "for *the* use of *the* invention." 35. U.S.C. § 284 (emphasis added). ███

███████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████

████████. For these reasons, and for the reasons set forth above, Mr. Tate's analysis should be excluded under *Daubert*.

1  Respectfully submitted August 29, 2019.

2
                                            /s/ Ryan McBrayer
                                        Ryan McBrayer (*pro hac vice*)
3                                       Jonathan Putman (*pro hac vice*)
                                        PERKINS COIE LLP
4                                       1201 Third Avenue, Suite 4900
                                        Seattle, Washington, 98101
5                                       +1 (206) 359-8000
                                        +1 (206) 359-9000 facsimile
6                                       htc-philipsperkinsservice@perkinscoie.com

7
                                        John P. Schnurer (Cal. Bar No. 185725
8                                       PERKINS COIE LLP
                                        11988 El Camino Real, Suite 350
9                                       San Diego, California, 92130
                                        +1 (858) 720-5700
10                                      +1 (858) 720-5799 facsimile
                                        htc-philipsperkinsservice@perkinscoie.com
11

12                                      *Attorneys for Defendants HTC Corp. and HTC America, Inc*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HTC'S DAUBERT MOTION REGARDING                -13-                    CASE NO. 4:18-CV-01885-HSG
MICHAEL E. TATE