# Exhibit 5

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Highly Confidential — Source Code Information

# REBUTTAL EXPERT REPORT OF

# ANDREW COCKBURN, Ph.D.

# (U.S. PATENT NOS. 5,910,797 AND 7,184,064)

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | BACKGROUND | | 4 |
| II. | LEGAL STANDARDS | | 5 |
| | A. | Direct Infringement | 5 |
| | B. | Doctrine of Equivalents | 6 |
| | C. | Means-Plus-Function Claims Under 35 U.S.C. § 112 ¶ 6 | 7 |
| III. | THE '797 PATENT | | 9 |
| | A. | The Accused Products | 10 |
| | B. | The Accused Functionality | 11 |
| | C. | The Operation of the Accused Screen Reorientation Functionality in the Accused ASUS Devices | 12 |
| | D. | The Accused Screen Reorientation Functionality in the Accused ASUS Devices Does Not Infringe the Asserted Claims of the '797 Patent | 17 |
| | | 1. Claim Construction | 17 |
| | | 2. The Accused Devices Do Not Infringe the Asserted Claims | 19 |
| | |    a. The Screen Reorientation Functionality Does Not Measure "Acceleration of the Screen Means Induced By User Manipulation of the Screen Means." | 19 |
| | |    b. The Accused Devices Do Not Have the Required Algorithm. | 27 |
| | |    c. Claim 6 Is Not Infringed Because Claim 1 Is Not Infringed. | 29 |
| | E. | Other Issues Related to the '797 Patent | 29 |
| IV. | THE '064 PATENT | | 32 |
| | A. | The Accused Devices and Applications | 33 |
| | B. | Dr. Schmidt's Discussion of Touchscreen Technology | 34 |
| | C. | Claim Construction | 35 |
| | | 1. "Finger Touch Program Instructions" | 35 |
| | | 2. "Scrolling Motion Program Instructions" | 38 |
| | | 3. "First Given Preset Minimum Time" | 40 |
| | | 4. "Stopping Motion Program Instructions" / "Preset Minimum Time" | 42 |
| | D. | The Accused Devices Do No Infringe the Asserted Claims | 46 |
| | | 1. Overview of Scrolling Operation in the Accused Applications. | 46 |
| | | 2. The Accused Devices Do Not Satisfy the "Scrolling Motion Program Instructions" Limitation. | 50 |
| | |    a. The "Scrolling Motion Program Instructions" in the Accused Devices Do Not Satisfy the "First Given Preset Minimum Time" Limitation | 50 |

1) The "Time By Which a Touch Would Necessarily Be Detected By the Capacitive Touchscreen" Cannot Satisfy the "Said Duration of Said Finger Touch Contact" Element. ……………………………………………..56

2) There Are No "Scrolling Motion Program Instructions Associated With the Microprocessor . . . " That Determine the Time by Which a Touch Would Be Detected by a Touchscreen. ………………………………...59

3) Dr. Schmidt Does Not Provide Any Opinions Regarding the Touchscreen Hardware or Software Employed by the Accused Devices. …………………….61

4) Dr. Schmidt's Argument in the Alternative Is Contrary to the Language of the Claims. ………………………….62

b. Scrolling Does Not "Begin" Following "Separation" of the Finger Touch from the Screen. ………………………………..64

3. The Accused Devices Do Not Satisfy the "Stopping Motion Program Instructions" Limitation. ……………………………………………...70

a. The "Stopping Motion Program Instructions" in the Accused Devices Do Not Satisfy the "Preset Minimum Time" Limitation …………………………………………………..70

1) The Touchscreen Scan Period Does Not Satisfy the "Stopping Motion Program Instructions Associated with Said Microprocessor for Terminating Scrolling . . . Upon Any Signal . . . Comprising: (a) A Substantially Stationary Finger Touch On The Screen Enduring For A Period Longer Than A Preset Minimum Time" Limitation. ………………………………………………….74

2) The Time by Which a Touch Would Be Detected by a Touchscreen Is Not a "Preset" Minimum Time. ………...77

b. Dr. Schmidt's Argument in the Alternative Is Contrary to the Language of the Claims. ………………………………………78

E. Other Issues Related to the '064 Patent ……………..……………………...79

31. I have reviewed the source code that Dr. Greenspun cites in his report and appendices, including Greenspun Report ¶¶ 92-100. I reserve the right to discuss this code at trial.

### C. THE OPERATION OF THE ACCUSED SCREEN REORIENTATION FUNCTIONALITY IN THE ACCUSED ASUS DEVICES

32. The accused functionality, which is also referred to in Dr. Greenspun's report as "screen reorientation," senses the orientation of the device screen and controls the orientation of the image on the screen such that the image is oriented with the right side up.

33. Screen reorientation functionality may be disabled by the user through selection of the appropriate menu option. Dr. Greenspun does not dispute this, and includes in his report a screenshot showing an exemplar menu in which it may be disabled. Greenspun Report ¶ 80. Likewise, certain applications or configurations may disable screen reorientation.

34. If screen reorientation is enabled, the decision whether to rotate the image on the screen is controlled based on inputs to the system regarding the orientation of the device. That is, movement of the device is not the trigger for reorientation of the screen; the code looks at the reported orientation of the device at any particular moment in time and compares it to the current displayed orientation. ▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Thus, to the extent that Dr. Greenspun's opinion is based on movement of the device, I disagree with him. E.g., Greenspun Report ¶ 95 ("When a user rotates the device

- 12 -

. . . .") Movement by the user is irrelevant to the code. The relevant parameter is the stable orientation of the device as compared to the displayed orientation.

35. If the reported device orientation and currently displayed orientation are different, the code invokes a switch in display orientation. ███████████████ ███████████████████ There are exceptions, for instance, if the code determines that the device is undergoing external acceleration, then reorientation of the screen is prevented until movement ceases such that the orientation is determined to be stable. ███████████████████████ ████████ Likewise, if the device is determined to have its screen oriented toward the sky or toward the ground, reorientation is disabled.

36. Dr. Greenspun apparently acknowledges that the screen reorientation functionality is based on orientation. *E.g.*, Greenspun Report ¶ 93 ████  ███████████████████████████████████ ███████████████████████████████ ███████████████████████████████ ██████████████████████████ This is also confirmed by the testimony of Google witness Olawale Ogunwale. (Ogunwale Dep. 22:1-23:10)

37. In order to determine the orientation of the device, the code receives inputs from sensors, including the device's accelerometer. As relates to determining the device orientation, information from the accelerometer is used to determine the direction of gravity and the angle of the device in relation to the gravitational vector. This information is then used to determine (including use of pre-defined

constants) whether the device is in a landscape or portrait orientation.

████████████████████████████████████████

38. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████  This continuous mode of event reporting from the accelerometer is also described in Android documentation: "Events are generated at a constant rate defined by the sampling_period_ns parameter passed to the batch function.  Example sensors using the continuous reporting mode are accelerometers and gyroscopes." (https://source.android.com/devices/sensors/report-modes).

39. At Paragraph 95 of his report Dr. Greenspun states that "████████████████

████████████████████████████

████████████████████████████████████████

████████████████████████████████  Greenspun Report ¶ 95.  If Dr. Greenspun is suggesting that user rotation plays a causal role

Highly Confidential — Source Code Information

in the onSensorChanged method being called, that suggestion is incorrect for the reasons I discuss directly above.

40. ███████████████████████████████████
███████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
████████████████

41. ███████████████████████████████████
███████████████████████████████
██████████████████████████
███████████████████████████████
█████████████████████████

42. ███████████████████████████████
███████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████

Highly Confidential — Source Code Information

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████ Therefore, the sensed orientation of the device must be consistently stable for a period of time before the reorientation can be displayed, and the program code is intended to prevent reorientation from occurring while the device is undergoing external acceleration induced by the user's movement of the device.

43. If all the conditions for screen reorientation are met, the device display reorients. The code may cause an animation to be displayed in connection with the change in screen orientation. ██████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████  Dr. Greenspun does not seem to dispute this.  E.g., Greenspun Report ¶ 106 ("For all of these devices, at the same time as these animations are taking place the old (exiting) rendering is subject to an <alpha> animation that causes it to fade out resulting in a cross-fade from the old rendering to the new one that emerges from behind it.")  The parameters defining this animation are constant, meaning that the screen orientation animation is always the same. ████

████████████████████████████████

44. Even if the screen is reoriented, a screen reorientation animation is not always invoked. For instance, as Dr. Greenspun acknowledges, there was no reorientation animation for 180° device rotations in Android version 4.0 and lower. The reorientation animation may also be omitted if the user has disabled animations on the device or, in certain versions of Android, if the device has entered battery saver mode ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

### D. THE ACCUSED SCREEN REORIENTATION FUNCTIONALITY IN THE ACCUSED ASUS DEVICES DOES NOT INFRINGE THE ASSERTED CLAIMS OF THE '797 PATENT

#### 1. Claim Construction

45. In my opening report, I addressed the claim constructions issued by the Court with respect to the claims at issue.

46. Dr. Greenspun opines with respect to certain additional claim terms: "data processing means" and "screen means." Greenspun Report ¶¶ 111-12.

47. Dr. Greenspun opines that "data processing means" should not be construed as a means-plus-function claim element because it "connotes sufficient structure to a POSA (e.g., a CPU)." Greenspun Report ¶ 111. Alternatively, Dr. Greenspun opines that if it is subject to construction as a means-plus-function claim element, he has been instructed by counsel that the claimed function is "measuring an acceleration of said screen means induced by user manipulation of the screen means," and that the corresponding structure is "a microprocessor running a

than the refresh rate of the same screen when in active mode. Dr. Schmidt's opinions do not take into account whether the touchscreens of the accused devices have these features, and he offers no opinion on how the presence of these features would affect his infringement analysis.

C. **CLAIM CONSTRUCTION**

95. In my opening report, I addressed the claim constructions issued by the Court with respect to the claims at issue, which I incorporate here by reference.

96. I address below certain additional constructions, including interpretations offered by Dr. Schmidt in his report.

1. **"Finger Touch Program Instructions"**

97. Claims 1 and 8 both require "finger touch program instructions associated with said microprocessor for sensing the speed, direction and time duration of a finger touch contact with said display screen." The Court construed this "in accordance with its plain and ordinary meaning." Claim Construction Order at 6.

98. A POSA would understand the plain meaning of this term to require a software program that is compiled (or interpreted) into executable code which is executed by a device's microprocessor that uses information received from the touchscreen to determine the speed, direction and time duration of a finger touch contact on the touchscreen.

99. A POSA would understand that a touchscreen itself does not determine the "speed," "direction," or "time duration" of a finger touch. Instead, the touchscreen reports the touch location information to the operating system of a

Highly Confidential — Source Code Information

device. The operating system (and/or application software running on that device) uses that touch location information to determine the speed, direction and duration of touch. Dr. Schmidt does not seem to disagree with this. For instance, at paragraph 303, he states with respect to the determination of speed for the Nexus Launcher, ███████████████████████████

███████████████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████████

███████████████████████████████

███████████ He repeats this formulation with respect to the other accused applications. *See also, e.g.*, Schmidt Report ¶ 109. ("At the lowest layer, the touch-screen hardware receives electrical signals from the touch-sensing circuitry and converts these signals into values that are accessible to the software. The input signals are initially received by a device driver running in the Linux kernel. This device driver communicates the raw signals to a hardware-specific, proprietary software component via the Android Hardware Abstraction Layer (HAL), which then performs the hardware-specific processing on the input signals to convert them to usable touch information. Part of this processing involves determining whether: (1) a finger was placed on the screen or removed, (2) whether the finger was moved on the screen, (3) the location of the touch point or points, and (4) identifiers corresponding to the individual touch points.")

  b. Claim 8: "stopping motion program instructions associated with said microprocessor for terminating scrolling displacement of the image on said screen upon first occurrence of any signal in the group of signals comprising: (a) a substantially stationary finger touch on the screen enduring for a period longer than a preset minimum time, and (b) an end-of-scroll signal received from said scroll format data source."

116. The "stopping motion program instructions" limitation was construed by the Court "in accordance with its plain and ordinary meaning."

117. A POSA would understand the plain and ordinary meaning of the "stopping motion program instructions" limitation to require a software program that is compiled (or interpreted) into executable code which is executed by a device's microprocessor, wherein scrolling is stopped upon the first occurrence of a signal reporting either a substantially stationary finger touch on the screen lasting longer than a preset minimum time, or an end-of-scroll signal from the scroll format data source.

118. In my experience in the field, a POSA would understand that a "preset" in the context of a computer algorithm refers to a predetermined value.  Accordingly, a POSA would understand that a "preset minimum time," as used in the stopping motion program instructions limitation, is a set period of time established in the code embodying the stopping motion program instructions.

119. This is consistent with the patent's discussion of termination of scrolling.  The patent states, "Motion of the displayed image may be stopped manually by

## D. THE ACCUSED DEVICES DO NOT INFRINGE THE ASSERTED CLAIMS

### 1. Overview of Scrolling Operation in the Accused Applications.

126. The essential logic of the Android operating system and ChromeOS source code, as implemented in connection with the accused applications running on the accused products, is similar. When a user initially touches the screen and the touchscreen controller recognizes that touch, the touchscreen notifies the operating system of that contact. The operating system in response generates an event of type ACTION_DOWN. Subsequent reports of contact locations corresponding to movements of the finger on the touchscreen cause the operating system to generate events of type ACTION_MOVE. And when the touchscreen reports a lack of contact (corresponding to the user lifting his or her finger from the touchscreen), the operating system generates an event of type ACTION_UP. These events are sent by the system to methods/functions that use switch statements to separately process each type of event. The program code is responsible for processing the data concerning the location of the finger and the timestamp of the event.

127. As relates to scrolling in the accused applications in particular, when an ACTION_DOWN event occurs, any ongoing scrolling from an earlier fling gesture is immediately stopped. When an ACTION_MOVE event occurs, the instructions scroll the view with the finger (provided the finger has displaced more than a small 'slop' distance). And when an ACTION_UP event occurs, the velocity of the finger can be used to determine a fling distance and duration based

Highly Confidential — Source Code Information

may be theoretically true in the abstract for certain devices with certain touchscreens programmed a certain way. However, I note that Dr. Schmidt does not discuss in his report the hardware specifications or logic employed by the touchscreen of any particular accused device.

140. I note that a scan period as described by Dr. Schmidt implicates a maximum time before a contact would be detected by a touchscreen, not a minimum. The figure below shows one implementation of such a scan period, with tick marks on the timeline representing two separate scans. If a finger makes contact with the touchscreen immediately before a scan (as shown), the touch event will be recorded by the capacitive touch sensors, and an associated event may be sent to the software (depending on the touchscreen controller logic).



But if the contact occurs immediately after a scan, as indicated in the figure below, then the contact will not be registered by the touchscreen until the next scan, which is almost an entire scan period away.



- 55 -

program instructions that satisfy the limitations of both claims 1 and 2. For instance, a user may desire to use a fling scroll as a gross movement, which then may be stopped with a stationary finger in the area of relative interest and further refined with a drag scroll.

175. With respect to claim 8, I note that Dr. Schmidt expressly relies only on the "inertial scrolling portion of the scrolling motion" to satisfy limitation 8(c) and does not separately address the initial scrolling action that occurs prior to what he calls inertial scrolling. E.g., ¶¶ 414, 416, 635. Accordingly, his opinions in this regard fail to establish that the accused applications satisfy the "is caused to begin to scroll" element with respect to claim 8.

### 3. The Accused Devices Do Not Satisfy the "Stopping Motion Program Instructions" Limitation.

#### a. The "Stopping Motion Program Instructions" in the Accused Devices Do Not Satisfy the "Preset Minimum Time" Limitation

176. The accused applications installed on the ASUS products alleged to infringe the '064 patent do not terminate scrolling upon receiving a signal that there has been "a substantially stationary finger touch on the screen enduring for a period longer than a preset minimum time." Instead, the code for each accused device/application makes clear that at ACTION_DOWN (*i.e.*, a finger contact reported by the touchscreen) the devices immediately cease any ongoing fling scrolling, without regard to how long the finger has been in contact with the screen.

177.    For example, as Dr. Schmidt admits, in the Nexus 7 Launcher3 application, ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Schmidt Report ¶ 127.

178.    Likewise, in the ASUS Launcher / Launcher2 / Launcher3 (prior to Android 6.0) applications, ██████████████████████████████████████████████████████████████████ Schmidt Report ¶ 142.

179.    ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Schmidt Report ¶ 158.

180. The ChromeOS devices/applications operate similarly.  E.g., Schmidt Report ¶ 202.

181. This behavior (*i.e.*, the termination of a fling immediately upon sensing a finger touch) is observable in use of the accused devices/applications, and is evident from the videos which Dr. Schmidt references in his report.

182. As he did with respect to the "first given preset minimum time" limitation, Dr. Schmidt relies on the time it takes for a device's touchscreen to detect a touch—in his words "the time by which a touch would necessarily be detected by the touchscreen, which is related to its scan period"—to satisfy the "preset minimum time" requirement of the stopping motion program instructions. *See* Schmidt Report ¶¶ 358, 360, 364, 367, 430, 432, 490, 573-74, 643.

183. In paragraph 674-75, Dr. Schmidt further opines: "If a user's finger makes contact with the screen, but is removed before the corresponding electrode intersection is scanned, the touch will not be detected. Therefore, the ASUS

197. The reasons that I address above why the "stopping motion program instructions" found on the accused devices as implemented in the accused applications do not satisfy the "first given preset minimum time" limitation apply to all of the allegedly infringing applications on each of the ASUS accused products running the Android or ChromeOS operating systems, and to each asserted claim.

E.  **OTHER ISSUES RELATED TO THE '064 PATENT**

198. I reserve the right to use one or more of the ASUS accused devices to demonstrate how the accused applications fail to satisfy the claim limitations. I further reserve the right to prepare pictorial and/or videographical demonstratives showing these features in lieu of actual demonstration of the devices.

Dated: June 20, 2019

Dr. Andrew Cockburn