**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Michael P. Sandonato (admitted *pro hac vice*)
msandonato@venable.com
John D. Carlin (admitted *pro hac vice*)
jcarlin@venable.com
Natalie Lieber (admitted *pro hac vice*)
ndlieber@venable.com
Christopher M. Gerson (admitted *pro hac vice*)
cgerson@venable.com
Jason M. Dorsky (admitted *pro hac vice*)
jmdorsky@venable.com
Stephen K. Yam (admitted *pro hac vice*)
syam@venable.com

Jonathan M. Sharret (admitted *pro hac vice*)
jsharret@venable.com
Joshua D. Calabro (admitted *pro hac vice*)
jdcalabro@venable.com
Daniel A. Apgar (admitted *pro hac vice*)
dapgar@venable.com
Robert S. Pickens (admitted *pro hac vice*)
rspickens@venable.com
Sean M. McCarthy (admitted *pro hac vice*)
smccarthy@venable.com
Caitlyn N. Bingaman (admitted *pro hac vice*)
cnbingaman@venable.com

VENABLE LLP
1290 Avenue of the Americas
New York, New York 10104-3800
Tel: (212) 218-2100
Fax: (212) 218-2200

Chris Holland (SBN 164053)
cholland@hollandlawllp.com
Lori L. Holland (SBN 202309)
lholland@hollandlawllp.com
Ethan Jacobs (SBN 291838)
ejacobs@hollandlawllp.com

HOLLAND LAW LLP
220 Montgomery Street, Suite 800
San Francisco, CA  94104
Tel: (415) 200-4980
Fax: (415) 200-4989

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| In Re Koninklijke Philips Patent Litigation | Case No. 4:18-cv-01885-HSG<br>JURY TRIAL DEMANDED<br><br>**CONTAINS INFORMATION DESIGNATED  HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY**<br><br>Date:  November 14, 2019<br>Time: 2:00 P.M.<br>Courtroom: 2<br>Judge: Hon. Haywood S. Gilliam, Jr. |

**PHILIPS' NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF HTC'S DAMAGES EXPERT, LAURA STAMM, AS UNRELIABLE UNDER *DAUBERT***

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ............................................................................................. 1

STATEMENT OF RELIEF REQUESTED ...................................................................................... 1

I. Introduction ............................................................................................................. 1

II. Statement of Facts ................................................................................................... 2

III. Legal Standard ......................................................................................................... 3

    A. *Daubert* ....................................................................................................... 3

    B. Damages ...................................................................................................... 3

IV. Argument ................................................................................................................. 4

    A. Ms. Stamm's opinions on alternatives must be excluded under *Daubert* ................... 4

        1. Ms. Stamm neglected to consider the availability of allegedly acceptable non-infringing alternatives. ........................................ 4

        2. Accused products cannot be non-infringing alternatives. ....................... 6

    B. Ms. Stamm's purported apportionment is unreliable. ........................................ 7

        1. Ms. Stamm admits that log-normal apportionment lacks any ties to the facts of this case. ........................................................................ 7

        2. Ms. Stamm's forward citation analysis arbitrarily excludes citations to patents and publications with the same disclosure as the asserted patents. ....................................................................... 8

    C. Ms. Stamm's opinions on the ▇▇▇▇▇▇ should be excluded because she did not reconcile economic differences between them and the license arising out of the hypothetical negotiations. ............. 10

        1. Ms. Stamm failed to account for differences between up-front, lump-sum payments and a per-unit royalty. ........................................ 10

        2. Ms. Stamm failed to address the assumption of validity and infringement and to support her comparability opinions with reliable data. ........................................................................ 12

V. Conclusion ............................................................................................................. 13

i

PHILIPS'S MOTION TO EXCLUDE TESTIMONY OF HTC'S DAMAGES EXPERT, LAURA STAMM, AS UNRELIABLE UNDER DAUBERT
CASE NUMBER 4:18-CV-01885-HSG

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
No. 12-CV-00630-LHK, 2014 WL 794328 (N.D. Cal. Feb. 25, 2014)........................................12

*AstraZeneca AB v. Apotex Corp.*,
782 F.3d 1324 (Fed. Cir. 2015).............................................................................................5

*Baltimore Aircoil Co., Inc. v. SPX Cooling Techs. Inc.*,
No. CV CCB-13-2053, 2016 WL 4426681 (D. Md. Aug. 22, 2016) ...............................................6

*Bayer Healthcare LLC v. Baxalta Inc.*,
No. 16-cv-1122-RGA, 2019 WL 330149 (D. Del. Jan. 25, 2019)............................................10, 11

*DataQuill Ltd. v. High Tech Comp. Corp.*,
887 F. Supp. 2d 999 (S.D. Cal. 2011)....................................................................................12

*Daubert v. Merrell Dow Pharms., Inc.*,
43 F.3d 1311 (9th Cir. 1995) ................................................................................................3

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)................................................................................................1, 3, 4, 6, 13

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
No. 13-cv-03999, 2015 WL 4272870 (N.D. Cal. July 14, 2015) ...............................................8, 9

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970)........................................................................................3

*Grain Processing Corp. v. American MaizeProds. Co.*,
185 F.3d 1341 (Fed. Cir. 1999)..............................................................................................6

*Illinois Tool Works, Inc. v. MOC Prod. Co.*,
No. 09CV1887 JLS MDD, 2012 WL 3561984 (S.D. Cal. Aug. 17, 2012) .....................................4

*LaserDynamics Inc. v. Quanta Comp., Inc.*,
No. 06-348, 2011 WL 197869 (E.D. Tex. Jan. 20, 2011)........................................................5, 6

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009)................................................................................3, 4, 10, 11

*Lust v. Merrell Dow Pharms., Inc.*,
89 F.3d 594 (9th Cir. 1996) ..................................................................................................3

*M2M Sols. LLC v. Enfora, Inc.*,
167 F. Supp. 3d 665 (D. Del. 2016).....................................................................................10

Case 4:18-cv-01885-HSG   Document 731   Filed 08/29/19   Page 4 of 17
REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

*M2M Sols. LLC v. Motorola Sols., Inc.*,
  No. 12-33-RGA, 2016 WL 767900 (D. Del. Feb. 25, 2016)..........................................11

*Oracle Am., Inc. v. Google Inc.*,
  No. C 10-03561 WHA, 2012 WL 877125 (N.D. Cal. Mar. 15, 2012) ............................9

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  711 F.3d 1348 (Fed. Cir. 2013)....................................................................................12

*SynQor, Inc. v. Artesyn Technologies, Inc.*,
  709 F.3d 1365 (Fed. Cir. 2013)......................................................................................6

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011)......................................................................................8

*VirnetX, Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014)......................................................................................8

*Webasto Thermo & Comfort N. Am., Inc. v. BesTop, Inc.*,
  No. 16-CV-13456, 2019 WL 3334563 (E.D. Mich. July 25, 2019) ...........................6, 7

*Worldtech Sys., Inc. v. Integrated Network Sols., Inc.*,
  609 F.3d 1308 (Fed. Cir. 2010)....................................................................................10

**Statutes**

35 U.S.C. § 284.................................................................................................................3

**Other Authorities**

Federal Rule of Evidence 702.....................................................................................1, 3

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL: PLEASE TAKE NOTICE THAT on November 14, 2019, at 2 p.m., Plaintiffs Koninklijke Philips N.V. and U.S. Philips Corporation (collectively, "Philips") will hereby move the Court to exclude a portion of the testimony and opinions of HTC Corp.'s and HTC America's (collectively "HTC") damages expert Ms. Laura Stamm, on the grounds that her testimony fails to meet the reliability and relevance requirements set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702.

**STATEMENT OF RELIEF REQUESTED**

Philips respectfully requests that the Court issue an order precluding Ms. Stamm from offering any opinions or testimony regarding the subject matter set forth in Sections VI(B) and VI(C) (lump sum offers and licenses), VII(D) (non-infringing alternatives), and VII(E) (Schankerman and forward citation analyses) of Ms. Stamm's expert report (Ex. A),[1] as well as any calculations, summaries, and/or conclusions based on those sections.

**I.    Introduction**

Ms. Stamm's testimony fails to meet the reliability and relevance requirements of *Daubert* and Fed. R. Evid. 702.

- First, Ms. Stamm opines that the patents-in-suit have limited value because of supposed non-infringing alternatives, but admittedly fails to even consider the availability of those alternatives. She also improperly relies on an accused product as a non-infringing alternative.
- Second, as to apportionment, Ms. Stamm's utilizes the Schankerman 24% rule, a generalized piece of economic theory which she concedes has no ties to the facts of the case. And her forward citation apportionment arbitrarily substitutes an unasserted

---

[1] "Ex." refers to an exhibit to the declaration of Joshua Calabro submitted herewith.

1

PHILIPS'S MOTION TO EXCLUDE TESTIMONY OF HTC'S DAMAGES EXPERT, LAURA STAMM, AS UNRELIABLE UNDER DAUBERT
CASE NUMBER 4:18-CV-01885-HSG

patent—which conveniently for HTC has *zero* citations—for an asserted patent, while disregarding other Philips patents and publications with the exact same disclosure as the asserted patent that collectively have *more than twenty* citations.

- Third, Ms. Stamm relies on lump-sum offers and licenses without attempting to account for differences between a lump-sum and the running royalty that she believes the parties would have agreed to in the hypothetical negotiation. Nor does she take into account the presumption of infringement and validity that patents in a hypothetical negotiation enjoy in considering the impact of these offers and licenses.[2]

## II. Statement of Facts

Ms. Stamm opines that Philips would have agreed to license its portfolio of "portable features" patents to HTC in a hypothetical negotiation at a running royalty rate of ▮▮▮ per unit. She finds support for that rate in: (1) ▮▮▮ (Ex. B [Stamm Tr.] 31:24-32:20, 32:21-33:1, 34:19-35:3); and (2) ▮▮▮ (Ex. A [Stamm Report] ¶ 97). *See* Ex. A [Stamm Report] § VI(B).

Ms. Stamm then attempts to isolate the value of each of the six patents-in-suit using a log-normal apportionment, where she assumes, based on a 1998 article by Mark Schankerman, that the patents-in-suit account for 24% of the portfolio value. Ex. A [Stamm Report] ¶¶ 166-68. Ms. Stamm also estimates the relative value of patents within Philip's portfolio based on the number of times U.S. patents have cited each U.S. patent in the portfolio. *Id.* at ¶¶ 169-71. She counted citations to the '819 patent, which is not asserted in this case, instead of citations to the '809 patent-in-suit because the '809 patent allegedly does not have a classification code required for her analysis.

---

[2] The unreliable opinions that Philips seeks to exclude appear in Sections VI(B) and VI(C) (lump sum offers and licenses), VII(D) (non-infringing alternatives), and VII(E) (Schankerman and forward citation analyses) of Ms. Stamm's report, as well as any calculations, summaries, and/or conclusions based on those sections, including without limitation the calculation of royalties in Table 8 on page 75 of her report.

*Id.*, Appx. D at 2 ¶ 4. In addition, Ms. Stamm calculates a per-unit royalty for the '797 patent and '913 patent based on ███████████████████████████████████████. *Id.* § VI(C). Ms. Stamm selects the greatest value from the Schankerman, forward citation, and ████ apportionment methods for each patent-in-suit, and reduces the ███ per-unit hypothetical portfolio royalty in proportion to those values to determine a per-unit royalty rate for each patent-in-suit. *Id.* at 73 (Table 7).

Lastly, Ms. Stamm discusses "non-infringing alternatives" that she believes "would be acceptable substitutes for the [asserted] patent[s]." *See, e.g.,* Ex. A [Stamm Report] ¶ 153.

### III. Legal Standard

#### A. *Daubert*

"It is the proponent of the expert who has the burden of proving admissibility." *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). In *Daubert*, the Supreme Court held that Fed. R. Evid. 702 imposes an obligation upon trial courts to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. Fed. R. Evid. 702 "requires a valid . . . connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92; *see* Fed. R. Evid. 702(a) (proposed testimony must "help the trier of fact to understand the evidence or to determine a fact in issue.") "Federal judges must . . . exclude proffered scientific evidence under [Fed. R. Evid.] 702 and 403 unless they are convinced that it speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995).

#### B. Damages

Patentees are entitled to damages "adequate to compensate for . . . infringement" (35 U.S.C. § 284), which can include lost profits and/or reasonable royalties. The most common method to determine a reasonable royalty is the hypothetical negotiation approach, which "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). The Court in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970) identified factors that may be relevant to the analysis of the hypothetical

3

PHILIPS'S MOTION TO EXCLUDE TESTIMONY OF HTC'S DAMAGES EXPERT, LAURA STAMM, AS UNRELIABLE UNDER DAUBERT
CASE NUMBER 4:18-CV-01885-HSG

negotiation.  Although a hypothetical negotiation "necessarily involves an element of approximation and uncertainty" (*Lucent*, 580 F.3d at 1325), it must be based on "sound economic and factual predicates."  *Illinois Tool Works, Inc. v. MOC Prod. Co.*, No. 09CV1887 JLS MDD, 2012 WL 3561984, at *6, *8 (S.D. Cal. Aug. 17, 2012).

IV. **Argument**

    A.    **Ms. Stamm's opinions on alternatives must be excluded under *Daubert*.**

        1.    **Ms. Stamm neglected to consider the availability of allegedly acceptable non-infringing alternatives.**

Ms. Stamm opines that the "accused functionality has limited value" because "it can be implemented using non-infringing means." Ex. A [Stamm Report] ¶ 131.  But Ms. Stamm repeatedly admitted that she failed to even consider whether the allegedly acceptable non-infringing alternatives that she relied on were actually available to HTC at the relevant time.  Ex. B [Stamm Tr.] 73:11-74:15 ("Q. . . . [W]hat are the non-infringing alternatives that you identify for the -913 patent? . . . A. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ . . . Q. And has that alternative been implemented? A. Not that I am aware of, no. *Q. And how much would it cost to implement that alternative? A. I don't know. I -- I didn't do that kind of inquiry . . . Q. How long would it take to implement the first alternative? A. Again, it's not an inquiry that I did.*"); *id.* at 82:13-83:11 ("Q. . . . [A]re you aware of any other alternatives to the 797 patent besides simply ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮? A. Yes. I discuss those in paragraph 138. Q. And what are those? A. It could use some ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. I gave examples of that. . . . Q. Okay. *And you don't know how much it would cost to implement that alternative, correct? A. No. I'm not – I'm not relying on any sense of how much it costs. Q. And you don't know how long it would take to implement that alternative, correct? A. I do not.*"); 86:22-87:9 ("Q. . . . [A]re you aware of any alternatives to the 064 patent? A. Yes. I – let's see. I mention that there are six non-infringing alternatives proposed by HTC. . . . Q. Let's take all six at once . . . Have . . . any of them been implemented? A. No, not that I'm aware of. *Q. And you don't know how much it would cost or how long it would take to implement any of the six alternatives, correct? A. I do not. That's not the inquiry I did.*"); 87:19-88:8 ("Q. And lastly, for [the] '564 patent . . . are you aware of any non-

4

PHILIPS'S MOTION TO EXCLUDE TESTIMONY OF HTC'S DAMAGES EXPERT, LAURA STAMM, AS
UNRELIABLE UNDER DAUBERT
CASE NUMBER 4:18-CV-01885-HSG

infringing alternatives? A. I am. I discuss those in paragraph 153. Q. And what are they? A. Let's see. ███████████████████████████████████████████████████████████████. Q. And have those alternatives been implemented? A. No. *Q. And you don't know how much it would cost or how long it would take to implement them, correct? A. I don't.*") (objections omitted) (emphases added).[3]

Ms. Stamm's belief that she can rely on purported non-infringing alternatives without addressing their availability (*see* Ex. B [Stamm Tr.] 74:15-17) contravenes Federal Circuit law:

> To the extent Apotex means to say that the costs the infringer would incur to produce a non-infringing product are not relevant to the reasonable royalty for a license to sell a product covered by the patent, we disagree. When an infringer can easily design around a patent and replace its infringing goods with non-infringing goods, the hypothetical royalty rate for the product is typically low. . . . By the same reasoning, if avoiding the patent would be difficult, expensive, and time-consuming, the amount the infringer would be willing to pay for a license is likely to be greater.

*AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1334-35 (Fed. Cir. 2015). For example, in *LaserDynamics Inc. v. Quanta Comp., Inc.*, No. 06-348, 2011 WL 197869 (E.D. Tex. Jan. 20, 2011), the Court held that opinions on non-infringing alternatives that fail to discuss their availability "are irrelevant and do not 'assist the trier of fact to understand the evidence or to determine a fact at issue.'" *Id.* at *3 (quoting Fed. R. Evid. 702, and citing *Daubert*, 509 U.S. at 591), objections overruled, 2011 WL 13196509 (E.D. Tex. Jan. 28, 2011). There, Quanta's expert, Dr. Zech, "failed to opine as to whether Quanta would be capable of implementing the non-infringing alternatives identified in his report." *Id.* Quanta argued that its "belie[f] [that] it could *possibly* have produced Dr. Zech's non-infringing alternatives" sufficed. *Id.* (emphasis added). Quanta also argued that, irrespective of their availability, "the non-infringing alternatives identified by Dr. Zech are relevant to the *Georgia Pacific* factor inquiring into the utility and advantages of the patent property over old modes or devices"—the same *Georgia Pacific* factor under which Ms. Stamm analyzed non-infringing alternatives. *Id.*; Ex. A [Stamm Report] at 55. The Court found "Quanta's arguments . . .

---

[3] Ms. Stamm admitted no alternatives existed for the '809 patent. Ex. B [Stamm Tr.] 83:15-19.

unpersuasive" in view of the Federal Circuit's mandate that, "[t]o be an acceptable non-infringing substitute, the substitute 'must be available or on the market at the time of infringement.'" *Id.*, quoting *Grain Processing Corp. v. American MaizeProds. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999). Because "Dr. Zech's opinions reveal[ed] ***only speculation that it might have been theoretically possible for Quanta to produce his non-infringing alternatives***," the Court "conclude[d] that Quanta ha[d] not established that Dr. Zech's non-infringing alternatives were 'available' to Quanta," and therefore granted Plaintiff's motion to strike Dr. Zech's "report in its entirety." *Id.* (emphasis added). Because Ms. Stamm similarly failed to account for the availability of alleged non-infringing alternatives, her testimony on them amounts to nothing more than speculation, and consequently must be excluded under *Daubert*. *Id.*

And "[n]o amount of cross-examination can cure this defect, as [Ms. Stamm's] report does not provide any information on" the availability of alternatives. *Baltimore Aircoil Co., Inc. v. SPX Cooling Techs. Inc.*, No. CV CCB-13-2053, 2016 WL 4426681, at *24 (D. Md. Aug. 22, 2016), *aff'd*, 721 F. App'x 983 (Fed. Cir. 2018). In *Grain Processing*, the Federal Circuit affirmed a finding that an alternative was available because it took "only two weeks" to implement it. 185 F.3d at 1346. By contrast, in *SynQor, Inc. v. Artesyn Technologies, Inc.*, 709 F.3d 1365, 1382-83 (Fed. Cir. 2013), the Court affirmed the exclusion of evidence of alleged alternatives and found that they were not "available" because "it took Defendants nearly a year, if not longer, to make the replacement converters available for commercial use." Here, the jury cannot assess the availability of Ms. Stamm's alleged alternatives because she did not analyze how long it would take or how much it would cost to implement them.

### 2. Accused products cannot be non-infringing alternatives.

Ms. Stamm also improperly relies on an accused product, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as a non-infringing alternative for the '806 patent. Ex. B [Stamm Tr.] 85:11-23. Defendant's expert in *Webasto Thermo & Comfort N. Am., Inc. v. BesTop, Inc.*, No. 16-CV-13456, 2019 WL 3334563, at *4-*5 (E.D. Mich. July 25, 2019) committed the same mistake, relying on the accused Sunrider product as a non-infringing alternative. The Court excluded that portion of his opinions:

6

PHILIPS'S MOTION TO EXCLUDE TESTIMONY OF HTC'S DAMAGES EXPERT, LAURA STAMM, AS UNRELIABLE UNDER DAUBERT
CASE NUMBER 4:18-CV-01885-HSG

Of course infringement and validity are presumed in a patent damages analysis and it should be axiomatic that an infringing product by definition cannot be a non-infringing alternative. The law clearly states and presumes that this is so. . . . To be very clear: the [accused products] . . . ARE NOT ACCEPTABLE EVIDENCE OF NON-INFRINGING ALTERNATIVES and will not be discussed as such in this case. It is unfortunate that the Court even has to emphasize such an obvious point of law.

*Id.* The Court in *Webasto* cited the expert's acknowledgments that "a damages expert must assume that the patent in suit is valid and infringed," and "that if the BesTop Sunrider is an infringing product, it cannot be a non-infringing substitute." *Id.* at *4. Ms. Stamm made the same concessions in this case:

> Q. . . . [Y]ou understand that ▮▮▮ is accused of infringing in this case?
> A. So I understand that there is disagreement. I . . . understand that Google's technical experts put it forward as a non-infringing alternative. And then I understand from, I think, maybe it was Mr. Tate's deposition that there may be disagreement in that.
> Q. Right. There's disagreement on whether all the accused products infringe, right?
> A. Of course.
> Q. And for the purposes of your analysis, you need to assume that the accused products infringe, correct?
> A. Yes.
> Q. So if, in fact, ▮▮▮ is an accused product, then it's not a non-infringing alternative, right?
> A. Yes, I -- I would agree with that. . . .

Ex. B [Stamm Tr.] 85:24-86:16 (objections omitted). Ms. Stamm's opinions that ▮▮▮ ▮▮▮ constitute non-infringing alternatives contradict the assumption of validity and infringement that she admits govern her analysis, and therefore they must be excluded.

### B. Ms. Stamm's purported apportionment is unreliable.

#### 1. Ms. Stamm admits that log-normal apportionment lacks any ties to the facts of this case.

Ms. Stamm purports to isolate the value of each of the six patents-in-suit using a log-normal apportionment approach, in which she assumes, based on a 1998 article by Mark Schankerman, that the patents-in-suit account for 24% of the portfolio value. Stamm Report ¶ 167-68. Lacking any ties to the patents, parties and other facts of this case, the Schankerman 24% rule is nothing more than a generalized piece of economic theory, no more reliable than similar kinds of theories—including the 25% rule and the Nash Bargaining Solution—that the Federal Circuit already has rejected.

In *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011), the Court rejected the "25 percent rule of thumb," which allocates 25% of the value of the product to the patent owner, because it: "fails to account for the unique relationship between the patent and the accused product"; "fails to account for the unique relationship between the parties," and "is essentially arbitrary and does not fit within the model of the hypothetical negotiation within which it is based." 632 F.3d at 1313-15.  In *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1331-34 (Fed. Cir. 2014), the Federal Circuit rejected the Nash Bargaining Solution, which assumes as a starting point that the parties would split profits 50/50, as an impermissible "rule of thumb."  The Court explained that the 50/50 split—"even when adjusted to account for certain individual circumstances"—risks skewing the baseline assumptions of the jury.  *Id.* at 1333-34.

Here, Ms. Stamm admits that the Schankerman 24% rule, which pre-dates the filing of patents-in-suit, lacks any ties to the facts of this case:

> Q. [T]he research that you relied upon published in 1998?
> A. Yes.
> Q. And it was not tied to the particular patents or parties at issue in this case, right?
> A. **No, it is not**. . . .

Stamm Tr. 96:8-97:6 (emphasis added).  Ms. Stamm's Schankerman 24% rule apportionment opinions therefore should be excluded for the same reasons that the Federal Circuit has struck down the 25% rule of thumb and Nash Bargaining Solution.  *See Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-03999, 2015 WL 4272870, at *8 (N.D. Cal. July 14, 2015) ("Without facts tying her analysis to the facts of this case, [a damages expert's] reliance on a methodology discussed in empirical economics literature has little more probative value than the '25 percent rule of thumb' and Nash Bargaining Solution analyses that the Federal Circuit rejected in *Uniloc* and *VirnetX*.").

> **2. Ms. Stamm's forward citation analysis arbitrarily excludes citations to patents and publications with the same disclosure as the asserted patents.**

Ms. Stamm tallied the U.S. patents that cite each U.S. patent in Philips's portfolio to apportion value amongst the patents in the portfolio, including the asserted patents.  In conducting this exercise, she substituted the unasserted '819 patent for the asserted '809 patent because the '809 patent allegedly lacks a classification code required for her analysis.  Stamm Report Appendix D at 2

8

PHILIPS'S MOTION TO EXCLUDE TESTIMONY OF HTC'S DAMAGES EXPERT, LAURA STAMM, AS UNRELIABLE UNDER DAUBERT
CASE NUMBER 4:18-CV-01885-HSG

¶ 4. She noted zero citations for the '819 patent and therefore attributed no value to the '809 patent in her forward citation analysis. Ex. A [Stamm Report] at 71 (Table 6). But she ignored other Philips patents and published patent applications with the same disclosure as the '809 and '819 patents, which collectively have been cited more than twenty times (*see* Ex. B [Stamm Tr.] 16:22-18:24)—and offered no rationale for selecting the '819 patent instead of any of those other patents (*e.g.*, the '939 patent) and published patent applications with the same disclosure.

> Q. How did you select the -819 patent to substitute for the -809 patent?
> A. It had the same specifications, so I thought that made it a reasonable proxy. . .
> Q. . . .[D]id you consider substituting the -939 patent for the -809 patent?
> A. I did not.
> Q. Why not?
> A. I thought the -819 patent was a reasonable proxy.
> Q. Would . . . the -939 patent be a reasonable proxy?
> A. I don't know. I'd need to investigate that further.
> Q. You could have investigated that, correct?
> A. What do you mean I could have?
> Q. When you were preparing your report.
> A. I chose the -819 patent.
> Q. Did you give any consideration to substituting the -939 patent?
> A. No, I didn't.

Ex. B [Stamm Tr.] 9:4-7, 11:16-13:9. Ms. Stamm's forward citation analysis therefore must be excluded as unreliable because she arbitrarily substituted a patent with zero citations for the '809 patent while ignoring—without any justification—patents and published applications with non-zero citations that could have been substituted as an equally "reasonable proxy" under Ms. Stamm's own logic. *See, e.g., Finjan*, 2015 WL 4272870, at *8 ("Dr. Layne-Farrar's straightforward application of a forward citation analysis without taking into consideration . . . potential problems renders the method unreliable for failure to specifically tie the methodology to the facts of this case."); *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2012 WL 877125, at *2 (N.D. Cal. Mar. 15, 2012) (rejecting forward citation methodology used to rank patent in a portfolio because expert did not count citations to predecessor patents with same disclosure).[4]

---

[4] Philips cannot effectively use cross-examination to address the fundamental unreliability of Ms. Stamm's methodology on this issue, as Ms. Stamm testified that she would need to redo her analysis for each patent in the portfolio to determine the value apportioned to the '809 patent if she replaced it with the patents and published applications that have the same disclosure and non-zero citations. Ex. B [Stamm Tr.] 18:25-21:6.

9

PHILIPS'S MOTION TO EXCLUDE TESTIMONY OF HTC'S DAMAGES EXPERT, LAURA STAMM, AS UNRELIABLE UNDER DAUBERT
CASE NUMBER 4:18-CV-01885-HSG

### C. Ms. Stamm's opinions on the ▮▮▮▮▮ should be excluded because she did not reconcile economic differences between them and the license arising out of the hypothetical negotiations.

#### 1. Ms. Stamm failed to account for differences between up-front, lump-sum payments and a per-unit royalty.

Ms. Stamm's reliance on the ▮▮▮▮▮ (Ex. A [Stamm Report] § VI(B)) and ▮▮▮▮▮ (Ex. A [Stamm Report] § VI(C)) should be excluded. Those offers and licenses included lump sum payments. *See* Section II, *supra*. Ms. Stamm believes that the hypothetical negotiation, on the other hand, would result in a per-unit royalty—not a lump sum payment. Yet her discussion of ▮▮▮▮▮ is devoid of any analysis of the differences between a lump sum and per-unit royalty. *M2M Sols. LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665, 678 (D. Del. 2016) ("Federal Circuit precedent requires that for a license to be used in a damages analysis, the license must be proven comparable to the hypothetical negotiation."), citing *Lucent*, 580 F.3d at 1325; *Worldtech Sys., Inc. v. Integrated Network Sols., Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010) ("[C]omparisons of past patent licenses to the infringement must account for the technological *and economic differences* between them.") (emphasis added).

In *Bayer Healthcare LLC v. Baxalta Inc.*, No. 16-cv-1122-RGA, 2019 WL 330149, at *6 (D. Del. Jan. 25, 2019), Defendant's expert relied on four licenses "to support his running royalty opinion." "The first license ha[d] no running royalty, and the remaining three combine[d] a running royalty with lump-sum, milestone, and/or annual payments." *Id.* Plaintiff sought to exclude his opinions on the licenses in view of differences between a lump-sum and the running royalty hypothetical license, which the Court deemed "Plaintiff's strongest argument." *Id.* at *5 ("Plaintiff's strongest argument relates to Dr. Rausser's use of lump-sum licenses to support a running royalty hypothetical license."). Citing the Federal Circuit's decision in *Lucent*, the Court recognized that "[s]ignificant differences exist between a running royalty license and a lump-sum license." *Id.*, quoting *Lucent*, 580 F.3d at 1326. As the Federal Circuit explained in *Lucent*:

> [i]n a standard running royalty license, the amount of money payable by the licensee to the patentee is tied directly to how often the licensed invention is later used or incorporated into products by the licensee. A running royalty structure shifts many licensing risks to the licensor because he does not receive a guaranteed payment. Royalties are dependent on the level of sales or usage by the licensee, which the licensee can often control.

10

PHILIPS'S MOTION TO EXCLUDE TESTIMONY OF HTC'S DAMAGES EXPERT, LAURA STAMM, AS UNRELIABLE UNDER DAUBERT
CASE NUMBER 4:18-CV-01885-HSG

> Compared to a running royalty analysis, a lump-sum analysis involves different considerations. . . . The lump-sum license removes or shifts certain risks inherent in most arms-length agreements. A lump-sum license removes any risk that the licensee using the patented invention will underreport, e.g., engage in false reporting, and therefore underpay, as can occur with a running royalty agreement. . . .
>
> A further, important consideration is that an upfront, paid-in-full royalty removes, as an option for the licensee, the ability to reevaluate the usefulness, and thus the value, of the patented technology as it is used and/or sold by the licensee. As generally employed, once a lump-sum license is duly executed, the licensee is obligated to pay the entire, agreed-upon amount for the licensed technology, regardless of whether the technology is commercially successful or even used. A licensee to a lump-sum agreement, under usual licensing terms, cannot later ask for a refund from the licensor based on a subsequent decision not to use the patented technology. There is no provision for buyer's remorse.

580 F.3d at 1326. Because Defendant's expert in *Bayer* made "no effort to reconcile the[] features [of a lump-sum license] with the hypothetical license," the Court excluded his opinions on lump-sum licenses. *Bayer*, 2019 WL 330149, at *6. Likewise here, Ms. Stamm merely divides lump sums by projected or actual sales (*see* Ex. A [Stamm Report] §§ VI(B), VI(C)), and then compares the result to the hypothetical running royalty (*see, e.g.,* Ex. A [Stamm Report] ¶¶ 116-17, 175), without attempting to account for differences between a lump sum and a per-unit royalty, such as



Ex. B [Stamm Tr.] 38:8-25 (objections omitted). Ms. Stamm's report never acknowledges any difference between

*M2M Sols. LLC v. Motorola Sols., Inc.*, No. 12-33-RGA, 2016 WL 767900, at *8 (D. Del. Feb. 25, 2016) ("[The] failure to even attempt to reference the economic [comparability]

11

PHILIPS'S MOTION TO EXCLUDE TESTIMONY OF HTC'S DAMAGES EXPERT, LAURA STAMM, AS UNRELIABLE UNDER DAUBERT
CASE NUMBER 4:18-CV-01885-HSG

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

. . . renders [an expert's] damages opinion fatally insufficient."); *DataQuill Ltd. v. High Tech Comp. Corp.*, 887 F. Supp. 2d 999, 1022 (S.D. Cal. 2011) ("The testimony of a damages expert in a patent suit who relies on non-comparable licenses in reaching his royalty rate should be excluded."); *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 12-CV-00630-LHK, 2014 WL 794328, at *8 (N.D. Cal. Feb. 25, 2014) (excluding "[a]greement even though it covered the patents-in-suit," where expert "failed to appropriately adjust the running royalty found in the . . . [a]greement to reach her proposed lump-sum royalty in a manner that accounts for the different economic circumstances at play . . . .")

### 2. Ms. Stamm failed to address the assumption of validity and infringement and to support her comparability opinions with reliable data.

Ms. Stamm also neglects to account for the assumption of validity and infringement that benefits Philips in the hypothetical negotiation but does not attach to the real-world offers and licenses. Ex. A [Stamm Report] ¶ 3 ("I have necessarily assumed that the patents-in-suit are valid, enforceable, and infringed by HTC."); *see, e.g.,* Ex. B [Stamm Tr. 39:21-25 ("Q. ███████████████████████████████████████████████████████████████████████████████ Nowhere in her report does she address how that assumption of validity and infringement affects her reliance on the ████████████████████████. Ms. Stamm never mentions any difference between those offers and licenses, on the one hand, and the hypothetical negotiation, on the other hand, that would put upward pressure on the royalty rate in the hypothetical negotiation.

And Ms. Stamm purports to find HTC's position in the 2010 market equivalent to ████████████████████████████████████████████████ But she cites no evidence of ████████ to support that conclusion. *See, e.g.,* Ex. A [Stamm Report] ¶ 94; Ex. B [Stamm Tr.] 60:12-61:19. "Such unreliable testimony frustrates a primary goal of expert testimony in any case, which is meant to place experience from professional specialization at the jury's disposal, not muddle the jury's fact-finding with unreliability and speculation." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1374 (Fed. Cir. 2013).

12

PHILIPS'S MOTION TO EXCLUDE TESTIMONY OF HTC'S DAMAGES EXPERT, LAURA STAMM, AS UNRELIABLE UNDER DAUBERT
CASE NUMBER 4:18-CV-01885-HSG

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

V.      Conclusion

For the foregoing reasons, the Court should grant Philips's *Daubert* motion to exclude the testimony of Laura Stamm.

Dated: August 29, 2019

Chris Holland (SBN 164053)
Lori L. Holland (SBN 202309)
HOLLAND LAW LLP
220 Montgomery Street, Suite 800
San Francisco, CA 94104
Telephone: (415) 200-4980
Fax: (415) 200-4989
cholland@hollandlawllp.com
lholland@hollandlawllp.com

Respectfully submitted,

/s/ Michael Sandonato

Michael Sandonato (admitted *pro hac vice*)
John Carlin (admitted *pro hac vice*)
Christopher Gerson (admitted *pro hac vice*)
Natalie Lieber (admitted *pro hac vice*)
Jason M. Dorsky (admitted *pro hac vice*)
Jonathan M. Sharret (admitted *pro hac vice*)
Daniel Apgar (admitted *pro hac vice*)
Sean M. McCarthy (admitted *pro hac vice*)
Robert Pickens (admitted *pro hac vice*)
Joshua D. Calabro (admitted *pro hac vice*)
Stephen Yam (admitted *pro hac vice*)
Caitlyn Bingaman (admitted *pro hac vice*)

VENABLE LLP
1290 Avenue of the Americas
New York, New York, 10104
+1 (212) 218-2100
+1 (212) 218-2200 facsimile
philipsprosecutionbar@venable.com

*Attorneys for Plaintiffs Koninklijke Philips N.V. and U.S. Philips Corporation*