Michael P. Sandonato (admitted *pro hac vice*)
msandonato@venable.com
John D. Carlin (admitted *pro hac vice*)
jcarlin@venable.com
Natalie Lieber (admitted *pro hac vice*)
ndlieber@venable.com
Christopher M. Gerson (admitted *pro hac vice*)
cgerson@venable.com
Jason M. Dorsky (admitted *pro hac vice*)
jmdorsky@venable.com
Stephen K. Yam (admitted *pro hac vice*)
syam@venable.com

Jonathan M. Sharret (admitted *pro hac vice*)
jsharret@venable.com
Joshua D. Calabro (admitted *pro hac vice*)
jdcalabro@venable.com
Daniel A. Apgar (admitted *pro hac vice*)
dapgar@venable.com
Robert S. Pickens (admitted *pro hac vice*)
rspickens@venable.com
Sean M. McCarthy (admitted *pro hac vice*)
smccarthy@venable.com
Caitlyn N. Bingaman (admitted *pro hac vice*)
cnbingaman@venable.com

VENABLE LLP
1290 Avenue of the Americas
New York, New York 10104-3800
Tel: (212) 218-2100
Fax: (212) 218-2200

Chris Holland (SBN 164053)
cholland@hollandlawllp.com
Lori L. Holland (SBN 202309)
lholland@hollandlawllp.com
Ethan Jacobs (SBN 291838)
ejacobs@hollandlawllp.com

HOLLAND LAW LLP
220 Montgomery Street, Suite 800
San Francisco, CA 94104
Tel: (415) 200-4980
Fax: (415) 200-4989

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

In Re Koninklijke Philips Patent Litigation

Case No. 4:18-cv-01885-HSG

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON CERTAIN AFFIRMATIVE DEFENSES RAISED BY THE ASUS DEFENDANTS**

JURY TRIAL DEMANDED

Date: November 14, 2019
Time: 2:00 P.M.
Courtroom: 2
Judge: Hon. Haywood S. Gilliam

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ........................................................................... 1

STATEMENT OF RELIEF REQUESTED ..................................................................... 1

I.      INTRODUCTION ............................................................................................... 1

II.     SUMMARY JUDGMENT OF NO INVALIDITY AS TO GROUNDS ASUS
        RAISED OR COULD HAVE RAISED DURING IPR PROCEEDINGS IS
        WARRANTED ..................................................................................................... 1

        A.      Statement of Facts Regarding IPR Estoppel ........................................... 2

                1.      '806 Patent IPR Proceedings ......................................................... 2

                2.      '913 Patent IPR Proceedings ......................................................... 2

        B.      Argument ................................................................................................... 3

                1.      Estoppel Under 35 U.S.C. § 315 Attaches to All Invalidity
                        Grounds That Were "Raised or Reasonably Could Have Been
                        Raised" before the PTAB........................................................... 3

                        a.      Estoppel Extends to Any Defenses Based on Prior Art
                                Patents and Printed Publications That Were or Could Have
                                Been Found As a Result of a Reasonable Search .............. 3

                        b.      Estoppel Extends to Litigation Defenses Based on Prior Art
                                Systems Whose Pertinent Disclosure Was Also Contained
                                in Prior Art Patents or Printed Publications..................... 5

                2.      All of ASUS's '806 Patent Anticipation and  Obviousness Grounds
                        are Subject to Estoppel................................................................ 6

                        a.      ASUS's '806 Grounds at Issue Merely Repackage
                                Substantively Identical Grounds Actually Raised in the IPR
                                Proceedings ................................................................... 6

                        b.      ASUS Could Have Raised Its '806 Grounds at Issue in the
                                IPR Proceeding Through Printed Publications ................. 8

                3.      The '913 Grounds at Issue are Subject to Estoppel ..................... 9

                        a.      ASUS Was Aware of the Prior Art Used in the '913
                                Grounds at Issue at the Time That the IPR Petition was
                                Filed ............................................................................. 10

                        b.      ASUS Could Have Raised the '913 Grounds at Issue in the
                                IPR Petition and Should be Estopped From Raising Them
                                Now............................................................................... 10

III.  SUMMARY JUDGMENT OF NO INVALIDITY OF THE '564 PATENT
      UNDER 35 U.S.C. § 251 IS WARRANTED ....................................................... 12

      A.  Statement of Facts ................................................................................. 12

      B.  Argument ................................................................................................ 13

IV.   SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT AS TO THE
      '913 PATENT IS WARRANTED ........................................................................ 14

      A.  Statement of Facts: There is No Evidence That the Prosecuting Attorney
          (Or Anyone Else) Acted With An Intent to Mislead or Deceive the PTO .............. 14

      B.  Argument: Inequitable Conduct Requires Proof by Clear and Convincing
          Evidence of the Threshold Facts of Both Materiality and Intent, and the
          Evidence Proves That There Was No Such Intent .................................................... 16

V.    SUMMARY JUDGMENT OF NO BAR AS TO PHILIPS' CLAIMS BASED ON
      THE '809 PATENT IS WARRANTED ................................................................ 17

      A.  Statement of Facts ................................................................................. 17

      B.  Argument ................................................................................................ 18

VI.   SUMMARY JUDGMENT OF NO BAR AS TO PHILIPS' CLAIMS BASED ON
      THE '806 PATENT AND NO UNENFORCEABILITY IS WARRANTED ..................... 21

      A.  Statement of Facts:  ASUS's Affirmative Defenses of License, Estoppel,
          Exhaustion, Waiver, Unclean Hands, and/or Patent Misuse ................................ 21

      B.  Argument: ASUS is Not Entitled to These Affirmative Defenses ......................... 21

VII.  SUMMARY JUDGMENT OF NO INTERVENING RIGHTS IS WARRANTED ............ 22

      A.  Statement of Facts: ASUS's Affirmative Defense of Intervening Rights ............... 22

      B.  Argument: ASUS is Not Entitled to Either Absolute or Equitable
          Intervening Rights ................................................................................. 23

VIII. CONCLUSION ................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*,
   768 F.3d 1185 (Fed. Cir. 2014)..................................................................................16

*Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*,
   No. 14-CV-6544 (KAM)(GRB), 2019 WL 365709 (E.D.N.Y. Jan. 30, 2019) ...........................4

*Aqua Prods. Inc. v. Matal*,
   872 F.3d 1290 (Fed. Cir. 2017)..................................................................................5

*Arma Refrigeration, Inc. v. Quadlus*,
   172 F.3d 852 (Fed. Cir. 1999)..................................................................................19

*ASUS Corp. v. Proxyconn, Inc.*,
   789 F.3d 1292 (Fed. Cir. 2015)..................................................................................5

*ATD Corp. v. Lydall, Inc.*,
   159 F.3d 534 (Fed.Cir.1998)....................................................................................16

*Biscotti Inc. v. ASUS Corp.*,
   No. 2:13 CV 01015 ..................................................................................................5

*Blotzer v. L-3 Commc'ns. Corp.*,
   No. CV-11-274-TUC-JGZ, 2012 WL 6086931 (D. Ariz. Dec. 6, 2012).......................................24

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)................................................................................................22

*Clearlamp, LLC v. LKQ Corp.*,
   No. 12 C 2533, 2016 WL 4734389 (N.D. Ill. Mar. 18, 2016) .............................................5

*Cobalt Boats, LLC v. Sea Ray Boats, Inc.*,
   254 F. Supp. 3d 836 (E.D. Va. 2017) .........................................................................4

*Douglas Dynamics, LLC v. Meyer Prods. LLC*,
   No. 14-cv-886-jdp, 2017 WL 1382556 (W.D. Wis. Apr. 18, 2017)........................................5

*Duro-Last, Inc. v. Custom Seal, Inc.*,
   321 F.3d 1098 (Fed. Cir. 2003)................................................................................16

*Electro Med. Assoc. v. Aetna Life Ins. Co.*,
   No. 8:09-CV-39-T-27AEP, 2010 WL 11508047 (M.D. Fla. May 17, 2010), *reh'g
   denied*, 2010 WL 11508048 (M.D. Fla. June 10, 2010) ....................................................24

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*,
   No.13-cv-05038NC, 2016 WL 482701 (N.D. Cal. Feb 8, 2016) 2016 WL 482701 ....................16

*First Nat'l Bank v. Cities Serv. Co.*,
    391 U.S. 253 (1968) ....................................................................................22

*Gordon v. Cate*,
    No. 11-cv-03593, 2014 WL 848212 (N.D. Cal. Feb. 28, 2014) ............................23

*Innovus Prime, LLC v. Panasonic Corp.*,
    No. C-12-00660-RMW, 2013 WL 3354390 (N.D. Cal. July 2, 2013) .........................19

*Int'l Multifoods Corp. v. Commercial Union Ins. Co.*,
    309 F.3d 76 (2d Cir. 2002) ..............................................................................19

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
    No. C 11-01036 JSW, 2012 WL 2917450 (N.D. Cal. July 17, 2012) .........................19

*Milwaukee Elec. Tool Corp. v. Snap-On Inc.*,
    271 F. Supp. 3d 990 (E.D. Wis. Sep. 22, 2017) ....................................................3, 4, 5

*Novartis Corp. v. Ben Venue Labs., Inc.*,
    271 F.3d 1043 (Fed.Cir.2001) ..........................................................................16

*Novartis Pharm. Corp. v. Par Pharm. Inc.*,
    No. 14-1289-RGA, 2019 U.S. Dist. LEXIS 62489 (D. Del. Apr. 11, 2019) ..................9

*Oil-Dri Corp. of Am. v. Nestlé Purina Petcare Co.*,
    No. 15 C 1067, 2019 WL 861394 (N.D. Ill, February 22, 2019) ......................9, 11, 12

*Oil-Dri Corp. of Am. v. Nestlé Purina Petcare Co.*,
    No. 15-cv-1067, 2017 WL 3278915 (N.D. Ill. August 2, 2017) .........................4, 12

*Optium Corp. v. Emcore Corp.*,
    603 F.3d 1313 (Fed. Cir. 2010) .........................................................................16

*Parallel Networks Licensing, LLC v. Int'l Bus. Machs. Corp.*,
    No. 13-2072 (KAJ), 2017 WL 1045912 ........................................................3, 5, 11, 12

*Rhone–Poulenc Agro, S.A. v. DeKalb Genetics Corp.*,
    284 F.3d 1323 (Fed. Cir. 2002) .........................................................................19

*Robinson v. Hudson*,
    No. C-93-20609 RMW, 1994 WL 679966 (N.D. Cal. Nov. 30, 1994) .........................22

*In re Rosuvastatin Calcium Patent Litig.*,
    703 F.3d 511 (Fed. Cir. 2012) .........................................................................16

*S. Cal. Gas Co. v. Santa Ana*, 336 F.3d 885, 888-89 (9th Cir. 2003) .........................19, 20

*San Diego Gas & Elec. Co. v. Canadian Hunter Mktg. Ltd.*,
    132 F.3d 1303 (9th Cir.1997) ..........................................................................19

*SAS Institute Inc. v. Iancu*,
   138 S. Ct. 1348 (2018) ...........................................................................................................4

*Seattle Box Co. v. Industrial Crating & Packing, Inc.*,
   756 F.2d 1574 (Fed. Cir. 1985)...........................................................................................24

*Shaw Indus. Group, Inc. v. Automated Creel Sys., Inc.*,
   817 F.3d 1293 (Fed. Cir. 2016)............................................................................................4

*SiOnyx, LLC v, Hamamatsu Photonics K.K.*,
   330 F. Supp. 3d 574 (D. Mass. 2018) ...............................................................................3, 4

*Southern California Gas Co. v. City of Santa Ana*,
   336 F.3d 885 (9th Cir. 2003) .............................................................................................19

*Star Envirotech, Inc. v. Redline Detection, LLC*,
   No. SACV-12-01861 JGB, 2015 WL 4744394 (C.D. Cal. Jan. 29, 2015).....................................7

*Taylor v. Sturgell*,
   553 U.S. 880, 128 S. Ct. 2161 (2008) ...............................................................................21

*Therasense, Inc. v. Becton, Dickinson, & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011)..........................................................................................16

*Trs. of Columbia Univ. in the City of N.Y. v. Symantec Corp.*,
   No. 3:13-cv-808, 2019 WL 2814682 (E.D. Va. July 2, 2019)...........................................3, 4

*Visto Corp. v. Sproqit Techs., Inc.*,
   413 F.Supp.2d 1073 (N.D. Cal. 2006) .............................................................................23, 24

**Statutes and Rules**

35 U.S.C. § 102...............................................................................................................1, 3, 6, 8

35 U.S.C. § 103...............................................................................................................1, 3, 6, 8

35 U.S.C. § 251...............................................................................................................12, 13, 14

35 U.S.C. § 252.....................................................................................................................23

35 U.S.C. § 311(b) .............................................................................................................3, 10, 11

35 U.S.C. § 315.......................................................................................................................3

35 U.S.C. § 315(e)(2) .......................................................................................................3, 4, 5, 6

Fed. R. Civ. P. 56 ...............................................................................................................

**Other Authorities**

154 Cong. Rec. S9989 (daily ed. Sept. 25, 2008) ...............................................................5

H.R. Rep. No. 112-98 at 48 (2011) ................................................................................5

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL: PLEASE TAKE NOTICE THAT on November 14, 2019, at 2 p.m., Plaintiffs Koninklijke Philips N.V. and U.S. Philips Corporation (collectively, "Philips") will move the Court for partial summary judgment on certain affirmative defenses raised in this action by Defendants ASUSTeK Computer Inc. and ASUS Computer International (collectively, "ASUS") involving the Patents-at-Issue.[1]

## STATEMENT OF RELIEF REQUESTED

Philips respectfully requests that the Court enter partial summary judgment in favor of Philips on the affirmative defenses addressed below.[2]

## I.   INTRODUCTION

Philips respectfully moves this Court for summary judgment on the affirmative defenses raised by ASUS and addressed below.  There is no genuine issue of material fact pertaining to the affirmative defenses, and as such judgment as a matter of law in favor of Philips is warranted.  Fed. R. Civ. P. 56(a).[3]

## II.   SUMMARY JUDGMENT OF NO INVALIDITY AS TO GROUNDS ASUS RAISED OR COULD HAVE RAISED DURING IPR PROCEEDINGS IS WARRANTED

Summary judgment of no invalidity under 35 U.S.C. §§ 102 and 103 for the '806 patent is warranted, and partial summary judgment of no invalidity under 35 U.S.C. §§ 102 and 103 for the '913 patent is warranted as to those invalidity grounds in this case that were raised or reasonably could have been raised in *inter partes* review (IPR) proceedings that ASUS brought against those patents is likewise warranted.

---

[1]  The Patents-at-Issue are U.S. Patent Nos. 5,910,797 ("'797 patent"), 7,184,064 ("'064 patent"), 7,529,806 ("'806 patent"), 9,436,809 ("'809 patent"), RE43,564 ("'564 patent"), and RE44,913 ("'913 patent").

[2]  With this motion, Philips is concurrently filing motions for partial summary judgment on similar affirmative defenses raised by the Microsoft and HTC defendants.  Many of the same legal issues addressed herein are also addressed in those motions.

[3]  To facilitate the Court's review, Philips has provided the facts and legal authority pertinent to each affirmative defense in the respective sections below in which each affirmative defense is addressed.

## A. Statement of Facts Regarding IPR Estoppel

### 1. '806 Patent IPR Proceedings

On December 9, 2016, "non-party" Google filed an *inter partes* review (IPR) petition challenging the validity of all claims of the '806 patent. (Ex. 1).[4]  The petition named ASUS as a real party-in-interest.  (Ex. 1 at 2).  It alleged that the Synchronized Multimedia Integration Language 1.0 Specification (the "SMIL Specification") anticipates claims 1-7 and 9-13 of the '806 patent and renders obvious claims 1-16 of the '806 patent.  (Ex. 1 at 20, 40).  ASUS's expert in this litigation, Dr. Bulterman, submitted a declaration in support of the IPR petition.  (Ex. 2).  The U.S. Patent and Trademark Office Patent Trial and Appeal Board (PTAB) issued a final written decision addressing all of the Grounds in the petition on September 6, 2018.

### 2. '913 Patent IPR Proceedings

On December 5, 2016, Google filed two IPR petitions that collectively challenged all claims of the '913 patent, one of which was instituted by the PTAB (IPR2017-00386).  (Ex. 3). The instituted petition named ASUS as a real party-in-interest.  (*Id.* at 3).  In the petition that was instituted, Google alleged that claims 1 and 3-16[5] were obvious in view of (i) Japanese Unexamined Patent App. Pub. No. 2000-148366 ("Sakata II") alone, and (ii) Sakata II in combination with U.S. Patent No. 6,094,197 ("Buxton").  (*Id.* at 5-6).  With its petition, Google submitted several exhibits that it relied upon in support of its proposed obviousness grounds.  (*See Id.* at iv-v ("Exhibit List")). These exhibits included an "Apple Newton MessagePad Handbook (1995) ('Newton Manual')." (*Id.*; Ex. 4).  Google also submitted a declaration by Dr. Cockburn in support of the IPR petition, in which Dr. Cockburn provided opinions regarding Sakata II, Buxton, and the Apple Newton MessagePad.  (*See, e.g.*, Ex. 5 at ¶¶ 31-33, 48, 58, 64, 68).[6]  Following a trial, the PTAB issued a final written decision on September 26, 2018 which addressed all Grounds in the petition and found that the petitioners failed to show by a preponderance of the evidence that the challenged claims

---

[4]  Unless otherwise indicated, citations to "Ex." herein refer to exhibits to the Declaration of Caitlyn N. Bingaman, submitted herewith.

[5]  All of the asserted claims of the '913 patent at issue in this litigation (claims 1, 3, 4, 12 and 16) were the subject of the instituted IPR proceeding.

[6]  Dr. Cockburn also serves as an expert for ASUS in this litigation, but with respect to a different patent (the '797 patent).

were rendered obvious over Sakata II alone, or Sakata II in combination with Buxton.  (*See* Ex. 6 at 15-31).

### B.    Argument

#### 1.    Estoppel Under 35 U.S.C. § 315 Attaches to All Invalidity Grounds That Were "Raised or Reasonably Could Have Been Raised" before the PTAB

"A petitioner in an *inter partes* review may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications."  35 U.S.C. § 311(b).  "The petitioner in an *inter partes* review . . . that results in a final written decision . . ., or the real party in interest or privy of the petitioner, may not assert . . . in a civil action . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that *inter partes* review."  35 U.S.C. § 315(e)(2).  If, after drawing all justifiable inferences in the non-movant's favor, a court finds no genuine dispute as to any material fact, it may "grant [a] motion for summary judgment eliminating [an] obviousness [or other invalidity] defense" based on estoppel, which is a question of law. *Parallel Networks Licensing, LLC v. Int'l Bus. Machs. Corp.,* No. 13-2072 (KAJ), 2017 WL 1045912 at *12 n.13; *see, e.g., Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 271 F. Supp. 3d 990, 1029 (E.D. Wis. Sep. 22, 2017).

##### a.    Estoppel Extends to Any Defenses Based on Prior Art Patents and Printed Publications That Were or Could Have Been Found As a Result of a Reasonable Search

"[E]stoppel under § 315(e) is broad, and the prior art references (or combinations) a petitioner 'could have raised' includes any references that were known to the petitioner or that could reasonably have been discovered by 'a skilled searcher conducting a diligent search.'"  *Parallel Networks, LLC* 2017 WL 1045912, at *11 (D. Del. Feb. 22, 2017); *Trs. of Columbia Univ. in the City of N.Y. v. Symantec Corp.*, No. 3:13-cv-808, 2019 WL 2814682, at *11 (E.D. Va. July 2, 2019) ("[The] plain language of § 315(e)(2) estops [Defendant] from supporting its invalidity" defense with grounds that it "chose not to include in its petitions for *inter partes* review."); *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 602 (D. Mass. 2018) ("[F]or the words 'reasonably could have raised' to have any meaning at all, they must refer to grounds that were not

actually in the IPR petition, but reasonably could have been included."); *Oil-Dri Corp. of Am. v. Nestlé Purina Petcare Co.*, No. 15-cv-1067, 2017 WL 3278915, at *8 (N.D. Ill. August 2, 2017) ("If a party does not include an invalidity ground in its petition that it reasonably could have included, it necessarily has not raised a ground that it 'reasonably could have raised during . . . IPR.'"), quoting § 315(e)(2).

ASUS may argue that *Shaw Indus. Group, Inc. v. Automated Creel Sys., Inc.*, 817 F.3d 1293 (Fed. Cir. 2016) precludes application of estoppel to any grounds that were not actually raised in the IPR petition.  But, *Shaw* does not stand for that proposition.  *Shaw* was decided at a time when it was common practice at the PTAB to institute on less than all grounds raised in a petition.[7]  In *Shaw*, the PTAB had granted partial institution and issued a final determination on less than all grounds raised in the petition.  The question in *Shaw* was whether estoppel should reach grounds that were expressly raised in the petition, but that were not included in the PTAB's institution decision.  The Federal Circuit declined to extend estoppel to the noninstituted grounds because the PTAB did not allow the petitioner to raise and fully develop those grounds during the actual IPR trial.  *Shaw* is inapposite here because the PTAB instituted review on all grounds that ASUS chose to include in its petitions.  And the "majority of courts to have considered this issue . . . have confined *Shaw* to its procedural posture and concluded that it applies only to [petitioned] grounds on which the PTAB did not institute *inter partes* review."  *Trs. of Columbia Univ. in the City of N.Y.*, 2019 WL 2814682, at *11 (citing *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 2:15cv21, 2017 WL 2605977, at *3-4 (E.D. Va. June 5, 2017)); *Oil-Dri*, 2017 WL 3278915, at *7-*8 (collecting cases); *see Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, No. 14-CV-6544 (KAM)(GRB), 2019 WL 365709, at *12 (E.D.N.Y. Jan. 30, 2019) ("*Shaw* does not foreclose plaintiffs' position that non-petitioned grounds are subject to § 315(e)(2)'s estoppel provision.  Indeed, *Shaw* dealt only with petitioned but non-instituted grounds . . . ."); *Milwaukee Elec.*, 271 F. Supp. 3d at 1028-30.

The legislative history of the AIA statute establishing IPR proceedings supports application of estoppel to non-petitioned grounds.  "Allowing [Defendants] to raise arguments here that [they]

---

[7] After *SAS Institute Inc. v. Iancu*, 138 S. Ct. 1348 (2018), the situation addressed in *Shaw* can no longer occur.  *SiOnyx*, 330 F. Supp. 3d at 602 (post-*SAS*, "no such thing as a ground raised in the petition as to which review was not instituted.").

elected not to raise during the IPR would give [them] a second bite at the apple and allow [them] to reap the benefits of the IPR without the downside of meaningful estoppel." *Parallel Networks*, 2017 WL 1045912, at *12; *Milwaukee Elec.*, 271 F. Supp. 3d at 1029 ("[I]n order for IPR to fulfill its mission of streamlining patent litigation in the district courts and promoting efficient dispute resolution, a petitioner cannot be left with the option to institute a few grounds for IPR while holding some others in reserve for a second bite at the invalidity apple once in the district court."); *Douglas Dynamics, LLC v. Meyer Prods. LLC*, No. 14-cv-886-jdp, 2017 WL 1382556, at *4 (W.D. Wis. Apr. 18, 2017) ("Congress intended IPR to serve as a complete substitute for litigating validity in the district court. . . . If the defendant pursues the IPR option, it cannot expect to hold a second-string invalidity case in reserve in case the IPR does not go defendant's way."); *ASUS Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1303 (Fed. Cir. 2015) ("Congress created the new IPR proceeding for the purpose of 'providing quick and cost effective alternatives to litigation.'"), quoting H.R. Rep. No. 112-98(1) at 48 (2011), *overruled on other grounds by Aqua Prods. Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017); 154 Cong. Rec. S9989 (daily ed. Sept. 25, 2008) (statement of Sen. Kyl) (AIA designed "to force a party to bring all of [its] claims in one forum . . . and therefore to eliminate the need to press any claims in other fora"); H.R. Rep. No. 112-98 at 48 (2011) (IPRs "are not to be used as tools for harassment or a means to prevent market entry through repeated litigation and administrative attacks on the validity of a patent.").

**b.    Estoppel Extends to Litigation Defenses Based on Prior Art Systems Whose Pertinent Disclosure Was Also Contained in Prior Art Patents or Printed Publications**

While a petitioner can only raise patents and printed publications in an IPR, Defendants "cannot skirt [estoppel] by purporting to rely on a device without actually relying on the device itself." *Milwaukee Electric*, 271 F. Supp. 3d at 1032; *Clearlamp, LLC v. LKQ Corp.*, No. 12 C 2533, 2016 WL 4734389, at *9 (N.D. Ill. Mar. 18, 2016) ("While LKQ seeks to cloak its reliance upon UVHC3000 as a product, so as to avoid § 315(e)(2) estoppel, such an argument is disingenuous as it is the UVHC3000 datasheet upon which LKQ relies to invalidate the asserted claims."); *Biscotti Inc. v. ASUS Corp.*, No. 2:13 CV 01015 JRG-RSP, 2017 WL 2526231, at *8 (E.D. Tex. May 11, 2017) ("'[If] purported system prior art relies on or is based on patents or printed publications that

[defendant] would otherwise be estopped from pursuing at trial . . . then [defendant] should be estopped from presenting those patents and printed publications at trial.").

### 2. All of ASUS's '806 Patent Anticipation and Obviousness Grounds are Subject to Estoppel

Following entry of a case narrowing stipulation between the parties (*see* D.I. 650 at 3), ASUS identified five grounds ("the '806 Grounds at Issue") it intends to rely on at trial to assert that the '806 patent claims are invalid under 35 U.S.C. §§ 102 or 103. ASUS asserts the '806 patent claims are anticipated by any of three commercial products (*i.e.*, the GRINS 0.5, GRINS 1.0 and RealSystem G2 Beta 1 Release media players), because each of those alleged "SMIL 1.0 Players" purportedly implemented the SMIL 1.0 programming language prior to the '806 patent critical date. (Ex. 7 at §§ 7.2.2, 9). Alternatively, ASUS asserts the '806 patent claims are obvious over either the GRINS 1.0 or RealSystem G2 Beta 1 Release media players. None of these '806 Grounds at Issue, however, differ in any substantive way from the grounds actually raised in the IPR with reference to the SMIL 1.0 specification publication. Moreover, any of these grounds could have been raised at the PTAB by referencing printed publications that expressly describe the very players on which ASUS now seeks to rely. ASUS should not be permitted to circumvent estoppel and relitigate issues that either were raised or could have been raised at the PTAB.

### a. ASUS's '806 Grounds at Issue Merely Repackage Substantively Identical Grounds Actually Raised in the IPR Proceedings

ASUS raised anticipation and obviousness grounds based on the SMIL Specification in the IPR, and § 315(e) thus bars ASUS from raising those grounds in this case. Despite their superficial "GRiNS" and "RealSystem" labels, the '806 Grounds at Issue rely on what the "SMIL [specification] discloses" (Ex. 7 at 154, 161, 164, 171, 179, 183, 190, 196, 200, 206, 215, 218, 229, 231, 232, 237, 241), and thereby track the SMIL grounds in the IPR. The '806 Grounds at Issue emanate from the SMIL language, as described in the SMIL Specification at-issue in the IPR. (*Id.* at 42 ("Languages like SMIL allowed a player to select from a number of alternative encodings based [on] . . . bandwidth settings in the SMIL player, and SMIL provided structuring facilities (primarily the 'seq' element) that allowed a media presentation to be segmented…")).

During the IPR, ASUS relied on the SMIL Specification's disclosure of "SMIL 1.0 players."

(Ex. 8 at 8-14, 40; Ex. 2 at ¶ 110 ("[The] SMIL [specification] discloses a media player that is a client device. . . . The SMIL player 'play[s] back' media files referenced in a SMIL 1.0 file.")).  Dr. Bulterman now merely substitutes specific examples of "SMIL 1.0 players" (GRiNS 0.5/1.0 and RealSystem G2) for the generic "SMIL 1.0 players" disclosed in the SMIL Specification.  Ex. 9 at 11:21-12:12. He does not contend that GRiNS or RealSystem meets any limitation in the claims of the '806 patent that the "SMIL 1.0 players" in the SMIL Specification do not meet.  Unlike in *Star Envirotech, Inc. v. Redline Detection, LLC*, No. SACV-12-01861 JGB (DFMx), 2015 WL 4744394, at *4 (C.D. Cal. Jan. 29, 2015), where the Court declined to apply estoppel because it found "the physical machine itself discloses features claimed in the [Asserted] Patent that are not included in the instruction manual," here Dr. Bulterman admits that, in his view, the SMIL Specification teaches every element of claims 1 and 12 of the '806 patent.  (Ex. 9 at 16:25-17:10.)  ASUS thus concedes that GRiNS and RealSystem do ***not*** embody features claimed in the '806 patent that the SMIL Specification and its "SMIL 1.0 player" fail to disclose.

Dr. Bulterman references the GRiNS and RealSystem players only for their support of SMIL 1.0 "functionality," and he expressly equates the "functionality" disclosed by the SMIL Specification with the "functionality" of the GRiNS and RealSystem players.  (Ex. 7 at 153 ("As part of its support of SMIL 1.0, GRiNS 0.5 included all of this [SMIL 1.0] functionality, and it is thus 'GRiNS 0.5' functionality as much as it is 'SMIL 1.0' functionality."); *Id.* at 157, 161, 164, 170, 175, 180, 183 (same); *Id.* at 189 ("As part of its support of SMIL 1.0, GRiNS 1.0 included all of the functionality, and it is thus 'GRiNS 1.0' functionality as much as it is 'SMIL 1.0' functionality."); *Id.* at 193, 197, 200, 205, 210, 215, 219 (same); Ex. 9 at 8:22-12:12).  ASUS's September 30, 2016 invalidity contentions in this case allege that the SMIL Specification anticipates and renders obvious the asserted claims, and they equate the disclosure of the SMIL Specification with the "functionality of any prior art systems that used or implemented the SMIL 1.0 standard"—including the GRiNS and RealPlayer G2 systems identified in those contentions.  (Ex. 10 at 1 n.1 ("This chart is directed to both the SMIL 1.0 Specification publication and any prior art systems that used or implemented support for the SMIL 1.0 Specification. The exemplary citations to SMIL 1.0 Specification throughout this chart are provided both for the prior art publication and as evidence of the

functionality of any prior art systems that used or implemented the SMIL 1.0 standard.")).  Thus, §

315(e) bars ASUS's §§ 102 and 103 defenses because ASUS raised the same grounds in the IPR and

in this litigation.

> ### b.   ASUS Could Have Raised Its '806 Grounds at Issue in the IPR Proceeding Through Printed Publications

Even if the Court finds that the '806 Grounds at Issue differ in some meaningful way from

the SMIL 1.0 grounds that were actually raised in the IPR, estoppel would still apply because ASUS

plainly could have raised the '806 Grounds at Issue at the PTAB.  To the extent that Dr. Bulterman

relies on the alleged functionality contained within the GRiNS 0.5/1.0 and RealSystem G2 products

themselves, he points to descriptions of them in printed publications, namely, GRiNS Quick Start

Guides and the RealSystem G2 Production Guide, to evidence that functionality.  There is no reason

ASUS couldn't have presented its GRiNS 0.5/1.0 and RealSystem G2 theories to the PTAB by

referencing those printed publications themselves.

ASUS knew about the GRiNS and RealSystem players, as well as the printed publications

describing those players, prior to and during the IPR proceedings.  In fact, ASUS identified the

GRiNS and RealPlayer G2 products[8] in its original September 30, 2016 invalidity contentions—

more than two months before it filed its IPR.  (Ex. 10 at 1 ("[The] SMIL 1.0 Specification was

supported in at least the following systems at least as early as October 4, 1999: RealPlayer G2 from

RealNetworks [and] GRiNS from CWI.")).  There is no reason ASUS could not have found the

printed publication manuals which describe the RealSystem G2 and GRiNS 0.5 and 1.0 players

presented them in the IPR.  The very first result from a Google search for "RealPlayer G2 manual"

(without quotes) is the RealSystem G2 Production Guide on the CWI website.  (Ex. 11).[9]  And the

second result from a Google search for "GRiNS SMIL 1.0 manual" (without quotes) is the GRiNS

1.0 Quick Start Guide.  (Ex. 12; Ex. 13).  Moreover, ASUS retained Dr. Bulterman to submit a

declaration in support of ASUS's IPR petition.  Dr. Bulterman has been associated with CWI since

1988.  (Ex. 14 at 2).  And, between 1997 and 2002, Dr. Bulterman co-founded and managed the

---

[8] According to Microsoft, RealPlayer G2 is a component of RealSystem G2.  (Ex. 15 at 1).

[9] Dr. Bulterman worked on the development of the SMIL language itself, and his 2004 book states that "SMIL 1.0 quickly gained widespread . . . use, primarily as the internal synchronization format for RealNetworks's RealPlayer."  (Ex. 16 at 9).

company that developed the GRiNS software.  So Dr. Bulterman (and thus ASUS) obviously knew

of the GRiNS Quick Start Guides long before ASUS petitioned for IPR.  Indeed, ASUS cited Dr.

Bulterman's GRiNS publications in its September 30, 2016 invalidity contentions.  (Ex. 10 at 1).

Dr. Bulterman also authored publications in 1999 referencing RealSystem G2, which, according to

him, came with the RealSystem G2 Production Guide on which he relies.  (Ex. 17 at 6; Ex. 7 at 110).

In fact, ASUS included the publications that describe the GRiNS 0.5/1.0 and RealSystem G2 players

in amended invalidity contentions that it served on July 21, 2017 and November 3, 2017 (Ex. 15 at

1; Ex. 18 at 1)—less than one year after ASUS filed its petition for IPR of the '806 patent, and

"before the reply due date in the" IPR.  *Novartis Pharm. Corp. v. Par Pharm. Inc.*, No. 14-1289-

RGA, 2019 U.S. Dist. LEXIS 62489, at *9 (D. Del. Apr. 11, 2019).

Because ASUS "had reasonable access to printed publications corresponding to or describing

[the] product[s] that it could have proffered during the IPR process, it cannot avoid estoppel simply

by pointing to its finished product (rather than the printed materials) during litigation."  *Oil-Dri*

*Corp. of Am. v. Nestlé Purina Petcare Co.*, No. 15 C 1067, 2019 WL 861394, at *10-*11 (N.D. Ill,

February 22, 2019).  Thus, there can be no doubt that "a diligent search would have revealed these

references and therefore they 'could have been raised' at the IPR."  *Novartis*, 2019 U.S. Dist. LEXIS

62489, at *9.

### 3.      The '913 Grounds at Issue are Subject to Estoppel

ASUS served the Opening Expert Report of Mark Dunlop, Ph.D. on April 25, 2019 (seven

months after the PTAB issued its final written decision).  Dr. Dunlop proferred six grounds for

concluding the asserted claims of the '913 patent are invalid for obviousness.  (*See, e.g.*, Ex. 19 at 2-

3).  Three of those grounds—(i) the Apple Newton MessagePad device ("the Newton") combined

with Buxton, (ii) Buxton combined with U.S. Patent No. 6,975,304 ("Hawkins"), and (iii) Sakata II

combined with the Newton (collectively, "the '913 Grounds at Issue")—are based on prior art that

was known and available to ASUS well before the filing of ASUS's IPR petition, and/or identified in

the petition itself.[10]  Thus, all of the '913 Grounds at Issue could have been raised in the IPR

---

[10]  Dr. Dunlop also proposes three additional obviousness grounds involving a "Hitachi Handheld
HPC" device.  Because the available user manuals relating to that device do not appear to expressly
disclose every device feature on which Dr. Dunlop relies in his expert report, those three grounds are

proceedings before the PTAB.  Therefore, rejecting ASUS's attempts to avoid estoppel on these grounds is warranted.[11]

### a.   ASUS Was Aware of the Prior Art Used in the '913 Grounds at Issue at the Time That the IPR Petition was Filed

There is no dispute that the prior art used in the '913 Grounds at Issue was known and available to ASUS prior to the filing of its IPR petition.  The Defendants—including ASUS—served "Joint Invalidity Contentions" on September 30, 2016 (over two months before the IPR petition was filed on December 5, 2016).  (Ex. 20; *see supra* at Section II.A.2).  In their contentions, Defendants advanced several prior art-based grounds against the '913 patent, including grounds based on Sakata II (Ex. 21) Buxton, (Ex. 22), and Hawkins (Ex. 23).  (*See* Ex. 24; Ex. 25; Ex. 26).  Moreover, the Buxton and Sakata II were the subject of the IPR petition.  (*See supra* at Section II.A.2.).

The Newton device and its 1995 User Manual were identified and discussed in the expert declaration that was submitted by Google (and ASUS) in support of the IPR petition.  (*See* Ex. 3 at iv-v; Ex. 5 at ¶¶ 48, 58, 64, 68).  Furthermore, ASUS produced manuals for the Newton (including the 1995 Newton Manual filed with the IPR petition) with its Invalidity Contentions on September 30, 2016.  (*See* Ex. 27; Ex. 28; Ex. 29).

### b.   ASUS Could Have Raised the '913 Grounds at Issue in the IPR Petition and Should be Estopped From Raising Them Now

Buxton, Hawkins and Sakata II are all "patents or printed publications" that were known to ASUS prior to filing the IPR petition, and therefore could have been raised in the IPR proceeding.  *See* 35 U.S.C. § 311(b).  Nothing prevented ASUS from raising grounds based on these three references, other than its own decision not to do so.  Thus, estoppel should apply to bar ASUS from

---

not the subject of this motion.

[11]  During his deposition, Dr. Dunlop suggested that he may also be proposing an unarticulated anticipation ground in his expert report based on Sakata II, despite no mention of "anticipation" in the sections of his report pertaining to Sakata II and no identification of any such a ground in the Table of Contents to his report.  (See Ex. 30 at 192:16-195:5 ("A. So, I'm not ruling out the Sakata II anticipates."); cf. Ex. 19 at 3, 142-57 (describing obviousness grounds as "Sakata II ***combined with*** the Newton or Hitachi HPC" (emphasis added)); Ex. 30 at 191:23-192:12 ("A. … My general answer was that table of contents lists an anticipation of obviousness and ***all cases are presented combinations***" (emphasis added)).  To the extent that ASUS or Dr. Dunlop attempt to advance a previously-undisclosed anticipation ground based on Sakata II, estoppel should apply to bar that ground as well, as the PTAB considered and rejected a ground based on Sakata II alone during the IPR proceeding.  (*See supra* at Section II.A.2).

relying on its proposed invalidity ground that is expressly based on patents or printed publications,

i.e., the ground involving Buxton combined with Hawkins.  *See, e.g.*, *Parallel Networks*, 2017 WL

1045912, at *11; *Oil-Dri*, 2019 WL 861394, at *8.  (*See* Ex. 19 at 79-98 (discussing Buxton

combined with Hawkins grounds)).

With respect to the Newton, while ASUS purports to rely on the device itself in the pertinent

obviousness grounds, Dr. Dunlop's own testimony demonstrates that all of the device features on

which he relies are disclosed in manuals that qualify as "publications" under 35 U.S.C. § 311(b), and

were known to ASUS prior to the filing of the IPR petition.  For example, in his expert report, Dr.

Dunlop cites extensively to the 1995 Newton Manual to illustrate the features and operations that he

redundantly identifies in the device itself.  (*See, e.g.*, Ex. 28 at PRIORART003421, 3438 (illustrating

the Newton onscreen keyboard, also described in Ex. 19 at 39-40); PRIORART003439 (illustrating

the different keyboard layouts that are accessible via the "shift" and "option" keys on the Newton,

also described in Ex. 19 at 40-41); PRIORART003445 (illustrating the "caret menu" used in the

Newton, also described in Ex. 19 at 66)).  Dr. Dunlop confirmed this during his deposition.  (*See* Ex.

30 at 200:25-203:9).[12]  Notably, Dr. Dunlop does not offer any evidence in his report to suggest that

the device itself contains any allegedly invalidating feature that is not also described in the

publically-available Newton manuals.  (*See* Ex. 19 at 54-79 and 142-157).  Instead, he relies

primarily on the disclosures in the publically-available Newton manuals.  (*See id.*).

In fact, during his deposition, Dr. Dunlop acknowledged that the Newton device features on

which he relies are described in the manuals.  (*See* Ex. 30 at 204:4-14 ("Q. Are there any features of

the Apple Newton device that you relied on that are not described in this user manual? …  THE

WITNESS: I don't believe so. I tried to -- one of my hints in talking about Newton was to use the

_____

[12]  While Dr. Dunlop does not cite to the 1995 Newton Manual for disclosing a return to the
QWERTY keyboard layout following character entry (*see, e.g.*, Ex. 19 at 70-71, 148-49), that
operation of the Newton is described in the Newton 2.0 User Interface Guidelines, which is a
"publication" bearing a 1996 copyright date and, as discussed above, was produced by ASUS with
its Invalidity Contentions over two months prior to the filing of the IPR petition.  (*See supra* at
Section II.B.1.a.; Ex. 29 at PRIORART012773, PRIORART012974 ("The Newton shift key locks
on when tapped and releases automatically when a character key is tapped."), PRIORART012975
("Like the Newton shift key, the Newton option key is not pressed concurrently with pressing a
character key. The Newton option key locks on when tapped and releases automatically when a
character key is tapped.")).  Thus, all relied-upon features were discussed in publications that were
available to ASUS prior to the filing of the IPR petition.

manual because that was a very concise -- it is a very detailed manual. And it was easy to cite evidence from that manual rather than my own usage of a device.").  In this respect, Dr. Dunlop testified that he did not rely on any source code or other information that could only be obtained from deconstructing the device itself.  (*See* Ex. 30 at 203:10-21).

Thus, Dr. Dunlop's own testimony and the disclosures in his expert report demonstrate that all of the features of the Newton he purports to rely on when advancing his proposed invalidity grounds were sufficiently described in printed publications that were known and accessible to ASUS prior to the IPR petition.  In short, he is not offering an opinion based on the Newton device itself that differs in any meaningful way from the printed publication disclosures relating to that device. Because ASUS "had reasonable access to printed publications corresponding to or describing [the] product[s] that it could have proffered during the IPR process, it cannot avoid estoppel simply by pointing to its finished product (rather than the printed materials) during litigation."  *Oil-Dri*, 2019 WL 861394, at *10.  Therefore, estoppel should apply to bar ASUS from relying on its proposed invalidity grounds based on the Newton in combination with patents or printed publications, i.e., the grounds involving (i) the Newton combined with Buxton, and (ii) Sakata II combined with the Newton.  *See, e.g.*, *Parallel Networks*, 2017 WL 1045912, at *11-12; *Oil-Dri*, 2017 WL 3278915, at *8.  (*See* Ex. 19 at 54-79 and 142-157 (discussing the Newton combined with Buxton and Sakata II combined with the Newton grounds)).

## III.   SUMMARY JUDGMENT OF NO INVALIDITY OF THE '564 PATENT UNDER 35 U.S.C. § 251 IS WARRANTED

### A.   Statement of Facts

In its Answer to the Second Amended Complaint, filed on December 22, 2016, ASUS asserted its "Fifth Affirmative Defense (Invalidity Due to Broadening Re-issue)," alleging that the claims of the '564 Patent are invalid due to an improper broadening during re-issue (D.I. 87 in 18-cv-01886 at 21-23).  On December 23, 2016, then defendants Acer Inc. and Acer America Corporation (collectively, "Acer") moved for judgment on the pleadings that all asserted claims of the '564 Patent are invalid under 35 U.S.C. § 251, advancing the same argument set forth in ASUS's Fifth Affirmative Defense. (D.I. 94-95)  Specifically, Acer alleged that Philips improperly

broadened the claims on reissue by changing the language of claim 1 from "substantially centered around the touch screen" to "substantially centered around the touch location." (*See, e.g.*, D.I. 95 at 2). ASUS joined in Acer's motion for judgment on the pleadings with respect to the '564 Patent. (D.I. 89 in 18-cv-01886).

Philips filed its answering brief in opposition to Acer's motion on January 18, 2017, including a declaration by Dr. Philip Greenspun in support thereof. (*See* D.I. 108-09). Acer filed its reply brief on February 6, 2017. (D.I. 119). On March 4, 2019, the Court denied Defendants' motion for judgment on the pleadings with respect to the '564 Patent (*see generally* D.I. 632), finding that "[i]n sum, in light of the prosecution history, the specification and embodiments, and the examiner's determination that there was no improper broadening, the Court finds that Acer has failed to meet its burden to provide clear and convincing evidence that the textual amendment improperly broadened the scope of the original claims." (D.I. 632 at 12). In denying Acer's motion, the Court stated: "The Court finds sufficient support within the pleadings to deny Acer's motion for judgment on the pleadings. The Court therefore excludes the proffered Greenspun Declaration and declines to convert Acer's Rule 12(c) motion into a motion for summary judgment." (D.I. 632 at 12 n.5).

## B.   Argument

Philips respectfully requests that the Court summarily dismiss ASUS's Fifth Affirmative Defense and grant summary judgment of no invalidity under 35 U.S.C. § 251 for the '564 Patent for the reasons described in Philips' Answering Brief in Opposition to Acer's Motion (D.I. 108), the declaration of Philip Greenspun, Ph. D. in support thereof (D.I. 109), and the Court's order denying Acer's motion for judgment on the pleadings. (D.I. 632).

ASUS has not pointed to any additional evidence supporting its argument that the '564 Patent was improperly broadened upon reissue beyond that which was set forth in its Fifth Affirmative Defense and in Acer's denied motion for judgment on the pleadings. In fact, in the section of Defendants' and Microsoft's Disclosures Under Patent L.R. 3-3 related to the 35 U.S.C. § 251 defense, served on November 15, 2018, Defendants and Microsoft simply stated that "[t]he grounds for this defense are set forth in Defendants' Motion for Judgment on the Pleadings, which is fully

incorporated by reference herein." (Ex. 31 at 111-12). Further, the testimony of Jan Van Ee, the inventor of the '564 Patent, regarding the change in claim language from "substantially centered around the touch screen" to "substantially centered around the touch location" on reissue, supports the Court's order denying Acer's motion for judgment on the pleadings, and creates no new issues of material fact. (Ex. 32 at 93:4-97:10, 157:18-161:3).

Accordingly, since the record is devoid of any additional evidence supporting ASUS's Fifth Affirmative Defense regarding improper broadening of the '564 Patent on reissue beyond that which was already considered by the Court in denying Acer's motion for judgment on the pleadings, there is no genuine issue for trial on this defense, and Philips thus respectfully requests that the Court summarily dismiss ASUS's Fifth Affirmative Defense and grant summary judgment of no invalidity under 35 U.S.C. § 251 for the '564 Patent.

## IV.   SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT AS TO THE '913 PATENT IS WARRANTED

Summary judgment of no unenforceability of the '913 patent due to inequitable conduct is warranted at least because ASUS has failed to adduce any evidence to support their allegation that the prosecuting attorney of the '913 patent "acted with specific intent to mislead or deceive the PTO" when he submitted an Information Disclosure Statement ("IDS") that contained three pages of notes and commentary concerning a reference cited in that IDS. (*See* D.I. 87 at ¶ 45, pg. 30). Far from establishing an intent to deceive the PTO, the evidence shows that the notes were submitted through inadvertent error,

### A.   Statement of Facts: There is No Evidence That the Prosecuting Attorney (Or Anyone Else) Acted With An Intent to Mislead or Deceive the PTO

During the prosecution of the '913 patent (on March 18, 2014) Philips filed an Information Disclosure Statement ("IDS") listing multiple documents, including Japanese Patent No. 4,019,512 to Sakata ("Sakata '512"), a translation of Sakata '512, and what ASUS has described as "three pages containing reproductions of figures 10-12 from the reference, annotated with descriptions, commentary, and argument" (hereinafter the "Sakata '512 Notes"). (D.I. 87 at ¶ 34, pg. 27).[13]

---

[13] *See* Ex. 33, which includes the IDS (PHILIPS00003766-770), Sakata '512 (PHILIPS00003771-789), Sakata '512 Notes (PHILIPS00003790-92), and translation (PHILIPS00003793-3809).

ASUS has alleged that the Sakata '512 Notes do not accurately reflect the content of Sakata '512 and that Michael Belk (a prosecuting attorney for the '913 patent) "materially misrepresented the contents of the Sakata Application to the PTO" by including the Sakata '512 Notes in the March 18, 2014 IDS.  (D.I. 87 at ¶ 40).  ASUS asserts in its Answer to Philips' Counterclaims that the Sakata '512 Notes were "intentionally selective, and failed to acknowledge" certain of the disclosed embodiments of the Sakata '512 reference.  (D.I. 87 at ¶ 44).  ASUS further asserts that the Sakata '512 Notes were made by Mr. Belk "for the purpose of deterring the examiner from undertaking a thorough review of Sakata and instead directing the examiner's attention to only an irrelevant embodiment of Sakata," and that Mr. Belk "acted with specific intent to mislead or deceive the PTO" when he submitted the IDS containing the Sakata '512 Notes.  (D.I. 87 at ¶ 45).  Other than pointing to the inclusion of the Sakata '512 Notes in an IDS, ASUS offers no evidence to support its contention that Mr. Belk created the Sakata '512 Notes, let alone that he submitted them with any intention to deceive the Examiner.

On August 18, 2017, Mr. Belk was deposed in this matter.[14]  Mr. Belk's testimony revealed that he did not himself draft the Sakata '512 Notes, that he did not know who prepared them, and that he was unaware that the Sakata '512 Notes were included in the IDS that he submitted – indeed he had never even seen those notes prior to preparing for his deposition in this matter.[15, 16]  Mr. Belk further testified that he would "never" have personally characterized a reference that he submitted to the patent office in an IDS, that he had "never put notes in a submission to the patent office ever," and that he couldn't "imagine why anybody would do that."[17]  Instead, he testified that the notes were written by someone else.  He also testified that the actual copies of the materials that were submitted with the IDS (such as the Sakata '512 materials) would have been gathered and submitted by his secretary.[18]

---

[14] An excerpted copy of the transcript from Mr. Belk's deposition is attached hereto as Ex. 34 (hereinafter "Belk Dep.").

[15] See Belk Dep. at 87:12-13 ("Q. Do you know whose notes they are?  A. No idea.").

[16] See Belk Dep. at 87:2-6 ("Q. Have you seen this before, this document?  A. We looked at it in review.  Q. Prior to that had you seen it?  A. No.").

[17] See Belk Dep. at 72:6-16; Belk Dep. at 89:17-23.

[18] See Belk Dep. at 61:4-22.

### B.   Argument: Inequitable Conduct Requires Proof by Clear and Convincing Evidence of the Threshold Facts of Both Materiality and Intent, and the Evidence Proves That There Was No Such Intent

A finding of inequitable conduct "requires proof by clear and convincing evidence of the threshold facts of both materiality and intent." *Optium Corp. v. Emcore Corp.*, 603 F.3d 1313, 1319 (Fed. Cir. 2010).[19]  "Thus summary judgment may be granted when, drawing all reasonable factual inferences in favor of the non-movant, the evidence is such that the nonmovant cannot prevail." *Id.* (citing *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 547 (Fed.Cir.1998)).  In order to prove inequitable conduct a party must show both "that the patent applicant (1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive the PTO."  *In re Rosuvastatin Calcium Patent Litig.*, 703 F.3d 511, 519 (Fed. Cir. 2012).  "When a party has failed to introduce evidence sufficient to establish the existence of an essential element of that party's case in accordance with the applicable standard of proof, summary judgment is properly granted against that party." *Optium*, 603 F.3d at 1319-20 (citing *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed.Cir.2001)).  "[T]o meet the clear and convincing evidence standard, the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'" *Therasense*, *Inc. v. Becton, Dickinson, & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011).  However, "because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence, provided that such intent is the single reasonable inference." *Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*, 768 F.3d 1185, 1190-91 (Fed. Cir. 2014).

ASUS has not provided any evidence of deceptive intent and therefore no reasonable inference can be drawn that the Sakata '512 Notes were submitted with an intent to deceive the PTO.  Instead, as is discussed above, Mr. Belk's testimony establishes that he did not draft or prepare the Sakata '512 Notes and that he "would never" have characterized a reference submitted in an IDS in such a manner.  (*See* supra note 17).  His testimony further establishes that it was his secretary who would have collected the materials for submission with the relevant IDS, and that he had not been aware that the Sakata '512 Notes were included with the IDS materials that he submitted.  (*See* supra

---

[19] "Because inequitable conduct is an equitable remedy, there is no right to a jury, and the Court will be the fact finder."  *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.,* No.13-cv-05038NC, 2016 WL 482701 at *2 (N.D. Cal. Feb 8, 2016) 2016 WL 482701 (citing *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1110 (Fed. Cir. 2003)).

note 18).  Based on Mr. Belk's testimony, the single most reasonable inference that can be drawn regarding the Sakata '512 Notes is that they were not created by Mr. Belk and do not reflect any intent by Mr. Belk to make any kind of representation to the Examiner regarding Sakata '512 (or the Japanese Unexamined Patent Application that it corresponds to), let alone a knowing or intentional action intended to deceive the patent office.  Rather, they simply were attached to the IDS through inadvertent error.  Mr. Belk's testimony, coupled with the absence of any other evidence, precludes a trier of fact from concluding that Mr. Belk possessed the requisite deceptive intent, and therefore summary judgment of no inequitable conduct is warranted.

## V.    SUMMARY JUDGMENT OF NO BAR AS TO PHILIPS' CLAIMS BASED ON THE '809 PATENT IS WARRANTED

Partial summary judgment on ASUS's Ninth Affirmative Defense (D.I. 87 at ¶ 51)  is warranted because ASUS has not introduced any specific triable facts in support of their theory that Philips' claims of infringement of the '809 patent are barred in whole or in part by the defenses of license, estoppel, exhaustion, and/or waiver. In fact, contrary to ASUS's assertion, Philips has not signed any agreement that grants ASUS any rights under the '809 patent.  *See* (D.I 87 at at ¶ 51).

### A.    Statement of Facts

Digital Content Protection LLC ("DCP") (a wholly-owned subsidiary of Intel) maintains and publishes specifications for a number of different protocols developed by Intel for protecting high-bandwidth digital content ("HDCP").[20]  DCP has released two different revision families of "HDCP" specifications – HDCP 1.x and HDCP 2.x.[21]  The underlying protocols, methodologies, and technologies are significantly different from one another.[22]

---

[20] *See, e.g.*, "About DCP," https://www.digital-cp.com/about_dcp (last visited August 27, 2019), at "Glossary and Acronyms" (Ex. 36); ███████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████ .

[21] *See, e.g.*, "FAQs," https://www.digital-cp.com/faqs (last visited August 27, 2019), at "Technical – How is it different from HDCP 1.x" (Ex. 38).

[22] *See, e.g.*, i*d.* at "Technical – How is it different from HDCP 1.x" ("HDCP 1.x technology offers protection for uncompressed content transmitted over several common wired interfaces including DVI, HDMI and DisplayPort. HDCP revision 2.0 adds strengthened encryption and a locality check, among other new capabilities, to support scenarios requiring compressed content and wireless transmission."); *see also* ██████████████████████████████████████ ███████████████████████████ .

1    Philips has accused certain ASUS devices (including smartphones and computers) of

2    infringing U.S. Patent Number 9,436,809 (the "'809 patent") because they implement and support

3    HDCP 2.x functionality.  *See* Ex. 35 at § IX ("A Device Supporting HDCP 2.x . . . Functionality

4    Infringes . . . The '809 Patent").   Philips has not accused any Defendant of infringing the '809

5    patent based on their use of HDCP 1.x functionality.

6    ████████████████████████████████████████████

7    ███████████████████████ (*e.g.*, Ex. 39; Ex. 40).[23]  While Philips did sign the HDCP 1.x

8    Agreement (*see* Ex. 39), it has never signed the HDCP 2.x Agreement – indeed, ████████████

9    ████████████████████████████████████████████ a 30(b)(6) designee from Philips

10   (Rudy Roth) testified that Philips declined to sign an addendum agreement that was necessary to

11   cover HDCP 2.x technology.[24]

## B.    Argument

13    In its Answer, ASUS asserts that "Philips signed the 'HDCP License Agreement' (last

14   revised November 28, 2012)," that ASUS is a Fellow Adopter under that agreement, and that

15   "[b]ecause Philips is construing claims of the . . . '809 patent[] to read directly on the current version

16   of the HDCP Specification, the asserted claims of the . . . '809 patent[] are Necessary Claims and

17   ASUS has a license to the . . . '809 patent[]."  D.I. 87 at ¶ 51.  In short, ASUS contends that the

18   HDCP 1.x Agreement (the only agreement that Philips signed) contains a patent non-assert provision

19   that is applicable to HDCP 2.x technology.  Thus, the sole issue on this motion is whether, as a

20   matter of contract interpretation, the HDCP 1.x Agreement covers HDCP 2.x.  It does not.

21    "The interpretation of contracts for rights under patents and patent licenses is 'generally

---

[23] *See, e.g.*, █████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████; *See, e.g.*, Ex. 41 at 42:24-
43:10 ("Q. So now going back to the HDCP question, was Philips involved with HDCP in any way,
to your knowledge? . . . A. Philips has taken a license from Digital CP, to the HDCP 1.x adopter
agreement. Philips has never taken a license to the HDCP 2.x technology license, adopter agreement.
Or the amendments to the first agreement. So the answer is partially yes, partially no. Yes for HDCP
1.x, no for HDCP 2.x.").

[24] *See Id.*; ████████████████████████████████████████████
████████████████████████████████████████
████████████████.

governed by state law.'" *Innovus Prime, LLC v. Panasonic Corp.*, No. C-12-00660-RMW, 2013 WL 3354390, at *3 (N.D. Cal. July 2, 2013) (citing *Rhone–Poulenc Agro, S.A. v. DeKaib Genetics Corp.*, 284 F.3d 1323, 1327–28 (Fed. Cir. 2002)).  "In contrast to issues of pure contract interpretation, however, federal law applies to both substantive and procedural issues 'intimately involved in the substance of enforcement of the patent right.'" *Id.* (citing *Arma Refrigeration, Inc. v. Quadlus*, Inc., 172 F.3d 852, 855 (Fed. Cir. 1999)), *but see Lotes Co. v. Hon Hai Precision Indus. Co.*, No. C 11-01036 JSW, 2012 WL 2917450, at *3 (N.D. Cal. July 17, 2012) (applying California law while interpreting "the scope of the licensed products" subject to a patent license agreement.)

Summary judgment of issues involving contract interpretation is appropriate where the agreement is unambiguous.  *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) ("if the court finds that the contract is not ambiguous . . .  it may then award summary judgment.") (internal citations and quotations omitted); s*ee also S. Cal. Gas Co. v. Santa Ana*, 336 F.3d 885, 888-89 (9th Cir. 2003) (Finding that the Ninth Circuit "grant[s] summary judgment motions touching upon contract interpretation when the agreement is unambiguous.") (citing *San Diego Gas & Elec. Co. v. Canadian Hunter Mktg. Ltd.*, 132 F.3d 1303, 1307 (9th Cir.1997). Ambiguity of an agreement is a matter for the Court to decide.  *Int'l Multifoods*, 309 F.3d at 83 ("Under New York law, the initial interpretation of a contract is a matter of law for the court to decide," and "the key inquiry at this . . . stage is whether the contract is unambiguous . . .") (internal citations and quotations omitted); *see also S. Cal. Gas*, 336 F.3d at 888-89 (noting that "[a]mbiguity is a question of law for the court."). However, even if an agreement is found to be ambiguous on its face, the Court may look to extrinsic evidence to resolve the ambiguity on summary judgment.  *Int'l Multifoods*, 309 F.3d at 83 ("If an ambiguity is found, the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties . . ."); *see also S. Cal. Gas*, 336 F.3d at 888-89 (finding that "there is no rigid rule prohibiting reference to extrinsic evidence in resolving a contractual ambiguity on a summary judgment motion.").  The Court may "consider whether, construing the evidence in the nonmovant's favor, the ambiguity can be resolved consistent with the nonmovant's position," and "[a] party opposing summary judgment must direct [the Court's] attention to specific, triable facts."  *S. Cal. Gas*, 336 F.3d at 888-89 (citing Cal. Practice Guide:



1    Federal Civil Procedure Before Trial § 14:101.1, at 14–24.2.).

2          There is no genuine issue of fact regarding whether Philips signed any HDCP License

3    Agreement that pertains to HDCP 2.x technology.

14         The deposition testimony from [redacted] Philips establishes that the HDCP 1.x

15   Agreement that Philips signed encompassed only HDCP 1.x technology (not HDCP 2.x

16   technology).[27]  For example,

19                                          .  Similarly, Rudy Roth, designated by Philips to

20   testify in response to related 30(b)(6) deposition topics,[28] testified that the HDCP 1.x Agreement is

21   _____

22   [25] ASUS has also not established that it is a "Fellow Adopter" under the Philips HDCP 1.x
     Agreement (see, e.g., ASUS's Objections and Responses to Philips' Interrogatory No. 11 (Ex. 42
     stating only that "ASUS has already provided information responsive to this Interrogatory in at least
23   ASUS' Answer to the Second Amended Complaint")), and they are listed on DCP's website only as
     an HDCP 2.x adopter (See https://www.digital-cp.com/licensee-
24   list?title=&title_2%5B%5D=2&items_per_page=50 (last visited August 28, 2019) (Ex. 44).

25   [26]                                                                                   .

     [27]

26

27

28   [28] See, e.g., Ex. 43 (Designating Mr. Roth to testify concerning ASUS 30(b)(6) topic number 61,
     "Philips's status as a HDCP Licensed Adopter or HDCP Associate and its license or any other

"limited to 1.x" and that it does not encompass any HDCP 2.x revisions.[29]

Philips also testified that Philips did not sign the relevant addendum agreement that was required to cover HDCP 2.x (as is described above), and ASUS has introduced no evidence to the contrary (as is described above).  As ASUS has not introduced any specific triable facts suggesting otherwise, summary judgment in favor of Philips on ASUS's affirmative defenses of license, estoppel, exhaustion, and or/waiver as concerns the '809 patent is warranted.

## VI.   SUMMARY JUDGMENT OF NO BAR AS TO PHILIPS' CLAIMS BASED ON THE '806 PATENT AND NO UNENFORCEABILITY IS WARRANTED

### A.   Statement of Facts:  ASUS's Affirmative Defenses of License, Estoppel, Exhaustion, Waiver, Unclean Hands, and/or Patent Misuse

In its Answer to the Second Amended Complaint, filed on December 22, 2016, ASUS asserted affirmative defenses against the '806 Patent based upon Philips' alleged participation in the SYMM Working Group for Synchronized Multimedia Integration Language (SMIL) in its "Ninth Affirmative Defense (License, Exhaustion, Estoppel, and/or Waiver)" and its "Eleventh Affirmative Defense (Unclean Hands)." (See D.I. 87 in 18-cv-01886, at 31-35).  ASUS's assertions were based "on information and belief." (See id.)  On May 10, 2017, Philips served on ASUS Interrogatory Nos. 11 and 13 which requested the "complete factual and legal bases" for these defenses and ASUS responded on June 9, 2017.  (See Ex. 42 at 15-17).  ASUS's substantive response merely stated that ASUS "has already provided information responsive to this Interrogatory in at least ASUS's Answer to the Second Amended Complaint." (See id.).  No further supplement was provided regarding these defenses.

### B.   Argument: ASUS is Not Entitled to These Affirmative Defenses

Where a summary judgment motion relates to issues on which the non-moving party will bear the burden of proof at trial, "the moving party is not required to 'support its motion with

---

agreement with DCP relating to HDCP, including the terms."

[29] See, e.g., Ex. 41 at 130:23-132:8 (Q. And what is this document?  A. This document is the HDCP 1.x license which Philips has signed.  . . .  And the fact that it is limited to 1.x is basically referred from on page 4 as .32.  That it is the 1.x release 1.1 version. . . . Q. So it's your view that revision 2.0, 2.1, and 2.2 to the [HDCP] specification is not considered an amendment to the [HDCP] specification as defined in Section 1.32?  A. Correct.  Q. Can you explain to me why you think it's not an amendment?  . . .  A. Because Digital CP made that specification and the license only available if an addendum or an updated agreement was signed.)

affidavits or other similar material negating the opponent's claim . . . ." *Robinson v. Hudson*, No. C-93-20609 RMW, 1994 WL 679966, at *1 (N.D. Cal. Nov. 30, 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Rather, the moving party discharges its burden by showing that the nonmoving party has not disclosed the existence of any 'significant probative evidence tending to support the complaint.'" *Id.* (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

Here, ASUS bears the burden to prove its affirmative defenses. *Taylor v. Sturgell*, 553 U.S. 880, 128 S. Ct. 2161, 2179-80 (2008) (defendants have burden to prove affirmative defenses). Therefore, if there is an absence of evidence to support its theses defenses, summary judgment is appropriate. Philips served ASUS with interrogatories asking ASUS to identify the evidence (*i.e.*, the "factual basis") to support its Ninth (i.e., license, exhaustion, estoppel, and/or wavier) and Eleventh (*i.e.*, unclean hands) Affirmative Defenses. In response, ASUS did not point to any evidence supporting those defenses with respect to the '806 Patent and Philips' alleged participation in the SYMM Working Group for Synchronized Multimedia Integration Language (SMIL) beyond the "information and belief" included in ASUS's Answer. Allegations made on "information and belief" are insufficient to create an issue of fact for trial. *Gordon v. Cate*, No. 11-cv-03593 JST (PR), 2014 WL 848212, at *7 (N.D. Cal. Feb. 28, 2014) (granting summary judgment because "statements on information and belief are insufficient to raise a triable issue of fact . . . ."). Therefore, with respect to ASUS's Ninth and Eleventh Affirmative Defenses, the record is devoid of evidence supporting ASUS's defenses against the '806 Patent based upon Philips' alleged participation in the SYMM Working Group for Synchronized Multimedia Integration Language (SMIL), there is no genuine issue for trial on these defenses, and Philips thus respectfully requests that the Court summarily dismiss these affirmative defenses.

## VII.   SUMMARY JUDGMENT OF NO INTERVENING RIGHTS IS WARRANTED

### A.   Statement of Facts: ASUS's Affirmative Defense of Intervening Rights

In its Answer to the Second Amended Complaint filed on December 22, 2016, ASUS asserted its "Tenth Affirmative Defense Intervening Rights," and pled that "[b]efore the amended claims re-issued, ASUS had already begun (or had made substantial preparations to begin) making,

using, selling, offering for sale or importing certain accused products." (*See* 4:18-cv-01886, D.I. 87 at 33).  On May 10, 2017, Philips served on ASUS Interrogatory No. 12 which requested the "complete factual and legal bases" for ASUS's intervening rights defense (both absolute and equitable), and ASUS responded on June 9, 2017.  (*See* Ex. 42, at 16-17).  ASUS's substantive response merely cited back to its Answer.  (*See* Ex. 42, at 16-17).  No further supplement was provided.

> **B.**     **Argument: ASUS is Not Entitled to Either Absolute or Equitable Intervening Rights**

35 U.S.C. § 252 provides for "two separate and distinct defenses under the doctrine of intervening rights: 'absolute' intervening rights and 'equitable' intervening rights." *Visto Corp. v. Sproqit Techs., Inc.*, 413 F.Supp.2d 1073, 1089 (N.D. Cal. 2006).  Absolute intervening rights provide the accused infringer a right to use or sell a product that was already made before the grant of a reissue.  *See id.*  Equitable intervening rights permits (at the court's discretion) the "continued manufacture, use, or sale of additional products covered by the reissue patent when the defendant made, purchase, or used identical products, or made substantial preparations to make, use, or sell identical products, before the reissue date." *Id.* at 1089-90.  Six factors are routinely considered in weighing the equities of intervening rights.  *See id.* at 1090 (citing *Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 756 F.2d 1574, 1579 (Fed. Cir. 1985).

Because ASUS has not offered any evidence as to absolute intervening rights or any of the six factors for equitable intervening rights (and instead merely recites the prerequisite for intervening rights) (*see* Ex. 42, at 16-17; 4:18-cv-01886, D.I. 87 at 33), ASUS cannot sustain its defense and summary judgment should be granted in Philips favor.  *See Blotzer v. L-3 Commc'ns. Corp.*, No. CV-11-274-TUC-JGZ, 2012 WL 6086931 at * 14-15 (D. Ariz. Dec. 6, 2012); *see also Electro Med. Assoc. v. Aetna Life Ins. Co.*, No. 8:09-CV-39-T-27AEP, 2010 WL 11508047 (M.D. Fla. May 17, 2010), *reh'g denied*, 2010 WL 11508048, at *1 (M.D. Fla. June 10, 2010).

**VIII.   CONCLUSION**

For the foregoing reasons, Philips's motion for summary judgment should be granted.

Dated: August 29, 2019

By: _/s/Chris Holland_____
Chris Holland (SBN 164053)
cholland@hollandlawllp.com

HOLLAND LAW LLP
220 Montgomery Street, Suite 800
San Francisco, CA 94104
Tel: (415) 200-4980
Fax: (415) 200-4989

Michael P. Sandonato (*admitted pro hac vice*)
msandonato@venable.com

VENABLE LLP
1290 Avenue of the Americas
New York, New York 10104-3800
Tel: (212) 218-2100
Fax: (212) 218-2200

*Attorneys for Plaintiffs*

PHILIPS'S MOTION FOR SUMMARY JUDGMENT (ASUS DEFENDANTS)
CASE NUMBER 4:18-CV-01885-HSG