**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]**

1   Christina McCullough, Bar No. 245944
CMcCullough@perkinscoie.com
2   Antoine McNamara, Bar No. 261980
AMcNamara@perkinscoie.com
3   Theresa H.  Nguyen, Bar No. 284581
RNguyen@perkinscoie.com
4   PERKINS COIE LLP
1201 Third Avenue, Suite 4900
5   Seattle, WA  98101-3099
Telephone: (206) 359-8000
6   Facsimile: (206) 359-9000

7   Chad S.  Campbell, Bar No. 258723
CCampbell@perkinscoie.com
8   PERKINS COIE LLP
2901 N.  Central Avenue, Suite 2000
9   Phoenix, AZ  85012-2788
Telephone: (602) 351-8000
10  Facsimile: (602) 648-7000

11  Patrick J.  McKeever, Bar No. 268763
PMcKeever@perkinscoie.com
12  PERKINS COIE LLP
11452 El Camino Real, Suite 300
13  San Diego, CA 92130
Telephone: (858) 720-5700
14  Facsimile: (858) 720-5799

Tiffany P.  Cunningham
TCunningham@perkinscoie.com
PERKINS COIE LLP
131 S.  Dearborn Street, Suite 1700
Chicago, IL 60603
Telephone: (312) 324-8400
Facsimile: (312)324-9400

Sarah E. Fowler, Bar No. 264838
SFowler@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304
Telephone: (650) 838-4300
Facsimile: (650) 838-4350

15  *Attorneys for Microsoft Corporation and Microsoft
Mobile Inc.*

16

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| In Re Koninklijke Philips Patent Litigation | Case No.: 4:18-cv-01885-HSG-EDL<br>(and related cases)<br>JURY TRIAL DEMANDED<br><br>**MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE CERTAIN OPINIONS IN DR. RUBIN'S OPENING AND REBUTTAL EXPERT REPORTS SERVED ON BEHALF OF MICROSOFT CONCERNING U.S. PATENT NO. 9,436,809**<br><br>Date:  November 14, 2019<br>Time: 2:00 p.m.<br>Judge: Hon.  Haywood S.  Gilliam, Jr.<br>Courtroom: 2 |

[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]

1

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................................. 1

II.    DR. RUBIN'S CHALLENGED NONINFRINGEMENT OPINIONS ARE
       PROPER .......................................................................................................................... 1

       A.     Factual Background ............................................................................................. 2

       B.     None Of Dr. Rubin's Challenged Noninfringement Opinions Is An
              Improper New Theory .......................................................................................... 3

              1.     Dr. Rubin's "$r_n$" Noninfringement Theory Is Proper Rebuttal
                     Testimony .................................................................................................. 3

              2.     Dr. Rubin's "Session Key" Theory Is Proper Rebuttal Testimony ............. 6

              3.     Dr. Rubin's "Specifications Are Optional" and "Implementers can
                     Deviate from Specification" Theories Are Proper Rebuttal
                     Testimony .................................................................................................. 7

       C.     Dr. Rubin's "Ensnare The Prior Art" Noninfringement Theory Was Timely
              Disclosed ............................................................................................................. 9

       D.     Dr. Rubin's "Built-In Screen" Opinions Are Not a New Noninfringing
              Alternative Theory ............................................................................................. 10

       E.     Microsoft's Rebuttal Evidence Was Timely ....................................................... 10

       F.     Philips Has Not Suffered Prejudice ................................................................... 11

III.   DR. RUBIN'S OPINIONS RELATING TO THE SMARTRIGHT SYSTEM ARE
       PROPER ........................................................................................................................ 12

       A.     Dr. Rubin's SmartRight Opinions Are Based On the SmartRight System,
              Not A Combination Of Publications ................................................................... 12

       B.     Dr. Rubin's SmartRight Opinions Are Supported by Reliable Methods. ............ 13

              1.     Legal Standard ......................................................................................... 14

              2.     Dr. Rubin's Opinion that the SmartRight System Was Prior Art to
                     the '809 Patent is Supported by Reliable Evidence ................................... 15

IV.    CONCLUSION .............................................................................................................. 18

[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]

## TABLE OF AUTHORITIES

CASES

*Adenta GmbH v. OrthoArm, Inc.*,
  501 F.3d 1364 (Fed. Cir. 2007)..................................................................................15, 17

*Adobe Sys. Inc. v. Wowza Media Sys.*,
  No. 11-cv-02243-JST, 2014 WL 709865 (N.D. Cal. Feb. 23, 2014)......................................11

*Am. Seating Co. v. USSC Grp., Inc.*,
  514 F.3d 1262 (Fed. Cir. 2008)..............................................................................................14

*Apotex USA, Inc. v. Merck & Co.*,
  254 F.3d 1031 (Fed. Cir. 2001)..............................................................................................14

*Apple, Inc. v. Samsung Elecs. Co.*,
  No. 11-CV-01846-LHK, 2012 WL 2571719 (N.D. Cal. June 30, 2012) ................................15

*Asia Vital Components Co. v. Asetek Danmark A/S*,
  No. 16-CV-07160-JST, 2018 WL 4945316 (N.D. Cal. Oct. 11, 2018) ....................................5

*Baltodano v. Wal-Mart Stores, Inc.*,
  No. 2:10-cv-2062-JCM-RJJ, 2011 WL 3859724 (D. Nev. Aug. 31, 2011)............................12

*Bradley v. Applied Marine Sys. LLC*,
  No. 13-CV-03941-JSC, 2014 WL 1648726 (N.D. Cal. Apr. 23, 2014) ..................................14

*Eolas Techs. Inc. v. Microsoft Corp.*,
  399 F.3d 1325 (Fed. Cir. 2005)..............................................................................................15

*Fujitsu Ltd. v. Belkin Int'l, Inc.*,
  No. 10-CV-03972-LHK, 2012 WL 6096664 (N.D. Cal. Dec. 7, 2012) ...................................3

*HSM Portfolio LLC v. Elpida Memory Inc.*,
  No. 11-770-RGA, 2016 WL 552543 (D. Del. Feb. 11, 2016) .................................................12

*Huawei Techs., Co, Ltd. v. Samsung Elecs. Co, Ltd.*,
  340 F. Supp. 3d 934 (N.D. Cal. 2018) ........................................................................... passim

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
  87 F. Supp. 3d 928 (N.D. Cal. 2015) ....................................................................................14

*KlausTech, Inc. v. Google LLC*,
  No. 10-cv-05899-JSW (DMR), 2018 WL 5109383 (N.D. Cal. Sept. 14, 2018) .....................11

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
  No. 13-CV-04236-BLF, 2016 WL 4272430 (N.D. Cal. Aug. 15, 2016)...................................3

[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]

*Mitsubishi Elec. Corp. v. Ampex Corp.*,
    190 F.3d 1300 (Fed. Cir. 1999) ..................................................................................... 17

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
    345 F. Supp. 2d 431 (D. Del. 2004) ............................................................................... 17

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010) ......................................................................................... 14

*Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*,
    264 F.3d 1344 (Fed. Cir. 2001) ..................................................................................... 17

*Space Data Corp. v. Alphabet Inc.*,
    No. 16-cv-03260-BLF, 2019 WL 2603285 (N.D. Cal. June 25, 2019) ........................... 8

*TransWeb, LLC v. 3M Innovative Props. Co.*,
    812 F.3d 1295 (Fed. Cir. 2016) ..................................................................................... 16

*Wong v. Regents of the Univ. of Cal.*,
    410 F.3d 1052 (9th Cir. 2005) ....................................................................................... 12

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) ....................................................................................... 12

**STATUTES**

35 U.S.C. § 102 .................................................................................................................. 14, 15

35 U.S.C. § 103 ...................................................................................................................... 14

**RULES**

Fed. R. Civ. P. 26 ............................................................................................................ 5, 10, 11

Fed. R. Ev. 702 ................................................................................................................... 12, 14

L.R. 3-1 .................................................................................................................................... 11

[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]

1

## I.    INTRODUCTION

Philips' Motion to Exclude Certain Opinions in Dr. Rubin's Opening and Rebuttal Expert Reports (Dkt. No. 709, "Motion") asks this Court to exclude testimony from Microsoft's expert Dr. Aviel Rubin that is relevant, based on ample factual support, and timely disclosed.  Philips has not identified any appropriate basis for excluding the identified portions of Dr. Rubin's testimony.

Philips is currently asserting five patents against Microsoft.  The asserted patents include U.S. Patent No. 9,436,809 ("the '809 patent"), which relates to techniques for distance-based authentication.  Dr. Rubin provided expert reports discussing noninfringement and invalidity of the '809 patent, both of which Philips attacks.

First, Philips asserts that Dr. Rubin has advanced six "new" noninfringement theories in his rebuttal report.  However, it was *Philips*, not Microsoft, that advanced new theories in the opening infringement report.  Microsoft has moved to strike the more egregious of these newly-disclosed theories.  *See* Dkt. No. 720.  To the extent Philips is allowed to maintain its new theories, Dr. Rubin's responsive opinions are proper rebuttal testimony.

Second, Philips attacks Dr. Rubin's invalidity opinions relating to the prior art "Smart-Right" system, claiming that there is insufficient evidence to show that a publicly demonstrated version of SmartRight operated in the manner Dr. Rubin asserts.  However, Dr. Rubin cites evidence that versions of SmartRight dated just before and just after the public demonstration operated identically, in all relevant aspects.  The evidence is sufficient to allow a jury to find that the demonstrated version of SmartRight operated in a similar manner.

Philips' attacks on Dr. Rubin fail.  For the reasons discussed below, the Court should deny Philips' Motion in its entirety.

## II.    DR. RUBIN'S CHALLENGED NONINFRINGEMENT OPINIONS ARE PROPER

Philips claims that there are six "new theories" in Dr. Rubin's rebuttal report relating to noninfringement.  Motion at 8.  Four of these challenged theories—that 1) "the $r_n$ value is not a signal"; 2) "only one piece of information [the session key $k_s$] is used to generate a secure authenticated channel"; 3) "technical specifications such as HDCP 2.x may include optional portions";

**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]**

1   and 4) "implementers can choose to deviate from the HDCP 2.x specification"—are proper rebuttal

2   testimony that respond to new theories introduced in Philips' opening expert report.  A fifth theory

3   relating to ensnarement of the prior art is not new, but was disclosed more than a year before the

4   close of fact discovery.  And a sixth "purported non-infringing alternative" is not a noninfringing

5   alternative at all.  The challenged testimony relates instead to an aspect of the accused products'

6   operation that influences damages.

7         **A.**    **Factual Background**

8         Philips' opening expert report for the '809 patent introduced a number of new theories that

9   Philips had not disclosed in its final infringement contentions.  *See generally* Dkt. No. 720 (dis-

10  cussing a subset of the new theories improperly added in Philips' reports).  As relevant to this

11  Motion, Philips' expert Dr. Michael Goodrich opined for the first time that 1) the "first signal" of

12  the independent '809 patent claims was a standalone random number, $r_n$; 2) the "secure authenti-

13  cated channel" of claim 50 is generated through a multi-step process that includes generating an

14  intermediate key; 3) the accused Xbox and Surface products infringe because of component parts

15  made by third parties; and 4) "deviations" from the HDCP specifications do not affect Dr.

16  Goodrich's infringement analysis.  Dr. Rubin responded to each of these new arguments in his

17  rebuttal report.

18       On July 3, 2019, counsel for Philips sent a letter accusing Microsoft of improperly adding

19  new noninfringement theories in Dr. Rubin's rebuttal report, as well as allegedly new theories of

20  invalidity and noninfringing alternatives.  Dkt. No. 708-23.  In response, Microsoft explained that

21  each of Dr. Rubin's challenged noninfringement opinions addressed new matter raised in Philips'

22  opening reports.  Dkt. No. 708-25.  Microsoft also explained that its "ensnarement" theory was not

23  new, but had been disclosed 16 months earlier in an interrogatory response.  *Id.* at p. 2, § B(2).

24  Further, Microsoft confirmed that Dr. Rubin's discussion of the Surface products' built-in screen

25  was not a non-infringing alternative theory.  *Id.* at p. 3, § B(6).  Philips did not reply to Microsoft's

26  explanations.  It did, however, serve a supplemental report from Dr. Goodrich that purported to

27  respond to the theories in Dr. Rubin's rebuttal report.

28

[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]

1

### B.    None Of Dr. Rubin's Challenged Noninfringement Opinions Is An Improper New Theory

2

3       Philips notes correctly (Motion at 9-10) that parties may not use expert reports to introduce

4  new theories not disclosed during discovery. *See* Dkt. No. 720 at 9-10. But Philips neglects to

5  mention the corollary to this rule: "clear rebuttals" to the theories in an opposing expert's opening

6  report are not new matter, but properly "fall within the scope" of rebuttal expert testimony. *Fujitsu*

7  *Ltd. v. Belkin Int'l, Inc.*, No. 10-CV-03972-LHK, 2012 WL 6096664, at *3 (N.D. Cal. Dec. 7, 2012);

8  *see also Huawei Techs., Co, Ltd. v. Samsung Elecs. Co, Ltd.*, 340 F. Supp. 3d 934, 1000 (N.D. Cal.

9  2018) (rebuttal evidence that is "directly responsive" to new matter in opening expert reports is

10  appropriate).  "The proper function of rebuttal evidence is to contradict, impeach or defuse the

11  impact of the evidence offered by an adverse party." *Matthew Enter., Inc. v. Chrysler Grp. LLC*,

12  No. 13-CV-04236-BLF, 2016 WL 4272430, at *1 (N.D. Cal. Aug. 15, 2016) (quotation omitted).

13       Here, it is Philips, not Microsoft, that has improperly added new theories, via the opening

14  report of Dr. Goodrich.  To the extent Dr. Goodrich is permitted to maintain any of these improp-

15  erly-added theories, Dr. Rubin's responsive opinions are proper rebuttal testimony.

### 1.    Dr. Rubin's "$r_n$" Noninfringement Theory Is Proper Rebuttal Testimony

16

17       Philips first attacks Dr. Rubin's opinion that "the $r_n$ value is not a signal" (McCullough Ex.

18  1 ("Rubin Noninf. Rep.") ¶¶ 95-96)[1] as an improper new theory.  Motion at 14-15.  This opinion

19  responds directly to an infringement theory that Philips did not disclose in its infringement conten-

20  tions.

21       The asserted claims of the '809 patent require a "first signal" (*e.g.*, claims 1, 49).  Certain

22  dependent claims further specify that "the first signal comprises a random number" (*e.g.*, claims 2,

23  54).  In Philips' initial infringement contentions, Philips pointed to an "LC_Init" message in the

24  HDCP Specifications[2] as being this "first signal."  McCullough Ex. 2, 9/29/17 Inf. Cont., at Appx.

25  ―――――――――――――

26       [1] References to "McCullough Ex." are exhibits to the attached McCullough Declaration in support of this opposition.

27       [2] Philips alleges that practicing the HDCP 2.x specification alone infringes the asserted '809
claims.  *See, e.g.*, McCullough Ex. 2 ("9/29/17 Inf. Cont.") at Appx. I p. 1 ("The '809 HDCP

28  Accused Products are all devices that support the High-bandwidth Digital Content Protection ("HDCP") System revision 2.x.")

[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]

1  I pp. 8-9.  Philips stated that "[t]he HDCP Transmitter initiates the locality check by sending *a first*

2  *signal*, *an LC_Init message*, to the HDCP Receiver at a first time. … the transmitting of the LC_Init

3  message is outlined in red" (*id.*):



**Figure 2.4. Locality Check between HDCP Transmitter and HDCP Receiver**

12  The   HDCP   Specifications   disclosed   that   LC_Init   contains   a   random   number   "$r_n$."

13  McCullough Ex. 3 ("HDCP 2.2 IIA Specification") at PHILIPS00000084.  Philips' infringement

14  contentions asserted that this $r_n$ value satisfied the dependent claim limitation that "the first signal

15  comprise[] a random number."  McCullough Ex. 2, 9/29/17 Inf. Cont., at Appx. I p. 14 ("the LC_Init

16  message, the first signal, contains a 64-bit pseudo-random nonce $r_n$").

17  In the final infringement contentions, Philips maintained this focus on LC_Init.  It relied on

18  the same red-outlined box in its discussion of the alleged "first signal":



**Figure 2.4. Locality Check between HDCP Transmitter and HDCP Receiver**

27  Dkt. No. 708-21 ("Final Infringement Contentions") at App. I p. 11-12.  While Philips introduced

28  additional explanatory language, including a statement that "the HDCP Transmitter initiates the

**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]**

locality check by sending a first signal, nonce $r_n$ in the LC_Init message, to the HDCP Receiver at a first time," Philips did not disclose that $r_n$ viewed alone—as opposed to being transmitted *within the LC_Init message*—allegedly satisfied the "first signal" element. *Id.*

Then, in Philips' Opening Expert Report, Philips' expert Dr. Goodrich opined that $r_n$ *alone* (not the entire LC_Init message) constituted the first signal. *See* McCullough Ex. 4 ("Goodrich Inf. Rep.") ¶ 228 (first signal is "nonce $r_n$ (contained in message LC_Init)"). Dr. Goodrich based this theory on a new portion of the HDCP Specifications, not cited in Philips' contentions:

4.3.8 LC_Init (Transmitter to Receiver)

| Syntax | No. of Bytes | Identifier |
|---|---|---|
| LC_Init { | | |
| msg_id | 1 | uint |
| $r_n$[63..0] | 8 | uint |
| } | | |

(DCP_PHILIPS_0005663 (HDCP 2.2 IIA at 61).)

*Id.* ($r_n$ underlined by Philips). Philips' contentions, which pointed to only to the red-highlighted LC_Init message as the "first signal," did not adequately put Microsoft on notice of this new theory. Where an expert report opines that prior art teaches additional limitations not identified in the invalidity contentions, "these are new invalidity theories that were not properly disclosed." *Asia Vital Components Co. v. Asetek Danmark A/S*, No. 16-CV-07160-JST, 2018 WL 4945316, at *5 (N.D. Cal. Oct. 11, 2018).

Dr. Rubin responds to theory in paragraph 96 of his report, explaining that "the $r_n$ value is not a "signal." Instead, "a signal is the quantity transmitting information, here the message LC_Init. The value $r_n$ is *within* this signal, but the *signal* is LC_Init." McCullough Ex. 1, Rubin Noninf. Rep., ¶ 96 (emphasis in original). Dr. Rubin's opinion is not an improper new theory, but proper rebuttal testimony intended to "rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(D)(ii); *Huawei*, 340 F. Supp. 3d at 995; *id.* at 1001 (denying motion to strike because "certain positions were unforeseeable until Samsung served its opening infringement reports" and according noninfringement positions additional latitude due to "the uncertainty as to the requisite particularity" of noninfringement contentions).

[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]

1

### 2. Dr. Rubin's "Session Key" Theory Is Proper Rebuttal Testimony

2

3       Philips challenges ¶ 212 of Dr. Rubin's report as a new theory (Motion at 16-17), where he

4 opines that the accused products do not perform the claimed step of "us[ing] the secret to generate

5 a secure authenticated channel" because the only "piece of information used to generate a secure

6 authenticated channel is the session key $k_s$." This is proper rebuttal testimony that responds directly

7 to new theories presented in Dr. Goodrich's opening report.

8       Claim 50 of the '809 patent recites "us[ing] the secret to generate a secure authenticated

9 channel between the first device and the second device, [and] us[ing] the secure authenticated chan-

10 nel to provide the protected content to the second device." Philips' infringement contentions simply

11 parroted this claim language, stating that the HDCP Specification satisfied this limitation because

12 "a secure channel [between the first and second devices] is generated." Dkt. No. 708-21, Final

13 Infringement Contentions, at App. I p. 44. In Dr. Goodrich's opening report, however, he opined

14 that "the HDCP 2.x transmitter uses the master key $k_m$ to derive a key dkey2, which is used during

15 the session key exchange stage of the authentication protocol to encrypt a session key $k_s$ to establish

16 a HDCP 2.x encrypted session." *See* McCullough Ex. 4, Goodrich Inf. Rep., ¶ 319.[3]

17       In his rebuttal report, Dr. Rubin addresses Dr. Goodrich's new theory regarding claim 50.

18 Dr. Rubin explains that the component Philips relies on as being the "secret," master key $k_m$, is not

19 used to generate the secure authenticated channel because "only one piece of information is used

20 to generate a secure authenticated channel: the session key $k_s$" and "$k_s$ is a random number and is

21 not related to $k_m$." McCullough Ex. 1, Rubin Noninf. Rep., ¶¶ 209-213.

22       Philips claims (Motion at 17) that its theory relating to generation of the secure authenti-

23 cated channel is not new because its contentions identified $k_m$ as the claimed "secret." But Philips

24 does not deny that its contentions failed to disclose that the "secure authenticated channel" was

25 allegedly generated by the multi-step process Dr. Goodrich discussed. Indeed, Philips' contentions

26 did not even explain what the "secure authenticated channel" allegedly was. The contentions

27

28     [3] Microsoft has moved to strike this new noninfringement theory. *E.g.*, D.I. 720 at 14-15.

**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]**

1    merely stated that 1) a master key $k_m$ is securely shared with the second device, and 2) at a later

2    point, protected content is transmitted. *See* Motion at 16-17. This is far from the notice required

3    by the Local Rules. Philips' new infringement theory for claim 50 is improper and should be

4    stricken. If it is not, however, Dr. Rubin's opinions are permissible rebuttal testimony.

5                    **3.    Dr. Rubin's "Specifications Are Optional" and "Imple-
                            menters can Deviate from Specification" Theories Are**

6                            **Proper Rebuttal Testimony**

7            In ¶¶ 222-224 of Dr. Rubin's report, he opines that "technical specifications sometimes

8    include optional portions that implementers can choose not to implement" and that "implementers

9    can choose to deviate from the Specification." Philips challenges these opinions as improper new

10   theories. Motion at 18-20. Again, however, Dr. Rubin's opinions are proper rebuttal testimony to

11   new opinions presented in Dr. Goodrich's opening report.[4]

12           Philips' infringement contentions for the '809 patent were based exclusively on the HDCP

13   Specifications and specific portions of the Xbox source code. *See generally* Dkt. No. 708-21, Final

14   Infringement Contentions, App. I; *id.*, Source Code App. I. The contentions did not rely on any

15   third-party components as allegedly satisfying any element of the asserted '809 claims. In Dr.

16   Goodrich's report, however, he opined for the first time that most of the accused functionality is

17   actually implemented in component parts made by Intel, NVIDIA, Marvell, and AMD. *See*

18   McCullough Ex. 4, Goodrich Inf. Rep., ¶¶ 526-529, 357, 359.[5]

19           In addition to adding these new theories involving third-party components, Dr. Goodrich's

20   opening report put deviations from the HDCP 2.x Specification directly at issue. His report con-

21   tained an *entire section* dedicated to

22

23

24

25

_____

26           [4] Philips splits Dr. Rubin's opinions into so-called "optional" and "deviations" theories.
     Although Philips has treated these as two separate theories in its Motion, both Philips' and Dr.

27   Rubin's analysis is largely the same, and Microsoft addresses the two together.

28           [5] Microsoft has moved to strike this new noninfringement theory. *E.g.*, D.I. 720 at 9-11.

**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]**

1

2

3

4

5

6

7                                                  "do not change my opinions herein that the Accused Xbox Products

8 infringe." *Id.* ¶¶ 383-386. Although Dr. Goodrich

9                                      , he did not perform any such analysis for the third-party com-

10 ponents that allegedly practice many of the key claim limitations.

11           Dr. Rubin's opinions in ¶¶ 222-224 of his report directly respond to Dr. Goodrich's new

12 opinions relating to 1) third-party components, 2) deviations from the HDCP Specifications, and

13 3) conclusions that can be drawn from compliance testing certificates and general statements of

14 HDCP "support." Dr. Rubin explains that HDCP Specifications include optional portions that im-

15 plementers can choose to implement or not. McCullough Ex. 1, Rubin Noninf. Rep., ¶ 223. Dr.

16 Rubin also discusses evidence showing that

17

18                                         and that a device can pass authorized compli-

19 ance center testing without performing every portion of the HDCP Specifications. *Id.* ¶ 224 (sum-

20 marizing testimony in ¶¶ 88-91).

21           Dr. Rubin's challenged opinions respond directly to Dr. Goodrich's opinions regarding the

22 possibility and relevance of deviations from the HDCP Specifications by HDCP-compliant devices.

23 *Huawei*, 340 F. Supp. 3d, at 995 (rebuttal testimony that is "directly responsive" to opposing expert

24 is proper). Dr. Rubin's opinions also respond to Dr. Goodrich's implicit assumption that the third-

25 party components he cites do not meaningfully deviate from the HDCP Specifications. *E.g.*, *Space*

26 *Data Corp. v. Alphabet Inc.*, No. 16-cv-03260-BLF, 2019 WL 2603285, at *3 (N.D. Cal. June 25,

27 2019) ("challenging the assumptions of an expert witness' report is a permissible topic of rebuttal

28 testimony") (citation omitted). The opinions are proper rebuttal testimony.

**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]**

1
2

### C. Dr. Rubin's "Ensnare The Prior Art" Noninfringement Theory Was Timely Disclosed

3

Philips claims that Dr. Rubin's theory that Philips' scope of equivalents would "ensnare the

4

prior art" is an improper new theory. Motion at 15-16 (challenging Rubin Noninf. Rep. ¶¶ 120-

5

121, 162). Microsoft disclosed this ensnarement theory a year and a half ago.

6

Microsoft disclosed its ensnarement theory for the '809 patent in March 2018, in a supple-

7

mental response to Philips' noninfringement contention interrogatory. Dkt. No. 708-9 ("3/16/2018

8

Rog. 4 Resp.") pp. 64-65, 70. Microsoft's interrogatory response disclosed that "Philips is barred

9

from alleging a scope of equivalency of a 'watchdog timer'" for limitation 1(h) [of the '809 patent]

10

"because it would ensnare voluminous prior art on watchdog timers" and pin-cited several pieces

11

of prior art disclosing watchdog timers. *Id*. at 64-65. Microsoft's interrogatory response also ex-

12

plained that "Philips is barred from alleging a scope of equivalency of 'sending $K_m$, which is then

13

used with other information to derive $K_d$'" for limitation 1(g) "because it would ensnare prior art,"

14

and explained how the prior art TLS 1.0 Specification taught this limitation. *Id.* at 70. Dr. Rubin's

15

report repeats exactly what was disclosed in Microsoft's March 2018 interrogatory response. *See*

16

McCullough Ex. 1, Rubin Noninf. Rep., ¶¶ 120-121, 162.

17

Microsoft's subsequent interrogatory responses were intended to build on—not replace—

18

the earlier responses. Each of the subsequent responses was styled as an "Amended and Supple-

19

mental Response," and in addition, each incorporated the earlier objections by reference—further

20

indicating that each response built on the previous responses. Dkt. No. 708-11 p. 7 (response styled

21

as "Amended And Supplemental Response" and stating "Microsoft incorporates by reference each

22

of the General Objections and Specific Objections stated for its initial and each of its supplemental

23

responses to this interrogatory"); Dkt. No. 708-13 p. 7 (same). Although Microsoft inadvertently

24

omitted the ensnarement theories from the later responses due to a copy/paste error, this Court has

25

previously found that correction of such errors is permissible, particularly where there has been no

26

gamesmanship and where there is no prejudice to the opposing party. Dkt. No. 627 pp. 5-6 (allow-

27

ing Philips to add doctrine of equivalents theories to its infringement contentions "to correct a

28

'copy/paste error.'"). There can be no prejudice here, where Philips has been on notice of the

**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]**

ensnarement theories for over 18 months, and where Dr. Goodrich responded to this theory in his supplemental report.

### D.     Dr. Rubin's "Built-In Screen" Opinions Are Not a New Noninfringing Alternative Theory

Philips claims that Dr. Rubin improperly advances a new noninfringing alternative theory in ¶ 323 of his report involving the built-in screen on the accused Surface devices.  Motion at 20-21.  This is incorrect.  Microsoft does not allege, and has never alleged, that the built-in screen is a noninfringing alternative.  Microsoft has told Philips as much.  Dkt. No. 708-25 p. 3 ("this is not a 'new proposed alternative.'").

The built-in screen is, however, relevant to damages.  It is undisputed that the accused Surface devices do not use HDCP 2.x, the accused functionality, to play back content on the device's built-in screen.  McCullough Ex. 5 ("Mody Rep.") pp. 74-75.  HDCP 2.x is only used when a Surface device is connected to an ***external*** monitor or screen.  Dr. Rubin confirmed this technical operation in his report (McCullough Ex. 1, Rubin Noninf. Rep., ¶ 323), and Microsoft's damages expert, Dr. Nisha Mody, relied on this fact in determining that HDCP 2.x "has not been widely adopted and remains a niche market for viewing limited types of content."  McCullough Ex. 5, Mody Rep., pp. 74-75.

The fact that the Surface devices' built-in screen does not use HDCP 2.x to play content is not a new noninfringing alternative theory—but it is relevant, undisputed, and used by Dr. Mody in her analysis.  There is no basis for prohibiting Dr. Rubin from testifying as to this fact.

### E.     Microsoft's Rebuttal Evidence Was Timely

With respect to each of Dr. Rubin's allegedly new theories, Philips argues that Microsoft violated Rule 26(e) by failing to supplement its interrogatory responses.  Motion at 21-22.  This argument is inapplicable where Microsoft could not have foreseen Philips' new arguments during the fact discovery period.  *Huawei*, 340 F. Supp. 3d at 1001 (rebuttal testimony concerning noninfringement was appropriate, even though Huawei did not supplement its noninfringement interrogatory responses, because "certain positions were unforeseeable until Samsung served its opening infringement reports").

[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]

1    The appropriate inquiry is not whether Microsoft supplemented its interrogatory responses,

2 but rather whether Microsoft timely disclosed its expert's rebuttal opinions—which it did, by filing

3 the rebuttal reports on the dates set by the scheduling order. *Id.* at 995 (evaluating timeliness of

4 rebuttal expert opinions under Fed. R. Civ. P. 26(a)(2)(D)(ii)); *id.* at 999 (permitting proper rebuttal

5 testimony even though Huawei failed to supplement an interrogatory response on the topic). Mi-

6 crosoft has not violated Rule 26.

7    **F.    Philips Has Not Suffered Prejudice**

8    Philips alleges that it has been prejudiced by the allegedly new theories in Dr. Rubin's re-

9 port. Motion at 22-24. But a party is not prejudiced by proper rebuttal testimony, particularly

10 where, like Philips, it issued a supplemental report. There is no prejudice to Philips here.

11    Philips also had ample opportunity to develop the factual record. Dr. Rubin's challenged

12 opinions are premised on the same facts that Philips (via Dr. Goodrich) relied on for its infringe-

13 ment theories. Philips questioned several of Microsoft's engineers on these theories and cited their

14 testimony in Dr. Goodrich's opening report. *See*, *e.g.*, McCullough Ex. 4, Goodrich Inf. Rep., ¶ 354

15 (citing testimony from Microsoft's engineer regarding generation of the random number $r_n$ now

16 alleged to be the first signal); *id.* ¶¶ 351-355, 496-501 (citing testimony from two different Mi-

17 crosoft engineers related to the operation of third party components); *id.* ¶ 383 (citing testimony

18 from Microsoft's engineer related to deviations from the specification). Philips also sought third-

19 party discovery relating to its third-party component theories and included testimony and docu-

20 ments from component manufacturers Intel and NVIDIA in its infringement report. *Id.* ¶¶ 517-

21 525. Philips has been able to develop a full factual record and cannot claim prejudice.

22    The cases Philips cites (Motion at 10-11, 22-23) do not support Philips' claim of prejudice,

23 because none of these cases addresses the proper scope of *rebuttal* testimony. Instead, the cases

24 relate to prejudice resulting from **opening** or **infringement** reports containing theories that were

25 not properly disclosed in the Patent Local Rule contentions. For example, Philips' cited *Adobe* and

26 *KlausTech* cases dealt with opening infringement reports that went beyond the mandatory disclo-

27 sures under Patent L.R. 3-1. *Adobe Sys. Inc. v. Wowza Media Sys.*, No. 11-cv-02243-JST, 2014

28 WL 709865, at *15 n.7 (N.D. Cal. Feb. 23, 2014); *KlausTech, Inc. v. Google LLC*, No. 10-cv-

**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]**

1  05899-JSW (DMR), 2018 WL 5109383, at *8 (N.D. Cal. Sept. 14, 2018) (Ryu, M.J.), report and

2  recommendation adopted by 4:10-cv-05899-JSW, D.I. 325 (Oct. 31, 2018).  The other cases cited

3  by Philips are similarly inapposite.[6]

4  Philips was able to develop a full record in both fact and expert discovery and cannot now

5  claim prejudice from Dr. Rubin's rebuttal theories.  There is no prejudice to Philips from Dr. Ru-

6  bin's testimony, which is proper rebuttal to Dr. Goodrich's untimely theories.

7  **III.  DR. RUBIN'S OPINIONS RELATING TO THE SMARTRIGHT SYSTEM
8  ARE PROPER**

9  Philips seeks to exclude Dr. Rubin's opinions relating to the SmartRight invalidity ground

10  under Fed. R. Ev. 702, arguing that Dr. Rubin has failed to show that SmartRight is prior art.  Mo-

11  tion at 9, 11-14.  Philips first addresses a purported SmartRight "combination" theory.  Philips

12  misunderstands Dr. Rubin's opinions, which are based on the SmartRight *system*, not on a combi-

13  nation of publications.  Philips next argues that there is insufficient evidence showing the operation

14  of the version of SmartRight demonstrated before the '809 patent's priority date.  Philips is incor-

15  rect; the record contains substantial evidence from which the jury could conclude that the demon-

16  strated version of SmartRight operated as Dr. Rubin opines.  Certainly, the evidence is sufficient to

17  withstand the bar set by Rule 702.

18  **A.  Dr. Rubin's SmartRight Opinions Are Based On the
19  SmartRight System, Not A Combination Of Publications**

20  Philips' contention that Dr. Rubin's opinions are premised on a "combination of the Smar-

21  tRight References" (Motion at 12) is incorrect.  Dr. Rubin states clearly that his opinions relating

22  to SmartRight are based on the "SmartRight *system*, also called Extended Conditional Access or

23  _____

24  [6] In *HSM Portfolio LLC v. Elpida Memory Inc.*, No. 11-770-RGA, 2016 WL 552543, at *2 (D. Del. Feb. 11, 2016), a Delaware case decided under Third Circuit law, the court actually per-

25  mitted the parties to advance several allegedly new theories in their expert reports and disallowed only the new infringement theories advanced in a reply report (i.e., in the third round of expert reports).  *Id.* at *2.  The *Yeti*, *Wong*, and *Baltodano* cases involved scheduling violations, such as

26  late-disclosed experts, expert reports served several years late, and untimely damages disclosures.

27  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1101 (9th Cir. 2001); *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005); *Baltodano v. Wal-Mart Stores, Inc.*, No.

28  2:10-cv-2062-JCM-RJJ, 2011 WL 3859724, at *4 (D. Nev. Aug. 31, 2011).

**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]**

1  XCA ('SmartRight')."  McCullough Ex. 6 ("Rubin Inv. Rep.") ¶ 57.  Dr. Rubin further states that

2  his opinion is that the SmartRight *system* renders the asserted '809 claims obvious based on the

3  system being publicly known, sold, and/or used prior to the '809 patent's priority date:

> The **SmartRight System**, also called Extended Conditional Access
> or XCA, was developed by Thomson Multimedia beginning at least
> as early as 1998, and was ***publicly demonstrated*** at least as early as
> January 8, 2002 by Micronas and Thompson Multimedia to at-
> tendees of the Consumer Electronics Show in Las Vegas, NV.  See
> Press Release, Micronas and Thomson Multimedia Showcase a New
> Copy Protection System That Will Drive the Future of Digital Tel-
> evision    (Jan.    8,    2002),    available    at    https://www.mi-
> cronas.com/de/node/1597.  The **SmartRight System** is prior art to
> the '809 patent because it was ***publicly known, used, and sold in***
> ***the United States*** before the earliest possible priority date for the
> '809 patent in July 2002, ***on sale or in public use*** in the United
> States more than one year before the earliest possible priority date,
> and/or ***made by another inventor*** in the United States before the
> earliest possible priority date and not abandoned, suppressed, or
> concealed.

14  *Id*. ¶ 441.  Dr. Rubin relies on various SmartRight-related publications as evidencing operation of

15  the system.  "The functionality of the SmartRight System is shown by at least the following (col-

16  lectively, the "SmartRight References")."  *Id*. ¶ 442.

17       Philips is thus incorrect that Dr. Rubin is asserting an obviousness theory based on a com-

18  bination of the SmartRight publications.  Philips points to various statements in Dr. Rubin's depo-

19  sition, taking these out of context to suggest that Dr. Rubin intends to present publication-based

20  obviousness opinions for SmartRight.  Motion at 11-12.  As Dr. Rubin states in his report, however,

21  any reliance on or reference to the various SmartRight References, independently or collectively,

22  is to corroborate the "functionality of the SmartRight *System*."  *Id*. ¶ 442.  Philips' challenge related

23  to a purported "combination" theory is therefore moot.

24       **B.       Dr. Rubin's SmartRight Opinions Are Supported by Reliable**
              **Methods.**

25

26       Philips argues next that Dr. Rubin's obviousness opinions regarding the SmartRight system

27  should be excluded because Dr. Rubin allegedly "did not cite any reliable evidence to show the

28  functionality of that purported system."  Motion at 13.  Although Philips acknowledges evidence

**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]**

1  showing that "some SmartRight system was used public[ly] in January 2002"—prior to the '809

2  patent's priority date—Philips alleges that Dr. Rubin had an insufficient basis to rely on the Smar-

3  tRight references as showing the system's functionality.  Philips is incorrect; Dr. Rubin's opinions

4  are reliable and should go to the jury.

5          **1.**      **Legal Standard**

6       Federal Rule of Evidence 702 provides that testimony of a qualified expert is admissible "if

7  (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable

8  principles and methods, and (3) the witness has applied the principles and methods reliably to the

9  facts of the case."  "The law of the regional circuit governs a district court's evaluation of expert

10  testimony in patent cases."  *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp.

11  3d 928, 938 (N.D. Cal. 2015).  The Ninth Circuit has instructed that "[s]haky but admissible evi-

12  dence is to be attacked by cross examination, contrary evidence, and attention to the burden of

13  proof, not exclusion."  *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), as amended (Apr. 27,

14  2010) (citation omitted).

15       Under the patent laws, a system that is publicly used or made before a claim's priority date

16  may invalidate the claim under 35 U.S.C. §§ 102 and 103.[7]  *E.g.*, *Bradley v. Applied Marine Sys.*

17  *LLC*, No. 13-CV-03941-JSC, 2014 WL 1648726, at *3 (N.D. Cal. Apr. 23, 2014) ("In general, a

18  person is not entitled to a patent for a new invention [under 35 U.S.C. § 102(a)] if the claimed

19  invention was in public use before the effective filing date of the claimed invention."); *Am. Seating*

20  *Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1267 (Fed. Cir. 2008) (an invention is in "public use" and

21  invalid under 35 U.S.C. 102(b) "if it is shown to or used by an individual other than the inventor

22  under no limitation, restriction, or obligation of confidentiality"); *Apotex USA, Inc. v. Merck & Co.*,

23  254 F.3d 1031, 1035 (Fed. Cir. 2001) ("if a patentee's invention has been made by another, prior

24  inventor who has not abandoned, suppressed, or concealed the invention, § 102(g) will invalidate

25  that patent"); 35 U.S.C. § 103 (patent "may not be obtained, notwithstanding that the claimed in-

26  vention is not identically disclosed as set forth in section 102, if the differences between the claimed

27

28       [7] The '809 patent is subject to the version of 35 U.S.C. § 102 in force prior to passage of
the America Invents Act.

---

[**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL**]

1    invention and the prior art are such that the claimed invention as a whole would have been obvious

2    …").  Public demonstration of a system qualifies as a "public use" of that system.  *E.g.*, *Eolas*

3    *Techs. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1334 (Fed. Cir. 2005) (demonstration qualified a

4    system as prior art under 35 U.S.C. 102(b)); *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-

5    LHK, 2012 WL 2571719, at *10 (N.D. Cal. June 30, 2012) (credible evidence of public demon-

6    stration can qualify a system as prior art under 35 USC §§ 102(a) or (b)).

7          Assessing the sufficiency of evidence with respect to public use is based on the totality of

8    the circumstances.  *Adenta GmbH v. OrthoArm, Inc.*, 501 F.3d 1364, 1372 (Fed. Cir. 2007).  Public

9    use of a system can be demonstrated by documents that predate and post-date the alleged use.  For

10    example, in *Adenta*, the Federal Circuit found that technical documents dated between 1992 and

11    1998, along with witness testimony, were sufficient to allow the jury to conclude that an invalidat-

12    ing system was demonstrated in 1994.  *Id.* at 1372.

13          **2.**       **Dr. Rubin's Opinion that the SmartRight System Was**
                             **Prior Art to the '809 Patent is Supported by Reliable**

14                             **Evidence**

15          Philips argues that Dr. Rubin has not shown the SmartRight system to be "prior art" to the

16    '809 patent.  Motion at 9.  Philips recognizes (*id.* at 13) that Dr. Rubin relies on evidence showing

17    that SmartRight was publicly demonstrated before the '809 patent's priority date.  However, Philips

18    argues that Dr. Rubin does not have a "[]sufficient basis to tie the SmartRight References to the

19    particular [SmartRight] system purportedly demonstrated" (*id.* at 13).  Thus, according to Philips,

20    Dr. Rubin does not have a basis to opine that the demonstrated version of the SmartRight system

21    included the functionality of the asserted '809 claims.  *Id.*  Philips is incorrect.

22          In his invalidity report, Dr. Rubin opined that the SmartRight system rendered the asserted

23    '809 patent claims obvious.  *See* McCullough Ex. 6, Rubin Inv. Rep. § V(D) ¶¶ ("SmartRight Ren-

24    ders the Asserted Claims Obvious").  Dr. Rubin based this opinion on evidence showing that "the

25    SmartRight™ copy protection and content management system" had been publicly demonstrated

26    by Thompson Multimedia and Micronas at the Consumer Electronics Show in Las Vegas on or

27    about January 8, 2002.  McCullough Ex. 7; McCullough Ex. 6, Rubin Inv. Rep. ¶ 441 (citing press

28    release as showing that SmartRight was "publicly demonstrated at least as early as January 8, 2002

[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]

1   by Micronas and Thompson Multimedia to attendees of the Consumer Electronics Show in Las

2   Vegas, NV").

3        Dr. Rubin identified a number of references that show "functionality of the SmartRight

4   system" generally.  McCullough Ex. 6, Rubin Inv. Rep. ¶ 442.  These included two papers published

5   shortly before and after the January 2002 demonstration date: a SmartRight paper dated October

6   19, 2001, which had been submitted to the Digital Video Broadcasting group in response to a Call

7   for Proposals ("DVB Paper") (McCullough Ex. 8); and the more summary White Paper, dated Jan-

8   uary 2003 (McCullough Ex. 9).  Dr. Rubin relied exclusively on the DVB Paper and White Paper

9   in his element-by-element analysis of the asserted '809 claims.  McCullough Ex. 6, Rubin Inv. Rep.

10  ¶¶ 444-499.  Despite being published nearly 15 months apart, these two papers contained substan-

11  tively identical disclosures of the aspects of SmartRight relevant to the asserted claims.  Dr. Rubin

12  cited to corresponding disclosure from each of the DVB Paper and White Paper in identifying the

13  SmartRight functionality that mapped to each claim limitation.  *E.g.*, *id.* ¶¶ 448 (citing DVB Paper

14  pp. 10, 19 and White Paper pp. 5, 6 as disclosing identical functionality that satisfied limitation

15  1.2.1), 450-452 (citing DVB Paper pp. 19, 32, 36 and Fig. 14 and White Paper pp. 6, 14, 16 and

16  Fig. 5 as disclosing identical functionality that satisfied limitation 1.2.2); *see generally id.* ¶¶ 444-

17  499.

18        The corresponding disclosures of the DVB Paper and White Paper are evidence that the

19  SmartRight system operated similarly, in all relevant aspects, in October 2001 and in January 2003.

20  Given these consistent data points, Dr. Rubin reasonably infers that the system operated similarly

21  *between* the dates of DVB Paper and White Paper, in January 2002 when it was demonstrated.  And

22  there can be no serious question that the DVB Paper and White Paper both relate to SmartRight.

23  As Dr. Rubin explained during his deposition, both references were published by the same com-

24  pany, Thomson Multimedia (*e.g.*, Dkt. No. 709-4 ("Rubin Tr.") at 134:4-12, 138:23-139-11,

25  140:13-20); included the same SmartRight trademark (*id.*); and discussed the same type of content

26  protection system (*id.*).  Documentary evidence such as this is properly used to demonstrate that a

27  system was publicly available as of particular date.  *E.g.*, *TransWeb, LLC v. 3M Innovative Props.*

28  *Co.*, 812 F.3d 1295, 1303 (Fed. Cir. 2016) (noting the superior value of "contemporaneous

**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]**

1   documentary evidence" and finding contemporaneous documents provided "abundant support" for

2   the proposition that a prior art compound was demonstrated at an expo); *Sandt Tech., Ltd. v. Resco*

3   *Metal & Plastics Corp.*, 264 F.3d 1344, 1350–51 (Fed. Cir. 2001) ("Documentary or physical evi-

4   dence that is made contemporaneously with the inventive process provides the most reliable proof"

5   of prior art status); *Mitsubishi Elec. Corp. v. Ampex Corp.*, 190 F.3d 1300, 1305 (Fed. Cir. 1999)

6   (documentary evidence alone can support a finding that the claimed invention was publicly used).

7         Philips complains that some of the SmartRight references Dr. Rubin lists are dated after the

8   '809 patent's priority date and do not specifically reference the demonstration.  Motion at 13.  As

9   an initial matter, although Dr. Rubin cites other SmartRight references for context and general cor-

10   roboration of the system, he relies on the DVB Paper and White Paper as evidencing operation of

11   the prior art system.  The DVB Paper's October 2001 publication date precedes the '809 patent, as

12   does the January 2002 demonstration date.  Additionally, a reference may be evidence of how a

13   prior art *product* operated during the relevant timeframe, even if the reference is dated after the

14   priority date.  For example, in the *Adenta* case, the jury had returned a verdict of invalidity based

15   on the public demonstration of a prior art system.  501 F.3d at 1371.  Similar to the situation here,

16   the patentee argued that the documents relied upon by the defendant did not "make clear" which

17   system was demonstrated and that there was insufficient evidence to show that the same "type" of

18   system described in the publications was publicly demonstrated.  *Id.* at 1371-1372.  The district

19   court upheld the verdict, and the Federal Circuit affirmed, finding that technical documents that

20   pre- and post-dated the demonstration provided "substantial evidence … to support the jury's ver-

21   dict" that an invalidating system had been publicly displayed before the critical date.  *Id.* at 1371.[8]

22   The White Paper, though published after the '809 patent's priority date, is proper corroboration of

23   SmartRight's operation during the relevant timeframe.

---

25        [8] Philips relies (Motion at 9) on *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d
431 (D. Del. 2004), but this case is inapposite.  In *Oxford Gene*, the expert attempted to rely on two

26   printed publications—not systems or corroborating documents—that postdated the patent in suit.
*Id.* at 440.  The court easily concluded that there was "no question" that the testimony about these

27   references should be excluded.  *Id.*  In contrast, here there is a disputed question of material fact
concerning whether the publicly demonstrated SmartRight system contained all the relevant fea-

28   tures.

---

**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]**

1    Philips also asserts that there is no "reason to believe" that SmartRight system development

2  "stood still in the years following the purported January 2002 use." Motion at 13; *id*. at 14 (arguing

3  that "different versions" of SmartRight "evolved between late 2001 and 2003").  To the contrary,

4  the DVB Paper and White Paper describe SmartRight as operating identically, in all aspects rele-

5  vant to the '809 claims, between October 2001 and January 2003.  The jury could infer from this

6  evidence that the relevant operation of SmartRight did not change meaningfully between those

7  dates.

8    The record contains sufficient evidence for a jury to conclude that the publicly demonstrated

9  SmartRight system invalidates the asserted claims of the '809 patent.  Dr. Rubin cites evidence

10  showing that the SmartRight system contained or rendered obvious each limitation in the '809 pa-

11  tent and was publicly demonstrated prior to the '809 patent's critical date.  He also cites documents

12  pre- and post-dating the demonstration to show that the demonstrated version of the system con-

13  tained all of the relevant features.  While Philips may quibble with Dr. Rubin's interpretation of the

14  evidence, this is a question of fact for the jury.

15  **IV.   CONCLUSION**

16    In light of the foregoing, Microsoft respectfully requests that Philips' Motion To Exclude

17  Certain Opinions In Dr. Rubin's Opening And Rebuttal Expert Reports Served On Behalf Of Mi-

18  crosoft Concerning U.S. Patent No. 9,436,809 be DENIED.

19

20

21

22

23

24

25

26

27

28

**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]**

DATED:  September 26, 2019


*/s/ Christina J. McCullough*
Christina J. McCullough, Bar No. 245944
CMcCullough@perkinscoie.com
Antoine McNamara, Bar No. 261980
CMcCullough@perkinscoie.com
Theresa H.  Nguyen, Bar No. 284581
RNguyen@perkinscoie.com
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000

Chad S. Campbell, Bar No. 258723
CCampbell@perkinscoie.com
PERKINS COIE LLP
2901 N.  Central Avenue, Suite 2000
Phoenix, AZ  85012-2788
Telephone: (602) 351-8000
Facsimile: (602) 648-7000

Patrick J. McKeever, Bar No. 268763
PMcKeever@perkinscoie.com
PERKINS COIE LLP
11452 El Camino Real, Suite 300
San Diego, CA 92130
Telephone: (858) 720-5700
Facsimile: (858) 720-5799

Tiffany P. Cunningham
TCunningham@perkinscoie.com
PERKINS COIE LLP
131 S.  Dearborn Street, Suite 1700
Chicago, IL 60603
Telephone: (312) 324-8400
Facsimile: (312)324-9400

Sarah E. Fowler, Bar No. 264838
SFowler@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304
Telephone: (650) 838-4300
Facsimile: (650) 838-4350

*Attorneys for Microsoft Corporation and Microsoft Mobile Inc.*

[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 26, 2019, a true and correct copy of the foregoing was served on all interested parties via electronic mail pursuant to Civil Local Rule 5-1(h).

*/s/ Christina McCullough*
Christina McCullough