Bruce Genderson *(pro hac vice)*
Kevin Hardy *(pro hac vice)*
Aaron Maurer *(pro hac vice)*
David Krinsky *(pro hac vice)*
Andrew Trask *(pro hac vice)*
Kyle Thomason *(pro hac vice)*
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
+1 (202) 434-5000
+1 (202) 434-5029 facsimile
viceroy@wc.com

Matthew S. Warren (Bar No. 230565)
Erika H. Warren (Bar No. 295570)
WARREN LEX LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
18-1885@cases.warrenlex.com

Michael J. Newton (Bar No. 156225)
Sang (Michael) Lee *(pro hac vice)*
Derek Neilson *(pro hac vice)*
ALSTON & BIRD LLP
2200 Ross Avenue, Suite 2300
Dallas, Texas, 75201
+1 (214) 922-3400
+1 (214) 922-3899 facsimile
asus-philips@alston.com

*Attorneys for Defendants ASUSTeK Computer Inc. and ASUS Computer International*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE KONINKLIJKE PHILIPS PATENT LITIGATION | ) Case No. 4:18-cv-1885-HSG-EDL<br>)<br>) JURY TRIAL DEMANDED<br>)<br>) **ASUS' OPPOSITION TO PHILIPS'**<br>) **MOTION TO EXCLUDE PORTIONS**<br>) **OF DR. BULTERMAN'S REBUTTAL**<br>) **EXPERT REPORT CONCERNING**<br>) **U.S. PATENT NO. 7,529,806**<br>)<br>) Date:   November 14, 2019<br>) Time:   2:00 p.m.<br>) Place:  Courtroom 2, 4th Floor (Oakland)<br>) Judge:  Hon. Haywood S. Gilliam, Jr. |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................1

    A. Philips' Allegations Regarding the '806 Patent and the Control Information File ..........1

    B. Philips' Initial Infringement Contentions Focus on the MPEG-DASH Standard ..........2

    C. Nineteen Months After Its Complaints, Philips Subpoenas Google, the Author of YouTube ..........2

    D. ASUS' Interrogatory Responses Warn of Philips' Insufficient Detail ..........3

    E. Philips' Source Code Review Reveals ▇▇▇; Philips Does Not Update Its Contentions ..........3

    F. Google's Corporate Witness on YouTube Testifies, and Philips Avoids Asking About ▇▇▇ ..........4

    G. Philips Amends Before This Court, and ASUS Updates Its Interrogatory Response ..........5

    H. Dr. Polish's Expert Report Provides Significant Details Not in Philips' Contentions, and Specifically Addresses ASUS' Arguments that the Protocol Buffer is not a "Control Information File," and that Philips Failed to Describe the "▇▇▇" Functionality ..........6

    I. ASUS' Expert, Dr. Dick Bulterman, Submits His Rebuttal Report ..........7

    J. Philips Serves Reply Report by Dr. Greenspun, but Not Dr. Polish ..........8

    K. Dr. Polish Confirms that Dr. Bulterman's Rebuttal Report Changed None of His Opinions ..........8

ARGUMENT ..........8

I. ASUS Timely Disclosed its Non-Infringement Theories; Philips Failed to Investigate Them ..........8

    A. ASUS Need Only Disclose Its Theories, Not Detail Them, in Interrogatory Responses ..........8

    B. ASUS More Than Adequately Disclosed Its Theories to Philips ..........10

III. Philips Cannot Articulate Any Prejudice ..........11

CONCLUSION ..........13

# TABLE OF AUTHORITIES

*Cases* — **Pages**

*Adobe Sys. Inc. v. Wowza Media Sys,*
  No. 11-2243, 2014 WL 709865 (N.D. Cal. Feb. 23, 2014) …11

*Apple, Inc. v. Samsung Elecs., Co., Ltd.,*
  No. 12-630, 2014 WL 173409 (N.D. Cal. Jan. 9, 2014)…8, 9

*Apple, Inc. v. Samsung Elecs., Co., Ltd.,*
  No. 11-1846, 2012 WL 3155574 (N.D. Cal. Aug. 2, 2012) …9

*Asia Vital Components Co. v. Asetek Danmark A/S,*
  377 F. Supp. 3d 990 (N.D. Cal. 2019) …9

*CBS Interactive, Inc. v. Etilize, Inc.,*
  257 F.R.D. 195 (N.D. Cal. 2009)…10

*Civolution B.V. v. Doremi Labs, Inc.,*
  No. 14-962, 2015 WL 11072167 (C.D. Cal. June 11, 2015) …10

*Genentech, Inc. v. Trs. of the Univ. of Pa.,*
  No. 10-2037, 2012 WL 424985 (N.D. Cal. Feb. 9, 2012)…11, 12

*Good Tech. Corp. v. MobileIron, Inc.,*
  No. 12-5826, 2015 WL 13426145 (N.D. Cal. July 1, 2015)…9

*Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.,*
  No. 95-673, 1996 WL 680243 (N.D. Ill. Nov. 21, 1996) …10

*Int'l Bus. Machines Corp. v. Fasco Indus., Inc,*
  No. 93-20326, 1995 WL 115421 (N.D. Cal. Mar. 15, 1995)…9, 10

*Lanard Toys Ltd. v. Novelty, Inc.,*
  375 F. App'x 705, 713 (9th Cir. 2010) …11

*MediaTek Inc. v. Freescale Semiconductor, Inc.,*
  No. 11-5341, 2014 WL 2854773 (N.D. Cal. June 20, 2014) …9

*Ojmar US, LLC v. Security People, Inc.,*
  No. 16-4948, 2018 WL 1640126 (N.D. Cal. Apr. 5, 2018) …11

*Verinata Health, Inc. v. Sequenom, Inc,*
 No. 12-865, 2014 WL 4100638 (N.D. Cal. Aug. 20, 2014) ……………………………….…....9

*Woods v. DeAngelo Marine Exhaust, Inc.,*
 692 F.3d 1272 (Fed. Cir. 2012) …………………………………………………………....…...9

**<u>STATUTES</u>**

Fed. R. Civ. P. 26(e)…………………………………………………………….…............. 11

Fed. R. Civ. P. 37  ………………………………………………………………………….11

# INTRODUCTION

If nothing else, this motion should provide the Court a respite from the all-too-common disputes in patent litigation over whether a party failed to disclose an argument. Philips cannot make that claim here, because ASUS indisputably *did* disclose the challenged arguments to Philips before the parties exchanged expert reports—as Philips must admit, because its expert specifically addressed both arguments in his opening report. Foreclosed by the facts from claiming that ASUS failed to disclose these arguments, but unwilling to address their merits, Philips is reduced to alleging that ASUS failed to disclose them *in sufficient detail*. As Philips' own cases show, however, expert reports are always more detailed than prior contentions or discovery responses—and if ASUS' discovery disclosure was insufficient, so too were Philips' final infringement contentions, which contained the same level of detail. Finally, Philips could not have suffered any prejudice from ASUS' rebuttal report, because Philips' expert testified at his deposition that the rebuttal report *did not change any of his opinions*, obviating any need for a reply report regarding the '806 patent, and explaining why Philips did not serve one even though it did (without leave) for another technical expert. In short, Philips knew of ASUS' arguments before expert discovery; its expert responded to those arguments in his opening report and admitted after reviewing Dr. Bulterman's rebuttal report that he had nothing more to say; and Philips declined to serve a reply report despite having another expert do so. Under these circumstances, there is no reason to deny ASUS the right to make its arguments to the jury, and the Court should not do so.

# BACKGROUND

A.   **Philips' Allegations Regarding the '806 Patent and the Control Information File**

Philips asserts claims 1 and 12 of its U.S. Patent No. 7,529,806 concerning a client-side system for playback of a media presentation. Central to these claims is the "control information file," which the parties' experts agree must include information to identify alternative files for a given segment of the media presentation. Ex. 1 at 119-128; Ex. 2 at 147:15 to 148:16.[1] The parties' experts further agree that the device must download and parse the control information file before proceeding to "based on parsing of the control information file . . . identifying multiple alternative [files] corresponding to a given segment

---

[1] Unless otherwise noted, all exhibit citations are to exhibits of the concurrently filed Declaration of Erika H. Warren in Support of ASUS' Opposition to Philips' Motion to Exclude Portions of Dr. Bulterman's Rebuttal Expert Report Concerning U.S. Patent No. 7,529,806 ("Warren Decl.").

– 1 –        Case No. 4:18-cv-1885-HSG-EDL

ASUS' OPPOSITION TO PHILIPS' MOTION TO EXCLUDE THEORIES OF DR. BULTERMAN

of the media presentation, determining which files of the multiple alternative files to retrieve based on system restraints; [and] retrieving the determined file of the multiple alternative files to begin a media presentation . . . " Ex. 3; *see* Ex. 1 at 126; Ex. 2 at 242:17 to 243:22.  The parties and their experts thus agree on three aspects of the control information file, although they disagree on many other things:

- The device must download the control information file;
- The control information file must include the information the client needs to identify alternative files corresponding to at least one segment of the media presentation; and
- The device must parse the control information file and, based on that parsing, proceed to identify alternative files corresponding to at least one segment of the media presentation, determine which to download, and use that download to to begin a media presentation.

*See supra*.  Without a control information file along these lines, the parties agree, a device cannot infringe of Claims 1 or 12 of the '806 patent.  Ex. 1 at 126; Ex. 2 at 242:17 to 243:22.

**B.     Philips' Initial Infringement Contentions Focus on the MPEG-DASH Standard**

Philips filed these cases in December 2015, accusing eight defendant groups of infringing various patents.  *Koninklijke Philips N.V. matters*, Docket Nos. 15-1125 through 15-1127, 15-1130, 15-1131 and 15-1170 (D. Del.).  On August 26, 2016, Philips served its initial infringement contentions in these matters.  Ex. 4.  Against the '806 patent, its contentions focused almost entirely on alleged compliance with the (allegedly infringing) MPEG-DASH standard.  *Id.*  Philips mentioned YouTube only twice in these contentions, in two identical sentences stating in full:  "Further, the '806 DASH Accused Products that are pre-loaded with the Android YouTube application and/or the Android Chrome Browser application are believed to additionally support MPEG-DASH through these applications." *Id.* at 3, 18.

On December 9, 2016, Philips served amended infringement contentions—its first of many amendments.  Ex. 5.  Against the '806 patent, it added allegations regarding HLS, another allegedly infringing media standard, but did not expand or even modify its allegations regarding YouTube.  *Id.*

**C.     Nineteen Months After Its Complaints, Philips Subpoenas Google, the Author of YouTube**

On July 25 and October 17, 2017, Philips subpoenaed non-party Google LLC, seeking documents including all source code for accused devices and functionalities.  Mot. Ex. 4 and Docket No. 275. Google commenced its source-code production on October 25, 2017, and supplemented its production on February 15, 2018; the latter production included complete code for "eight versions of YouTube for

Android" as well as significant other source code Philips accused of infringing the '806 and other patents. Exs. 6, 7. With one exception, Philips accepted Google's YouTube source-code production as sufficient. The exception is significant to this motion: on March 22, 2018, Philips wrote that "For the produced YouTube code, the ███████████████████████████ have not been produced. Please produce these immediately." Ex. 8. On April 20, 2018, Google responded that these files "compile from a tree different from the YouTube application, so Google's initial search did not reveal them. In response to your request, Google will collect and produce them." Ex. 9. It did so on May 24, 2018. Ex. 10.

### D. ASUS' Interrogatory Responses Warn of Philips' Insufficient Detail

While Philips reviewed Google's source code, on September 29, 2017, it again supplemented its infringement contentions. Ex. 11. This time, Philips promised to "supplement these contentions in a timely manner once Google complies with its subpoena obligations," but otherwise repeated only its then-current "understanding that YouTube uses MPEG-DASH technology." *Id.* at 7. In response, on November 3, 2017, ASUS supplemented its response to Philips' Interrogatory No. 4. As relevant here, ASUS stated:

> Philips appears to accuse Google applications of infringing one or more claims of the '806 patent—for example, it refers to the "Android YouTube application and/or the Google Play Movies & TV application"—but it does so without analysis of the applications it purports to accuse of infringement, much less any citation to any Google source code. Such "contentions" are deficient under the applicable rules. If Philips intends to accuse such applications of infringement, we expect it will promptly supplement its contentions with citations to source code and other evidence of how the accused applications operate, and we will supplement in response as appropriate.

Ex. 12 at 83. Philips again supplemented its infringement contentions on February 2, 2018, but did not update its discussion of YouTube.

### E. Philips' Source Code Review Reveals ████ ; Philips Does Not Update Its Contentions

On June 14, 2018, under the protective order governing confidentiality in these actions, Google sent Philips source code bearing Bates numbers Google-Source Code-000001362 through Google-Source Code-000001521—a transmittal that included the last YouTube source code Philips requested. Part of this production specifically mentioned ████ , and specifically stated that it was "████████████████████████████████████":



Google-Source-Code-000001479 at lines 709-715.  Thus, Google produced complete code for the eight versions of the YouTube application no later than February 15, 2018; that production included source code showing ▮▮▮, and Philips reviewed that code and printed at least some of it no later than June 7, 2018, and received it a week later.  Still, Philips did not honor its promise to "supplement these contentions in a timely manner once Google complie[d] with its subpoena obligations," *see supra*; instead it did nothing with this information for more than four months.

**F.     Google's Corporate Witness on YouTube Testifies, and Philips Avoids Asking About ▮▮▮**

On November 28, 2018, Philips took the deposition of Matt Doucleff, Google's designee regarding YouTube.  Immediately prior to the deposition, following Mr. Doucleff's decision to review a document regarding ▮▮▮ as part of his preparation, Google produced that document to Philips.[2]  Despite receiving this document only shortly before the deposition, Philips seemed reluctant to broach the topic:

> Q.     Sure.  To kind of summarize the question, it was:  What is the relevance of ▮▮▮ to what we're here to discuss today?  Because I looked through this document, and I did not

---

[2] Philips states that "Counsel for Google and ASUS provided no explanation for why Google produced this single ▮▮▮ document well over a year after receiving the subpoena asking for technical documents describing the operation of YouTube and within a few hours of the YouTube deposition." Mot. at 7 n.7.  This statement is incorrect on several levels.  First, Mr. Doucleff himself provided an explanation of why Google produced the document:  he reviewed it in preparation for his deposition.  *See* Ex. 13 at 105:20-23.  Because Mr. Doucleff (a corporate designee for Google) chose to review this document in preparation for his deposition, counsel produced it even though Google had no other obligation to do so.  Presumably Philips agrees that this decision was appropriate.

Philips' statement is incorrect for another reason as well.  Philips claims that Google received "a subpoena asking for technical documents describing the operation of YouTube." Mot. at 7 n.7.  Not so.  Philips' first subpoena, served on July 25, 2017, sought "Source code for a representative version of the YouTube Android application"—and Google provided eight versions in response.  Mot. Ex. 4 at 21.  It also sought "All documents related to the design, development, implementation, testing, and support for HLS media streaming technology, MPEG-DASH media streaming technology, or adaptive bit-rate streaming technology in the YouTube Android Application"—but, on August 8, 2017, Google objected to this request on grounds including overbreadth, and declined to provide any documents.  Ex. 14.  Philips never objected to this objection, never followed up on it, and never mentioned it again.  Having thoroughly waived any right to demand documents responsive to this request, Philips cannot now complain that Google failed to produce them.

understand why it would be relevant.

A.  For certain app versions, certain configurations, ▇ is a part of the video playback initialization.

Ex. 13 at 106:21-107:3. Mr. Doucleff further testified that, under ▇, "some of the logic is moved from the application to the server," *id.* at 109:12-13, and that "Multiple functions are being moved." *Id.* at 109:22. Despite the evident import of this change, as the '806 patent requires all functions to occur on the device and not on the server, Philips' counsel asked only a few desultory additional questions, and then concluded the deposition less than ten minutes after first asking about ▇, although Philips had several hours of deposition time remaining in the day. Ex. 13.

G.  **Philips Amends Before This Court, and ASUS Updates Its Interrogatory Response**

On November 4, 2018, Philips moved this Court for leave to amend its infringement contentions regarding (among other things) the '806 patent. Docket No. 542. Philips sought "leave to update its ICs in light of late produced source code, documents, and deposition testimony from Google related to the inner workings of the YouTube" application. *Id.* at 16:11-16. Defendants opposed this portion of Philips' motion, on the grounds that Philips took too long to seek leave after receiving the source code from Google. *See* Docket No. 559 at 20-23. On February 15, 2019, the Court granted Philips' motion on this point. Docket No. 627. Following this order, for the first time Philips' contentions against YouTube did not rely on conformance with the MPEG-DASH standard; instead, Philips claimed that the "YouTube application . . . support[s] an adaptive media streaming technology similar to MPEG-DASH." Ex. 15 at 7. Regarding the control information file, Philips alleged that:



Ex. 16 at 5. Philips thus claimed that ▇ is the "control information file" required by the claims, and that it contained the information necessary to the control information file. Philips provided almost no detail to back up this claim, however, limiting itself to:

[REDACTED]

*Id*. at 6. Tellingly, Philips did not cite any source code pages to support this claim. *Id*. Six weeks after the Court's Order, on March 27, 2019, ASUS supplemented for the last time its response to Interrogatory No. 4, including the following language addressing Philips' allegations above:

> The accused devices do not practice element [1b] because they do not have a "control information file." The implementations within the YouTube and Google Play Movies & TV applications are both entirely different from this element, including that there is no "control information file."
>
> . . . .
>
> For certain accused YouTube devices, Philips alleges that [REDACTED] " Philips fails to show where and how this process is initiated by [REDACTED] Philips fails to show how [REDACTED]. Even Philips' own cited documentation (https://developers.google.com/protocolbuffers/-docs/overview) admits that this is insufficient to identify an object that actually contains the alleged "control information file." Philips further fails to show how or even if [REDACTED] is called or used by the accused devices. Philips fails to explain why it chose [REDACTED]. In addition, Philips' source-code contentions do not correctly describe the functionality of the YouTube application, at least by failing to include [REDACTED] of YouTube.

Ex. 17 at 110-111. Philips neither sought further supplementation of this interrogatory response, nor complained about it to ASUS, nor reacted in any way.

**H. Dr. Polish's Expert Report Provides Significant Details Not in Philips' Contentions, and Specifically Addresses ASUS' Arguments that the Protocol Buffer is not a "Control Information File," and that Philips Failed to Describe the "[REDACTED]" Functionality**

On April 25, 2019, Philips' expert Nathaniel Polish served his opening report regarding infringement of the '806 patent. Ex. 18. As is normal, Dr. Polish's report provided far more detail than was set forth in Philips' infringement contentions. For example, Dr. Polish's report mentioned [REDACTED], which Philips alleges is the "control information file" required by the claims, forty times across dozens of pages, delving in detail into its asserted structure and functionality. *Id*. Furthermore, and tellingly, Dr. Polish's report included two sections specifically intended to rebut the arguments at issue in this motion: Section XI.B.ii, rebutting the argument that "The Protocol Buffer is not

a 'Control Information File,'" and Section XI.B.vi, arguing against any claim of "Failure to Include the ▮▮▮▮ Functionality of YouTube." *Id.* at 144-151.

### I.     ASUS' Expert, Dr. Dick Bulterman, Submits His Rebuttal Report

On June 20, 2019, as required by the scheduling order, ASUS served the Rebuttal Report of Dr. Dick Bulterman.[3] Dr. Bulterman responded to Dr. Polish's opinions and his analysis of the Google source code, sometimes disagreeing with them. As relevant here, Dr. Bulterman explained that ▮▮▮ ▮▮▮▮▮▮▮▮▮ cannot be the "control information file" of the '806 patent because (among many other reasons) its contents, "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Ex. 19 at 114.  As Dr. Bulterman also noted, Dr. Polish "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *Id.*  As a result, Dr. Bulterman concluded, ▮▮▮▮▮▮▮▮▮▮ cannot be the "control information file" because it does not include the information the client needs to identify alternative files corresponding to at least one segment of the media presentation.  *See supra* § A.

Dr. Bulterman also explained that YouTube applications using ▮▮▮▮▮▮▮▮ cannot infringe because (among many other reasons) the server, and not the client, decides how to begin the media presentation:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Ex. 19 at 150.

---

[3] Philips notes that ASUS served this report on the day it was due, and not before—the same date on which all parties including Philips served their rebuttal reports. Mot. at 13. Philips attempts to imply some wrongdoing by ASUS in meeting the deadline rather than beating it; one cannot take this allegation seriously if one has any understanding of deadlines, or litigation, or human beings.

### J. Philips Serves Reply Report by Dr. Greenspun, but Not Dr. Polish

On July 3, 2019, Philips sent letters to ASUS, HTC, and Microsoft, demanding an opportunity to respond to allegedly "new theories" in various rebuttal expert reports. *See* Mot. Ex. 8. Regarding Dr. Bulterman, Philips took issue with what it called "wholly new descriptions" of various YouTube functionalities. *Id.* at 3-4. On July 10, 2019, ASUS responded to Philips, noting that it had timely responded to Interrogatory No. 4, and "Philips did not move to compel any further details on any of ASUS' responses, even where we stated that Philips' understanding of the accused products was simply incorrect." Mot. Ex. 9. On July 15, Philips improperly and without leave of Court served what it called the Supplemental Expert Report of Dr. Greenspun. Philips served no such report on Dr. Polish's behalf, and did not explain why it declined to do so.

### K. Dr. Polish Confirms that Dr. Bulterman's Rebuttal Report Changed None of His Opinions

On July 19, during Dr. Polish's deposition, he explained why he did not submit a reply report: he had nothing further to add to his opening report, because Dr. Bulterman's rebuttal report did not change his infringement opinions. He testified as follows:

> Q. Let me hand you Exhibit 28.
> A. Okay.
> Q. Which is Dr. Bulterman's rebuttal report. First question to you is, have you reviewed this report?
> A. Yes, I have.
> **Q. Does anything about your opinion regarding infringement change based on Dr. Bulterman's rebuttal report?**
> A. No.

Ex. 2 at 312:16 to 313:5 (emphasis added). Dr. Polish thus admitted that Dr. Bulterman's technical analysis either contained nothing new, or was so inconsequential as to change nothing about his opinions.

## ARGUMENT

### I. ASUS Timely Disclosed its Non-Infringement Theories; Philips Failed to Investigate Them

#### A. ASUS Need Only Disclose Its Theories, Not Detail Them, in Interrogatory Responses

Philips chastises ASUS for insufficient specificity, but does not explain the standard by which the Court should consider whether ASUS' responses were sufficiently specific. And for good reason: in this District, the Court need only determine whether Dr. Bulterman "permissibly specified the application of a disclosed theory, or . . . impermissibly substituted a new theory altogether." *Apple Inc. v. Samsung Elecs.*

*Co. Ltd.*, No. 12-630, 2014 WL 173409 at *1 (N.D. Cal. Jan. 9, 2014); *see, e.g., Verinata Health, Inc. v. Sequenom, Inc.*, No. 12-865, 2014 WL 4100638 at *6 (N.D. Cal. Aug. 20, 2014) (declining to strike expert report where the report "merely provid[ed] more detail as to how the prior art teaches the limitations contained in claim 1(c) of the '415 patent rather than providing a new theory of invalidity"). The simple fact that an "expert report offers greater detail on this theory is unsurprising, and certainly not cause to strike it." *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-5341, 2014 WL 2854773 at *1 (N.D. Cal. June 20, 2014).

      Philips points to no authority requiring a party to support a written interrogatory response with underlying evidence or reasoning, and the cases say the opposite: "Contentions need not disclose specific evidence, whereas expert reports must include a complete statement of the expert's opinions, the basis and reasons for them, and any data or other information considered when forming them." *Good Tech. Corp. v. MobileIron, Inc.*, No. 12-05826, 2015 WL 13426145 at *1 (N.D. Cal. July 1, 2015) (internal quotation marks omitted) (quoting *Apple*, 2014 WL 173409 at *1). Instead, Philips relies on cases in which a party refused to provide any written disclosure of a theory, instead pointing to documents under Federal Rule of Civil Procedure 33(d) or other discovery—not the case here. In *Woods v. DeAngelo Marine Exhaust, Inc.*, the court held that an email explaining why drawings anticipated an invention could not stand in place of a written response because "the drawings themselves were not prior art." 692 F.3d 1272, 1282-83 (Fed. Cir. 2012). In *Asia Vital Components Co. v. Asetek Danmark A/S*, the court held that merely producing "an example of the accused product plainly does not substitute for answering a contention interrogatory." 377 F. Supp. 3d 990, 1004 (N.D. Cal. 2019). Likewise, in *Apple, Inc. v. Samsung Elecs. Co. Ltd.*, considering competing motions to strike on nineteen experts, the court granted motions on opinions relying on brand new theories or evidence (such as new prior art references), but denied those motions where an expert *explained* the technical basis for theories that were was even summarily disclosed during discovery. No. 11-1846, 2012 WL 3155574 at *2 (N.D. Cal. Aug. 2, 2012). ("Judge Grewal did not clearly err in finding that Samsung's disclosure of prior art references, witnesses, and documents in discovery was not sufficient to 'make known' to Apple, Samsung's theories of invalidity and infringement.")[4]

---

[4] None of Philips' other cited references inform the Court's consideration of this motion. In *Int'l Bus. Machines Corp. v. Fasco Indus., Inc*, the court considered a motion to exclude previously

These cases do not apply here, where Philips contends that ASUS had a duty to explain its analysis of non-party source code to Philips in advance of expert discovery, even over its timely objection on the grounds that Philips' interrogatory improperly sought expert testimony. Had Philips been truly uncertain of the meaning of ASUS' theories, it could and should have moved to compel. *See Civolution B.V. v. Doremi Labs, Inc.*, No. 14-962, 2015 WL 11072167 at *2 (C.D. Cal. June 11, 2015) (denying a motion to strike based on allegedly inadequate contention interrogatories, noting that "had such arguments been raised in the context of a timely motion to compel pursuant to Local Rule 37, Defendant could have prevailed and received an order requiring earlier disclosure.") Because Philips did not challenge ASUS' responses through a motion to compel, it cannot be heard now, after the close of discovery, to protest them. Were it otherwise, Philips could reverse the burdens in the case. Philips bears the burden of proof on infringement; ASUS does not bear the burden of proving non-infringement, and ASUS' disclosure met any requirement ASUS had to respond.

**B.     ASUS More Than Adequately Disclosed Its Theories to Philips**

ASUS timely disclosed information sufficient to identify its non-infringement theories during discovery. Philips failed to investigate its own claims of infringement, and is now disappointed that the accused products do not operate in the way it hoped. Seeking to avoid this result, Philips attempts to recast ASUS' non-infringement theories—inherently negative in nature—as positive assertions. Philips dubs part of Dr. Bulterman's YouTube analysis a "███████," but there is no "███████" of non-infringement, because the patent does not concern and Philips evidently does not accuse "███." YouTube's ███ functionality is instead *evidence* in support of ASUS' non-infringement positions that the accused YouTube devices do not have a "control information file," do not "identify multiple

---

undisclosed *witnesses* from testifying at trial. No. 93-20326, 1995 WL 115421 at *1 (N.D. Cal. Mar. 15, 1995). While the court found Fasco violated the scheduling order, it nevertheless permitted presentation of two out of the four witnesses, holding that exclusion would be "draconian." *Id*. at *4. In *CBS Interactive, Inc. v. Etilize, Inc.*, the court denied the defendant's motion for leave to amend its contentions to add previously undisclosed prior art references, noting that the defendant had "failed to comply with the Patent Local Rules on numerous occasions," but also denied the plaintiff's motion to strike them, even where prior art systems were not produced in discovery. 257 F.R.D. 195, 204 (N.D. Cal. 2009). In *Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.*, the Northern District of Illinois excluded a "best mode" defense that was not disclosed during discovery, finding that the plaintiff had been unable to seek discovery on whether the inventors had indeed concealed a better mode of performing the claimed invention, which information "controls the outcome of this issue." No. 95-673, 1996 WL 680243 at *9 (N.D. Ill. Nov. 21, 1996).

– 10 –      Case No. 4:18-cv-1885-HSG-EDL
ASUS' OPPOSITION TO PHILIPS' MOTION TO EXCLUDE THEORIES OF DR. BULTERMAN

alternative files corresponding to a given segment of the media presentation," and do not require "determining which files of the multiple alternative files to retrieve based on system restraints." Ex. 17. As set forth above, ASUS disclosed each of these theories in its contention interrogatory responses, and did so at a level of detail equivalent to Philips' disclosure in its infringement contentions. *See supra* § G.

Similarly, Philips argues that Dr. Bulterman "included a never-before-disclosed description regarding how YouTube allegedly uses a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓." Mot. at 9. Again, Philips mistakes evidence for theory. In its Fourth Amended Contentions, Philips accused YouTube of infringing its '806 patent based on its view that a "▓▓▓▓▓▓▓▓▓▓" is a "control information file." ASUS' response was simple: no, it isn't. ASUS' non-infringement contentions repeatedly aver that YouTube lacks any "control information file," and thus cannot infringe the '806 patent. Ex. 17. The only "control information file" Philips accused in YouTube is the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Thus ASUS' contentions noted that ▓▓▓▓▓▓▓▓▓▓▓▓ could not be a control information file, as Philips and its expert fully understood, because they responded to this argument in Philips' expert report. *See supra* § H.

### III. Philips Cannot Articulate Any Prejudice

This District's Patent Local Rules do not require disclosure of non-infringement contentions. Philips' Motion concerns only ASUS' alleged failure to timely supplement its interrogatory responses under Fed. R. Civ. P. 26(e). The remedy Philips seeks—preclusion of evidence—would thus only be appropriate as a discovery sanction under Fed. R. Civ. P. 37, under which a lack of prejudice caused by allegedly tardy evidence—and the moving party's "ability . . . to cure [any] prejudice"—bars a remedy of preclusion. *See Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010); *Ojmar US, LLC v. Security People, Inc.*, No. 16-4948, 2018 WL 1640126 at *8-9 (N.D. Cal. Apr. 5, 2018).

There was no prejudice here. Philips' primary argument is that "This Court has recognized that 'prejudice is inherent in the assertion of a new theory after discovery has closed.'" Mot. at 14 (quoting *Adobe Sys. Inc. v. Wowza Media Sys.*, No. 11-2243, 2014 WL 709865 at *15 n.7 (N.D. Cal. Feb. 23, 2014)). As an initial matter, Philips mischaracterizes *Wowza*, which notes that "[s]ome courts in this district require a showing of prejudice as a condition to striking an expert report that discloses new theories in a patent case," and then declines to follow those cases. *Id.* (citing *Genentech, Inc. v. Tr. of the*

*Univ. of Pa*, No. 10-2037, 2012 WL 424985 at *3 (N.D. Cal. Feb. 9, 2012). But this Court need not decide whether *Wowza* or *Genentech* is correct, because Philips' own motion admits that ASUS disclosed Dr. Bulterman's theories, as it must, since its own expert responded to them. *See supra* § H. Indeed, throughout its motion Philips complains that ASUS did not include sufficient "details" or "technical details," *see, e.g.*, Mot. at 8 & n.8, not that Dr. Bulterman presented wholly new theories.

      Next, Philips states that, "If Philips knew that server-side functionality would be relevant to ASUS' non-infringement positions, it could have taken relevant discovery from Google." Mot. at 15:5-7. As this statement admits, however, Philips never asked for this discovery—and ASUS told Philips that "server-side functionality would be relevant to ASUS' non-infringement positions" in *June 2017*, in its first amended response to Interrogatory No. 4, which stated that the accused product—back then, Philips had charted only one—"does not require that a media presentation be stored as 'multiple related files' on 'one or more server computers within a computer network,' because media can be stored on a server in any number of ways (e.g., as a portion of a file, within a database) or can be generated by a server on-demand (e.g., from media stored in a different format) in response to a client request." Ex. 20 at 36-37. Despite this and many similar statements in ASUS' various responses to Interrogatory No. 4, Philips never asked Google for server-side code when it served its two subpoenas in July and October 2017. Nor did Philips seek server-side code after Mr. Doucleff testified that, ███████, "████████████████████████████████," Ex. 13 at 109:12-13, and that "████████████████████████████████." *Id.* at 109:22. To the contrary, Philips' counsel was noticeably reluctant to ask Mr. Doucleff about ███ at all, and quickly ended the deposition after Mr. Doucleff started to explain how ███ altered YouTube's functionality. *Id.* at 105:15 to 110:14. Indeed, this colloquy and Philips' abrupt termination of Mr. Doucleff's deposition brings to mind Upton Sinclair's maxim that "it is difficult to get a man to understand something, when his salary depends on his not understanding it." Whether intentional or not, however, if Philips has suffered any harm from its failure to seek server-side discovery, its wounds are self-inflicted.

      Finally, Philips argues that its expert, "Dr. Polish, was denied the opportunity to consider and respond" to Dr. Bulterman's points. Mot. at 15. Again, however, any prejudice from this denial came not from ASUS, but from Philips, which filed an unauthorized supplemental report for a different expert (Dr.

Greenspun), but declined to do so for Dr. Polish.  But Dr. Polish himself confirmed that no prejudice could exist, since he testified that Dr. Bulterman's rebuttal report did not change any of his opinions:

> Q. Let me hand you Exhibit 28.
> A. Okay.
> Q. Which is Dr. Bulterman's rebuttal report.  First question to you is, have you reviewed this report?
> A. Yes, I have.
> **Q. Does anything about your opinion regarding infringement change based on Dr. Bulterman's rebuttal report?**
> A. No.

Ex. 2 at 312:16 to 313:5.  If Dr. Polish agrees that he suffered no prejudice, Philips cannot change his answer for him.[5]

## CONCLUSION

For all the foregoing reasons, the Court should deny Philips' motion and allow Dr. Bulterman to present his opinions to the jury.

Date:  September 26, 2019

Respectfully submitted,

_____
Matthew S. Warren
Erika H. Warren
WARREN LEX LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
18-1885@cases.warrenlex.com

Bruce Genderson *(pro hac vice)*
Kevin Hardy *(pro hac vice)*
Aaron Maurer *(pro hac vice)*
David Krinsky *(pro hac vice)*
Andrew Trask *(pro hac vice)*
Kyle Thomason *(pro hac vice)*
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C., 20005
+1 (202) 434-5000
+1 (202) 434-5029 facsimile
viceroy@wc.com

---

[5] In a footnote, Philips also purports to seek exclusion of fact witness testimony taken during discovery in this matter.  Mot. at 4 n.5.  Philips provides no basis in fact or law for the Court to exclude any testimony whatsoever, not least testimony provided in response to Philips' own questioning, and none exists.  The Court can and should disregard Philips' footnote *in limine*.  Case No. 4:18-cv-1885-HSG-EDL

ASUS' OPPOSITION TO PHILIPS' MOTION TO EXCLUDE THEORIES OF DR. BULTERMAN

| | |
|---|---|
| 1 | Michael J. Newton (Bar No. 156225) |
| 2 | Sang (Michael) Lee  *(pro hac vice)* |
|   | Derek Neilson (*pro hac vice*) |
| 3 | ALSTON & BIRD LLP |
|   | 2200 Ross Avenue, Suite 2300 |
| 4 | Dallas, Texas, 75201 |
|   | +1 (214) 922-3400 |
| 5 | +1 (214) 922-3899 facsimile |
| 6 | asus-philips@alston.com |
| 7 | *Attorneys for Defendants ASUSTeK Computer Inc. and ASUS Computer International* |