Bruce Genderson (pro hac vice)
Kevin Hardy (pro hac vice)
Aaron Maurer (pro hac vice)
David Krinsky (pro hac vice)
Andrew Trask (pro hac vice)
Kyle Thomason (pro hac vice)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C., 20005
+1 (202) 434-5000
+1 (202) 434-5029 facsimile
viceroy@wc.com

Matthew S. Warren
Erika H. Warren
WARREN LEX LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
18-1885@cases.warrenlex.com

Michael J. Newton (Bar No. 156225)
Sang (Michael) Lee  (pro hac vice)
Derek Neilson (pro hac vice)
ALSTON & BIRD LLP
2200 Ross Avenue, Suite 2300
Dallas, Texas, 75201
+1 (214) 922-3400
+1 (214) 922-3899 facsimile
asus-philips@alston.com

Attorneys for Defendants ASUSTeK Computer Inc. and ASUS Computer International

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

|  |  |
|---|---|
| IN RE KONINKLIJKE PHILIPS PATENT LITIGATION | ) Case No. 4:18-cv-1885-HSG-EDL<br>)<br>) JURY TRIAL DEMANDED<br>)<br>) **ASUS' OPPOSITION TO PHILIPS'**<br>) **MOTION FOR PARTIAL SUMMARY**<br>) **JUDGMENT ON CERTAIN AFFIRMATIVE**<br>) **DEFENSES**<br>)<br>) Date:        November 14, 2019<br>) Time:        2:00 p.m.<br>) Place:       Courtroom 2, 4th Floor (Oakland)<br>) Judge:      Hon. Haywood S. Gilliam, Jr. |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**TABLE OF CONTENTS**

INTRODUCTION …………………………………………………………………………1

ARGUMENT …………………………………………………………………………………1

I.    I.P.R. Estoppel Covers Only Grounds Raised in the Petition and Decided by the P.T.A.B. ………1

    A.    I.P.R. Estoppel Under 35 U.S.C. § 315(e)(2) Covers Only Grounds That a Petitioner "Raised or Reasonably Could Have Raised During That *Inter Partes* Review," Making Its Scope Depend on the Definition of "During" in the Statute ……………......1

    B.    The Court of Appeals Considered and Resolved this Question in ASUS' Favor, Finding that "During Inter Partes Review" Means After the Board Institutes a Petition, and Thus That I.P.R. Estoppel Includes Only Grounds in a Petition ………………………………....2

    C.    This District Follows *Shaw* and Applies Its Scope of I.P.R. Estoppel ………………….3

    D.    Philips Cannot Overcome *Shaw* and This District's Application of It ………………...….3

    E.    I.P.R. Estoppel Bars None of ASUS' Invalidity Arguments Before This Court …………..4

II.    I.P.R. Estoppel Does Not Bar ASUS' Invalidity Arguments Even Under Philips' Standard ……....5

    A.    At Minimum, There is a Genuine Issue of Material Fact Regarding the Differences Between SMIL Specifications and ASUS' Current System Art Invalidating the '806 Patent, Precluding Summary Judgment on This Ground …………………………………5

    B.    ASUS Can Present Its Chosen RE'913 Obviousness Combinations to the Jury …………..7

III.    This Court Has Already Ruled as a Matter of Law That the RE'564 Patent is Not a Broadening Reissue Under 35 U.S.C. § 251, Leaving No Issue to Resolve on Summary Judgment ……………………………………………………….………………8

IV.    Summary Judgment of No Inequitable Conduct is Inappropriate …………………………………9

V.    ASUS Will Not Present a License Defense Based on Agreements Between Philips and DCP …………………………………………………………………...……………12

VI.    ASUS Will Not Present a License Defense Based on Philips' Licensing Obligations as a Member of W3C's Synchronized Multimedia ("SYMM") Working Group………………… 12

VII.    Summary Judgment of No Intervening Rights is Inappropriate …………………………………12

CONCLUSION ...………………………………………………………………………………13

# TABLE OF AUTHORITIES

*Cases*                                                                                           **Pages**

*Advanced Micro Devices, Inc. v. LG Elecs., Inc.,*
  No. 14-1012, 2017 WL 2774339 (N.D. Cal. June 26, 2017)...………………………………..3

*American Calcar, Inc. v. American Honda Motor Co., Inc.,*
  768 F.3d 1185 (Fed. Cir. 2014) ……………………………………………………………11

*Aventis Pharma S.A. v. Hospira Inc.,*
  675 F.3d 1324 (Fed. Cir. 2012)     ……………………………….………………………...11

*Biscotti Inc. v. Microsoft Corp.,*
  No. 13-1015, 2017 WL 2526231 (E.D. Tex. May 11, 2017)…………………………....…  8

*Clearlamp, LLC v. LKQ Corp.,*
  No. 12-2533, 2016 WL 4734389 (N.D. Ill. Mar. 18, 2016) …………………………...5, 8

*Cordis Corp. v. Bos. Sci. Corp.,*
  658 F.3d 1347 (Fed. Cir. 2011) …………….………………………………….……………....11

*Credit Acceptance Corp. v. Westlake Servs.,*
  859 F.3d 1044 (Fed. Cir. 2017) ……………………………………………....………...3

*Depomed, Inc. v. Purdue Pharma L.P.,*
  No. 13-571, 2016 WL 8677317 (D.N.J. Nov. 4, 2016) ………..……………………………3

*Finjan, Inc. v. Blue Coat Sys., LLC,*
  283 F. Supp. 3d 839 (N.D. Cal. 2017) …………………………………………1, 3, 4

*Freeman v. Arpaio,*
  125 F.3d 732 (9th Cir. 1997)     ……………………………………………………9, 12

*HP Inc. v. MPHJ Tech. Inv., LLC,*
  817 F.3d 1339 (Fed. Cir. 2016) …………………………………………………………...3

*Illumina, Inc. v. Qiagen, N.V.,*
  207 F. Supp. 3d 1081 (N.D. Cal. 2016) ……………………………………………………..3

*Intellect Wireless, Inc. v. HTC Corp.,*
  732 F.3d 1339 (Fed. Cir. 2013)   ………………………………………………...11

ASUS' OPPOSITION TO PHILIPS' MOTION FOR PARTIAL SUMMARY JUDGMENT

*Intellectual Ventures I LLC v. Toshiba Corp.,*
    221 F. Supp. 3d 534 (D. Del. 2016)……………………………......………………....3

*Koninklijke Philips N.V. v. Wangs Alliance Corp.,*
    No. 14-12298, 2018 WL 283893 (D. Mass. Jan. 2, 2018)………………………......……….4

*Marine Polymer Techs., Inc. v. HemCon, Inc.,*
    672 F.3d 1350 (Fed. Cir. 2012)   ……………………………….…………………13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574, 587–88 (1986)………………………………………………………...9

*Milwaukee Elec. Tool Corp. v. Snap-On Inc.,*
    271 F. Supp. 3d 990 (E.D. Wisc. 2017)   ……………………….……………….…………5, 8

*Parallel Networks Licensing, LLC v. Int'l Bus. Machs. Corp.,*
    No. 13-2072, 2017 WL 1045912 (D. Del. Feb. 22, 2017)…………………………………...1

*Penwell v. Holtgeerts*
    386 F. App'x 665 (9th Cir. 2010)   ……………………………………………………9

*SAS Inst. Inc. v. Iancu,*
    138 S. Ct. 1348 (2018)   ……………………………………………………………...3

*Seattle Box Co. v. Indus. Crating & Packing, Inc.,*
    731 F.2d 818 (Fed. Cir. 1984)   …………….……………………………………....13

*Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.,*
    817 F.3d 1293 (Fed. Cir. 2016) …………………………………………......……...2, 3, 4

*Synopsys, Inc. v. Mentor Graphics Corp.,*
    814 F.3d 1309 (Fed. Cir. 2016)………………………………………….……………7

*Therasense Inc. v. Becton, Dickinson and Co.,*
    649 F.3d 1276 (Fed. Cir. 2011)   ………………………………......……………...9

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.,*
    No. 12-5501, 2017 WL 235048 (N.D. Cal. Jan. 19, 2017)………………….……………...3, 4

1

## **STATUTES**

2     35 U.S.C. § 251………………………………………………………………….............  8, 9

3     35 U.S.C. § 252……………………………………………………………....……….12, 13

4     35 U.S.C. § 311(b)…………………………………………………………………..5, 7, 8

5     35 U.S.C. § 314   ……………………………………………………………………….2

6     35 U.S.C. § 315(e)……………………………………………………………….............. 1, 2, 3, 7

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ASUS' OPPOSITION TO PHILIPS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**INTRODUCTION**

Philips' Partial Motion for Summary Judgment against ASUS focuses on removing, by an incorrect application of I.P.R. estoppel, ASUS' invalidity defenses against two of the patents remaining in this action. The Court can dispense with these arguments for two independent reasons: they depend on a misstatement of the law, and they decline to grapple with the facts. The Court should deny summary judgment and send these issues to the jury. The balance of Philips' motion attacks defenses that ASUS does not plan to pursue, or that have more than sufficient support to survive summary judgment. The Court should therefore deny Philips' Partial Motion for Summary Judgment against ASUS.

**ARGUMENT**

**I.     I.P.R. Estoppel Covers Only Grounds Raised in the Petition and Decided by the P.T.A.B.**

The Court can resolve the entirety of Philips' motion regarding estoppel on a single, simple legal ground: Philips' arguments all depend on its assertion that I.P.R. estoppel "includes any references that were known to the petitioner or that could reasonably have been discovered by a skilled searcher conducting a diligent search." Docket No. 751 ("Mot.") at 3:20-22 (internal quotation marks omitted) (quoting *Parallel Networks Licensing, LLC v. Int'l Bus. Machs. Corp.*, No. 13-2072, 2017 WL 1045912 at *11 (D. Del. Feb. 22, 2017)); *see* Mot. § I.B.1, at 3-6. In this District, however, this assertion is incorrect. *See, e.g.*, *Finjan, Inc. v. Blue Coat Sys., LLC*, 283 F. Supp. 3d 839, 856 (N.D. Cal. 2017) (finding that I.P.R. "estoppel applies only to grounds that were both raised in the IPR petition and instituted in the IPR proceeding."). Knowing this, Philips does not cite on this point any cases from this District. And, although Philips recently litigated and lost the very same issue before the District of Massachusetts, it does not cite that case either. Once the Court looks beyond the carefully selected subset of cases in Philips' brief and considers the actually governing law, Philips' asserted standard cannot survive, and its estoppel assertions cannot survive the demise of its asserted standard.

**A.     I.P.R. Estoppel Under 35 U.S.C. § 315(e)(2) Covers Only Grounds That a Petitioner "Raised or Reasonably Could Have Raised During That *Inter Partes* Review," Making Its Scope Depend on the Definition of "During" in the Statute**

As part of the law enacting *inter partes* review ("I.P.R.") in the Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284-341 (2011), Congress provided that petitioners and real parties in interest to an I.P.R. petition "that results in a final written decision" may not assert, as a defense to

infringement actions before the district courts, that a "claim is invalid on any ground that the petitioner raised or reasonably could have raised during that *inter partes* review." 35 U.S.C. § 315(e)(2). ASUS was named as a real party in interest to Google's I.P.R. petitions regarding the '806 and RE'913 patents, and the *inter partes* reviews responding to those petitions have reached final written decisions, *see* Mot. at 2-3, so ASUS and Philips agree that 35 U.S.C. § 315(e)(2) applies to ASUS' defenses against those patents, and dispute only the scope of that estoppel. This dispute centers on what grounds "that the petitioner raised or reasonably could have raised during that *inter partes* review." *Id.* If the statutorily defined time "during that *inter partes* review" commences when the Board institutes review under 35 U.S.C. § 314, because I.P.R. petitioners may only pursue grounds set forth in their petitions, I.P.R. estoppel would at most include those grounds. If, however, the statute meant for "during that *inter partes* review" to be broad enough to encompass the possibility of raising *additional* grounds in the petition (or in any other petition), then I.P.R. estoppel could be broader than the text indicates on its face.

> **B.      The Court of Appeals Considered and Resolved this Question in ASUS' Favor, Finding that "During *Inter Partes* Review" Means After the Board Institutes a Petition, and Thus That I.P.R. Estoppel Includes Only Grounds in a Petition**

The Court of Appeals for the Federal Circuit resolved this question in *Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.*, 817 F.3d 1293 (Fed. Cir. 2016), *cert. denied*, 137 S. Ct. 374 (2016). *Shaw* concerned an appeal from I.P.R. proceedings in which the Board "instituted IPR based on two of the six grounds proposed by" the petitioner and issued a final written decision finding some claims patentable and others unpatentable. *Id.* at 1297. The petitioner and the patent-holder both appealed; as relevant here, the petitioner sought "a writ of mandamus instructing the PTO to reevaluate its redundancy decision and to institute IPR based on the Payne-based ground"—one of the grounds on which the Board had declined to institute review—explicitly because "the statutory estoppel provisions would prevent it from raising the Payne-based ground in future proceedings." *Id.* at 1299.

> Both parts of § 315(e) create estoppel for arguments "on any ground that the petitioner raised or reasonably could have raised during that inter partes review." Shaw raised its Payne-based ground in its petition for IPR. the [sic] PTO denied the petition as to that ground, thus no IPR was instituted on that ground. The IPR does not begin until it is instituted. Thus, Shaw did not raise—nor could it have reasonably raised—the Payne-based ground *during* the IPR. The plain language of the statute prohibits the application of estoppel under these circumstances.

*Shaw*, 817 F.3d at 1300 (emphasis in original) (citation omitted).  As a result, the Court of Appeals concluded, the PTO's decision to decline review on certain grounds could not harm the petitioner, because the petitioner could bring those grounds before a future district court.  *See id.*

### C.     This District Follows *Shaw* and Applies Its Scope of I.P.R. Estoppel

As *Shaw* and the statutory text require, this District has found that the scope of I.P.R. estoppel includes only "grounds that were both raised in the IPR petition and instituted in the IPR proceeding." *Finjan* at 856; *see also, e.g.*, *Illumina, Inc. v. Qiagen, N.V.*, 207 F. Supp. 3d 1081, 1089 (N.D. Cal. 2016); *Advanced Micro Devices, Inc. v. LG Elecs., Inc.*, No. 14-1012, 2017 WL 2774339 at *6 (N.D. Cal. June 26, 2017); *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. 12-5501, 2017 WL 235048 at *3 (N.D. Cal. Jan. 19, 2017).  Other courts agree.  *See, e.g.*, *Intellectual Ventures I LLC v. Toshiba Corp.*, 221 F. Supp. 3d 534, 553-54 (D. Del. 2016); *Depomed, Inc. v. Purdue Pharma L.P.*, No. 13-571, 2016 WL 8677317 at *8 (D.N.J. Nov. 4, 2016).  Finally, the Federal Circuit has continued to cite *Shaw* with approval.  *See, e.g.*, *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1053 (Fed. Cir. 2017); *HP Inc. v. MPHJ Tech. Inv., LLC*, 817 F.3d 1339, 1347 (Fed. Cir. 2016).

### D.     Philips Cannot Overcome *Shaw* and This District's Application of It

Knowing it must slay *Shaw* to prevail, Philips argues that *Shaw* does not apply here because it concerned invalidity grounds sought by a petitioner but denied institution by the Board, a procedural posture eliminated by *SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348 (2018).  Philips asserts that, in *Shaw*, the "Federal Circuit declined to extend estoppel to the noninstituted grounds because the P.T.A.B. did not allow the petitioner to raise and fully develop those grounds during the actual IPR trial."  Mot. at 4:13-14.  Philips makes this assertion without citation, and for good reason:  *Shaw* did not decide whether the petitioner had fairly developed its arguments, but rested instead on the statutory text of 35 U.S.C. § 315(e)(2) and its reference to arguments "during that *inter partes* review"—which, *Shaw* found, could *not* include grounds beyond those instituted and decided because "[t]he IPR does not begin until it is instituted."  *Shaw,* 817 F.3d at 1300.  The Federal Circuit's statutory logic holds equally true for all grounds other than those instituted and decided as part of an I.P.R., regardless of whether those grounds appeared in a pre-*SAS* petition but were not instituted (as in *Shaw*) or did not appear in a petition at all (as in *Finjan* and other cases, or as here):  because "[t]he IPR does not begin until it is instituted," a petitioner

could "not raise—nor could it have reasonably raised—[either type of] grounds *during* the IPR." *Shaw,* 817 F.3d at 1300.  The Court of Appeals could have decided *Shaw* on narrower, non-statutory grounds, but it did not.  *Id.*  Correctly analyzing and following the Court of Appeals' logic, this District has already rejected the argument Philips now brings:

> Plaintiffs contend that *Shaw* is much narrower than it appears.  Plaintiffs argue that *Shaw* only applies in a specific set of circumstances that were present in that case:  where the PTAB chooses not to institute on some grounds because they are "redundant," but offers no explanation or analysis as to the redundancy.  Plaintiffs further argue that interpreting *Shaw* in the manner Ariosa suggests would give IPR estoppel significantly less force, and would not necessarily aid in streamlining invalidity litigation.

> However, the Federal Circuit did not limit its decision in *Shaw* as plaintiffs suggest.  The court chose instead to interpret the IPR estoppel language literally, plainly stating that only arguments raised or that reasonably could have been raised *during* IPR are subject to estoppel.  Since *Shaw*, courts have read the decision accordingly.

*Verinata*, 2017 WL 235048 at *3 (collecting cases) (citations omitted).  Adding insult to injury, the District of Massachusetts recently resolved the same issue against Philips itself, finding that "the broader reading of the estoppel provision" that Philips advocated "is foreclosed by *Shaw*" under its statutory reasoning, and "the Federal Circuit's decision in *Shaw* is binding on this Court."  *Koninklijke Philips N.V. v. Wangs Alliance Corp.*, No. 14-12298, 2018 WL 283893 at *4 (D. Mass. Jan. 2, 2018) (citations omitted).  Although Philips' brief to this Court cites many out-of-District cases, it omits *Wangs Alliance*, the case with which it should be most familiar.  As *Verinata* explains and *Wangs Alliance* confirms, however, *Shaw* prevents adoption of Philips' broad estoppel standard.

### E.     I.P.R. Estoppel Bars None of ASUS' Invalidity Arguments Before This Court

Under the correct *Shaw* standard already applied in this District, I.P.R. estoppel bars none of ASUS' invalidity arguments, because "[n]one of the IPRs were instituted on these precise combinations" of references.  *Finjan*, 283 F. Supp. 3d at 856-57; *see, e.g.*, *Verinata* at *3.  Philips does not argue otherwise; instead it makes a series of arguments that depend on this Court's applying a standard different from the Federal Circuit's in *Shaw.*  Mot. at 5-12.  Although these arguments also fail on their own terms, *see infra*, the Court need not reach any of them if it follows this District and applies *Shaw* as written by the Federal Circuit.  The Court should do so, obviating the need to proceed further.

## II.    I.P.R. Estoppel Does Not Bar ASUS' Invalidity Arguments Even Under Philips' Standard

Even if Philips is correct and ASUS cannot bring any art that it could have presented to the P.T.A.B. under any circumstances, the Court should still deny Philips' motion, because I.P.R. petitions can address only "patents and printed publications," 35 U.S.C. § 311(b), and ASUS' invalidity case against the '806 and RE'913 patents depends on system references, which it could not present in an I.P.R. petition.  And Philips' own cases confirm that, even under Philips' preferred standard, I.P.R. estoppel does not extend to system references.  In *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 271 F. Supp. 3d 990, 1031 (E.D. Wisc. 2017), for example, the Court found that "IPR estoppel bars nothing except prior art consisting of patents and printed publications," that system references are "in no way affected by IPR estoppel, since they cannot be raised in such a proceeding" and even that "[t]o the extent any reference mentioned in this Part can be used to support another ground of relief not available to an IPR petitioner, it can be used for that purpose."  *Id.* at 1030; *see also, e.g.*, *Clearlamp, LLC v. LKQ Corp.*, No. 12-2533, 2016 WL 4734389 (N.D. Ill. Mar. 18, 2016) (limiting estoppel to the "UVHC300 datasheet" but not the product itself).  Although the specifics vary between the two patents, the results are the same:  under Philips' preferred cases announcing Philips' preferred standard, ASUS can still make all its invalidity arguments, because those arguments rely on system art—or, as relevant here on summary judgment, a genuine issue of material fact exists regarding the extent to which ASUS' prior art references before this Court differ from those the P.T.A.B. previously considered.

### A.    At Minimum, There is a Genuine Issue of Material Fact Regarding the Differences Between SMIL Specifications and ASUS' Current System Art Invalidating the '806 Patent, Precluding Summary Judgment on This Ground

The '806 I.P.R. petition asserted invalidity based on SMIL, a markup language for multimedia presentations, alone and in combination with other written art.  Mot. at 2.  Before this Court, ASUS asserts invalidity based on three players that can play multimedia presentations coded in SMIL:  GRiNS 0.5, GRiNS 1.0, and RealSystem G2 Beta 1.  Mot. at 6.  Philips' argument that an I.P.R. petition based on SMIL precludes GRiNS 0.5, GRiNS 1.0, and RealSystem G2 Beta 1 in this Court is analogous to an argument that an I.P.R. petition based on an HTML specification would preclude a Web browser in this Court.  It would not, and it does not here.

On summary judgment, however, the Court need only decide whether genuine issues of material fact preclude summary judgment.  *See* Mot. at 3.  They do.  Among many other things, Philips' corporate witness testified that the SMIL specification "is not about the player," but rather "about the syntax and semantics of the language."  Ex. 1 at 236:15-17.[1]  GRiNS 0.5, GRiNS 1.0, and RealSystem G2 Beta 1 are each fully functional multimedia players, with the ability to download and play media content.  *See, e.g.*, Ex. 2 at 96-110.  ASUS' expert Dr. Bulterman made a demonstration of this functionality central to his description of these media players:  for both GRiNS 0.5 and GRiNS 1.0, he described in detail an actual demonstration, that shipped with the prior art GRiNS 0.5 and GRiNS 1.0 players, and showed anticipatory functionality of those players.  *See id*.  Dr. Bulterman made recordings of these demonstrations and included them with his report.  The Court can download these recordings at http://warrenlex.com/grins/a.59.mov and http://warrenlex.com/grins/a.60.mov.  *See* Warren Decl. ¶ 9.  As Dr. Bulterman described in his expert report regarding GRiNS 0.5, for example:

> At 0:46, I press play and the presentation starts.  During parsing, the GRiNS Player determined that the system bitrate was at 28,800 or above (it was set to 30,000), so the color version of the slides in the presentation are presented.  The first of these is Slide 1 (a map of Amsterdam), which is fetched, armed and played as soon as the 'Play' button was pressed.

> The presentation starts.  As the source of the Stroll2sw.smil file shows [A.53], the duration of the first segment is 3 seconds.  In this time, the GRiNS player walks the document tree and determines that the next segment is Slide 2.  The Player fetches this content while Slide 1 is playing, so that it is ready to be displayed when Slide 1 ends.  In GRiNS terminology, the content is 'prearmed' and then buffered for playout as soon as it is needed at 0:49.

Ex. 2 at 100; *see id.* at 96-110.  In this example and throughout Dr. Bulterman's report, he describes *actual actions* undertaken by an *actual system*, not merely the *hypothetical* actions that would be taken if a SMIL document were correctly interpreted (and also not merely actions described in the published SMIL Specification).  Philips' corporate representative confirmed in deposition that, for example, the SMIL Specification left how to prefetch to be determined by the specifications of individual media players.  *See* Ex. 1 at 187:14-20.  Indeed, in opposing the I.P.R. regarding SMIL, Philips repeatedly argued that SMIL could not invalidate the '806 because it was just a markup language.  *See, e.g.*, Ex. 3 at 25.  ("This example also fails to provide any indication of possible media objects to be used based on the

---

[1] Unless otherwise noted, all exhibit citations are to exhibits of the concurrently filed Declaration of Erika H. Warren in Support of ASUS' Opposition to Philips' Motion for Partial Summary Judgment on Certain Affirmative Defense ("Warren Decl.").   – 6 –                     Case No. 4:18-cv-1885-HSG-EDL

screen size determination, whether there are alternative files for a segment (if there is a 'segment'), the locations of any media objects, etc.  The snippet simply provides an example of how this particular test attribute may be structured.").  GRiNS 0.5, GRiNS 1.0, and RealSystem G2 Beta 1, which ASUS could not argue to the P.T.A.B., overcome this asserted flaw in SMIL by providing a complete system that implements a markup language, and not merely the markup language itself.  GRiNS 0.5, GRiNS 1.0, and RealSystem G2 Beta 1 do not, as Philips alleges, merely repackage ASUS' allegations regarding SMIL; to the contrary, they are qualitatively different in a way that specifically responds to Philips' prior arguments.  Under these facts, there is no reason to vary from the usual practice of excepting system art references from I.P.R. estoppel.

### B.   ASUS Can Present Its Chosen RE'913 Obviousness Combinations to the Jury

Philips argues that three of the six invalidity combinations on which ASUS' expert Dr. Dunlop relies with respect to the RE'913 patent are barred by estoppel:  (i) the Apple Newton MessagePad device ("the Newton device") combined with U.S. Patent No. 6,094,197 ("Buxton"), (ii) Buxton combined with U.S. Patent No. 6,975,304 ("Hawkins"), and (iii) Japanese Unexamined Patent App. Pub. No. 2000-148366 ("Sakata II") combined with the Newton device.

Philips' motion is based on an unsound application of the law of estoppel and it should be denied as to the RE'913 patent for the reasons discussed above.  It is of no relevance whether ASUS was "aware of the prior art used in the '913 grounds," Mot. at 10, at the time the IPR petition was filed.  *See* Part I, *supra*.  It likewise is of no relevance that ASUS could have, but did not, file a petition raising an obviousness challenge based on Buxton combined with Hawkins.  *Id.*[2]

Moreover, there is no dispute that ASUS could not have filed a petition including grounds relying on the Apple Newton, a physical device.  The Board may only consider patents or printed publications in obviousness combinations.  35 U.S.C. § 311(b), *quoted in Synopsys, Inc. v. Mentor Graphics Corp.*, 814 F.3d 1309, 1316 (Fed. Cir. 2016).  Because a physical device cannot be considered in *inter partes* review, and because the petitioner estoppel provision, 35 U.S.C. § 315(e)(2), precludes a petitioner from asserting

---

[2] Philips refers to ASUS having filed "its IPR petition," and argues in a rhetorical flourish that ASUS made certain decisions regarding what to raise in that petition.  Mot. at 10.  This is incorrect.  ASUS did not file any petitions for *inter partes* review.  The reason that there is any potential estoppel as to ASUS is because third-party Google LLC filed petitions naming ASUS as a "real party in interest" to those petitions.

invalidity on grounds it "raised or reasonably could have raised during that *inter partes* review," ASUS' arguments relying on the Newton device should not be barred.

Philips tries to avoid this result by arguing that, "while ASUS purports to rely on the device itself in the pertinent obviousness grounds, Dr. Dunlop's own testimony demonstrates that all of the device features on which he relies are disclosed in manuals that qualify as 'publications' under 35 U.S.C. § 311(b)." Mot. at 11.[3]  Because this argument runs afoul of the plain statutory language, the Court's analysis can stop there.  In any event, this is not a case where ASUS is "purporting to rely on a device without actually relying on the device itself," *Milwaukee Electric*, 271 F. Supp. 3d at 1032, or seeking to "cloak its reliance" on a product while actually relying on a publication, *Clearlamp*, 2016 WL 4734389 at *9, or basing its arguments on "patents or printed publications that [defendant] would otherwise be estopped from pursuing at trial," *Biscotti Inc. v. Microsoft Corp.*, No. 13-1015, 2017 WL 2526231 at *8 (E.D. Tex. May 11, 2017).  *See* Mot. at 5-6.  ASUS intends to rely on the Newton system as known and used by others, and has produced (in addition to the documents cited by Philips in its motion) actual examples of the Newton device in discovery, which Philips inspected.  This is not a mere swapping of one prior art label (printed publication) for another (system art).  The Court should not preclude ASUS from presenting its chosen invalidity combinations.

### III. This Court Has Already Ruled as a Matter of Law That the RE'564 Patent is Not a Broadening Reissue Under 35 U.S.C. § 251, Leaving No Issue to Resolve on Summary Judgment

Philips seeks to reargue an issue it has already won.  ASUS pleaded the affirmative defense that Philips' RE'564 patent was invalid under 35 U.S.C. § 251 ("No re-issued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent.").  *See* ASUS Answer to Philips' Second Amended Complaint, Docket No. 87 in No. 18-1886 ("ASUS Answer") at 21-23.  Defendants Acer Inc. and Acer America Corporation raised the same defense in a related case and, on December 23, 2016, the Acer defendants moved for judgment on

---

[3] Even were ASUS to rely solely on documents describing the Newton device, that would not be barred for the reasons discussed *supra*.  Google's petition did not assert grounds of obviousness based on the Newton device or any publications describing it, contrary to Philips' implication. Mot. at 2.  A review of the Google papers cited by Philips shows that Google never discussed the Newton in its petition, and that Dr. Cockburn discussed the Newton only in connection with explaining the technological background existing at the relevant date.

1 the pleadings on this defense. This Court consolidated the Acer and ASUS actions (as well as other

2 actions) "for all pre-trial purposes," Docket No. 487 at 5, and later denied Acer's motion. Docket No. 632

3 at 12. Although ASUS of course may challenge this Court's ruling should the matter proceed to the Court

4 of Appeals, the issue is settled before this Court. The Court should accordingly deny Philips' motion as

5 moot.

6 **IV.     Summary Judgment of No Inequitable Conduct is Inappropriate**

7          Inequitable conduct requires proof that the patentee misrepresented or omitted material

8 information with the specific intent to deceive the Patent & Trademark Office. *Therasense Inc. v. Becton,*

9 *Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (en banc). Philips raises no challenge on the

10 materiality prong here. Instead, based purely on self-serving deposition testimony of the Philips attorney

11 ASUS accuses of misconduct, Philips argues that ASUS cannot meet its burden of showing the attorney

12 intended to deceive the PTO by submitting false and misleading arguments. Granting summary judgment

13 on the basis proposed by Philips would require the Court to accept the credibility of this witness.

14          Determining credibility is inappropriate at summary judgment. *See Freeman v. Arpaio*, 125 F.3d

15 732, 735 (9th Cir. 1997), *overruled on other grounds by Penwell v. Holtgeerts*, 386 F. App'x 665 (9th Cir.

16 2010) (a court on summary judgment "may not weigh the evidence or make credibility determinations").

17 Without a credibility determination, and taking inferences reasonably drawn from the record in the light

18 most favorable to ASUS as the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

19 U.S. 574, 587-88 (1986), there is a genuine dispute as to Philips' intent to deceive the Patent Office.

20          Under *Matsushita*, the facts of record establish the existence of a material question on intent. The

21 RE44,913 patent was prosecuted ███████████████████████████████████████████████

22 ████████████. The original patent, U.S. Patent No. 6,885,318, issued in 2005. Ex. 5 at 1. The

23 reissue was filed eight years later, on July 31, 2013. Ex. 6 at 1. To file for a reissue this long after

24 issuance of the underlying patent, an applicant must confess error to the PTO with respect to the

25 underlying patent. *See* 35 U.S.C. § 251. Here, Philips told the PTO that "the error in the patent is caused

26 by the patentee claiming more than he had a right to claim in the patent," that is, that the claims were *too*

27 *broad*, rendering at least one of them invalid. Ex. 7 at PHILIPS00003538; *see also id.* at

28 PHILIPS00003712, PHILIPS00003741.

But the record shows a motivation different from correcting overbroad claims. █████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████

There was only one substantive change to the independent claims of the reissue:  the insertion of a pre-determined time step.  *E.g.*, Ex. 6 at 6:57-64.  There were no substantive rejections from the Patent Office, and on March 12, 2014, the Patent Office mailed Philips a notice of allowance.  Ex. 7 at PHILIPS00003745-3755.  The notice included an "examiner's statement of reasons for allowance" which specifically recited the "predetermined time" limitation as part of the combination that the examiner found was "not taught, suggested, or made obvious by the prior art of record."  *Id.* at PHILIPS00003750; Ex. 4 at 77:8-78:22.

But Philips did not let the patent issue.  Instead, six days after the notice of allowance, Philips submitted a request for continued examination and an Information Disclosure Statement ("IDS").  Ex. 7 at PHILIPS00003763-3770.  The IDS disclosed, among other things, Japanese Patent No. 4,019,512 to Sakata.  *Id.* at PHILIPS00003767.  The Sakata '512 patent corresponds to a Japanese Unexamined Patent Application Publication No. 2000-56912, which is prior art to the RE'913 patent.  Philips submitted the Sakata patent (in its original Japanese), *id.* at PHILIPS00003771-3788, along with what appears (based on its lack of clarity) to be a machine-generated translation of the Sakata patent.  *Id.* at PHILIPS00003793-3809.

Philips also included several pages of argument characterizing the Sakata patent's disclosure.  *Id.* at PHILIPS00003789-3792.  Philips in these pages argued that the Sakata patent was distinguishable from the reissue application's claims on the basis that it "didn't disclose [the] concept of 'pre-determined time.'"  *Id.* at 00003790; *see also id.* at 00003792 ("The patent doesn't disclose [the] timing concept").

This statement falsely characterized the Sakata reference, which *does* disclose the "concept of [a] 'pre-determined time.'" Ex. 8 at 23:15 to 24:25.  Having been given this misinformation, the patent examiner granted the reissue on May 27, 2014, a quick turnaround █████████████████████████ ████████████████████████

Mr. Belk, of course, denied that he intended to mislead the Patent Office.  He essentially denied everything that could be attributed to him. ████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ █████████████████████████████████████████

These self-serving, incredible denials cannot serve as the basis for summary judgment of no inequitable conduct, as there is no way for this Court to judge Mr. Belk's credibility at this stage of the litigation.

The Federal Circuit has repeatedly stressed that witness credibility is critical to the issue of intent. For example, in *Aventis Pharma S.A. v. Hospira Inc.*, 675 F.3d 1324 (Fed. Cir. 2012), the district court heard "extensive testimony" from the inventor concerning the withheld references, including a number of explanations for why the references were withheld.  *Id.* at 1335.  Nonetheless, the district court found that the testimony was not credible, and held that that determination, coupled with other corroborating evidence, supported the findings of a specific intent to deceive.  *Id.* at 1335-37.  Credibility also played a key role in *Cordis Corp. v. Bos. Sci. Corp.*, 658 F.3d 1347 (Fed. Cir. 2011).  In that case, the district court credited the testimony of the prosecuting attorney regarding the non-disclosure of a material reference and found no specific intent to deceive.  *Id.* at 1354.  On appeal, while the Federal Circuit noted that "there is substantial evidence calling into question [the witness'] veracity," it conceded that the district court was better able to make these credibility determinations and affirmed.  *Id.* at 1361 n.6.  *See also, e.g.*, *Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339, 1344-46 (Fed. Cir. 2013) (affirmed intent based on pattern of misleading statements and adverse credibility findings); *American Calcar, Inc. v. American Honda Motor Co., Inc.*, 768 F.3d 1185, 1191 (Fed. Cir. 2014) (inference of intent affirmed based on admissions by patent holder of the importance of the undisclosed information and adverse credibility findings).

There is plenty in the record here to suggest that Mr. Belk did intend to deceive the Patent Office: ████████████████████████████████████ the submission of a false statement on the key issue of patentability in the reissue; ████████████████████████████████████████

████████████████████████████████████████████████████. But ASUS is not asking for summary judgment of inequitable conduct.  Rather, ASUS seeks only to have the chance to present this case of malfeasance to the finder of fact.  Because Mr. Belk's credibility is key to the determination of intent, and it is plainly the law that this Court may not consider credibility at summary judgment, *Freeman*, 125 F.3d at 735, the Court should deny Philips' motion.

## V.       ASUS Will Not Present a License Defense Based on Agreements Between Philips and DCP

In view of the testimony of the witnesses for Digital Content Protection LLC ("DCP") referenced in Philips' motion concerning the scope of DCP's various agreements, ASUS will not present at trial a license, estoppel, exhaustion, or waiver defense based on any agreement between Philips and DCP.  ASUS may, however, present evidence suggesting that the content industry adopted the HDCP 2.x technology to protect certain types of content, in part, because DCP requires HDCP 2.x Adopters to sign the addendum agreement referenced in Philips' motion, which includes a non-assert provision preventing such Adopters from asserting against any Fellow Adopter a claim of infringement under any Necessary Claims.

## VI.      ASUS Will Not Present a License Defense Based on Philips' Licensing Obligations as a Member of W3C's Synchronized Multimedia ("SYMM") Working Group

In view of the testimony and documents produced by Philips relating to its participation in the SYMM Working Group for Synchronized Multimedia Integration Language (SMIL), ASUS will not present at trial a license, estoppel, exhaustion, or waiver defense based on any licensing obligation to ASUS.

## VII.     The Court Should Not Award Summary Judgment of No Intervening Rights

ASUS' Tenth Affirmative Defense raises the defense of intervening rights under 35 U.S.C. § 252 with respect to the RE'913 patent.  In particular, ASUS pleaded that "Philips substantively amended the asserted claims of the RE'913 patent" during reissue proceedings.  *See* Docket No. 87 (No. 18-cv-01886),

ASUS Answer to Philips' Second Amended Complaint at ¶ 53.[4]  "Before the amended claims re-issued, ASUS had already begun (or had made substantial preparations to begin) making, using, selling, offering for sale or importing certain accused products.  As a result, ASUS was vested with rights to continue its activities with respect to these accused products, without recourse for Philips."  *Id.*  ASUS incorporated these allegations into its discovery responses.  *See* Mot. Ex. 42 at 16-17.

There is no dispute that the RE'913 patent resulted from reissue proceedings.  As Philips' brief concedes, a reissue has consequences.  *See* Mot. at 23.  Section 252 establishes two avenues that third-parties may use to defend claims of infringement of a reissued patent.  First, an accused infringer is entitled to "absolute intervening rights" for accused products made, sold, imported, or offered for sale before the date of reissue.  *See* 35 U.S.C. § 252; *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1361-62 (Fed. Cir. 2012).  Intervening rights are not available, however, in the situation where the accused product infringes a claim that existed in the original patent and remains "without substantive change" after reissue.  *See Marine Polymer Techs*, 672 F.3d at 1362 (*citing Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 827–28 (Fed. Cir. 1984)).  Second, as to accused products made, sold, imported, or offered for sale after the date of reissue, an accused infringer may seek intervening rights as a matter of equity.  *Id.*  ASUS is pursuing a defense of absolute intervening rights with respect to the RE'913; ASUS is not pursuing a defense of equitable intervening rights.

Philips argues that ASUS should be denied a chance to show intervening rights because ASUS has not offered any evidence on the defense.  Mot. at 23.  This is incorrect.  ASUS' expert, Dr. Mark Dunlop, provided evidence establishing the prerequisite facts for absolute intervening rights on the RE'913 patent, including that the claims of the original and reissued patents are not substantially identical.  Ex. 8 at 26. And it is undisputed that Philips seeks damages for infringement of the RE'913 for products made and imported prior to the date of reissue.

//

//

---

[4] ASUS also pleaded this defense with respect to two other patents.  One, U.S. Patent No. RE44,006, was dropped from the case by Philips after being held invalid by the Patent Office in *inter partes* review proceedings and, accordingly, is not at issue here.  The second, U.S. Patent No. RE43,564, still is asserted, but because Philips is not claiming damages pre-dating the reissue, ASUS is not asserting intervening rights as to the RE'564 patent.

– 13 –                                        Case No. 4:18-cv-1885-HSG-EDL

ASUS has provided evidence that, at a minimum, establishes a factual dispute as to absolute intervening rights on the RE'913 patent, Philips' motion should be denied.

### CONCLUSION

For the foregoing reasons, ASUS respectfully requests that the Court denies Philips' partial summary judgment the issues above.

Date:  September 26, 2019

Respectfully submitted,

Bruce Genderson *(pro hac vice)*
Kevin Hardy *(pro hac vice)*
Aaron Maurer *(pro hac vice)*
David Krinsky *(pro hac vice)*
Andrew Trask *(pro hac vice)*
Kyle Thomason *(pro hac vice)*
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C., 20005
+1 (202) 434-5000
+1 (202) 434-5029 facsimile
viceroy@wc.com

Matthew S. Warren
Erika H. Warren
WARREN LEX LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
18-1885@cases.warrenlex.com

Michael J. Newton (Bar No. 156225)
Sang (Michael) Lee  *(pro hac vice)*
Derek Neilson *(pro hac vice)*
ALSTON & BIRD LLP
2200 Ross Avenue, Suite 2300
Dallas, Texas, 75201
+1 (214) 922-3400
+1 (214) 922-3899 facsimile
asus-philips@alston.com

*Attorneys for Defendants ASUSTeK Computer
Inc. and ASUS Computer International*