John P. Schnurer (Cal. Bar No. 185725)
Kevin Patariu (Cal. Bar No. 256755)
James Hurt (Cal. Bar No. 312390)
PERKINS COIE LLP
11452 El Camino Real, Suite 300
San Diego, CA 92130
Telephone: (858) 720-5700
Facsimile: (858) 720-5799

Ryan J. McBrayer (*pro hac vice*)
Jonathan R. Putman (*pro hac vice*)
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
htc-philipsperkinsservice@perkinscoie.com

[Additional counsel listed on signature page]

Attorneys for Defendants
HTC CORP.
HTC AMERICA, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| IN RE KONINKLIJKE PHILIPS PATENT LITIGATION. | Case No. 4:18-cv-01885-HSG-EDL<br><br>JURY TRIAL DEMANDED<br><br>**HTC'S REPLY IN SUPPORT OF *DAUBERT* MOTION REGARDING MICHAEL E. TATE**<br><br>**HIGHLY CONFIDENTIAL-ATTORNEY'S EYES ONLY**<br><br>Hearing Date: November 14, 2019<br><br>Hearing Time: 2:00 p.m. |

**TABLE OF CONTENTS**

I. Introduction ................................................................................................................. 1

II. Apportionment is not "built into" Philips' portfolio licensing rates because they do not reflect the incremental value of any one patent. ................................................ 2

III. Apportionment is required, even for per-unit portfolio licenses. ........................... 4

IV. This is a dispute over apportionment, not comparability. ...................................... 6

V. Conclusion ................................................................................................................ 7

# TABLE OF AUTHORITIES

**CASES**

*Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys.*,
  809 F.3d 1295 (Fed. Cir. 2015)...................................................................................................4

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014)................................................................................................2, 4

*Garretson v. Clark*,
  111 U.S. 120 (1884)..................................................................................................................2, 5

*Golden Bridge Tech. v. Apple Inc.*,
  No. 5:12- CV-04882-PSG, 2014 WL 4057187 (N.D. Cal. June 1, 2014) ...............................3, 6

*Immersion Corp. v. HTC Corp.*,
  No. CV 12-259-RGA, 2015 WL 834209 (D. Del. Feb. 24, 2015)...............................................5

*Mondis Tech. Ltd. v. LG Elecs., Inc.*,
  Case No. 2:15-cv-04431-SRC-CLW, 2019 WL 4894363 (D.N.J. Sept. 24, 2019) ................4, 6

*Oracle Am., Inc. v. Google Inc.*,
  No. C 10-03561 WHA, 2012 WL 4017808 (N.D. Cal. Apr. 10, 2012)...............................2, 3, 6

*PersonalWeb Techs. LLC v. Int'l Bus. Machines Corp.*,
  No. 16-CV-01266-EJD, 2017 WL 3476082 (N.D. Cal. Aug. 14, 2017) .....................................5

*Virnetx, Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014)....................................................................................................5

**STATUTES**

35 U.S.C. §284..................................................................................................................................7

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     Introduction**

Philips' Opposition to HTC's *Daubert* Motion Regarding Michael E. Tate ("Opposition") concedes that Mr. Tate did not apportion any of the portfolio rates he relied on down to the value of "the use of the invention" (i.e. to the value of a specific asserted patent) as required by the patent statute and the Federal Circuit. Philips admits that, rather than reaching his own conclusion about the incremental value of the asserted patents, Mr. Tate assumed that his apportionment work had already been done for him and was "built into" Philips' licensing program for entire portfolios.

Philips argues that evidence of its typical business practice—to license entire portfolios for flat rates—excuses Mr. Tate of his responsibility to apportion. But the fact that Philips prefers not to license patents individually does not allow Mr. Tate to disregard the Patent Act or the many Federal Circuit cases that require apportionment to the value of only these asserted patents, and nothing more.

Recognizing that neither Mr. Tate nor Philips has made any attempt to identify the incremental value of any asserted patent, Philips tries to recast this as an evidentiary dispute. To be clear—HTC's *Daubert* Motion does not depend on the parties' interpretations of Philips' licensing program. That program's terms are well-understood and undisputed in HTC's Motion. Instead, HTC contends that Philips' evidence speaks only to the commercial preferences of Philips' licensing team, and that the law requires something more. Where the realities of actual commercial transactions for entire portfolios do not adequately isolate the value of the specific patent at issue, the damages expert must step in and apportion that evidence accordingly. Mr. Tate has not done so here.

On this record, Mr. Tate has no basis to forego apportioning the Philips portfolio rates. Thus, for the reasons set forth in HTC's Motion, and further for the reasons below, Mr. Tate's damages opinion is insufficient under *Daubert*. It should be excluded.

**II.  Apportionment is not "built into" Philips' portfolio licensing rates because they do not reflect the incremental value of any one patent.**

The crux of Philips' Opposition is that apportionment is "built into" Mr. Tate's rates due to the nature of Philips' licensing program, because Philips ███████████████ ████████████████████████████████████████████████████████████████ ████████████████████████ Opp. at 5.[1] Supposedly, therefore, these rates reflect the incremental value of the asserted patents, as ██████████████████████████████ ████████████████████████. *Id*. Philips repeatedly confirms that, exclusively based on this subjective preference of Philips, Mr. Tate performed no apportionment. Opp. at p. 3 ("Mr. Tate concludes, based on the discrete rate option, that the royalty for an *individual* patent is the applicable discrete rate for that patent."); *id*. at p. 19 (Mr. Tate concluded that "the discrete rate applies to an individual patent" and therefore "no further apportionment was necessary").

Even taking Philips' evidence at face value, it does not speak to the incremental value of the asserted patents. It only shows that in real-world licensing negotiations, Philips prefers not to license subdivisions of its portfolios. But the law requires greater scrutiny— where non-asserted rights may be captured by the record evidence, the damages expert must apportion the evidence to ensure that the ultimate reasonable royalty is based on the incremental value of *only* the claimed features, and no more. *See, e.g.*, *Garretson v. Clark*, 111 U.S. 120, 121 (1884) (patentee "must in every case … separate or apportion … the patentee's damages between the patented feature and the unpatented features"); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("The essential requirement [of apportionment] is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.").

The fact that Philips *prefers* not to license its portfolio piecemeal does not relieve Mr. Tate of this apportionment responsibility. This rationale was rejected in *Oracle*, where the

---

[1] References to "Opp." herein refer to Dkt. No. 810, Philips' Opposition to HTC's *Daubert* Motion Regarding Michael E. Tate.

1   district court rejected the expert's attempt to analogize a portfolio licensing program to "a

2   person who subscribes to a 100–page magazine knowing that he intends to read only one

3   page." *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2012 WL 4017808, at *1-2

4   (N.D. Cal. Apr. 10, 2012). The expert concluded that there were "good reasons not to

5   apportion" because in a real-world scenario, "the value of that single page is the same as the

6   price of the entire magazine." *Id. at* *1. The district court disagreed.

7         Philips distinguishes cases such as *Oracle* and *Golden Bridge* by contending that

8   unlike those experts, Mr. Tate had a basis in the record to assign Philips' portfolio rates to

9   the asserted patents (i.e., the unilateral terms and preferences of Philips' licensing program).

10   But Philips' preference ▬▬▬▬▬▬▬▬▬▬▬ is no different than the

11   hypothetical *Oracle* magazine publisher's practice of selling entire magazines rather than

12   individual pages. Damages law nevertheless requires an expert to quantify the value of

13   whichever "pages" (i.e., patents) are at issue in the case. There is no "commercial practice"

14   exception to the statutory and precedential requirement to ensure that damages are based on

15   the value of the asserted invention, and nothing more.

16         Nor has Philips contended that these rates were calculated with the asserted patents in

17   mind. For instance, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

18   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *See* Dkt. No. 705-1, Ex. 1 (Tate HTC

19   Rep.) at 6 (▬▬▬▬▬▬▬▬▬▬); *id.* at 10 n. 47 (▬▬▬▬▬

20   ▬▬▬▬▬▬▬▬▬▬▬▬▬). Likewise, ▬▬▬▬▬▬▬

21   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

22   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See* Dkt. No. 705-

23   1, Ex. 3 (Tate HTC Dep. Tr.) at 83:13-84:19. Philips admits that these same rates would be

24   offered to a third party who only needed to license one of the other non-asserted patents in

25   the portfolio. *See* Opp. at p. 3 (Philips' portfolio rates are "set at a rate that assumes the

26   licensee may only be using *one of the patents* in the feature [set]." (emphasis added)). These

27   rates are not even patent-specific, much less, specific to the asserted patents here.

28         A district court recently rejected an argument identical to the one Philips makes here–

1  that apportionment might necessarily be "built into" a licensing program where the licenses
2  were offered on a "threshold basis," such that licensor offered same "price … to use the
3  technology" regardless of which (or how many) patents it requested, and included the rest at
4  "no charge." *See Mondis Tech. Ltd v. LG Elecs., Inc.*, No. CV 15-4431 (SRC), 2019 WL
5  4894363, at *7-8 (D.N.J. Sept. 24, 2019). The court explained the paradox that plagues Mr.
6  Tate's analysis—"a license which is designed so that the underlying patents have no
7  incremental value cannot at the same time be evidence of 'the incremental value that the
8  patented invention adds to the end product.'" *Id*. at *9 (quoting *Ericsson*, 773 F.3d at 1226).

9      The *Mondis* court also distinguished a recent Federal Circuit case holding that
10 apportionment *was* "built into" the record evidence—*Commonwealth Sci. & Indus. Research*
11 *Organisation v. Cisco Sys.*, 809 F.3d 1295 (Fed. Cir. 2015) ("*CSIRO*"). The *Mondis* court
12 noted that *CSIRO* did not hold that apportionment was "built into" the patentee's licensing
13 terms; instead, it was built into the parties' prior negotiations that referenced the portfolio
14 rates as a royalty for the asserted patent "and no more." *Mondis Tech.*, 2019 WL 4894363 at
15 *7-*8. By contrast, Philips cites ████████████████████████████████████████
16 ████████████████████████████████████████████████████████.

17     In sum, Philips' cited evidence proves that these rates were not calculated or intended
18 to reflect the value of any single patent at all. Apportionment is not "built into" these rates.
19 And since Mr. Tate admits he did no apportionment beyond these rates, his opinion must be
20 excluded for this reason alone.

21 **III.    Apportionment is required, even for per-unit portfolio licenses.**
22     Philips' Opposition implies that traditional apportionment principles should not apply
23 to Mr. Tate's opinion because he based his royalty on Philips' per-unit portfolio licensing
24 program, rather than as percentage of revenue earned from sales of HTC's accused products.
25 *See* Opp. at pp. 14-16 (contending that there is "no requirement to value each patent in a
26 'portfolio'"); *id*. at pp. 18-19 (distinguishing *Virnetx* because "Mr. Tate's damages base…is
27 the number of infringing units sold" and "he has never advanced a theory that relies on any
28 portion of Defendants' revenue"). But there is no rule limiting the apportionment principle

to certain fact patterns—over a century ago, the Supreme Court held that apportionment is required "in every case." *Garretson*, 111 U.S. at 121 (1884) (patentee "must in *every case* … separate or apportion … the patentee's damages between the patented feature and the unpatented features" (emphasis added)).

Moreover, *Virnetx* stands for the principle that a damages expert must *always* apportion to ensure that damages are tied to the value of the asserted technology, even where the record evidence provides little guidance on how to do so. In *Virnetx*, the Federal Circuit held that damages experts must apportion beyond the revenue from a multi-featured product, even where the accused feature is never sold separately, to ensure that the ultimate damages figure is "closely tied to the claimed invention." *See Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014) (requiring apportionment even though accused feature "may not ever have been individually sold") Likewise, if Mr. Tate may adopt Philips' portfolio rates without scrutinizing the incremental value of the individual asserted patents, merely due to Philips' own self-serving, aspirational licensing policy, this would "swallow the rule of apportionment." *Id*. at 1328.

Philips also cites certain past HTC cases in support of its Opposition, arguing that these stand for the proposition that it need not apportion a patent portfolio. Opp. at 15-16. If anything, these cases show that HTC has repeatedly and consistently maintained the same positions set forth here. And in two of these cases, the expert *actually attempted* the type of portfolio apportionment that Mr. Tate did not do. *PersonalWeb Techs. LLC v. Int'l Bus. Machines Corp.*, No. 16-CV-01266-EJD, 2017 WL 3476082, at *1 (N.D. Cal. Aug. 14, 2017) (expert attempted to "apportion for the value of the '420 patent from the portfolio patents that were the subject of the licenses he relied on" by using "forward citation analysis to derive a quantitative factor by which the value of the '420 patent could be apportioned."); *Immersion Corp. v. HTC Corp.*, No. CV 12-259-RGA, 2015 WL 834209, at *2 (D. Del. Feb. 24, 2015) (expert attempted to identify "the value attributable to the patents-in-suit" from a license covering "Plaintiff's entire patent portfolio" comprising "74 patents."). HTC disputed whether the apportionment method was appropriate, but the experts at least made

1  *some* attempt to apportion the portfolio license to isolate the value of the asserted patents.

2  Regardless, there is no *per se* rule excluding portfolio or per-unit licenses from

3  apportionment. Where, as set forth above, there is no evidence that these portfolio rates

4  reflect the incremental value of the asserted patents, the expert must apportion the portfolio

5  rates just as it would any other damages evidence. *See Mondis Tech.*, 2019 WL 4894363, at

6  *7-9; *Golden Bridge Tech. v. Apple Inc.*, No. 5:12- CV-04882-PSG, 2014 WL 4057187, at

7  *2 (N.D. Cal. June 1, 2014); *Oracle*, 2012 WL 4017808, at *1-2.

### IV. This is a dispute over apportionment, not comparability.

9  Philips lastly tries to portray this as a factual dispute over the comparability of its

10  licensing program to the hypothetical negotiation. Opp. at 13-14. But setting aside whether

11  Mr. Tate sufficiently addressed issues of economic comparability,[2] the law does not permit

12  an expert to stop upon determining that the licensing evidence is relevant (i.e., economically

13  and technically comparable). The *Mondis* court succinctly explained this distinction, noting

14  that the problem there was not that the "licenses are simply too different," but that "Mondis

15  did not account for the or adjust for the differences so as to satisfy the apportionment

16  requirement." *Mondis Tech.*, 2019 WL 4894363, at *9.

17  Here, there is no "comparable license." ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮▮▮▮▮ but Philips concedes that Mr. Tate has "never advanced a damages

20  theory" based on that rate, and his theory is "instead grounded in the application of the much

21  narrower discrete rate feature sets," which ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Opp. at

22  pp. 2, 7.

23  That said, even assuming *arguendo* that Philips' ▮▮▮▮▮▮▮▮▮▮▮▮▮

24  portfolio rates constitute "comparable licenses," and that Mr. Tate has sufficiently shown

---

[2] On this point, Philips' Opposition conflicts with its *Daubert* motion regarding HTC's damages expert, Laura Stamm. In its Opposition, Philips argues that issues of economic comparability are "factual issues for cross examination." Opp. at 13. But in its *Daubert* motion, Philips seeks to exclude Ms. Stamm's analysis of Philips' ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for reasons of economic comparability. *See* Dkt. 731 (Philips' *Daubert* Motion Regarding Laura Stamm) at pp. 10-12.

1  these offers are economically comparable, he cannot automatically employ those rates

2  without apportionment. Rather, where the evidence includes portfolio rates, experts like Mr.

3  Tate must apportion them however reasonably necessary to ensure that the patentee is

4  compensated for the use of "the invention" (35 U.S.C. §284) and not for other inventions

5  included in the portfolio.

## V.  Conclusion

In sum, Mr. Tate made no attempt to apportion Philips' discrete portfolio rates to isolate the value of the asserted patents in those portfolios. And the record does not support his assumption that apportionment was "built into" those rates. Accordingly, it should be excluded under *Daubert*.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Respectfully submitted October 17, 2019.

/s/ *Ryan J. McBrayer*
Ryan McBrayer (*pro hac vice*)
Jonathan Putman (*pro hac vice*)
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington, 98101
+1 (206) 359-8000
+1 (206) 359-9000 facsimile
htc-philipsperkinsservice@perkinscoie.com

John P. Schnurer (Cal. Bar No. 185725)
Kevin Patariu (Cal. Bar No. 256755)
James Hurt (Cal. Bar No. 312390)
PERKINS COIE LLP
11452 El Camino Real, Suite 300
San Diego, California, 92130
+1 (858) 720-5700
+1 (858) 720-5799 facsimile
htc-philipsperkinsservice@perkinscoie.com

Elizabeth Banzhoff (*pro hac vice*)
PERKINS COIE LLP
1900 16th Street, Suite 1400
Denver, Colorado 80202
+1 (303) 291-2397
+ 1 (303) 291-2497 facsimile
htc-philipsperkinsservice@perkinscoie.com

*Attorneys for Defendants HTC Corp. and HTC America, Inc.*

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 17, 2019, a true and correct copy of the foregoing was served on all interested parties via electronic mail pursuant to Civil Local Rule 5-1(h).

/s/ Ryan J. McBrayer

Ryan J. McBrayer