Michael P. Sandonato (admitted *pro hac vice*)
msandonato@venable.com
John D. Carlin (admitted *pro hac vice*)
jcarlin@venable.com
Natalie Lieber (admitted *pro hac vice*)
ndlieber@venable.com
Christopher M. Gerson (admitted *pro hac vice*)
cgerson@venable.com
Jason M. Dorsky (admitted *pro hac vice*)
jmdorsky@venable.com
Stephen K. Yam (admitted *pro hac vice*)
syam@venable.com
Jonathan M. Sharret (admitted *pro hac vice*)
jsharret@venable.com
Joshua D. Calabro (admitted *pro hac vice*)
jdcalabro@venable.com
Daniel A. Apgar (admitted *pro hac vice*)
dapgar@venable.com
Robert S. Pickens (admitted *pro hac vice*)
rspickens@venable.com
Sean M. McCarthy (admitted *pro hac vice*)
smccarthy@venable.com
Caitlyn N. Bingaman (admitted *pro hac vice*)
cnbingaman@venable.com

VENABLE LLP
1290 Avenue of the Americas
New York, New York 10104-3800
Tel: (212) 218-2100
Fax: (212) 218-2200

Chris Holland (SBN 164053)
cholland@hollandlawllp.com
Lori L. Holland (SBN 202309)
lholland@hollandlawllp.com
Ethan Jacobs (SBN 291838)
ejacobs@hollandlawllp.com

HOLLAND LAW LLP
220 Montgomery Street, Suite 800
San Francisco, CA 94104
Tel: (415) 200-4980
Fax: (415) 200-4989

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

In Re Koninklijke Philips Patent Litigation

Case No. 4:18-cv-01885-HSG

**PHILIPS' REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN OPINIONS IN DR. NIELSON'S OPENING EXPERT REPORT SERVED ON BEHALF OF HTC CONCERNING U.S. PATENT NO. 9,436,809**

JURY TRIAL DEMANDED

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. DR. NIELSON CANNOT SATISFY HIS BURDEN OF SHOWING THAT DTCP 1.2 WAS PUBLICLY AVAILABLE ..... 2

A. HTC Improperly Attempts to Shift Dr. Nielson's Burden to Philips ..... 2

B. HTC Openly Admits that Dr. Nielson Did Not Analyze Whether DTCP 1.2 Was Publicly Available ..... 3

C. HTC Fails to Identify Any Competent Evidence to Establish that DTCP 1.2 was Published Prior to the '809 Patent's Critical Date ..... 4

1. Date on First Page of DTCP 1.2 ..... 4

2. '469 Publication ..... 5

3. Listing of Companies and DTCP Name ..... 7

D. HTC Ignores or Mischaracterizes Other Evidence Indicating That DTCP 1.2 is Not Prior Art ..... 7

1. DTCP Printing History ..... 7

2. "Draft Version 0.9" Labels Within DTCP 1.2 ..... 7

III. THE DTCP WHITE PAPER IS IRRELEVANT TO WHETHER DTCP 1.2 WAS PUBLICLY AVAILABLE PRIOR TO THE '809 PATENT'S CRITICAL DATE ..... 8

IV. HTC ADMITS TO ASKING DR. NIELSON TO PRESENT AN INVALIDITY OPINION BASED SPECIFICALLY ON REVISION 1.2 OF DTCP ..... 10

V. HTC'S "LACK OF PREJUDICE" ARGUMENT MISSES THE POINT ..... 10

VI. CONCLUSION ..... 10

## TABLE OF AUTHORITIES

### Cases

*Abbott Labs. v. Baxter Pharm. Prods., Inc.*,
334 F.3d 1274 (Fed. Cir. 2003)........................................................................................ 9

*Allergan, Inc. v. Apotex Inc.*,
754 F.3d 952 (Fed. Cir. 2014)........................................................................................ 2

*Blue Calypso, LLC v. Groupon, Inc.*,
815 F.3d 1331 (Fed. Cir. 2016)........................................................................................ 6

*Bruckelmyer v. Ground Heaters, Inc.*,
445 F.3d 1374 (Fed. Cir. 2006)........................................................................................ 3, 4

*CNET Networks, Inc. v. Etilize, Inc.*,
584 F.Supp.2d 1260 (N.D. Cal. 2008) ........................................................................... 5

*Constant v. Advanced Micro-Devices, Inc.*,
848 F.2d 1560 (Fed. Cir. 1988)........................................................................................ 8

*In re Bayer*,
568 F.2d 1357 (CCPA 1978) ........................................................................................... 5

*In re Hall*,
781 F.2d 897 (Fed. Cir. 1986)........................................................................................ 2

*Mahurkar v. C.R. Bard, Inc.*,
79 F.3d 1572 (Fed. Cir. 1996)........................................................................................ 2

*Open Text S.A. v. Box, Inc.*,
No. 13-cv-04910-JD, 2015 WL 4940798 (N.D. Cal. Aug. 19, 2015) .............................. 4

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
345 F.Supp.2d 431 (D. Del. 2004)................................................................................... 3

*ResQNet.com, Inc. v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010)........................................................................................ 9

*Riverwood Int'l Corp. v. R.A. Jones & Co.*,
324 F.3d 1346 (Fed. Cir. 2003)........................................................................................ 9

*SRI Int'l, Inc. v. Internet Sec. Sys. Inc.*,
511 F.3d 1186 (Fed. Cir. 2008)........................................................................................ 3, 4, 5

ii

PHILIPS' REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN OPINIONS IN DR. NIELSON'S OPENING EXPERT REPORT SERVED ON BEHALF OF HTC CONCERNING U.S. PATENT NO. 9,436,809
CASE NUMBER 4:18-CV-01885-HSG

**Rules**

Fed. R. Evid. 702 .......... 10

Fed. R. Evid. 703 .......... 5

**Treatises**

1 W. Robinson, The Law of Patents 327 (1890).......... 5

## I. INTRODUCTION

The Court should grant Philips' Motion ("Mot.") to exclude (i) the invalidity theories relying on Digital Transmission Content Protection Specification, Revision 1.2 ("DTCP 1.2") presented in Dr. Seth Nielson's April 25, 2019 opening expert report served on behalf of HTC and concerning U.S. Patent No. 9,436,809 ("the '809 patent"), and (ii) any invalidity theories that Dr. Nielson may present at trial based on other revisions of DTCP beyond revision 1.2.

HTC's Opposition ("Opp.") is incorrect in law and unpersuasive in substance. First, HTC attempts to flip the burden onto Philips, under some flawed theory that Philips must disprove some (nonexistent) presumption of public availability. HTC's argument is legally incorrect—no such presumption exists, and HTC bears the ultimate burden of showing public availability of DTCP 1.2 to substantiate Dr. Nielson's conclusions of invalidity based on such document.

It is undisputed that Dr. Nielson failed to provide any evidence to show that DTCP 1.2 was published prior to the priority date for the '809 patent. In fact, HTC openly admits that "Dr. Nielson was not asked to, <u>nor did he</u>, provide an analysis as to the public availability of DTCP 1.2." (Opp. at 2:7-8 (emphasis added)). Dr. Nielson's sole focus on the date provided on the face of DTCP 1.2 is already insufficient on its own, and fails entirely when further saddled with the remaining indicia of DTCP 1.2 not being published prior to the '809 patent's critical date.

HTC also argues that "Philips has presented no evidence that … [DTCP 1.2] is unreliable" (Opp. at 1:9-10; *see also* 2:26-3:1, 4:24-26, 5:1) and that "Philips … is in [n]o [w]ay [p]rejudiced" by Dr. Nielson's reliance on DTCP 1.2 (Opp. at 6:25-26). HTC's arguments miss the point. The relevant issue does not concern DTCP 1.2's "reliability" or any prejudice suffered by Philips, but rather whether Dr. Nielson has sufficiently shown that the document (*i.e.*, DTCP 1.2) underlying his DTCP 1.2-based invalidity opinions actually qualifies as prior art. He has not.

Finally, HTC also makes a convoluted attempt to relate DTCP 1.2 to another document, 5C Digital Transmission Content Protection White Paper ("DTCP White Paper"), relying entirely on testimony by <u>Philips'</u> expert, Dr. Michael Goodrich. (Opp. at 1:2-8, 2:24-25, 3:1-3, 4:24-26). But HTC provides no indication that Dr. Nielson ever compared these documents when forming his

opinions. And more importantly, the DTCP White Paper is wholly irrelevant to the question of whether the DTCP 1.2 reference was published prior to the '809 patent critical date.

Since HTC and Dr. Nielson have not (and cannot) establish that DTCP 1.2 qualifies as prior art, exclusion of Dr. Nielson's invalidity theories based on DTCP 1.2 is proper. And since Dr. Nielson's invalidity theory is based solely on DTCP 1.2 (not the White Paper or DTCP 1.2a), exclusion of any trial testimony by Dr. Nielson involving invalidity based on any other DTCP documents beyond DTCP 1.2 is likewise appropriate.

## II. DR. NIELSON CANNOT SATISFY HIS BURDEN OF SHOWING THAT DTCP 1.2 WAS PUBLICLY AVAILABLE

### A. HTC Improperly Attempts to Shift Dr. Nielson's Burden to Philips

Instead of arguing that Dr. Nielson met his burden of showing that DTCP 1.2 was publicly available, HTC attempts to flip the burden onto Philips, suggesting that Philips did not prove a lack of public availability. (Opp. at 1:9-11 ("Philips has presented no evidence that [DTCP 1.2] … was not publicly available as of July 11, 2001, the date on the face of the document" (emphasis added)), 5:16-17 ("While several sections of DTCP 1.2 are labeled [Draft Version 0.9], that statement does not establish that the standard was not published" (emphasis added))).

HTC's argument contradicts long-standing law. As Philips emphasized in its Motion (Mot. at 3), a party asserting invalidity bears the burden of persuasion to show, by clear and convincing evidence, that a reference qualifies as prior art to the patent-in-suit. *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 967 (Fed. Cir. 2014); *see also Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1578 (Fed. Cir. 1996). Therefore, a necessary predicate to invalidity is that the relied-upon reference must actually qualify as prior art.

"Because there are many ways in which a reference may be disseminated to the interested public, 'public accessibility' has been called the touchstone in determining whether a reference constitutes a 'printed publication.'" *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986). A reference is publicly accessible "upon a satisfactory showing that such document has been disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it." *SRI Int'l, Inc. v. Internet Sec. Sys. Inc.*,

511 F.3d 1186, 1194 (Fed. Cir. 2008) (emphasis added) (quoting *Bruckelmyer v. Ground Heaters, Inc.*, 445 F.3d 1374, 1378 (Fed. Cir. 2006)).

As Dr. Nielson proffered an invalidity opinion against various claims of the '809 patent based on DTCP 1.2 (Ex. 9[1] at ¶¶ 217-221, 288-509, 802-1026), HTC bears the burden of showing that DTCP 1.2 qualifies as prior art, and in particular, was publicly available prior to the July 26, 2002 critical date of the '809 patent. Such burden cannot be satisfied by "assuming" that a reference was made publicly available—no such "presumption" of public availability exists for DTCP 1.2 that Philips is required to disprove. When an expert relies on references that "are not prior art," exclusion of the expert's opinions as "unreliable under *Daubert*" is proper. *See*, *e.g.*, *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F.Supp.2d 431, 440-41 (D. Del. 2004).[2]

In any event, contrary to HTC's assertions, ample evidence supports that DTCP 1.2 was not disseminated or made available to the public, as discussed further below.

### B. HTC Openly Admits that Dr. Nielson Did Not Analyze Whether DTCP 1.2 Was Publicly Available

Incredibly, HTC openly admits that Dr. Nielson did not conduct an analysis regarding whether DTCP 1.2 was publicly available—instead, he simply assumed DTCP 1.2 was printed publication prior art:

> Dr. Nielson was not asked to, nor did he, provide an analysis as to the public availability of DTCP 1.2. (Opp. at 2:7-8 (emphasis added)).
>
> Dr. Nielson was not asked to provide an opinion of whether DTCP 1.2 qualified as prior art—Dr. Nielson was asked to provide his analysis of the invalidity of the '809 patent in light of DTCP 1.2 as prior art. (Opp. at 1:12-15 (emphasis added)).
>
> [T]he status of DTCP 1.2 as prior art is … [an] issue that Dr. Nielson was not asked to provide any opinions on. Rather, Dr. Nielson's opinions are with regard to the invalidity of the '809 patent in light of DTCP 1.2 as prior art. (Opp. at 5:4-6 (emphasis added)).

---

[1] Unless otherwise indicated, "Mot. Ex." refers to exhibits to Philips' Motion (D.I. 716), "Opp. Ex." refers to exhibits to HTC's Opposition (D.I. 813), and "Ex." refers to exhibits to the Declaration of Caitlyn N. Bingaman, submitted herewith.

[2] While HTC argues that *Oxford Gene Tech.* is inapposite as the expert in that case relied on a document that bore a publication date after the priority date of the challenged patent (Opp. at 5:8-11), this case is actually relevant to the ultimate issue that an expert's basis for invalidity must in fact qualify as prior art, or otherwise exclusion of the expert's opinions is proper.

The fact is, Dr. Nielson admittedly did not conduct an analysis into the public availability of DTCP 1.2, and therefore cannot present any opinions as to such topic. The issue at hand is not one of "weight", since there is nothing to weigh. Since Dr. Nielson's ultimate opinions as to invalidity based on DTCP 1.2 require this document to actually qualify as prior art, his opinions are unsupported and thus subject to exclusion under *Daubert*.

Therefore, all of Dr. Nielson's opinions predicated on the public availability of DTCP 1.2—including his opinions that '809 patent claims are invalid based on DTCP 1.2—are not supported by reliable evidence and should be excluded.

### C. HTC Fails to Identify Any Competent Evidence to Establish that DTCP 1.2 was Published Prior to the '809 Patent's Critical Date

A reference only qualifies as prior art "<u>upon a satisfactory showing</u> that such document has been disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it." *SRI Int'l*, 511 F.3d at 1194 (emphasis added) (quoting *Bruckelmyer*, 445 F.3d at 1378).

Dr. Nielson presented no facts pertaining to public availability of DTCP 1.2. None of the purported evidence in HTC's opposition could support a finding that DTCP 1.2 was published on July 11, 2001.

#### 1. Date on First Page of DTCP 1.2

In its Opposition, HTC misleadingly refers to the July 11, 2001 date on the face of DTCP 1.2 as a "publication" date. (Opp. at 1:15-17, 2:8, 5:12). In fact, the DTCP 1.2 document provides no indication as to what the July 11, 2001 date signifies. This is emblematic of the issue here—HTC and Dr. Nielson constantly "assume" that DTCP 1.2 was published on the date listed on its first page, even though they have provided no evidence that such date actually indicates public accessibility.

As Philips argued in its Motion (Mot. at 4), the fact that a document bears a date is not proof of publication. *Open Text S.A. v. Box, Inc.*, No. 13-cv-04910-JD, 2015 WL 4940798, at *6-7 (N.D. Cal. Aug. 19, 2015) ("[P]rinting dates may indicate when the document was created, but they do not prove the necessary predicate to establishing 'public accessibility'—that the document was

4

PHILIPS' REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN OPINIONS IN DR. NIELSON'S OPENING EXPERT REPORT SERVED ON BEHALF OF HTC CONCERNING U.S. PATENT NO. 9,436,809
CASE NUMBER 4:18-CV-01885-HSG

'disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it.'" (citing *SRI Int'l*, 511 F.3d at 1194; *CNET Networks, Inc. v. Etilize, Inc.*, 584 F.Supp.2d 1260, 1273-74 (N.D. Cal. 2008))). Limited distribution, even to those skilled in the art, may not amount to "publication" unless the material is otherwise so situated that "anyone who chooses may avail himself of the information it contains." *In re Bayer*, 568 F.2d 1357, 1360, 1362 (CCPA 1978) (quoting 1 W. Robinson, The Law of Patents 327 at 448 (1890)).

HTC also presents a "hearsay" argument, arguing that Dr. Nielson is allowed to rely on the date on the face of DTCP 1.2 as hearsay evidence of publication. (Opp. at 1:15-17, 6:1-6). While Fed. R. Evid. 703 may in some instances permit experts to rely on hearsay evidence if "experts <u>in the particular field</u> would reasonably rely on those kinds of facts or data in <u>forming an opinion</u> on the subject" (emphasis added), the date on the DTCP 1.2 reference does not inform Dr. Nielson's technical opinions concerning the substance of its disclosure. Further, HTC and Dr. Nielson have already conceded that Dr. Nielson did not form and is not offering any opinion regarding the prior art status (or publication) of DTCP 1.2. Rather, he blindly accepted the date on the face of DTCP 1.2 as a publication date. And, Dr. Nielson is not qualified, in any event, to offer an expert opinion on the question of publication. He is not an expert "in the particular field" of document publication, and therefore he could not rely on the date printed on the DTCP 1.2 reference under Rule 703 to offer an opinion on its publication/prior art status even if he had attempted to do so.

As such, to the extent the date on the front page of DTCP 1.2 relates to publication, it is at best an out of court statement that HTC is proposing to offer for the truth of the matter asserted. It is therefore inadmissible hearsay for that purpose. It cannot be transformed into admissible evidence by passing it through Dr. Nielson.

Therefore, the date on the face of DTCP 1.2 cannot serve as threshold evidence of publication.

**2. '469 Publication**

In an effort to cure Dr. Nielson's shortcomings regarding DTCP 1.2, HTC offers U.S. Patent Pub. 2006/0018469 ("'469 publication"), a publication of a U.S. patent application filed on October

5

PHILIPS' REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN OPINIONS IN DR. NIELSON'S OPENING EXPERT REPORT SERVED ON BEHALF OF HTC CONCERNING U.S. PATENT NO. 9,436,809
CASE NUMBER 4:18-CV-01885-HSG

16, 2013 with a priority claim to October 16, 2002. (Opp. at 6:7-13 (citing Opp. Ex. 4)). HTC's reliance on the '469 publication is misplaced.

First, ASUS did not disclose the '469 publication during fact discovery and Dr. Nielson did not address it in his report[3]. Therefore, ASUS should not be permitted to interject the '469 publication into the case at this juncture.

Regardless, the '469 publication is itself hearsay and cannot establish that DTCP 1.2 was published on July 11, 2001, or at any time prior to the July 26, 2002 critical date of the '809 patent. At most, the '469 publication indicates that a document entitled "Digital Transmission Copy Protection Specification—Vol. 1 (Informational version)—Rev. 1.2—Jul. 11, 2001" may have been available at a particular Internet address as of the filing date for the '469 publication (*i.e.*, October 16, 2003)[4]. While the '469 publication's reference to DTCP includes a revision number and date matching that information in Dr. Nielson's report, this only indicates that the documents referenced in the '469 publication and in Dr. Nielson's report may be the same document. Again, the July 11, 2001 date provides no indication of publication on such date or that the Internet address was active on that date.

Given that the '469 publication was filed on October 16, 2003 (*i.e.*, subsequent to the July 26, 2002 critical date of the '809 patent), the information within the '469 publication, *at best*, suggests that DTCP 1.2 may have been available on the Internet after the '809 patent's critical date. This is not clear and convincing evidence that DTCP 1.2 was publicly available prior to the '809 patent's critical date. *See, e.g., Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1349-50 (Fed. Cir. 2016) (document was not publicly accessible because no evidence showed that an interested person would be aware of the Internet address or that an Internet search would have located the document). Therefore, Dr. Nielson's assumption that DTCP 1.2 was publicly available (and therefore his opinions of invalidity based on DTCP 1.2) is not supported by reliable evidence.

---

[3] *See* Ex. 9, App'x B.

[4] Philip counsel's attempt to access the Internet address referenced in the '469 publication resulted only in an error message indicating that the file could not be found. (Ex. 10).

**3. Listing of Companies and DTCP Name**

Finally, HTC asserts that the cover of DTCP 1.2 and another DTCP document, the DTCP White Paper, list the same five companies and refer to "Digital Transmission Content Protection" and "5C", and argues that this somehow provides "indicia of reliability." (Opp. at 6:14-24).[5]

But, this observation is no evidence of whether (or when) DTCP 1.2 was published. Certainly, it does not establish publication prior to the '809 patent's critical date. At best, this information suggests that DTCP 1.2 may have been written by the same entity as the DTCP White Paper.

**D. HTC Ignores or Mischaracterizes Other Evidence Indicating That DTCP 1.2 is Not Prior Art**

In addition to the above-discussed evidence being deficient to establish that DTCP 1.2 was publicly available prior to the '809 patent's critical date, HTC ignores or mischaracterizes all the evidence indicating that DTCP 1.2 was not publicly available.

**1. DTCP Printing History**

In its Motion, Philips noted that the current publicly available revision 1.71 of DTCP ("DTCP 1.71") includes a "Printing History" identifying prior revisions of DTCP—neither "revision 1.2" nor the July 11, 2001 date (that Dr. Nielson associated with DTCP 1.2) appear within the DTCP 1.71 Printing History. (Mot. at 5:9-19 (citing Mot. Ex. 7; Mot. Ex. 8 at 2)). As Philips noted, the DTCP 1.71 Printing History transitions directly from revision 1.1 (associated with a July 14, 2000 date) to revision 1.2a (associated with a February 25, 2002 date). (*Id*. (citing Mot. Ex. 8 at 2; Mot. Ex. 2 at 92:5-96:9)).

HTC's Opposition does not dispute the existence or the accuracy of the DTCP 1.71 Printing History, and in fact entirely ignores this evidence.

**2. "Draft Version 0.9" Labels Within DTCP 1.2**

In its Motion, Philips noted that several sections of DTCP 1.2 are labeled "Draft Version 0.9" in brackets. (Mot. at 5:3-8 (citing Mot. Ex. 3 at 47, 63 (3 instances of draft label), 66 (3 instances of draft label), 70)). Philips asserted that these "Draft Version 0.9" labels indicate DTCP 1.2, at most,

[5] HTC also alleges that DTCP 1.2 is "substantively identical to" the DTCP White Paper (Opp. at 6:20). Philips' response to this argument is presented in Section III, *supra*.

7

PHILIPS' REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN OPINIONS IN DR. NIELSON'S OPENING EXPERT REPORT SERVED ON BEHALF OF HTC CONCERNING U.S. PATENT NO. 9,436,809
CASE NUMBER 4:18-CV-01885-HSG

had at been disseminated only amongst limited individuals involved in its preparation, rather than in a public fashion. (*Id.*)

HTC's Opposition acknowledges the existence of these "Draft Version 0.9" labels within DTCP 1.2, but speculates that the purpose of these labels "is to allow developers to identify sections of the specification that are still under development." (Opp. at 5:23-25 (emphasis added)). HTC also argues that "if these DTCP specifications were not published, then this Draft admonition would not be needed." (*Id.* at 5:25-27).

HTC's argument misses the point—the publication requirement requires public availability, not just accessibility by a limited, closed group of individuals (*e.g.*, specific "developers"). *See Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1569 (Fed. Cir. 1988) ("Accessibility goes to the issue of whether interested members of the relevant public could obtain the information if they wanted to." (emphasis added)). Regardless, even if DTCP 1.2's "Draft Version 0.9" labels were intended for a targeted audience (*e.g.*, specific developers), this does not indicate that DTCP 1.2 was actually disseminated to that closed target audience group, let alone made available to the public (and let alone prior to the '809 patent's critical date).

## III. THE DTCP WHITE PAPER IS IRRELEVANT TO WHETHER DTCP 1.2 WAS PUBLICLY AVAILABLE PRIOR TO THE '809 PATENT'S CRITICAL DATE

In its Opposition, HTC attempts to construct a convoluted relationship between DTCP 1.2 and the DTCP White Paper (relying entirely on statements by Philips' expert, Dr. Goodrich), alleging the DTCP White Paper is "substantively identical" to DTCP 1.2. (Opp. at 1:2-8, 1:21-24, 2:24-25, 3:1-3, 4:24-26). But, this is entirely irrelevant on this motion. The question here is whether there is any admissible evidence that could prove DTCP 1.2 (not the White Paper) was published prior to the '809 patent's critical date. HTC cannot prove DTCP 1.2 was published simply by comparing it to a different document. Any purported similarities between the DTCP White Paper and DTCP 1.2 are irrelevant to whether (and when) DTCP 1.2 qualifies as prior art.

HTC's other arguments likewise miss the point. HTC argues that "[t]ellingly, Philips and Dr. Goodrich have never attacked the reliability or the public availability of the DTCP White Paper." (Opp. at 4:21-23). This is a *non sequitur*, given the fact that Dr. Nielson has offered no opinion

based on the DTCP White Paper. Further, HTC never mentioned the DTCP White Paper in the context of invalidity until its Opposition to this Motion, nor did HTC identify the DTCP White Paper in its Patent L.R. 3-3 or 3-4 disclosures. (Mot. Ex. 4). As HTC bears the burden of establishing, by clear and convincing evidence, that a document qualifies as prior art, HTC's argument that Philips should have rebutted a nonexistent argument is nonsensical.

HTC further notes that Philips cited the DTCP White Paper in an Information Disclosure Statement ("IDS") submitted to the U.S. Patent and Trademark Office ("PTO" or "USPTO") during prosecution of the '809 patent family. (Opp. at 3:1-3, 4:20-21). But, again, this is wholly irrelevant to the issue here, which is whether there is any evidence that the DTCP 1.2 reference (not the DTCP White Paper) was published prior to the '809 patent's critical date. HTC cannot establish that DTCP 1.2 is prior art by proving that the DTCP White Paper was published, regardless of any similarities between the two. And, even if it could, the mere fact that Philips cited the DTCP White Paper in an IDS does not prove that the DTCP White Paper is prior art to the '809 patent. A patent applicant does "not convert [documents] into printed publication prior art by including them with the IDS submitted to the PTO," and such "submission of [documents] [i]s not an admission that they were publicly available publications." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 866 (Fed. Cir. 2010) (emphasis added); *see also Abbott Labs. v. Baxter Pharm. Prods., Inc.*, 334 F.3d 1274, 1279 (Fed. Cir. 2003) ("mere submission of an IDS to the USPTO does not constitute the patent applicant's admission that any reference in the IDS is material prior art" (emphasis added)); *id.* (citing *Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346 (Fed. Cir. 2003)) ("Under certain circumstances, even an express representation that a reference cited in an IDS is prior art to pending claims is not sufficient to create prior art by admission").

Ultimately, the DTCP White Paper does not (and cannot) cure Dr. Nielson's deficiencies in establishing that DTCP 1.2 was publicly available and therefore qualifies as prior art to the '809 patent. HTC's attempt to play a shell game using DTCP documents should be shut down.

## IV. HTC ADMITS TO ASKING DR. NIELSON TO PRESENT AN INVALIDITY OPINION BASED SPECIFICALLY ON REVISION 1.2 OF DTCP

In its Opposition, HTC confirms that it directed Dr. Nielson to offer invalidity opinions based specifically on revision 1.2 of DTCP. (Opp. at 1:13-14 ("Dr. Nielson was asked to provide his analysis of the invalidity of the '809 patent in light of DTCP 1.2 as prior art" (emphasis added)), 5:4-6 ("[T]he status of DTCP 1.2 as prior art is a legal and factual issue that Dr. Nielson was not asked to provide any opinions on. Rather, Dr. Nielson's opinions are with regard to the invalidity of the '809 patent in light of DTCP 1.2 as prior art" (emphasis added))).

HTC provides no justification as to why it asked Dr. Nielson to form invalidity opinions based on a document not identified in its Patent L.R. 3-3 or 3-4 disclosures. Nonetheless, HTC's admissions in this regard—that Dr. Nielson's opinions are limited to revision 1.2 of DTCP—should alone be sufficient in granting Philips' sought relief of excluding Dr. Nielson's opinions concerning any invalidity theories that Dr. Nielson may present at trial based on other revisions of DTCP beyond revision 1.2 (Mot. at 1 (Relief Sought, item (ii))).

## V. HTC'S "LACK OF PREJUDICE" ARGUMENT MISSES THE POINT

HTC argues that Philips has not suffered prejudice as a result of Dr. Nielson's reliance on DTCP 1.2. (Opp. at 6-7). While Philips disagrees as to a lack of prejudice, the issue at hand does not implicate prejudice, but instead is based on whether Dr. Nielson's opinions are the "product of reliable principles and methods" and "based on sufficient facts or data." Fed. R. Evid. 702. Dr. Nielson's opinions in his expert report—that various '809 patent claims are invalid based on DTCP 1.2—fail this standard under *Daubert*, by failing to establish that DTCP 1.2 was publicly available prior to the '809 patent's critical date and therefore qualifies as prior art. Whether or not Philips has suffered prejudice as a result of HTC's untimely introduction of DTCP 1.2 is beside the point.

## VI. CONCLUSION

For the reasons set forth herein and in its initial Motion, Philips respectfully requests that the Court exclude (i) the invalidity theories relying on DTCP 1.2 presented in Dr. Seth Nielson's April 25, 2019 opening expert report served on behalf of HTC and concerning the '809 patent, and (ii) any invalidity theories that Dr. Nielson may present at trial based on other revisions of DTCP beyond revision 1.2.

10

PHILIPS' REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN OPINIONS IN DR. NIELSON'S OPENING EXPERT REPORT SERVED ON BEHALF OF HTC CONCERNING U.S. PATENT NO. 9,436,809
CASE NUMBER 4:18-CV-01885-HSG

Dated: October 17, 2019

By: /s/ John D. Carlin
Chris Holland (SBN 164053)
cholland@hollandlawllp.com

HOLLAND LAW LLP
220 Montgomery Street, Suite 800
San Francisco, CA 94104
Tel: (415) 200-4980
Fax: (415) 200-4989

John D. Carlin (*admitted pro hac vice*)
jcarlin@venable.com

VENABLE LLP
1290 Avenue of the Americas
New York, New York 10104-3800
Tel: (212) 218-2100
Fax: (212) 218-2200

*Attorneys for Plaintiffs*

11

PHILIPS' REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN OPINIONS IN DR. NIELSON'S OPENING EXPERT REPORT SERVED ON BEHALF OF HTC CONCERNING U.S. PATENT NO. 9,436,809
CASE NUMBER 4:18-CV-01885-HSG