# EXHIBIT 5

# Expert Report on U.S. Patent 7,529,806

Dr. Dick C.A. Bulterman

Date: 25 April 2019

1    This element is substantively identical to the first element of Claim 1:

2        "A method of, at a client device, forming a media
3        presentation from multiple related files, including
4        a control information file, stored on one or more
5        server computers within a computer network, the
6        method comprising acts of:"

7    except that Claim 12 claims a device. As a result, all elements of the claim must be

8    found on one device. (That is also true for Claim 1, which claims "A method . . . at

9    a client device.") The POSA would understand this clause to require a software or

10   hardware entity that was able to construct a media presentation from a collection of

11   files that were stored across a network. In addition to requiring that content be

12   distributed across a set of one or more servers, it requires that the client device can

13   support network-based access methods to address servers in the network.

14   Claim 12 continues (6:44):

15       means for downloading files to the client device;

16   The Court has not construed this claim. It appears in "means-plus-function"

17   form, with the word "means" followed by the function, "for downloading files to

18   the client device." Still, Philips alleges in its infringement contentions that this

19   term is not a means-plus-function term. In the alternative, if it is a means-plus-

20   function term, Philips alleges that the function is "downloading files to the client

21   device" and the corresponding structure is:

22       "single purpose media player or multipurpose
23       computing device programmed with software to perform
24       the function, such as the algorithm disclosed in
25       Figure 1 and at 2:57-63, 3:3-7, 3:14-30 and 3:57-
26       4:14." [A.57].

27   But the "algorithm" cited by Philips is not an "algorithm" for downloading; it is

28   the same algorithm of Figure 1 that we have already discussed, and the cited

1   portions simply repeat that the client device downloads various files, or reference

2   boxes in Figure 1 that include "download" or "downloading."

3       As I have already noted, the '806 patent generally acknowledges that

4   "downloading" is was well known, and even the portions of the specification that

5   Philips cites here do so. For example, 3:3-7 the specification states that "In step

6   106, the first file segment is downloaded for play out. Communicating with a

7   remote server is a well-known technology. For example, Java 2.0 provides a set of

8   standard classes that enable retrieving a remote file into a buffer or as a stream."

9   Similarly, at 3:14-30, the specification states that:

```
10      "In step 110, the next file segment is downloaded at
11      the client and stored in a buffer while the previous
12      file segment, here the first file segment, is being
13      played out. One option is to have the downloaded
14      files buffered in a sequence or linked list of
15      buffers. This functionality is typically provided by
16      the operating system of the client."
```

17       Thus, there are three ways of looking at this claim: it is not a means-plus-

18   function claim (as Philips contends in the first instance); it is a means-plus-

19   function claim and has the structure Philips finds (as Philips contends in the

20   alternative); or it is a means-plus-function claim and has some other structure (or

21   no structure). I will examine each of these in turn.

22       If this is not a means-plus-function claim, then the POSA would understand

23   "downloading" to mean the same as it does in Claim 1. Thus, the POSA would

24   understand this claim to require downloading, a well-known concept as

25   acknowledged by the specification, to the client device.

26       If this is a means-plus-function claim and has the structure Philips finds, that

27   structure again includes only the well-known concepts already acknowledged by

Expert Report, D. C. A. Bulterman                                                137

1    the specification, as the specification includes no discussion of downloading

2    beyond acknowledging those well-known concepts.

3         Therefore, if either of Philips' arguments is correct, this term merely repeats

4    the well-known concepts of downloading available on September 27, 1999.

5         I do not agree, however, that Philips' arguments are correct. Instead, my

6    opinion is that this term does not specify corresponding structure and is therefore

7    indefinite.

8         I understand that use of the word "means" in a claim term creates a rebuttable

9    presumption that § 112 ¶ 6 applies to the term. I understand that if a claim term is

10   subject to application of § 112 ¶ 6, the next step is to determine whether the

11   specification discloses sufficient structure that corresponds to the claimed function

12   or functions. Structure in the specification qualifies as corresponding structure if

13   the intrinsic evidence clearly links or associates that structure to the function

14   recited in the claim. Even if the specification discloses corresponding structure, the

15   disclosure must be of adequate corresponding structure to achieve the claimed

16   function. If a person of ordinary skill in the art would be unable to recognize the

17   structure in the specification and associate it with the corresponding function in the

18   claim, a means-plus-function clause is indefinite. I understand that, for claims

19   requiring a special purpose computer, the structure disclosed in the patent

20   specification typically includes an algorithm for performing the claimed function. I

21   understand that the algorithm may be expressed as a mathematical formula, in

22   prose, or as a flow chart. If the patent specification fails to disclose a sufficient

23   algorithm, then the claim lacks corresponding structure and is indefinite.

24        Under this standard, "means for downloading files to the client device" lacks

25   corresponding structure and is indefinite. It uses the word "means," creating a

rebuttable presumption that § 112 ¶ 6 applies, and I see no reason to rebut this presumption.  The specification does not identify any structure corresponding to the "means for downloading." (I agree with Philips that the function is "downloading files to the client device.") There are two independent reasons for this: hardware and software.

First, the specification does not identify any hardware for downloading. Quite the contrary, it acknowledges that the hardware it identifies does not have this capability. The specification provides two examples of a "client":

```
"A first example is a hardware-based single-purpose
device, similar to the Rio MP3 player by the Diamond
Corp. In order to accommodate the method of the
invention, the player needs, in addition, an XML
parser, the ability to interpret XML and the ability
to download and play-out content segments
sequentially. A second example is to implement the
method of the invention as a software application on
a multi-purpose computing device, e.g., a PC or a
set top box. The device has the software
implementing the functionalities mentioned above. In
a graphics-rich environment, multiple GUI's are
represented to the user for further customization."
(4:33-44.)
```

Neither of these examples includes any hardware for downloading, such as a modem or other interface. To the contrary, they acknowledge it is not present. The first example is "a hardware-based single-purpose device, similar to the Rio MP3 player by the Diamond Corp.," which did not include a modem or any device for downloading. Instead, to load media onto a Rio device, a user would have to download it separately, and then transfer it to the Rio device using special-purpose software. Indeed, the specification acknowledges that, "[i]n order to accommodate the method of the invention, the player needs, in addition, . . . the ability to

1    download and play-out content segments sequentially." The specification thus

2    acknowledged that the Rio did not include this functionality.

3        The second example was to "implement the method of the invention as a

4    software application on a multi-purpose computing device, e.g., a PC or a set top

5    box. The device has the software implementing the functionalities mentioned

6    above. In a graphics-rich environment, multiple GUI's are represented to the user

7    for further customization." Again, there is no reference to a modem or any other

8    way for the "multi-purpose computing device" to perform the function of

9    downloading. This remains true even though the specification discusses other

10   details of the "multi-purpose computing device," including the possibility of a

11   GUI.

12       Philips' proposed structure does not address this failure. It states that sufficient

13   structure is a "single purpose media player or multipurpose computing device

14   programmed with software to perform the function, such as the algorithm disclosed

15   in Figure 1 and at 2:57-63, 3:3-7, 3:14-30 and 3:57-4:14," but does not explain

16   how either the "single purpose media player" or "multipurpose computing device"

17   of the specification has any *hardware* to perform the function. Without including

18   hardware for downloading, the specification cannot include structure for

19   downloading.

20       I understand that, for claims requiring a special purpose computer, the structure

21   disclosed in the patent specification typically includes an algorithm for performing

22   the claimed function. I understand that the algorithm may be expressed as a

23   mathematical formula, in prose, or as a flow chart. If the patent specification fails

24   to disclose a sufficient algorithm, then the claim lacks corresponding structure and

25   is indefinite.

1    The specification describes no algorithm for downloading. To the contrary, it

2    merely states that downloading is well-known. The portions cited by Philips

3    establish this failure.

4        At (2:57-63):

5        "In step 102, the client contacts the server selects
6        the particular content file and downloads the
7        control information that enables the retrieving and
8        playing out of the segmented file. The control
9        information describes the locations, e.g., URLs, and
10       size of the various file segments, and provides,
11       e.g., UI functionalities at the client. In this
12       example, the control information is coded in XML."

13   This excerpt provides no algorithm for downloading and does not discuss

14   downloading beyond the word "downloading" itself.

15       At (3:3-7):

16       "In step 106, the first file segment is downloaded
17       for play out. Communicating with a remote server is
18       a well-known technology. For example, Java 2.0
19       provides a set of standard classes that enable
20       retrieving a remote file into a buffer or as a
21       stream."

22   This excerpt provides no algorithm for downloading, and directs the reader to Java

23   2.0. I have been instructed that this is insufficient to disclose structure, as the

24   patent specification must itself disclose a sufficient algorithm.

25       At (3:14-30):

26       "In step 110, the next file segment is downloaded at
27       the client and stored in a buffer while the previous
28       file segment, here the first file segment, is being
29       played out. One option is to have the downloaded
30       files buffered in a sequence or linked list of
31       buffers. This functionality is typically provided by
32       the operating system of the client. For example, MS
33       Windows family of products creates a memory buffer

```
 1        associated with the file every time an API call
 2        opens the file. Alternatively, in a thread- and/or
 3        process-rich environment, several threads and/or
 4        processes can be organized to independently retrieve
 5        file segments, while playing out the content of
 6        other segments. Working with threads is a skill
 7        common for software engineers. For example, Java 2.0
 8        from Sun Microsystems provides classes supporting
 9        multiple threads. Similarly, Microsoft SDK for the
10        Windows family of products makes thread- or process-
11        related functionalities available to programmers."
```

12   This excerpt provides no algorithm for downloading and does not discuss

13   downloading beyond the word "downloading" itself, despite discussing other

14   aspects of the software, such as threading, in more detail. In addition, this excerpt

15   directs the reader to unspecified external sources regarding the unknown

16   "operating system of the client." This is insufficient to disclose structure, as the

17   patent specification must itself disclose a sufficient algorithm.

18        At (3:57-4:14):

```
19        "When the client has selected the proper file, either
20        the one of which the first part is represented here
21        as in the preferred format or the one in the
22        alternative format, the content of the first part is
23        downloaded from the location specified and playing
24        out is started automatically under application
25        control. Combining multiple sequenced inputs is well
26        understood in the industry. For example, Java JDK
27        v.1.2 from Sun Microsystems, Inc. provides a class
28        java.io.SequenceInputStream as a standard component
29        of the io class library. SequenceInputStream
30        represents the logical concatenation of other input
31        streams. It starts out with an ordered collection of
32        input streams and reads from the first one until end
33        of file is reached, whereupon it reads from the
34        second one, and so on, until end of file is reached
35        on the last of the contained input streams. An
36        object of the java.io.SequenceInputStream class can
37        be initialized by, e.g., enumeration of objects of
38        the InputStream class. This abstract class is the
```

```
1     superclass of all classes representing an input
2     stream of bytes, including the class
3     FileInputStream. In case of the downloading of
4     multiple file parts, an application can create
5     instances of the FileInputStream class from local
6     temporary files into which the parts are being
7     downloaded. The contents of those multiple local
8     files will be supplied to the Sequencer. The
9     rendering component of the application will read the
10    information out it as if it were just a single local
11    file."
```

12   This excerpt provides no algorithm for downloading and does not discuss

13   downloading beyond the word "downloading" itself, despite discussing other

14   aspects of the software, such as buffering, in more detail. In addition, this excerpt

15   directs the reader to the Java SDK. This is insufficient to disclose structure, as the

16   patent specification must itself disclose a sufficient algorithm.

17        For all these reasons, the specification does not disclose corresponding

18   structure for the function "downloading files to the client device." As a result, this

19   limitation is indefinite, and claim 12 is invalid. Nonetheless, for the rest of this

20   report, I will analyze claim 12 as if one of Philips' arguments is correct, in which

21   case this term merely repeats the well-known concepts of downloading available

22   on the priority date.

23        Claim 12 continues with the text (6:45):

24        means for parsing a control information file;

25        The Court construed "means for parsing a control information file" as a means-

26   plus-function term where the function is "parsing a control information file" and

27   the corresponding structure is "single purpose media player or multipurpose

28   computing device programmed with software to perform the function, such as the

29   algorithm disclosed in Figure 1 and at 2:53-3:2." Figure 1 is as follows:

Expert Report, D. C. A. Bulterman                                          143

```
1      with the media presentation, retrieving a next file;
2      and

3      using content of the next file to continue the media
4      presentation.
```

5

6    These limitations are substantively identical to limitations of claim 1, discussed

7  above. As such these limitations are obvious for the same reasons that those

8  limitations are obvious. Thus, even if limitations of claim 12 are not found to be

9  optional, claim 12 is also obvious over the Real G2 Player implementation of

10  SMIL 1.0 because the Real G2 Player discloses each limitation of claim 12, and

11  limitations of claim 12 would have been obvious to the POSA.

## 10   CONCLUSION

13  In this report, I have provided background information and examples that support

14  my opinion that Claims 1 and 12 of the '806 patent are anticipated or rendered

15  obvious by at least three SMIL 1.0 Players that were widely available by the

16  priority date: the GRiNS 0.5 player, the GRiNS 1.0 player and the RealSystem G2

17  Beta 1 Player.  In addition, I have explained why Claim 12 is indefinite.

18    I have not considered whether other claims in the '806 patent are either

19  anticipated or obvious, as these claims have not been asserted in the legal action

20  for which my opinion has been requested. I will provide additional opinions on

21  these claims if requested.

22

23  _____

24  Dick C.A. Bulterman