Michael P. Sandonato (admitted *pro hac vice*)
msandonato@venable.com
John D. Carlin (admitted *pro hac vice*)
jcarlin@venable.com
Natalie Lieber (admitted *pro hac vice*)
ndlieber@venable.com
Christopher M. Gerson (admitted *pro hac vice*)
cgerson@venable.com
Jason M. Dorsky (admitted *pro hac vice*)
jmdorsky@venable.com
Stephen K. Yam (admitted *pro hac vice*)
syam@venable.com

Jonathan M. Sharret (admitted *pro hac vice*)
jsharret@venable.com
Joshua D. Calabro (admitted *pro hac vice*)
jdcalabro@venable.com
Daniel A. Apgar (admitted *pro hac vice*)
dapgar@venable.com
Robert S. Pickens (admitted *pro hac vice*)
rspickens@venable.com
Sean M. McCarthy (admitted *pro hac vice*)
smccarthy@venable.com
Caitlyn N. Bingaman (admitted *pro hac vice*)
cnbingaman@venable.com

VENABLE LLP
1290 Avenue of the Americas
New York, New York 10104-3800
Tel: (212) 218-2100
Fax: (212) 218-2200

Chris Holland (SBN 164053)
cholland@hollandlawllp.com
Lori L. Holland (SBN 202309)
lholland@hollandlawllp.com
Ethan Jacobs (SBN 291838)
ejacobs@hollandlawllp.com

HOLLAND LAW LLP
220 Montgomery Street, Suite 800
San Francisco, CA 94104
Tel: (415) 200-4980
Fax: (415) 200-4989

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In Re Koninklijke Philips Patent Litigation | Case No. 4:18-cv-01885-HSG<br><br>**REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN OPINIONS IN DR. BULTERMAN'S REBUTTAL EXPERT REPORT SERVED ON BEHALF OF ASUS CONCERNING U.S. PATENT NO. 7,529,806**<br><br>JURY TRIAL DEMANDED<br><br>███████████████<br>██████████ |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. CORRECTING THE FACTUAL RECORD..................................................................... 3

    A. Philips Subpoenaed ███████████ in July 2017 But Google Did Not Begin Production Until February 15, 2018 ............................................. 3

    B. Philips Complained About Multiple Deficiencies in the Production of ███████████ but Google Did Not Correct the Production Until May 24, 2018 ..................................................................................................... 3

    C. Philips Moves the Court to Amend its Infringement Contentions to Include the Belatedly Produced ███████████ and the Court Grants Permission ............................................................................................................ 4

III. ARGUMENT .................................................................................................................. 4

    A. Courts in this District Reject Incomplete and "Implicit" Disclosures as "the Purpose of Requiring Parties to Disclose the Basis for Their Contentions is to Make Them Explicit and Streamline Patent Litigation"................. 4

    B. Asus's Attempt to Shift the Blame to Philips for Not Complaining Earlier About its Disclosures is Contrary to the Rules of Discovery ................................... 8

    C. Asus Knowingly Withheld Full Disclosure of its ███████ Theory and ███████████ Theory From its Noninfringement Contentions............................ 9

    D. Philips Provided Detailed Contentions Disclosing its Theories, But Asus Did Not Meet its End of the Bargain to Provide an Equivalent Level of Detail......................................................................................................................... 11

    E. Prejudice is Inherent When a Party Waits to Disclose its Theories Until Long After Discovery Closes.................................................................................. 14

IV. CONCLUSION............................................................................................................. 15

i

REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN OPINIONS IN DR. BULTERMAN'S REBUTTAL EXPERT REPORT SERVED ON BEHALF OF ASUS CONCERNING U.S. PATENT NO. 7,529,806
CASE NUMBER 4:18-CV-01885-HSG

# TABLE OF AUTHORITIES

CASES

*Asia Vital Components Co., Ltd. v. Asetek Danmark A/S*,
     377 F. Supp. 3d 990 (N.D. Cal. 2019) ............................................................... 6, 8, 14, 15

*Electracash, Inc. v. Kahn*,
     05-CV-1135-RSWL, 2006 WL 8434675 (C.D. Cal. July 10, 2006) ........................................ 9

*K. P. v. Santa Clara Cty. Office of Educ.*,
     No. 5:15-CV-01512-EJD, 2016 WL 5930641 (N.D. Cal. Oct. 12, 2016) .............................. 15

*KlausTech, Inc. v. Google LLC*,
     No. 10-cv-05899-JSW (DMR), 2018 WL 5109383 (N.D. Cal. Sept. 14, 2018) ................ 5, 14

*Looksmart Group, Inc. v. Microsoft Corp.*,
     386 F. Supp. 3d 1222 (N.D. Cal. 2019) ................................................................................ 6

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
     14-CV-3657-SI, 2019 WL 1865921 (N.D. Cal. April 25, 2019) ....................................... 5, 14

*Thought, Inc. v. Oracle Corp.*,
     No. 12-CV-05601-WHO, 2016 WL 3230696 (N.D. Cal. June 13, 2016) ............................... 5

STATUTES

Fed R. Civ. P. 37(c)(1) ............................................................................................................. 10

Fed. R. Civ. P. 33(b)(1)(B) ....................................................................................................... 10

Fed. R. Civ. P. 37(a)(4) .............................................................................................................. 9

## I. INTRODUCTION

Asus's Opposition Brief ("Opp.") resorts to sarcasm and derision instead of identifying a proper justification for its discovery deficiencies. The facts here are clear and undisputed. Philips served three interrogatories seeking Asus's noninfringement contentions relating to the accused YouTube application.[1] Asus never answered two of them with respect to YouTube. As to the third (Rog No. 4), even after the Court ordered Asus to supplement its response, the only information Asus provided regarding its "▮▮▮▮" theory was a single sentence: "In addition, Philips' source-code contentions do not correctly describe the functionality of the YouTube application, at least by failing to include the ▮▮▮▮ functionality of YouTube." Asus does not dispute this. *See* Opp. at 6 (citing Asus's Response to Philips' Rog No. 4 which includes this exact sentence and nothing more). There can be no debate that this lone sentence did not disclose Asus's real theory that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

As to Asus's ▮▮▮▮▮▮▮▮ theory, its Response to Philips' Interrogatory No. 4 does not include the term ▮▮▮▮ at all and the only thing Asus says in relation to Philips' allegation that the ▮▮▮▮▮▮▮▮ is a control information file is that the YouTube application "do[es] not have a 'control information file.'" Again, Asus does not dispute this. *Id.* (citing Asus's Response to Philips' Rog No. 4 which includes this exact sentence and nothing more). There is no genuine argument that this sentence disclosed Asus's actual theory that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

---

[1] *See* Philips' Interrogatory ("Rog") No. 4 ("[D]escribe with particularity, and identify all documents and persons with information concerning, all factual and legal bases for Your contention (if any) that the manufacture, sale, offer for sale, use, and/or importation of that Relevant Product by or for You does not infringe…"); Rog No. 6 ("[S]tate whether You contend there is a Material Difference between each version of each Relevant Product…"); and Rog No. 15 ("[I]f You contend that the description in the Infringement Contentions of either the operation of the Accused Product or where each claim limitation of the Asserted Claims is present in the Accused Product is incorrect, state all factual and legal bases supporting your contention, including an identification of any documents, source code, things, and/or witnesses that You intend to rely upon to support such contentions…").

Despite these uncontested facts, Asus maintains its disclosures were sufficient because Philips' expert, Dr. Nathaniel Polish, "specifically addressed both arguments in his opening report" regarding infringement. *Id.* at 1. This misstates the record. Asus cites to two subsections of Dr. Polish's report, entitled "Argument 6: Failure to Include the '█████' Functionality of YouTube" and "Argument 2: The ██████████ is not a 'Control Information File.'" *See* Opp. at 6-7. In each, Dr. Polish *specifically* states that he is **unsure** what Asus's noninfringement theory is. In the subsection regarding ████████ Dr. Polish remarks, "ASUS does not once explain what '█████' is or why a failure to include the '█████' functionality of YouTube invalidates the infringement arguments or otherwise leads ASUS to conclude that the source code contentions are incorrect or do not correctly describe the functionality of the YouTube application." Ex. 23 at ¶ 337. In the subsection relating to the ████████, Dr. Polish reiterates why he believes the ████████ is a control information file and states, "Should ASUS identify at a later time any information that would explain why the ██████████████ are not a 'control information file' or otherwise affect my opinion, I reserve the right to respond." *Id.* at ¶326. Dr. Polish necessarily could not respond to any noninfringement theory relating to ████████, because Asus never disclosed one; its response to Philips' Rog No. 4 never mentioned "█████" even once.

Asus nevertheless maintains that its tactics of answering contention interrogatories with nothing more than conclusory statements (stating a claim element is missing with no explanation as to why it believes it is missing) is wholly appropriate and insists that the Court bless its decision to "hide the ball." Asus's position is contrary to this District's law and defeats the purpose of discovery. Disclosure of a noninfringement theory requires revealing *why* the party does not infringe—saying "no infringement" is not enough, disclosure requires saying "no infringement, **because** . . . ." If simply saying "no" were adequate there would be no need for contentions since if the answer were anything but "no" the parties would not be litigating the issue of infringement. Asus discounts the need to provide the "why" and the "because" of its theories, arguing that these are mere "details" that need not appear in contentions under applicable law. Opp. at 8-10. This is not the law in this District and this Court should not permit such sharp practice in which a party discloses only the bare minimum it believes it can get away with during fact discovery while it

purposefully withholds the key parts of its theories until rebuttal expert reports. If this became universal practice it would undermine the purpose of discovery to prevent "trial by ambush" where one does not learn of the other's factual and legal allegations until it is too late to properly respond.

## II. CORRECTING THE FACTUAL RECORD

Asus's Opposition Brief includes a long recitation of this litigation's history that is largely irrelevant to this motion but is also in need of substantial correction, provided below.

### A. Philips Subpoenaed ▓▓▓▓▓ in July 2017 But Google Did Not Begin Production Until February 15, 2018

Philips subpoenaed ▓▓▓▓▓ in July 2017. Mot. Ex. 4[2] at pp. 20-21 (*see* document request nos. 3 and 11). Production ▓▓▓▓▓ did not begin until February 2018. Opp. at 2. As Asus's counsel is aware (because it is also Google's counsel), Philips spent months chasing Google for production of the ▓▓▓▓▓:

- November 15, 2017: Google counsel writes to Philips indicating it "should have a response no later than early next week" regarding production of ▓▓▓▓▓. Ex. 11.
- November 27, 2017: Hearing nothing, Philips asks Google for a status update. Ex. 12.
- January 21, 2018: Philips writes to Google that it "represent[ed] that Google was actively collecting the ▓▓▓▓▓ . . . It is now a month and a half later and no ▓▓▓▓▓ has been produced." *Id.*
- February 6, 2018: Philips again asks Google for a status update. *Id.*
- February 14, 2018: Philips again asks Google for a status update. *Id.*
- February 15, 2018: Google finally begins production of ▓▓▓▓▓ Ex. 13.

### B. Philips Complained About Multiple Deficiencies in the Production of ▓▓▓▓▓ but Google Did Not Correct the Production Until May 24, 2018

There were several problems with Google's February 15, 2018 ▓▓▓▓▓ production and production was not finally completed until May 2018. It is not true that "[w]ith one exception, Philips accepted Google's ▓▓▓▓▓ as sufficient." Opp. at 3. Asus's counsel knows (because it is also Google's counsel) that Philips identified multiple

---

[2] Unless otherwise indicated, "Mot. Ex." refers to exhibits to Philips' Motion (D.I. 766 (correction of D.I. 727)), "Opp. Ex." refers to exhibits to Asus's Opposition (D.I. 832), and "Ex." refers to exhibits to the Declaration of Caitlyn N. Bingaman, submitted herewith.

deficiencies in the ▇▇▇ production:

- March 22, 2018: Philips complains to Google that:
    - "For the produced ▇▇▇ have not been produced."; and
    - "For ▇▇▇ Ex. 14.
- April 19, 2018: Philips asks Google to meet and confer after not receiving any response. Philips lodges a new complaint that "For many versions of the produced ▇▇▇ Ex. 15.
- May 15, 2018: Philips complains to Google that despite multiple correspondence promising production, corrected ▇▇▇ has not yet been produced. Ex. 16.
- May 22, 2018: Google tells Philips ▇▇▇ addressing the deficiencies Philips identified will be produced on May 24, 2018. Ex. 17.

### C. Philips Moves the Court to Amend its Infringement Contentions to Include the Belatedly Produced ▇▇▇ and the Court Grants Permission

Asus attempts to blame Philips for delaying provision of its YouTube-related infringement contentions. It argues "Philips reviewed Google's ▇▇▇ on September 29, 2017" but didn't update its infringement contentions with respect to YouTube at that time. Opp. at 3. And Asus again complains that Philips did not update its contentions during its February 2, 2018 supplement. But it is undisputed that Philips could not have done so at these times. Asus acknowledges that Google did not even begin production of its ▇▇▇ until February 15, 2018 and that the production was not complete until May 24, 2018. Opp. at 2-3; Ex. 13; 17. This Court has already found that this belated production prevented Philips from properly supplementing its infringement contentions in a timely manner and granted Philips leave to amend its contentions to include its analysis of this late-produced source code. D.I. 627.

### III. ARGUMENT

#### A. Courts in this District Reject Incomplete and "Implicit" Disclosures as "the Purpose of Requiring Parties to Disclose the Basis for Their Contentions is to

**Make Them Explicit and Streamline Patent Litigation"**

Asus's argument suggesting that Courts in this District look approvingly at a contention response containing only the barest of information and consider such a response to be an adequate disclosure that an expert can fill in later with more details falls flat. In *Thought, Inc. v. Oracle Corp.*, No. 12-CV-05601-WHO, 2016 WL 3230696 (N.D. Cal. June 13, 2016), Plaintiff argued that its theory based on a particular programming call should not be stricken because, in its view, the call had been *implicitly* disclosed and Defendant should have realized such. *Id.* at *6. The Court rejected this argument calling it "gamesmanship" because "[t]he purpose of requiring parties to disclose the basis for their contentions is to make them *explicit* and streamline patent litigation." *Id.* (emphasis in original) (citations omitted).

*KlausTech, Inc. v. Google LLC*, No. 10-cv-05899-JSW (DMR), 2018 WL 5109383 (N.D. Cal. Sept. 14, 2018) is also instructive. In that case the asserted claims required an Internet browser ("providing a website at a webserver for transmitting at least one page with a non-scrolling frame to a browser."). *Id.* at *3. Plaintiff's infringement contentions alleged, "The mobile application store (Google Play Store on Android) functions as a website at a web server from where a mobile app is downloaded. The mobile app contains at least one app page along with lines of code which are used to install a nonscrolling banner ad frame in these pages," but did "not explain what functions as the 'browser' portion of the claim element." *Id.* at *3. Plaintiff's expert later stated in his report that "the mobile operating system (Android or iOS) is the claimed 'browser.'" *Id.* Plaintiff argued this was not a new theory as its "contentions make this implicit disclosure because when a mobile device downloads a mobile app from the app store, it downloads and runs it on an operating system." *Id.* at *4. The Court rejected this argument finding that "[t]here is no mention of the term 'operating system' anywhere in the infringement contentions, nor is there a description or identification of the browser" and that "[i]mplicit disclosures are contrary to the purpose of the local patent rules, which require parties to 'disclose the basis for their contentions' in order to 'make them explicit and streamline patent litigation.'" *Id.* at *4 (citing to *Thought*, 2016 WL 3230696 at *6); *see also MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, 14-CV-3657-SI, 2019 WL 1865921, at *4 (N.D. Cal. April 25, 2019) ("At the most, the language that MLC relies on constituted an implicit disclosure.

However, '[i]mplicit disclosures are contrary to the purpose of the local patent rules, which require parties to disclose the basis for their contentions in order to make them *explicit* and streamline patent 'litigation.'") (emphasis in original) (citations omitted).

Courts in this District do not just demand explicit disclosures for contentions required by the Patent Local Rules, the requirement extends to noninfringement contentions as well. In *Asia Vital Components Co., Ltd. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990 (N.D. Cal. 2019), plaintiff moved to strike certain noninfringement theories from defendant's expert's report. As Asus argues here, defendant in *Asia Vital* argued it "did not need to 'divulge its fully-crystallized non-infringement arguments upon which [it] would rely at trial, because the deadline for [its] rebuttal expert report on non-infringement served that purpose.'" *Id.* at 1003. The Court thoroughly rejected defendant's argument and explained, not only the vital role that noninfringement contentions have in patent litigation, but that responses to noninfringement contentions should be viewed within the framework of the Patent Local Rules as requiring parties to explicitly disclose their theories:

> A rule that an accused infringer may wait until its expert rebuttal report to set forth theories of noninfringement for the first time would forfeit the benefits of contention interrogatories. As the Federal Circuit has explained, such interrogatories "serve an important purpose in helping to discover facts supporting the theories of the parties. Answers to contention interrogatories also serve to narrow and sharpen the issues thereby confining discovery and simplifying trial preparation." *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1280 (Fed. Cir. 2012). Because "answers to contention interrogatories evolve over time as theories of liability and defense begin to take shape . . . . Rule 26(e) requires that as theories mature and as the relevance of various items of evidence changes, responses to interrogatories, and particularly contention interrogatories, be corrected or supplemented to reflect those changes." *Id.* **The Court finds nothing in the text of this district's patent rules relieving parties arguing non-infringement of that obligation**. Rather, the rules were "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed" – not defer the disclosure of those theories until the expert rebuttal stage. *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, No. 14-CV-03657-SI, 2018 WL 6046465, at *2 (N.D. Cal. Nov. 19, 2018) (quoting *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 n.12 (Fed. Cir. 2006)).

*Id.* at 1003-04 (emphasis added); *see also Looksmart Group, Inc. v. Microsoft Corp.*, 386 F. Supp. 3d 1222, 1231 (N.D. Cal. 2019) (finding an ongoing obligation to supplement responses to contention interrogatories consistent with Fed. R. Civ. P. 26(e) where the Local Patent Rules "did not cabin this duty to amend with a more limited amendment scheme controlled by the Court").

Asus's ▮▮▮▮▮▮ theory should be stricken. ASUS could have plainly stated in its contention

1  interrogatory response that ██████████████████████████████████
2  ████████████████████████████████████████████████████████████
3  ██████████. Asus instead chose to hide the ball and revealed only a single sentence regarding its
4  ██████ theory and failed to provide any context as to why it believed ██████ mattered ("In
5  addition, Philips' source-code contentions do not correctly describe the functionality of the YouTube
6  application, at least by failing to include the '██████ functionality of YouTube."). Asus does not
7  dispute that its entire disclosure consists of just this one sentence. *See* Opp. at 6. This sentence is
8  insufficient to put Philips on notice that Asus's noninfringement theory – revealed for the first time
9  in Dr. Bulterman's Rebuttal Expert Report – is that ████████████████████████████
10 ████████████████████████████[3] It certainly does not reveal that Philips needed to move to
11 compel the details of Asus's actual theory of noninfringement, that according to Dr. Bulterman, ██
12 ████████████████████████████████████████████████████████████
13 ████████████████████████████████████████████████████████████
14 ████████████████████████████████████████████████████████████
15 ████████████████████████████████████████████████████████████
16 ██████████ Opp. at 7; *see also* Mot. Ex. 1 at pp. 129-132, 149-150, 170.

17       Asus's ██████████ theory should also be stricken. ASUS could have plainly stated in
18 its contention interrogatory response that ████████████████████████████████
19 ████████████████████████████████████████████████████████████
20 ████████████████████████████████████████████████████████████
21 ██████████████████ Asus instead decided to remain silent with respect to its ██████████
22 theory and only stated "The accused devices do not practice element [1a] because they do not have a
23 'control information file.'" Asus does not dispute that the entirety of its disclosure consists of only
24 this single sentence. *See* Opp. at 6. This lone sentence is not enough to put Philips on notice that

---

[3] Asus argues it told Philips that "'server-side functionality would be relevant to ASUS' non-infringement positions' in *June 2017*." Opp. at 12 (emphasis in original). This is a strange statement as Google did not begin producing ██████████████ until 8 months later in February 2018. Thus, it is unclear how Asus could have put Philips on notice of its YouTube noninfringement contentions at this time. But Asus's June 2017 contentions do not mention ██████ once and, at most, relate to ██████████████

7

REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN OPINIONS IN DR. BULTERMAN'S REBUTTAL
EXPERT REPORT SERVED ON BEHALF OF ASUS CONCERNING U.S. PATENT NO. 7,529,806
CASE NUMBER 4:18-CV-01885-HSG

Asus's noninfringement theory – divulged for the first time in Dr. Bulterman's Rebuttal Expert Report – is that ███████████████████████████████████████████████ Philips could not possibly understand from that one sentence that it needed to compel Asus to reveal its true theory that, according to Dr. Bulterman, █████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████

████████ Opp. at 7; *see also* Mot. Ex. 1 at pp. 30-31, 85, 96-103, 122-123.

### B. Asus's Attempt to Shift the Blame to Philips for Not Complaining Earlier About its Disclosures is Contrary to the Rules of Discovery

Asus's attempt to shift the blame to Philips for not complaining earlier cannot stand as it would reward Asus for successfully hiding the ball. According to Asus, Philips did not complain before so it cannot complain now. *See* Opp. at 10 ("Because Philips did not challenge ASUS' responses through a motion to compel, it cannot be heard now, after the close of discovery, to protest them."). How could Philips know it needed to move to compel when Asus's interrogatory response was so inadequate that it didn't even reveal that there was something to compel? Philips could not have known that Asus was holding back actual noninfringement theories replete with details.

Asus would have this Court penalize Philips for not realizing the future importance of these two sentences in Asus's interrogatory response that, according to Asus, buttress multiple pages of noninfringement theories in Dr. Bulterman's Rebuttal Report. If parties abided by the standard Asus seeks to impose on Philips, the courts would be flooded with motions to compel on every allusion and intimation in an interrogatory response in order to avoid the risk of inadvertently sanctioning getting sandbagged during expert discovery. But this is not the rule. The onus is on the party responding to a contention interrogatory to provide an answer that is direct and complete. "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4); *see also Asia Vital*, 377 F. Supp. 3d at 1003-04 ("Rule 26(e) requires that as theories mature and as the relevance of various items of evidence changes,

responses to interrogatories, and particularly contention interrogatories, be corrected or supplemented to reflect those changes."). "In responding to an interrogatory, a party has a duty to furnish all information available to or controlled by the party." *Electracash, Inc. v. Kahn*, 05-CV-1135-RSWL, 2006 WL 8434675, *1 (C.D. Cal. July 10, 2006); *see also* Fed. R. Civ. P. 33(b)(1)(B) (a Responding Party "must furnish the information available to the party."). If the answering party does not, that "party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial." Fed R. Civ. P. 37(c)(1).

      C.    **Asus Knowingly Withheld Full Disclosure of its ▮▮▮▮▮ Theory and ▮▮▮▮▮▮▮▮ Theory From its Noninfringement Contentions**

Asus was fully aware of what noninfringement theories it intended to argue and instead decided a strategy of silence and inscrutability were the better course than disclosure and clarity. Asus has had access to all the information necessary to fully disclose its noninfringement theories for years. That this information was held at Google, the developer of the YouTube application, was no barrier to Asus. Asus has worked hand-in-hand with Google since nearly the start of this litigation. Mr. Ricky Liao, an ASUS 30(b)(6) deponent, testified that after Philips sued Asus, Asus ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *See* Liao Tr. at 45:18-47:9. Asus's and Google's collaboration in this litigation has been extensive. Google filed IPR Petition IPR2017-00447 against the '806 patent listing Asus as a Real Party-in-Interest. Ex. 18 at 2. Google and ASUS hired Dr. Dick Bulterman to support their IPR Petition and Asus has continued to use Dr. Bulterman as its expert in this litigation for the '806 patent. *Id.* at iv. And Asus and Google share counsel in this litigation. Ex. 19 at 189:2-17.

As part of its partnership with Google, Asus and Google worked together to implement a strategy of delayed disclosure. Dr. Bulterman's noninfringement theories are based on his conversation with Google engineer ▮▮▮▮▮▮▮▮ Google's 30(b)(6) deponent on YouTube functionality. Dr. Bulterman cites to his conversation with ▮▮▮▮▮▮ more than 30 times in his Rebuttal Report as the basis for his knowledge and opinions on the operation of YouTube (yet Asus did not even mention ▮▮▮▮▮▮ or his deposition testimony once in its noninfringement

contentions). Dr. Bulterman testified at his deposition in July 2019 that he first spoke to ▇ ▇ "[s]ometime in the last two months." *See* Ex. 20 at 111:8-18. This conversation could have occurred far earlier and the strategic advantage of delaying this conversation until after fact discovery is evident; Asus was thereby able to avoid having to disclose in its interrogatory response what it learned through that conversation. Asus has been working with Dr. Bulterman for years (Dr. Bulterman's declaration in support of Asus's IPR petition was filed in December 2016). Ex. 18 at iv. And Asus has known of ▇ and the knowledge he possessed since at least January 2018 when it served its Second Supplemental Initial Disclosures naming ▇ as "a software engineer at YouTube. ▇ may have knowledge regarding the YouTube application for Android." Ex. 21. Further, the same attorney defended the deposition of ▇ (in his capacity as Google counsel), defended the deposition of Dr. Bulterman (in his capacity as Asus counsel), and facilitated the call between ▇ and Dr. Bulterman (in his capacity as both Google and Asus counsel). Ex. 20 at 111:20-112:5; Ex. 22 at 4.

The same delay tactics apply to the belated disclosure of the ▇ theory. Despite Philips subpoenaing "[a]ll documents related to the design, development, implementation, testing, and support for HLS media streaming technology, MPEG-DASH media streaming technology, or adaptive bit-rate streaming technology in the YouTube Android Application" in July 2017, Google only produced a **single** document – a two page document with only the barest description of onesie – on the eve of ▇ deposition and over a year later in November 2018.[4] Asus's argument that this document was only produced "[b]ecause ▇ (a corporate designee for Google) chose to review this document in preparation for his deposition" (Opp. at 4 n.2) strains credulity. According to Asus, ▇ on his own, chose to review only the briefest of documents about

---

[4] Asus states that on August 8, 2017 Google objected to Philips' subpoena for YouTube-related documents and claims "Philips never objected to this objection, never followed up on it, and never mentioned it again. Having thoroughly waived any right to demand documents responsive to this request, Philips cannot now complain that Google failed to produce them." Opp. at 4 n.2. Asus should know better. Counsel for Asus (in his capacity as Google counsel) met and conferred with Philips regarding this issue and emailed Philips on November 27, 2017, "[W]e are no longer objecting to production of documents regarding YouTube based on your failure to properly accuse YouTube of infringement. . . . [W]e are gathering and reviewing documents regarding YouTube, ▇. We are working on a plan for production of these documents, which we will share with you no later than early next week." Ex. 12.

███ right before his deposition and Google's counsel (which is also Asus's counsel) chose to produce that document as a favor to Philips. *See id.* ("counsel produced [the ███ document] even though Google had no other obligation to do so. Presumably Philips agrees that this decision was appropriate."). And, according to Asus, nothing should be made of the fact that Dr. Bulterman would later write multiple pages in his Rebuttal Report regarding the ███ noninfringement theory based on his conversations with ███, or that this document would later be used by Asus to argue that Philips was given full disclosure but failed to investigate.[5] Opp. at 4-5.

### D. Philips Provided Detailed Contentions Disclosing its Theories, But Asus Did Not Meet its End of the Bargain to Provide an Equivalent Level of Detail

Asus seeks to explain away the paucity of meaningful information in its contention interrogatory responses by arguing that it "disclosed each of these theories in its contention interrogatory responses, and did so at a level of detail equivalent to Philips' disclosure in its infringement contentions." Opp. at 11. Asus blatantly mischaracterizes Philips' infringement contentions as "provid[ing] almost no detail" and as "not cit[ing] any source code pages." Opp. at 5-6. A review of Philips' infringement contentions reveal that this is untrue.

With its infringement contentions, Philips served a "YouTube and Google Play Movies & TV Source Code Appendix" containing an analysis of the YouTube source code for the earliest and latest versions, ███, with specific cites to the code, and an explanation of how it related to the asserted claims. For example, with respect to the "determining" step, Philips disclosed *why* it identified the ███ as the claimed "control information file" and *why* it believed that based on parsing the ███ the YouTube application performed the claimed steps.[6] Dr. Polish's Opening Report tracks these disclosures.[7]

---

[5] Philips asked ███ direct questions about ███ and he avoided providing any answer that would reveal ███ relevance to any potential noninfringement theory (███
███
███ Ex. 22 at 109:20-110:1).

[6] Philips' contentions with respect to version ███ are omitted to save space, but are substantially similar to what is shown with respect to version ███.

[7] Asus also tries to shed blame for not disclosing its theories by arguing "Philips did it too." *See* Opp. at 6 ("Dr. Polish's report provided far more detail than was set forth in Philips' infringement



contents"). A review of Philips' Infringement Contentions and Dr. Polish's Opening Report reveals the obvious fiction Asus is promulgating.



In the face of Philips' lengthy disclosures (the source code appendix of Philips' infringement contentions is 35 pages, of which half relates to YouTube) Asus points to a single sentence relating to its " ▉▉▉ " theory and a single sentence relating to its ▉▉▉▉▉ theory (which says nothing about ▉▉ ) and argues that these two sentences "more than adequately disclosed its theories to Philips" (Opp. at 10) "at a level of detail equivalent to Philips' disclosure in its infringement contentions" (Opp. at 11).  But, at most, these sentences disclose Asus's conclusory assertions that certain claim elements are not met, without providing any meaningful notice of the actual theories it would later advance for why they are allegedly not met.  Asus argues that noninfringement theories

are "inherently negative in nature" (Opp. at 10) and that, therefore, all that is required is to say "no, it isn't" (Opp. at 11) in response to Philips' allegations that an aspect of the accused YouTube application is a claim element. This is not the law and Asus does not cite to a single case where saying only "no" was found to be adequate. *Cf. Asia Vital*, 377 F. Supp. 3d at 1003 ("A rule that an accused infringer may wait until its expert rebuttal report to set forth theories of noninfringement for the first time would forfeit the benefits of contention interrogatories. As the Federal Circuit has explained, such interrogatories 'serve an important purpose in helping to discover facts supporting the theories of the parties. Answers to contention interrogatories also serve to narrow and sharpen the issues thereby confining discovery and simplifying trial preparation.'" (citation omitted)).

### E. Prejudice is Inherent When a Party Waits to Disclose its Theories Until Long After Discovery Closes

Philips need not establish prejudice as "[i]f the theory is new, prejudice is 'inherent in the assertion of a new theory after discovery has closed.'" *MLC Intellectual Prop.*, 2019 WL 1865921, at *2 (citing *Finjan, Inc. v. Symantec Corp.*, 14-CV-02998-HSG, 2018 WL 620169, at *2 (N.D. Cal. Jan. 30, 2018) (quoting *Adobe Sys. Inc. v. Wowza Media Sys.*, 11-CV-02243-JST, 2014 WL 709865, at *15 n.7 (N.D. Cal. Feb. 23, 2014))); *see also KlausTech*, 2018 WL 5109383, at *8 ("In this court's view, [the party moving to strike] need not establish prejudice, for as one court has observed, 'prejudice is inherent in the assertion of a new theory after discovery has closed, and . . . to impose such a burden would create an incentive for late disclosure.'" (citations omitted)); *Asia Vital*, 377 F. Supp. 3d at 1005 (finding prejudice in the untimely disclosure of noninfringement theories because the argument that there was "no obligation to supplement its responses lacks merit" and therefore "was not substantially justified" and was also "not harmless" because "[b]y waiting until its expert rebuttal report to disclose its theory, [defendant] prevented [plaintiff] from conducting fact discovery on the issue, thereby hampering its expert discovery as well" and because "[i]t also deprived [plaintiff] of the ability to fully question [defendant's] deposition witnesses on the subject.").

Asus's arguments that there was no prejudice are unavailing. The after-the-fact rationalization that Philips could have recognized Asus's noninfringement theories (and then sought additional fact discovery) from the cryptic statements in its noninfringement contentions, the vague

testimony from ▇▇▇▇ and a brief comment found amongst millions of lines of source code is legally deficient. *See Asia Vital*, 377 F. Supp. 3d at 1004 ("The post-hoc identification of a needle in a haystack does not cure AVC's failure to respond. *See Apple, Inc.*, 2012 WL 3155574, at *5.").

The claim that Philips was not prejudiced because it could have served a supplemental report, but did not, is beside the point. A supplemental report would not turn back the hands of time and allow Philips to conduct meaningful discovery into belatedly revealed noninfringement theories. *See Asia Vital*, 377 F. Supp. 3d at 1005 ("It is no answer, as [defendant] suggests … that [plaintiff] can request leave to submit a supplemental expert report. *See K. P. v. Santa Clara Cty. Office of Educ.*, No. 5:15-CV-01512-EJD, 2016 WL 5930641, at *3 (N.D. Cal. Oct. 12, 2016) ('Defendants cannot just blithely offer a schedule modification and expect Plaintiffs to accept it as a way to alleviate the problem they created and the prejudice they inflicted.'")). Further, it is ironic that Asus argues here that ***not serving*** a supplemental report is an indication that Philips is not prejudiced while in its opposition brief regarding striking new theories from Dr. Dunlop's expert report, Asus argues that *serving* a supplemental report indicates Philips was not prejudiced. D.I. 825 at 5.

Finally, Dr. Polish testifying that he has not changed his opinion on infringement in response to Dr. Bulterman's Rebuttal Report is a non-sequitur to the issue of prejudice, as prejudice to Philips does not begin and end with Dr. Polish's infringement opinions.[8] As just one example, Philips was prejudiced as it was denied the opportunity to marshal additional evidence to support its case or to pivot its case strategy to address the new noninfringement theories.

## IV. CONCLUSION

For the reasons set forth herein and in its initial Motion, Philips respectfully requests that the Court exclude: (i) the "▇▇▇▇" theory (Mot. Ex. 1 at pp. 129-132, 149-150, 170) and "▇▇▇▇▇▇▇" theory (Mot. Ex. 1 at pp. 30-31, 85, 96-103, 122-123) presented in Dr. Dick Bulterman's June 20, 2019 Rebuttal Expert Report served on behalf of Asus and concerning the '806 patent, and (ii) any testimony that Dr. Bulterman may present at trial based on the "▇▇▇▇ ▇▇▇▇▇▇" noninfringement theories.

---

[8] Asus reads too much into Dr. Polish's testimony. Opp. at 13. Dr. Polish's testimony cannot be construed to mean he believed Dr. Bulterman's Rebuttal Report contained nothing new or that he would not have investigated these new theories if they had been timely disclosed.

Dated: October 17, 2019

By:  /s/ Jonathan M. Sharret
Chris Holland (SBN 164053)
cholland@hollandlawllp.com

HOLLAND LAW LLP
220 Montgomery Street, Suite 800
San Francisco, CA 94104
Tel: (415) 200-4980
Fax: (415) 200-4989

John D. Carlin (*admitted pro hac vice*)
jcarlin@venable.com

VENABLE LLP
1290 Avenue of the Americas
New York, New York 10104-3800
Tel: (212) 218-2100
Fax: (212) 218-2200

*Attorneys for Plaintiffs*