```
                                              Pages 1 - 11

              UNITED STATES DISTRICT COURT

           NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Haywood S. Gilliam, Jr., Judge

                              )
                              )
In Re Koninklijke Philips     )
Patent Litigation             )      NO. CV 18-01885-HSG
                              )
                              )

                     Oakland, California
                     Thursday, August 1, 2019

              TRANSCRIPT OF PROCEEDINGS
```

**APPEARANCES**:

For Plaintiffs:
        HOLLAND LAW LLP
        220 Montgomery Street
        Suite 800
        San Francisco, CA 94104
    **BY: CHRIS HOLLAND, ESQUIRE**

        VENABLE LLP
        1290 Avenue of the Americas
        20th Floor
        New York, NY 10104
    **BY: MICHAEL P. SANDONATO, ESQUIRE**

        VENABLE LLP
        1270 Avenue of the Americas
        24th Floor
        New York, NY 10020
    **BY: CHRISTOPHER M. GERSON, ESQUIRE**

For Defendant Microsoft Corporation:
        PERKINS COIE LLP
        2901 North Central Avenue
        Suite 2000
        Phoenix, AZ 85012
    **BY: CHAD S. CAMPBELL, ESQUIRE**

Reported By:    Pamela Batalo-Hebel, CSR No. 3593, RMR, FCRR
                Official Reporter

```
APPEARANCES CONTINUED:

For Defendant ASUS Computer International:
                    WARREN LEX LLP
                    2261 Market Street
                    Suite 606
                    San Francisco, CA  94114
             BY:    MATTHEW WARREN, ESQUIRE

Also Present:       MARK TAYLOR
                    PAUL IM
```

|   |   |   |
|---|---|---|
| 1 | **Thursday - August 1, 2019** | **2:09 p.m.** |

2        **P R O C E E D I N G S**

3                  ---o0o---

4        **THE CLERK:** We're calling CV 18-1885, In Re

5   Koninklijke Philips Patent Litigation.

6        Please step forward and state your appearances for the

7   record, please.

8        **MR. HOLLAND:** Good afternoon, Your Honor. Chris

9   Holland, local counsel for Philips. Here with me today are two

10  members of our lead counsel team from New York, Venable

11  Fitzpatrick, Mike Sandonato and Chris Gerson. We also have a

12  client representative, Mr. Paul Im, here with us today.

13       **THE COURT:** Good afternoon, Mr. Holland.

14       **MR. CAMPBELL:** Good afternoon, Your Honor. Appearing

15  for Microsoft, my name is Chad Campbell from the firm of

16  Perkins Coie. I'm joined here today by Microsoft's associate

17  general counsel, Mark Taylor.

18       **THE COURT:** Good afternoon, Mr. Campbell.

19       **MR. WARREN:** Good afternoon, Your Honor. Matthew

20  Warren of Warren Lex LLP appearing for the ASUS defendants.

21       **THE COURT:** Good afternoon, Mr. Warren.

22       We are here for a hearing on the motion to stay filed by

23  Microsoft, and I've reviewed the papers.

24       Whoever will be speaking should just come to the podium

25  for each side.

1    I have a couple impressions. One is that there is a
2 potentially interesting underlying issue regarding the scope of
3 collateral estoppel, given the invalidation, at least in the
4 PTO, of one patent that was initially asserted in this case.
5    I reviewed the cases. Really it does seem to me the
6 question comes down to whether the combination of the *XY* case
7 and the -- what was it -- *Ohio Willow Wood* cases would lead to
8 a finding of collateral estoppel here. And reviewing the
9 district court opinions of the courts that have considered that
10 question, I tended to find them persuasive.
11    But that all seems like a second-level question, and the
12 immediate question is why shouldn't I simply stay this patent
13 that everyone agrees is identical, for relevant purposes, to
14 the one that was invalidated in the PTO, see what happens with
15 it, with that appeal, and then proceed from there? It seems to
16 me that that's just an obviously-sensible way to proceed, and
17 it's hard for me to understand why I would invest my resources
18 and the parties would invest their resources when, in the end,
19 there may be a collateral estoppel finding.
20    And for purposes of the stay motion, I don't need to
21 decide the underlying question, but it seems to me that there
22 is at least a substantial possibility that that would be the
23 outcome of an affirmance in the Federal Circuit.
24    I suppose that's for Mr. Sandonato.
25    **MR. SANDONATO:** Thank you, Your Honor.

1      Our primary reason is that we don't think that there is
2 collateral estoppel here.  We recognize that two district
3 courts have faced the issue with similar facts and have come
4 out and found collateral estoppel, but we, with all due
5 respect, think those courts got it wrong.
6      We think that the *XY* case got the right decision.  The
7 Federal Circuit was certainly correct that the PTAB's ruling in
8 the *XY* case was binding on the district court, but it was not
9 binding because of collateral estoppel, even though we
10 appreciate that the Federal Circuit used that language.  It was
11 binding because, as the earlier Federal Circuit case *Fresenius*
12 tells us, when the PTO invalidates a patent, it extinguishes --
13 after appeals are exhausted, it extinguishes the underlying
14 patent right.  That's different than collateral estoppel.
15           **THE COURT:**  But just again getting back to the motion
16 that I have before me, I don't know that I need to prejudge the
17 eventual collateral estoppel motion that may be made if the
18 Federal Circuit affirms the PTO's decision.  Obviously if
19 that's reversed, then we don't have a collateral estoppel issue
20 to deal with.
21      But why does it not make sense to wait for what is an
22 obviously relevant data point from the Federal Circuit before
23 plowing forward with litigation on this patent?
24           **MR. SANDONATO:**  A couple of reasons, Your Honor.
25      First of all, the '064 patent is ready to go.  The fact

1  discovery is closed.  Expert discovery will be closed tomorrow.
2  In fact, the last technical deposition on the '064 patent will
3  take place tomorrow.
4      We've invested a lot of time.  We have a trial date.  The
5  trial will start in February of 2020; February 24th, I believe,
6  2020.  We will be trying other patents.
7      Microsoft has always wanted a single trial on all the
8  patents that we're bringing to trial, so we think that at this
9  point, we should go forward on all patents so we don't have to
10 be back in court on a second -- on a second patent or second
11 set of patents after the appeals run their course.
12          **THE COURT:**  How does that account for the Court's
13 time?  I understand that you're a litigator, you love
14 litigating, but why should I spend whatever marginal amount of
15 additional time it would take to resolve that patent at this
16 point?
17          **MR. SANDONATO:**  Very fair question, Your Honor.
18     Because it will save you a trial.  Because this way we
19 will be able to deal with the '064 patent in the same trial
20 that we're dealing with the other patents.  We'll have a jury
21 verdict on that patent.
22     We don't think there is going to be collateral estoppel
23 with respect to the '064 patent, irrespective of what the
24 Federal Circuit does in the PTAB appeal.
25          **THE COURT:**  But if I find that there is collateral

1   estoppel, you'll have an issue to take to the Federal Circuit
2   and I'll have a patent that's carved out of this case; correct?
3           **MR. SANDONATO:**  You would have -- correct, but with
4   all due respect, if this Court does find there is collateral
5   estoppel, we will appeal that issue at some point.  That will
6   be an issue that we will appeal.
7           **THE COURT:**  Of course.
8           **MR. SANDONATO:**  If the Federal Circuit goes our way on
9   that, then we would be back in your court for another trial.
10      By proceeding right now and rolling the '064 patent into
11  what I will call the main trial that's going to take place
12  against Microsoft February 24th, we won't be back in this Court
13  with another trial.  We will have dealt with that patent in the
14  same trial that we deal with all the other patents.
15      We think that that will conserve the Court's resources, so
16  we think there will be less litigation, not more, if we proceed
17  in this fashion.
18          **THE COURT:**  All right.
19      Mr. Campbell.
20          **MR. CAMPBELL:**  First off, let me address the process
21  and procedural point.
22      We do think that there is inevitably going to be a savings
23  if the Court stays the '064 case.  There are five patents that
24  are in the case at this point.  Each of them are different.
25  They cover different technologies.  If you set aside the '064,

1  you've reduced the expenditure of resources by the parties and
2  the Court by at least 20 percent.  So we think there is --
3  there is a savings component to the proposal that we've made.
4       The other thing that I would note is that statistically
5  speaking, now that we have the PTAB's input on the validity of
6  the '064, we can predict with more confidence what the outcome
7  is going to be, overwhelmingly.  Cases that go before the
8  Federal Circuit are affirmed; not all cases, but the vast bulk
9  of them are.
10      And so if we're looking at what to do to save resources,
11 the obvious point and direction that we ought to heading is the
12 one that the Court has already outlined.
13      I want to just briefly address the argument that seems to
14 be at the center of the opposition, this idea that there is
15 tension between the *Fresenius* case at the Federal Circuit and
16 the *XY* case at the Federal Circuit.  That's actually not
17 correct.
18      In the *Fresenius* case, when the issue got up to the
19 Federal Circuit the second time, the PTAB had already finished
20 its process and the appeal had run.  All the appeals had been
21 exhausted and the claims had been canceled.
22      So what happened in the *Fresenius* case was the dissent
23 opinion argued that if you just apply collateral estoppel, we
24 ought to -- we ought to honor a previous district court
25 decision and not worry about what happened at the PTAB.

1        The majority said that wasn't right for two reasons.
2            **THE COURT:** Well, similar to the point made with
3   Mr. Sandonato, obviously if I get to the point of having to
4   decide the collateral estoppel issue, it's an interesting
5   issue, and I'll have to drill down, but it seems to me here,
6   all you're really saying is, "Judge, if you conclude that there
7   is at least a prospect that if the Federal Circuit affirms" --
8   that I would then go the extra step and say that that leads to
9   collateral estoppel as to the '064 patent -- "then it's worth
10  waiting and seeing what the Federal Circuit does."
11           **MR. CAMPBELL:** We are certainly saying that, but if --
12  if the Court were to decide not to do it, we would be -- we
13  would be inviting, before this case is over, that the
14  collateral estoppel decision be decided on the merits.
15       So we do think the right way to go is to -- is to set it
16  aside, wait, see what happens at the Federal Circuit.
17  Procedurally and from a prejudice point of view, there is not
18  going to be any difference if you do that, but if -- if we end
19  up having to press the collateral estoppel issue, we think the
20  right outcome under *XY* is that there is collateral estoppel and
21  that that estoppel applies today.
22       In the *XY* case, the -- there was no cancellation that was
23  in play.  The Federal Circuit *sua sponte* raised the issue of
24  collateral estoppel in order to set aside those patents and not
25  deal with them.  There wasn't an opportunity to argue that the

1   cancellation by the PTAB, which is what happened in the
2   *Fresenius* case, would have controlled the outcome.  Collateral
3   estoppel was the only tool in the toolkit.  The Federal Circuit
4   took it out, used it, and decided not to address the merits of
5   those patents.
6     **THE COURT:**  All right.  But then so your order of
7   operations as to what would happen if a patent is invalidated
8   in the PTAB and then the Federal Circuit eventually reverses is
9   that we'd then have to resurrect the case, go back, and try it
10  from scratch.
11    **MR. CAMPBELL:**  We wouldn't be trying it from scratch.
12  We'd be picking up where we left off, with discovery having
13  been closed already.  So there really is no loss of work or
14  effort if the stay goes into place now.
15    **THE COURT:**  All right.
16    From your perspective, Mr. Sandonato, what is the
17  prejudice that you would assert?
18    **MR. SANDONATO:**  Well, a couple of pieces, Your Honor.
19    Number one, as Your Honor knows, we have subsequent trials
20  coming up against additional defendants, against HTC and
21  against ASUS.  Neither of those parties have asked for a stay
22  with respect to the '064 patent.  So when we take our cases to
23  trial against them, they will include the '064 patent, at least
24  based on what we have now, based on the record that we have
25  now.

1    That will give Microsoft an opportunity to watch those
2    trials, to see what happens to the '064 patent, and to tailor
3    its trial strategies accordingly.  That will prejudice Philips
4    greatly and unfairly.
5        **THE COURT:**  Why is that prejudice?  That's just the
6    happenstance of who goes first.  I don't understand how that's
7    prejudice.
8        I've said that there are going to be multiple trials here.
9    Someone has got to go first.  That means that people get to see
10   what happens in the first trial.  That just doesn't strike me
11   as cognizable prejudice.
12       **MR. SANDONATO:**  I understand the comment, but this way
13   Microsoft is both going first and last at the same time and in
14   a manner that is, in our view, very likely going to get us back
15   to a second trial against Microsoft, so that we'll be back in
16   this Court for this second trial.  We think that that gives
17   them an unfair tactical advantage; that they see all the
18   arguments that we present, see the way we present, and see the
19   way the jury reacts to the '064 patent.
20       **THE COURT:**  I should hope that everyone will learn
21   from a trial in a way that advances the ball and moves the case
22   towards resolution.
23       Okay.  I'm prepared to take it under submission, and I'll
24   issue a ruling as soon as I can.
25               (Proceedings adjourned at 2:22 p.m.)

```
 1
 2
 3                      CERTIFICATE OF REPORTER
 4         I certify that the foregoing is a correct transcript
 5   from the record of proceedings in the above-entitled matter.
 6
 7   DATE:    Tuesday, November 5, 2019
 8
 9   /s/ Pamela Batalo Hebel
     _____
10   Pamela Batalo Hebel, CSR No. 3593, RMR, FCRR
     U.S. Court Reporter
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```